1

THE HONORABLE RICARDO S. MARTINEZ

2

3

4

5

6

7

8               IN THE UNITED STATES DISTRICT COURT

9          FOR THE WESTERN DISTRICT OF WASHINGTON

10                        AT SEATTLE

11   UTHERVERSE GAMING LLC,              Case No. 2:21-cv-00799-RSM-TLF

12                    Plaintiff,         **DEFENDANT'S REPLY IN SUPPORT
                                         OF THE MOTION TO DISMISS
13        v.                             (DKT. #34)**

14   EPIC GAMES, INC.,                   NOTE ON MOTION CALENDAR:
                                         September 10, 2021
15                    Defendant.

16

17

18

19

20

21

22

23

24

25

26

27

## TABLE OF CONTENTS

Page

I.   INTRODUCTION ...................................................................................................1

II.  ARGUMENT ........................................................................................................1

    A.   The MMAP Patent Claims are Patent Ineligible because they are Directed to an
    Abstract Concept, not a Technical Means of Achieving that Concept ....................1

        1.   Claim 1 of the '157 Patent is Representative of the Asserted Claims .........2

        2.   Utherverse's Characterization of the Focus of the MMAP Patents as
            "Common Space Experiences in Parallel Dimensions" is Contradicted by
            the Specification, Claims, and the Complaint.............................................3

        3.   The Idea of a Common Space Across Instances is Itself Abstract .............5

        4.   Utherverse Fails to Identify a Patent-Eligible Inventive Concept .............8

    B.   Utherverse Fails to Contradict Epic's Demonstration that the '605 Patent Claims
    are Directed to an Abstract Idea and Contain No Patent Eligible Inventive
    Concept ............................................................................................................10

    C.   There are No Disputed Issues of Fact Relevant to the Question of Patent
    Eligibility .........................................................................................................12

III.  CONCLUSION...................................................................................................12

DEFENDANT'S REPLY IN SUPPORT OF THE
MOTION TO DISMISS (DKT. #34) – i
(CASE NO. 2:21-CV-00799-RSM-TLF)

**DURIE TANGRI LLP**
217 Leidesdorff Street
San Francisco, CA 94111
Tel: (415) 362-6666

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ariosa Diagnostics, Inc. v. Sequenom, Inc.*,
   788 F.3d 1371 (Fed. Cir. 2015), *reh'g en banc denied*,
   809 F.3 1282 (Fed. Cir. 2015)................................................................................9

*Berkheimer v. HP Inc.*,
   881 F.3d 1360 (Fed. Cir. 2018), *reh'g and reh'g en banc denied*,
   890 F.3d 1360 (Fed. Cir. 2018), *cert. denied*, 140 S. Ct. 911 (2020) .............................2, 7, 11

*CardioNet, LLC v. InfoBionic, Inc.*,
   955 F.3d 1358 (Fed. Cir. 2020), *cert. denied*, 141 S. Ct. 1266 (2021) ....................................8

*ChargePoint, Inc. v. SemaConnect, Inc.*,
   920 F.3d 759 (Fed. Cir. 2019), *cert. denied*, 140 S. Ct. 983 (2020) ................................4, 5, 7

*Cleveland Clinic Found. v. True Health Diagnostics LLC*,
   859 F.3d 1352 (Fed. Cir. 2017)............................................................................2

*DDR Holdings, LLC v. Hotels.com, L.P.*,
   773 F.3d 1245 (Fed. Cir. 2014)..........................................................................5, 6

*Intellectual Ventures I LLC v. Symantec Corp.*,
   838 F.3d 1307 (Fed. Cir. 2016)..........................................................................7, 9

*Phillips v. AWH Corp.*,
   415 F.3d 1303 (Fed. Cir. 2005)............................................................................7

*SAP Am., Inc. v. InvestPic, LLC*,
   898 F.3d 1161 (Fed. Cir. 2018)........................................................................9, 12

*Sensormatic Elecs., LLC v. Wyze Labs, Inc.*,
   No. 2020-2320, 2021 WL 2944838 (Fed. Cir. July 14, 2021)................................................10

*Simio, LLC v. FlexSim Software Prods., Inc.*,
   983 F.3d 1353 (Fed. Cir. 2020)............................................................................5

*TecSec, Inc. v. Adobe Inc.*,
   978 F.3d 1278 (Fed. Cir. 2020)...........................................................................12

*WhitServe LLC v. Dropbox, Inc.*,
   854 F. App'x 367 (Fed. Cir. 2021) ........................................................................9

*Yu v. Apple Inc.*,
   1 F.4th 1040 (Fed. Cir. 2021) ............................................................................11

DEFENDANT'S REPLY IN SUPPORT OF THE
MOTION TO DISMISS (DKT. #34) – ii
(CASE NO. 2:21-CV-00799-RSM-TLF)

**DURIE TANGRI LLP**
217 Leidesdorff Street
San Francisco, CA 94111
Tel: (415) 362-6666

1

**Statutes**

2  35 U.S.C. § 101 .................................................................................................1, 7, 9, 12

3  35 U.S.C. § 102 ...................................................................................................................9

4  35 U.S.C. § 103 ...................................................................................................................9

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

DEFENDANT'S REPLY IN SUPPORT OF THE
MOTION TO DISMISS (DKT. #34) – iii
(CASE NO. 2:21-CV-00799-RSM-TLF)

**DURIE TANGRI LLP**
217 Leidesdorff Street
San Francisco, CA 94111
Tel: (415) 362-6666

1
## I.    INTRODUCTION

2    Utherverse's Opposition never confronts the primary problem with its claims:  they recite

3 an abstract concept, not any technological means of implementing that concept.  This case is thus

4 fundamentally unlike the Federal Circuit cases holding that technological improvements to

5 software architectures may be patentable.  Instead of offering any such improvement, the claims

6 here simply tell the skilled artisan to implement abstract ideas using generic computer

7 technology.  The law is clear: such claims are not patentable.

8    Utherverse attempts to defend the MMAP patents by arguing that their claims are not

9 directed to the concept of parallel instancing (i.e., separating players into multiple copies of a

10 virtual space)—which it now *admits* existed in the prior art—but are instead directed to

11 "common space experiences in parallel dimensions" (i.e., having a "common space" that can be

12 viewed by players located in the different copies of the overall virtual space).  Dkt. #38 (Opp'n)

13 at 4.  This characterization of the MMAP patents expressly contradicts the disclosures in the

14 specification, the language of the claims, and even Utherverse's own allegations in its

15 Complaint.  But even if a "common space" in online instances were Utherverse's claimed

16 innovation, that idea is no less abstract than the idea of instancing itself.  Picking a different

17 abstract idea won't help because Utherverse cannot point to anything in the patents that might

18 qualify as a new inventive technological implementation of that idea either.

19    Utherverse's cursory arguments with respect to the '605 patent fare no better.  Utherverse

20 emphasizes that the '605 patent is directed to a recorded experience that is interactive, rather than

21 just a video recording, but fails to explain how the idea of making something interactive—rather

22 than a technical ***means*** of permitting interactivity—is not abstract.  Utherverse also accuses Epic

23 of ignoring the claim language, but itself cannot identify any inventive concept contained in the

24 claims.  Utherverse has thus failed to demonstrate that any of the claims it asserts are patent

25 eligible under 35 U.S.C. § 101.

26
## II.    ARGUMENT

27
### A.    The MMAP Patent Claims are Patent Ineligible because they are Directed to

DEFENDANT'S REPLY IN SUPPORT OF THE
MOTION TO DISMISS (DKT. #34) – 1
(CASE NO. 2:21-CV-00799-RSM-TLF)

**DURIE TANGRI LLP**
217 Leidesdorff Street
San Francisco, CA 94111
Tel: (415) 362-6666

**an Abstract Concept, not a Technical Means of Achieving that Concept**

**1.      Claim 1 of the '157 Patent is Representative of the Asserted Claims**

As a preliminary matter, Utherverse makes a perfunctory argument that Epic's motion improperly treats claim 1 of the '157 patent as representative of all of the MMAP patent claims asserted in the Complaint, including claim 4 of the '954 patent and claim 8 of the '071 patent, rather than analyzing each claim individually.  *See* Opp'n at 14–16.  The Federal Circuit has made clear, however, that "[c]ourts may treat a claim as representative in certain situations, such as if the patentee does not present any meaningful argument for the distinctive significance of any claim limitations not found in the representative claim . . . ."  *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1365 (Fed. Cir. 2018), *reh'g and reh'g en banc denied*, 890 F.3d 1360 (Fed. Cir. 2018), *cert. denied*, 140 S. Ct. 911 (2020); *see also Cleveland Clinic Found. v. True Health Diagnostics LLC*, 859 F.3d 1352, 1360 (Fed. Cir. 2017) ("Where, as here, the claims are substantially similar and linked to the same law of nature [or abstract idea], analyzing representative claims is proper.") (internal quotation marks omitted) (citation omitted).

Here, Utherverse has not pointed to *any* limitation in *any* other claim that purportedly creates a difference meaningful to patent eligibility.  *See* Opp'n at 15.  Indeed, Utherverse's *own complaint* treats claim 1 of the '157 patent as representative of the inventive concept of the MMAP patents.  Dkt. #1 (Compl.) ¶ 36.  And a simple comparison of the claims Utherverse asserts in its Complaint demonstrates that they are substantially similar and linked to the same abstract idea of grouping players into instances (and that each contains an identical "common space" limitation).  *See* Declaration of Bethany D. Bengfort submitted herewith (Bengfort Decl.) Ex. A (Comparison Table of MMAP Patent Asserted Claims).

Significantly, during prosecution, the patent examiner rejected every claim of the '157 and '954 patents as "unpatentable" over the claims of the '071 patent because "*they are not patentably distinct from each other because [they] are directed to similar inventions . . . .*" Bengfort Decl. Ex. B (10/6/2014 Office Action re '157 Patent) at 3; Ex. C (12/24/2013 Office

DEFENDANT'S REPLY IN SUPPORT OF THE
MOTION TO DISMISS (DKT. #34) – 2
(CASE NO. 2:21-CV-00799-RSM-TLF)

**DURIE TANGRI LLP**
217 Leidesdorff Street
San Francisco, CA 94111
Tel: (415) 362-6666

Action re '954 Patent) at 3 (emphasis added).  Utherverse did not dispute the patent examiner's

conclusion, instead filing terminal disclaimers to obtain issuance of duplicative claims.[1]  Having

conceded the similarity of the claims at the Patent and Trademark Office to obtain the patents,

Utherverse cannot now assert that the claims are fundamentally different.

> **2.   Utherverse's Characterization of the Focus of the MMAP Patents as "Common Space Experiences in Parallel Dimensions" is Contradicted by the Specification, the Claims, and the Complaint**

In its Complaint, Utherverse proclaims that the advance of the MMAP patents is

"enabling multiple parallel dimensions of the same space or scene"—in other words, parallel

instancing—which allegedly "unlocked the potential of computer generated virtual worlds and

shared experiences to support dramatically increased numbers of participants despite limitations

in computer processing power and bandwidth."  Compl. ¶ 3.  Epic's motion to dismiss

demonstrated that this claimed invention is patent ineligible because it is directed to an abstract

concept:  copying a space and grouping players into one of those spaces.

In opposition, Utherverse does not even attempt to argue that parallel instancing is in fact

patent eligible.  Instead, Utherverse backtracks from its Complaint and suggests that the MMAP

patents are actually directed to certain "common space experiences in parallel dimensions,"

including, for example, that "changes to an object in one instance can be replicated to other

parallel instances."  *See* Opp'n at 4–5.  Utherverse's newfound characterization of the claims is

an untenable reading of the MMAP patents, which claim the very idea of instancing, not just

having a common space across parallel instances.  The independent claims of the '071 patent

(claims 1, 24, and 25) and '954 patent (claims 1, 9 and 10) recite steps that focus exclusively on

the creation, population, and animation of parallel instances.  *See* Dkt. #1-4 ('071 patent) claim

1; Dkt. #1-5 ('954 patent) claim 1.  The idea of a "common space" or shared experience, which

---

[1] A terminal disclaimer is a statement filed by an inventor that disclaims the right to enforce a patent beyond the period of enforceability for an earlier-filed patent.  Terminal disclaimers thus prevent patent owners from indefinitely extending the terms of their patent monopoly by filing for multiple patents on the same invention.

DEFENDANT'S REPLY IN SUPPORT OF THE
MOTION TO DISMISS (DKT. #34) – 3
(CASE NO. 2:21-CV-00799-RSM-TLF)

**DURIE TANGRI LLP**
217 Leidesdorff Street
San Francisco, CA 94111
Tel: (415) 362-6666

Utherverse now argues is its patentable invention, isn't recited anywhere in these claims; it appears only as an afterthought in a few of the dependent claims. *See generally* '071 patent & '954 patent. A claim cannot be "directed to" a concept it does not recite.

The specification of the MMAP patents similarly demonstrates that the focus of the claimed advance is the concept of parallel instancing, stating that the purportedly inventive solution to the problem of capacity issues in virtual reality is "managing *multiple instances of a space* within a VRU." Dkt. #1-6 ('157 patent) at 3:14–16 (emphasis added); *see also Charge Point, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 767 (Fed. Cir. 2019), *cert. denied*, 140 S. Ct. 983 (2020) (determination of what a patent claim is "directed to" may involve "looking to the specification to understand the problem facing the inventor and, ultimately, what the patent describes as the invention.") (citation omitted). The idea of a "common space" is not discussed as some specific "solution" to the identified problem of space constraints, but rather as a possible result of one possible embodiment of implementing parallel instances. *See* '157 patent at 5:27–33 ("In an embodiment of the inventions, a defined area or portion of multiple dimensions may be visible to, and/or interact with, other parts or members of the dimensions. . . . Access to such a stage or common area may be limited in any desired way.").

The prosecution history also supports the conclusion that the inventors claimed to have invented parallel instancing. During prosecution, several claims of the '071 patent were rejected over a prior art patent the patent examiner referred to as "McQuaid." *See* Compl. ¶ 49; *see also* Dkt. #1-12 (Compl. Ex. L). The examiner specifically found that McQuaid disclosed the "common space" limitation in claim 8 of the '071 patent. *Id.* at 5. Utherverse distinguished its invention from McQuaid by arguing that "McQuaid fails to teach ***parallel*** dimensions (or parallel instances) in a virtual reality universe," instead teaching "the use of ***unique*** instances" representing different geographic areas. Dkt. #1-13 (Compl Ex. M) at 9. Utherverse did not specifically address the examiner's finding that McQuaid taught the "common space" limitation in claim 8, instead arguing only that claim 8 is allowable "as depending from an allowable base claim" directed to instancing. *Id.* at 11. Utherverse's remarks thus demonstrate that it viewed

DEFENDANT'S REPLY IN SUPPORT OF THE
MOTION TO DISMISS (DKT. #34) – 4
(CASE NO. 2:21-CV-00799-RSM-TLF)

**DURIE TANGRI LLP**
217 Leidesdorff Street
San Francisco, CA 94111
Tel: (415) 362-6666

the concept of parallel instancing, *not* common space, as the inventive concept of its claims.  The "common space" limitation Utherverse now trumpets was not only an afterthought, but one that Utherverse didn't even try to defend as novel or inventive before the PTO.  Utherverse thus has no support for its argument that the focus of the claimed advance is "common space" as opposed to parallel instancing more broadly.  And it has now abandoned any effort to defend as patentable the things the patent and the complaint actually treat as the invention.

### 3.    The Idea of a Common Space Across Instances is Itself Abstract

Even if the Court accepts Utherverse's new, litigation-driven characterization of the MMAP patent claims as directed to "common space experiences in parallel dimensions," Opp'n at 4, the concept of a shared space or experience, even when layered on top of the abstract concept of parallel dimensions, is still an abstract idea.  As the Federal Circuit explained in *ChargePoint*, "adding one abstract idea to another abstract idea does not render the claim non-abstract."  920 F.3d at 771 (alterations omitted) (citation omitted).  Here, Utherverse attempts to turn an abstract idea (parallel dimensions) into a patent-eligible one by adding another abstract idea (a common space viewable from each parallel dimension).  Because Utherverse only claims these ***ideas***, and not any technological means of achieving them, it has failed to identify a ***non-abstract*** technological improvement, and the claims are not patent-eligible.  *Simio, LLC v. FlexSim Software Prods., Inc.*, 983 F.3d 1353, 1364 (Fed. Cir. 2020).

First, the idea of creating a common space viewable from duplicate instances of a game is itself abstract, since it existed in the real-world analogs of virtual games for decades—e.g., a central board in a chess tournament.  Dkt. #34 (Mot.) at 22.  The MMAP patent claims simply take this concept and recite its implementation in a virtual reality environment.  *Id.*  While Utherverse tries to obfuscate this simple concept by creating convoluted distortions of Epic's analogy, *see* Opp'n at 16–17, the fact remains that the idea of creating a "common space" to facilitate a shared experience between multiple large groups of people is fundamentally an abstract method of organizing human activity.  In contrast to the claims Utherverse cites in *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1257 (Fed. Cir. 2014), the MMAP patent

DEFENDANT'S REPLY IN SUPPORT OF THE
MOTION TO DISMISS (DKT. #34) – 5
(CASE NO. 2:21-CV-00799-RSM-TLF)

**DURIE TANGRI LLP**
217 Leidesdorff Street
San Francisco, CA 94111
Tel: (415) 362-6666

claims do not present a specific technological solution to a problem caused by the conventional

operation of computers (in *DDR*, the operation of a hyperlink that transports a user away from a

website). Instead, the claims take the abstract idea of creating a "common space" across groups

of people and implements it in the *context* of virtual reality instances (which Utherverse now

admits existed in the prior art, Opp'n at 4) using generic computer components.

Second, Utherverse simply claims this abstract idea, not any technological innovation

that enabled its implementation. According to Utherverse, the problem with prior art virtual

reality environments is that they "leave participants unable to share common virtual experiences

across multiple, parallel instances." Opp'n at 12. Utherverse asserts that the claimed invention

solves this problem by "allow[ing] VRUs to support specific common experiences across parallel

instances," such as by "allow[ing] for a large-scale event (such as a concert or movie premiere)

to be experienced within a common space and viewed by participants across instances." *Id.*

Utherverse analogizes this "solution" to the innovations held by the Federal Circuit to be

technological advances in cases like *DDR*. Opp'n at 16. But neither the claims nor the

specification explain *how*, as a technical matter, such common spaces are achieved, or the

technical means by which viewing a large-scale event across multiple instances is made possible.

Instead, the patent describes only the *result* of creating a common space viewable across

instances. That's not a solution, it's a suggestion that it would be nice to solve this problem.

This purely functional approach is reflected in the plain language of the asserted claims

of the MMAP patents. The only claim limitation arguably related to the creation of a "shared"

experience—as opposed to the creation of parallel instances generally—is a generic reference in

each asserted claim to "modeling a common space in the computer memory configured in

relation to the plurality of parallel instances so that at least one object located inside the common

space is visible from viewpoints located inside each of the plurality of parallel [instances]." '157

patent claim 1, '071 patent claim 8, '954 patent claim 4. In other words, the asserted claims

recite the *idea* of creating a common space that is visible in multiple instances, thus permitting a

shared experience. The claims offer no specific technical means for *creating* this common space,

stating only that the common space is "model[ed] . . . in the computer memory . . . ." *See* '157 patent claim 1, '071 patent claim 8, '954 patent claim 4.  Consequently, the claim just instructs the skilled artisan to implement those common spaces using generic computer technology.  This is impermissible under § 101.  *See Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1316 (Fed. Cir. 2016) (If "a claim directed to an abstract idea contains no restriction on how the result is accomplished, and the mechanism is not described, although this is stated to be the essential innovation, then the claim is not patent-eligible.") (alterations omitted) (internal quotation marks omitted) (citation omitted).

As part of its argument, Utherverse points to various other "embodiments" of the invention, including "object-passing embodiments" that allow objects to pass between instances and "multi-dimensional avatar embodiments" that allow avatars to appear in multiple instances. Opp'n at 12–13.  It is unclear whether Utherverse is arguing that certain unclaimed *embodiments* in the specification render the asserted claims patent eligible, or if it is arguing that some other unidentified (and unasserted) *claims* related to those embodiments are directed to patent-eligible subject matter.  In either case, it is the patent claims, not unclaimed embodiments, that "define the invention to which the patentee is entitled the right to exclude." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005).[2]  Utherverse has not—and cannot—point to any language in the asserted claims that relates to object-passing or multi-dimensional avatars, and these "embodiments" cannot therefore render the claims non-abstract because they are not part of those claims.  *See Berkheimer*, 881 F.3d at 1369 (explaining that any "improvements in the specification" must be "captured in the claims" for purposes of the eligibility analysis); *see also Chargepoint*, 920 F.3d at 769 ("Even a specification full of technical details about a physical invention may nonetheless conclude with claims that claim nothing more than the broad law or

---

[2]  While Utherverse appears to use the words "claims," "embodiments," and in some cases "claimed embodiments" interchangeably throughout its Opposition, "claims" and "embodiments" are separate and distinct parts of a patent, and only the patent claims define the scope of the legal right.

DEFENDANT'S REPLY IN SUPPORT OF THE
MOTION TO DISMISS (DKT. #34) – 7
(CASE NO. 2:21-CV-00799-RSM-TLF)

**DURIE TANGRI LLP**
217 Leidesdorff Street
San Francisco, CA 94111
Tel: (415) 362-6666

abstract idea underlying the claims . . . .").  And it makes no effort to identify, much less assert, any new claims featuring these embodiments.  Nor does it even attempt to explain whether and how these potential claims proffer technical solutions that elevate those claims beyond the fundamentally abstract ideas of "object passing" and "multi-dimensional avatars" it identifies.

Finally, Utherverse makes a conclusory argument that Epic oversimplifies the claimed inventions, ignores the Complaint, focuses too much on the specification, and inaccurately describes asserted claim 1 of the '157 patent.  *See* Opp'n at 14–15.  Utherverse does not specify *how* Epic's description is inaccurate or *what* technological solution Epic oversimplifies; to the contrary, Epic's motion describes the claimed invention in detail and accurately summarizes the representative claim.  *See* Mot. at 3–5, 15.  Utherverse's argument that Epic ignores the Complaint and focuses too much on the patent's specification is likewise baffling:  the Federal Circuit has made clear that the "analysis at *Alice* step one involves examining the patent claims in view of the plain claim language, *statements in the written description*, and the prosecution history, if relevant," and that "[t]he analysis *does not* require a review of the prior art or facts outside of the intrinsic record . . . ."  *CardioNet, LLC v. InfoBionic, Inc.*, 955 F.3d 1358, 1374 (Fed. Cir. 2020), *cert. denied*, 141 S. Ct. 1266 (2021) (emphases added).  Tellingly, Utherverse does not identify a single allegation in the Complaint that would be relevant to step one.

### 4.    Utherverse Fails to Identify a Patent-Eligible Inventive Concept

Utherverse argues in its Opposition that "[e]ven if the Court were to hold that the MMAP Patents are directed to an abstract idea, the claims recite inventive concepts sufficient to transform them into 'something more' thus warranting a finding of patent-eligibility . . . ."  Opp'n at 19.  Nowhere in its Opposition, however, does Utherverse actually identify *what that inventive concept is*.  Instead, Utherverse argues that the "Complaint adequately alleges that the claims contain inventive concepts" because it "specifically discusses aspects of the prosecution history and comments made by the Examiner finding the claimed inventions patentable."  *Id.* (citing Compl. ¶¶ 48–53).  The cited passages in its Complaint *also* fail to identify the purportedly inventive concept of any particular claim.  And the referenced comments made by

DEFENDANT'S REPLY IN SUPPORT OF THE
MOTION TO DISMISS (DKT. #34) – 8
(CASE NO. 2:21-CV-00799-RSM-TLF)

**DURIE TANGRI LLP**
217 Leidesdorff Street
San Francisco, CA 94111
Tel: (415) 362-6666

the patent examiner were in the context of non-obviousness over the prior art under § 103 and novelty under § 102. *See* Compl. ¶¶ 48–53; *see also* Dkt. ##1-12, 1-13, 1-14 (Compl. Exs. L–M). As the Federal Circuit has explained, "the 'novelty' of any element or step in a process, or even of the process itself, is of *no relevance* in determining whether the subject matter of a claim falls within the § 101 categories of possibly patentable subject matter." *Intellectual Ventures I*, 838 F.3d at 1315 (*quoting Diamond v. Diehr,* 450 U.S. 175, 188–89 (1981)) (alteration omitted); *see also See SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1163 (Fed. Cir. 2018) ("Nor is it enough for subject-matter eligibility [under § 101] that claimed techniques be novel and nonobvious in light of prior art, passing muster under 35 U.S.C. §§ 102 and 103.").

Utherverse also appears to suggest that the success of Epic's allegedly infringing concerts demonstrates that Utherverse's patents contain an inventive concept. *See* Opp'n at 7. The commercial success of Epic's product, however, is irrelevant as a matter of law to the section 101 inquiry. *WhitServe LLC v. Dropbox, Inc.*, 854 F. App'x 367, 373 (Fed. Cir. 2021) (explaining that objective indicia of nonobviousness, such as commercial success, "are relevant in a § 103 inquiry, but not in a § 101 inquiry").

Utherverse further argues that the asserted claims of the MMAP patents recite a patent-eligible inventive concept "because they claim *specific ways to improve VRUs*." Opp'n at 20.[3] Again, Utherverse refers to "specific" technological improvements but fails to state what those specific technological improvements are. In fact, the asserted claims of the MMAP patents claim the "result" of a common space viewable across parallel dimensions rather than any specific technical method of creating that common space. That is not an inventive concept.

Finally, while Utherverse concedes that "the claimed inventions may be implemented

---

[3] Utherverse also makes a conclusory argument that the MMAP patent claims "do not more broadly preempt a desired outcome." Opp'n at 20. The sheer breadth of the claims, which are not limited to any particular technological implementation, indicates otherwise. Regardless, the Federal Circuit has made it clear that while patentable subject matter doctrine is motivated in part by concerns about preempting use of abstract ideas, preemption itself is *not* the test. *Ariosa Diagnostics, Inc. v. Sequenom, Inc.*, 788 F.3d 1371, 1379 (Fed. Cir. 2015), *reh'g en banc denied*, 809 F.3 1282 (Fed. Cir. 2015).

DEFENDANT'S REPLY IN SUPPORT OF THE
MOTION TO DISMISS (DKT. #34) – 9
(CASE NO. 2:21-CV-00799-RSM-TLF)

**DURIE TANGRI LLP**
217 Leidesdorff Street
San Francisco, CA 94111
Tel: (415) 362-6666

using conventional software and hardware," Utherverse states—without any further

explanation—that "the specifically claimed embodiments nevertheless remain non-conventional

arrangements that are patent eligible."  Opp'n at 21.  Utherverse does not identify what the

purportedly unconventional arrangement is, or why the arrangement is unconventional and non-

abstract.  Such a conclusory statement, devoid of any factual support, is insufficient to create a

plausible issue of fact as to patent eligibility.  *See Sensormatic Elecs., LLC v. Wyze Labs, Inc.*,

No. 2020-2320, 2021 WL 2944838, at *3 (Fed. Cir. July 14, 2021) (affirming judgment on the

pleadings of patent ineligibility where the patent owner argued that the inventive concept was a

"specific, beneficial configuration" of claim elements but did not "offer a clear explanation" of

what the inventive configuration was).

### B. Utherverse Fails to Contradict Epic's Demonstration that the '605 Patent Claims are Directed to an Abstract Idea and Contain No Patent Eligible Inventive Concept

Utherverse devotes less than a page to a half-hearted defense of the '605 patent.  First,

Utherverse argues that Epic ignores the language of the '605 patent claims, but that is simply

wrong.  In the Motion, Epic discusses in detail claim 1 of the '605 patent—the claim *identified*

*by Utherverse* as an "example" of the claimed invention.  *See* Compl. ¶ 44; Mot. at 5–8, 20.  Epic

explained that claim 1 recites the basic steps, implemented on generic computer technology, of:

(1) "instantiating . . . a new instance of a scene"; (2) "retrieving a recorded experience file" that

was "generated by saving an initial scene state and saving subsequent changes" over time; (3)

"playing back the recorded experience file by rendering" objects of the initial scene state and

their changes over time, including one or more avatars, and (4) "automatically transporting" the

one or more avatars to a different new instance of the scene when a threshold has been reached.

*See* Mot. at 7; Dkt. #1-7 ('605 patent) claim 1.  These high-level, functional limitations provide

no technical detail on how the essential steps of the claimed method are to be performed, thus

claiming the *result* of having performed them, and not any particular means of doing so.  Mot. at

20.  Accordingly, claim 1 is directed to the abstract idea of replaying an interactive experience.

Perhaps recognizing the generic nature of claim 1, Utherverse faults Epic for failing to

DEFENDANT'S REPLY IN SUPPORT OF THE
MOTION TO DISMISS (DKT. #34) – 10
(CASE NO. 2:21-CV-00799-RSM-TLF)

**DURIE TANGRI LLP**
217 Leidesdorff Street
San Francisco, CA 94111
Tel: (415) 362-6666

1    specifically analyze claim 2.  Opp'n at 22.  But claim 2 adds only that "movement within the

2    new instance by the one or more avatars associated with at least one client device is limited by

3    objects of the recorded experience."  '605 patent claim 2.  Thus, claim 2 simply recites the idea

4    that avatars in the recorded experience have their movement constrained by three-dimensional

5    objects, like avatars in a typical virtual reality environment (and like people in the physical

6    world).  Because it provides no technical detail on how these constraints are to be achieved,

7    claim 2 is no less abstract than claim 1.

8         Utherverse finally argues that the '605 patent claims are patent eligible because the

9    Complaint "makes concrete and specific allegations that the claimed improvements to legacy

10   VRU systems were not routine, conventional, or well understood."  Opp'n at 22 (citing Compl.

11   ¶¶ 2, 25–29, 46–54).  Once again, though, Utherverse can't identify any such improvement in the

12   language of the claims.  Not a single paragraph that Utherverse cites refers to the '605 patent at

13   all, much less particular claim elements of the '605 patent.  While Utherverse subsequently cites

14   to paragraph 39 of the Complaint, paragraph 39 highlights passages of the '605 patent

15   specification describing ***unclaimed applications*** of the claimed invention, not aspects of the

16   claims embodying a transformative inventive concept.  *See* Compl. ¶ 39 (describing example

17   applications of the invention, including replaying "a concert, a wedding or a lecture").  Again, it

18   is the claims that define the invention and that determine whether it is patentable subject matter.

19   *Berkheimer*, 881 F.3d at 1368 (the relevant inquiry is whether a "particular *claim element* or

20   *combination of elements* is well-understood, route and conventional to a skilled artisan in the

21   relevant field . . . .") (emphasis added).

22        More fundamentally, even if Utherverse *could* plausibly allege that a particular claim

23   element or combination of elements was not well-understood, routine, or conventional, the

24   allegedly inventive claim element must add "sufficient substance to the underlying abstract idea"

25   to render the claim patent eligible.  *Yu v. Apple Inc.*, 1 F.4th 1040, 1045 (Fed. Cir. 2021).  Even

26   if a claim "recites novel subject matter, that fact is insufficient by itself to confer eligibility."  *Id.*

27   Here, Utherverse has not identified *any* inventive concept, much less a non-abstract one.

DEFENDANT'S REPLY IN SUPPORT OF THE
MOTION TO DISMISS (DKT. #34) – 11
(CASE NO. 2:21-CV-00799-RSM-TLF)

**DURIE TANGRI LLP**
217 Leidesdorff Street
San Francisco, CA 94111
Tel: (415) 362-6666

Utherverse has thus failed to make even a cursory showing that the '605 patent claims contain a patent-eligible inventive concept.

### C.   There are No Disputed Issues of Fact Relevant to the Question of Patent Eligibility

Utherverse's final argument is that there are actual or potential issues of fact that would preclude dismissal of its Complaint with prejudice.  Utherverse first argues that Epic improperly relied on factual materials outside of the pleadings to support its arguments that the MMAP patent claim elements were conventional or routine.  Opp'n at 21.  Not so.  As is clear from the context of the cited "factual material," *see* Mot. at 16 n.4, the purpose of Epic's footnote was to make clear that, although it was arguing that implementing the concept of parallel instancing in a "new" environment would not render it non-abstract, it was not conceding that virtual environments were new environments, *see id*.  Epic is not relying on the cited website for any of its arguments.  In any event, Utherverse now concedes that parallel instancing was performed in prior art virtual environments, *see* Opp'n at 4, and so the point is no longer "disputed."

Utherverse also argues that it should be permitted to amend the Complaint to "include additional allegations as to improvements in VRU systems, inventive concepts, and consideration of claimed subject matter individually and as a whole."  Opp'n at 23.  Utherverse has not identified a single factual allegation, however, that would make any difference as to the § 101 eligibility inquiry, which is ultimately a question of law.  *See TecSec, Inc. v. Adobe Inc.*, 978 F.3d 1278, 1286 (Fed. Cir. 2020).  On top of its already fleshed-out Complaint, Utherverse had its entire Opposition to point out any relevant factual disputes, identify any inventive concepts in the relevant claim elements, and describe the improvements claimed by the asserted patents.  It could not do so.  The intrinsic record and the undisputed facts thus "require a holding of ineligibility under the substantive standards of law," *SAP Am., Inc.*, 898 F.3d at 1166, and the question of eligibility should thus be resolved without leave to amend.

## III.   CONCLUSION

The Court should grant Epic's motion to dismiss with prejudice.

DEFENDANT'S REPLY IN SUPPORT OF THE
MOTION TO DISMISS (DKT. #34) – 12
(CASE NO. 2:21-CV-00799-RSM-TLF)

**DURIE TANGRI LLP**
217 Leidesdorff Street
San Francisco, CA 94111
Tel: (415) 362-6666

1

2   Dated:  September 10, 2021          By:    _s/ Mark A. Lemley_

3                                              Mark A. Lemley (*pro hac vice*)
                                               mlemley@durietangri.com
4                                              Timothy C. Saulsbury (*pro hac vice*)
                                               tsaulsbury@durietangri.com
5                                              Bethany D. Bengfort (*pro hac vice*)
                                               bbengfort@durietangri.com
6                                              Matthaeus Martino-Weinhardt (*pro hac vice*)
                                               mweinhardt@durietangri.com
7                                              DURIE TANGRI LLP
                                               217 Leidesdorff Street
8                                              San Francisco, CA 94111
                                               Telephone: (415) 362-6666
9                                              Facsimile: (415) 236-6300

10

11  Dated:  September 10, 2021          By:    _s/ Antoine M. McNamara_

12                                             Antoine M. McNamara (WSBA No. 41701)
                                               AMcNamara@perkinscoie.com
13                                             Christina J. McCullough (WSBA No. 47147)
                                               CMcCullough@perkinscoie.com
14                                             PERKINS COIE LLP
                                               1201 Third Avenue, Suite 4900
15                                             Seattle, WA 98101-3099
                                               Telephone: (206) 359-8000
16                                             Facsimile: (206) 359-9000

17

18                                             Attorneys for Defendant
                                               EPIC GAMES, INC.

19

20

21

22

23

24

25

26

27

DEFENDANT'S REPLY IN SUPPORT OF THE
MOTION TO DISMISS (DKT. #34) – 13
(CASE NO. 2:21-CV-00799-RSM-TLF)

**DURIE TANGRI LLP**
217 Leidesdorff Street
San Francisco, CA 94111
Tel: (415) 362-6666