1
2
3
4                        UNITED STATES DISTRICT COURT
                        WESTERN DISTRICT OF WASHINGTON
5                               AT TACOMA

6   UTHERVERSE GAMING LLC,

7                      Plaintiff,                Case No. 2:21-cv-799-RSM-TLF

8          v.                                   REPORT AND
                                                RECOMMENDATION
9   EPIC GAMES INC,
                                                Noted for November 19, 2021
10                     Defendant.

11          This matter comes before the Court on defendant's motion to dismiss. Dkt. 34,

12   Motion to Dismiss. The parties have briefed the issues presented in the motion and the

13   Court has held oral argument regarding the pending motion. Dkt. 38, Plaintiff's

14   Response; Dkt. 40, Defendant's Reply; Dkt. 46, Minute Entry for Oral Argument; Dkt.

15   47, Notice of Supplemental Authority.

16          The Court should DENY defendant's motions with regards to plaintiff's claims

17   based on the 071 Patent (First Cause of Action), the 954 Patent (Second Cause of

18   Action), the 157 Patent (Third Cause of Action), and the 605 Patent (Fourth Cause of

19   Action).

20
21
22
23
24
25

REPORT AND RECOMMENDATION - 1

1

## FACTUAL BACKGROUND

2    A.  Plaintiff's Asserted Patents

3        Plaintiff brings this action alleging that defendant has infringed four of plaintiff's

4    patents: United States Patent Nos. 8,276,071 ("071 Patent") (Dkt. 1-4, Exhibit D);

5    8,812,954 ("954 Patent") (Dkt. 1-5, Exhibit E); 9,123,157 ("157 Patent") (Dkt. 1-6, Exhibit

6    F); and 9,724,605 ("605 Patent") (Dkt. 1-7, Exhibit G) (collectively the "Asserted

7    Patents"). Dkt. 1, Complaint, at 5-6, 18-48. Plaintiff seeks judgment and an order for

8    damages because of Epic's alleged infringement of each of the Asserted Patents.

9    Plaintiff alleges two theories of infringement – either the defendant infringed the

10   Asserted Patents literally, or under the doctrine of equivalents, or under both theories.

11   Dkt. 1 at 48. Plaintiff seeks damages, costs, and expenses, an accounting and payment

12   of supplemental damages, prejudgment and post-judgment interest, and such other

13   relief to which it may be entitled. *Id.* The parties have demanded a jury trial. Dkt. 1 at 49;

14   Dkt. 43 (JSR) at 10.

15       **1.  071 Patent**

16       The 071 Patent is titled "Multi-Instance, Multi-User Animation Platforms" (MMAP)

17   and was issued on September 25, 2012. Dkt. 1-4 (Exhibit D). Plaintiff alleges that

18   defendants infringed "at least" Claim 8 of the 071 Patent. Dkt. 1 at 22-28, ¶¶ 67-86.

19   Claim 8 depends from Claim 1 and incorporates Claim 1. Dkt. 1-4 at 19-20.

20       **Claim 1** of the 071 Patent states:

21       A method for managing a multi-instance, multi-user animation process,
         comprising:
22
         modeling, using a computer, a plurality of parallel dimensions in a
23       computer memory, each of the plurality of parallel dimensions being a
         replica of a modeled three dimensional space configured for modeling
24

25

occupancy and movement of multiple avatars within limits that are
defined by at least one model of a three dimensional object;

assigning ones of a plurality of avatars within the computer memory so
that each of the plurality of avatars populates a respective one of the
parallel dimensions and each of the plurality of parallel dimensions is
populated by a unique subset of the plurality of avatars, so as to
prevent over-population of any one of the parallel dimensions by
avatars; and

animating ones of the plurality of avatars populating different ones of
the parallel dimensions in response to input from respective
corresponding ones of the plurality of clients to provide virtual-reality
data, using the computer, the virtual-reality data configured to enable
clients to output an animated display of a corresponding one of the
parallel dimensions and avatars populated therein.

Dkt. 1-4 at 19-20.

**Claim 8** of the 071 Patent states:

The method of claim 1, further comprising modeling a common space in
the computer memory configured in relation to the plurality of parallel
dimensions so that at least one object located inside the common
space is visible from view-points located inside each of the plurality of
parallel dimensions.

Dkt. 1-4 at 20.

## 2. 954 Patent

The 954 Patent is titled "Multi-Instance, Multi-User Virtual Reality Spaces" and
was issued on August 19, 2014. Dkt. 1-5 (Exhibit E). Plaintiff alleges that defendant
infringed "at least" Claim 4 of the 954 Patent. Dkt. 1 at 28-33, ¶¶ 87-105. Claim 4
depends from Claim 1 and incorporates Claim 1. Dkt. 1-5 at 19-20.

**Claim 1** of the 954 Patent states:

A method, comprising:

> modeling in a computer memory, multiple parallel instances of a multi-dimensional virtual reality space, each of the plurality of parallel instances replicating the multi-dimensional virtual reality space;
>
> assigning ones of a plurality of modeled multi-dimensional avatars within the computer memory so that each of the plurality of avatars populates a respective one of the parallel instances and each of the plurality of parallel instances is populated by a unique subset of the plurality of avatars, wherein the assigning limits a total number of the plurality of avatars in each of the unique subsets; and
>
> generating an additional parallel instance of the multi-dimensional virtual reality space, based on detecting an increase in a number of plurality of client devices providing input to the modeling for controlling ones of the plurality of modeled multi-dimensional avatars.

Dkt. 1-5 at 19-20.

**Claim 4** of the 954 Patent states:

> The method of claim 1, further comprising modeling a common space in the computer memory configured in relation to the plurality of parallel instances so that at least one object located inside the common space is visible from view-points located inside each of the plurality of parallel instances.

Dkt. 1-5 at 20.

### 3. 157 Patent

The 157 Patent is titled "Multi-Instance, Multi-User Virtual Reality Spaces" and was issued on September 1, 2015. Dkt. 1-6 (Exhibit F). Plaintiff alleges that defendant infringed "at least" Claim 1 of the 157 Patent. Dkt. 1 at 34-37, ¶¶106-121.

**Claim 1** of the 157 Patent states:

> A method comprising:
>
> modeling, in a computer memory, multiple parallel instances of a multi-dimensional virtual reality space, each of the plurality of parallel instances replicating the multi-dimensional virtual reality space;
>
> assigning ones of a plurality of modeled multi-dimensional avatars within the computer memory so that each of the plurality of avatars

populates a respective one of the parallel instances and each of the plurality of parallel instances is populated by a unique subset of the plurality of avatars, wherein the assigning limits a total number of the plurality of avatars in each of the unique subsets; and

modeling a common space in the computer memory configured in relation to the plurality of parallel instances so that at least one object located inside the common space is visible from viewpoints located inside each of the plurality of parallel instances.

Dkt. 1-6 at 19.

### 4. 605 Patent

The 605 Patent is Titled "Method, System and Apparatus of Recording and Playing Back an Experience in a Virtual Worlds System" and was issued on August 8, 2017. Dkt. 1-7 (Exhibit G). Plaintiff alleges that defendant infringed "at least" Claim 2 of the 605 Patent. Dkt. 1 at 37-48, ¶¶ 122-143. Claim 2 depends from Claim 1 and incorporates Claim 1.

**Claim 1** of the 605 Patent states:

A method of playing back a recorded experience in a virtual worlds system, comprising:

instantiating, using one or more processors of a server, a new instance of a scene, the new instance being defined by data stored in memory, at least one client device displaying and participating in the new instance;

retrieving a recorded experience file from the memory, the recorded experience file having been generated by saving an initial scene state and saving subsequent changes and respective times during a time period of the recorded experience;

playing back the recorded experience file by rendering for display by the at least one client device, objects of the initial scene state in the new instance, including one or more avatars and rendering updates to the initial scene state based on the subsequent changes over the time period; and

1

2

automatically transporting the one or more avatars to a different new
instance of the scene, upon occurrence of a threshold event, wherein
the threshold event comprises when a maximum capacity of avatars
has been reached in the new instance of the scene.

3

Dkt. 1-7 at 16:  ¶¶ 37-58.

4

5

**Claim 2** of the 605 Patent states:

6

The method of claim 1, wherein movement within the new instance by
the one or more avatars associated with at least one client device is
limited by objects of the recorded experience.

7

Dkt. 1-7 at 16:  ¶¶ 59-62.

8

9

B.  Plaintiff's Complaint

10

Plaintiff contends that the Asserted Patents overcome the limitations of

11

technology by allowing computer-generated virtual worlds to support larger numbers of

12

participants. Dkt. 1: at 3, ¶ 6; at 6, ¶ 23. The complaint explains that in virtual reality,

13

players are represented by three-dimensional "avatars" that players use to interact

14

within the virtual environment. *Id.* at 6-7, ¶ 24. Plaintiff states that a drawback within a

15

virtual environment is that space is limited by environmental constraints and virtual

16

environments may have less space available than there are people who wish to occupy

17

the space. *Id.* at 7, ¶ 25. Another stated drawback is that the environments are

18

constrained by technological constraints such as limited computer processing speeds

19

and network bandwidth, "and other factors also limit the number of participants and the

20

richness of environment.". *Id.* at ¶ 26.

21

These constraints limit the number of avatars, objects, textures, and other

22

features that can be used and generated in a virtual environment. *Id.* Therefore, plaintiff

23

alleges, it was desirable to "provide access for greater numbers of avatars within a VRU

24

[virtual reality universe] space while minimizing undesired experiences for VRU

25

REPORT AND RECOMMENDATION - 6

1  participants, and providing new, more varied and interesting opportunities and

2  experiences for users within the VRU Space." Dkt. 1 at 8, ¶ 28.

3      Plaintiff alleges that the Asserted Patents "are technical solutions to existing

4  technical problems that traditionally prevented achievement of critical mass at large-

5  scale virtual events." Dkt. 1 at 8, ¶ 29. The complaint alleges that the 071 Patent, 954

6  Patent and 157 Patent, provide "a method, system and apparatus for dynamically

7  establishing and managing multiple instances of a space within a [Virtual Reality

8  Universe]." *Id.* at 9, ¶ 31. The complaint asserts the creation of multiple parallel

9  dimensions overcomes previous technological limitations by allowing vast numbers of

10 concurrent participants to share the same experience without overcrowding. *Id* at 9-11,

11 ¶¶ 31-37. "Each time a parallel dimension reaches capacity, a new parallel dimension

12 may be generated." *Id.* at 9, ¶ 32.

13     Plaintiff contends that the 605 Patent makes it possible to record a virtual

14 environment, on multi-instance, multi-user animation platforms, so that users may log

15 out of the environment and upon their return resume the activity from the point where

16 the users logged off. *Id.* at 11-12, ¶ 39. Further, plaintiff states that this system is unlike

17 a video recording -- because it allows users to navigate the recorded experience and

18 interact with other users who are also participating in the playback of the recorded

19 experience. *Id.* at 12,  ¶ 40.

20     The complaint alleges that the 605 Patent "allow[s] for massively populated

21 virtual worlds in which participants can share the same experience without

22 overcrowding." Dkt. 1 at 11, ¶ 39. Plaintiff asserts "The claims of the '605 Patent do not

23 merely recite the receipt, analysis, or transmission of data." *Id.* at 14, ¶ 44. An example

24

25

REPORT AND RECOMMENDATION - 7

is provided in Figure 2, showing virtual worlds data, with different users and different copies of a scene. Dkt. 1 at 13, ¶ 41. New instances of a scene may "be created based on time intervals, avatar user requests, availability of objects within each instance, and so on." *Id.* Plaintiff points to another example, Figure 3, where a service provider or other system component receives and provides data, and renders for display certain objects and updates to the initial scene state ("based on the subsequent changes over the time period") so that the user "by controlling an avatar via a user interface at a client device, may navigate through the recorded experience and interact with other avatars also participating in the playback of the recorded experience." Dkt. 1 at 14, ¶¶ 42, 43.

The complaint explains that the 605 Patent "overcomes … a problem arising in the realm of online virtual worlds, namely, facilitating the shared experiences of a pre-recorded experience in an interactive virtual world with multiple parallel dimensions or instances. *Id.* at 15, ¶ 45. Plaintiff adds that the '605 Patent presents a solution "by allowing instances to share the experiences by way of recording and playing back events in the instance". *Id.*

Plaintiff alleges that defendant is a video game and software developer that published Fortnite, an online video game. Dkt. 1 at 3, ¶ 5. Plaintiff maintains that "[a]fter finding initial success as a 'battle royale' competitive last-man-standing game, *Fortnite* expanded into social events and concerts, including by introducing battle-free spaces with the launch of a "party royale" mode in which participants can 'attend concerts, movies and more.'" *Id.*

Plaintiff contends that defendants have infringed the Asserted Patents because Fortnite "encompasses a plurality of three-dimensional parallel dimensions that are

1   replica of a common virtual world with multiple avatars." Dkt. 1 at 19, ¶ 57. Further,

2   plaintiff asserts that defendant has infringed the Asserted Patents by utilizing the

3   claimed inventions while hosting large scale events for millions of participants, such as

4   concerts that featured avatars of musical performers Marshmello,(February 2019) and

5   Travis Scott (April 2020). Dkt. 1 at 19-21, ¶¶ 58-66. Plaintiff also asserts that defendant

6   has infringed the Asserted Patents by utilizing the claimed inventions while hosting a

7   trailer for a Star Wars movie (December 2019). Dkt. 1 at 20, ¶¶ 61-62.

8                                   DISCUSSION

9       A.  Legal standards for motion to dismiss under 12(b)(6) and 35 U.S.C. § 101,

10            regarding patent eligibility

11          Pursuant to 35 U.S.C. § 101, "[w]hoever invents or discovers any new and useful

12   process, machine, manufacture, or composition of matter, or any new and useful

13   improvement thereof, may obtain a patent therefore, subject to the conditions and

14   requirements of this title." Laws of nature, natural phenomena and abstract ideas are

15   not patentable. *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014). Laws

16   of nature, natural phenomena and abstract ideas are the foundation of scientific work,

17   thus granting patent eligibility to these concepts would contradict the objective of patent

18   law by inhibiting further innovation. *Id.*  Yet an invention is not rendered unpatentable

19   simply because it involves an abstract idea. *Id.*

20          When reviewing a motion under Rule 12(b)(6), the Court must accept as true "all

21   well-pleaded allegations of fact in the complaint and construe them in the light most

22   favorable to the non-moving party." *Cedar Point Nursery v. Shiroma*, 923 F.3d 524, 530

23

24

25

1    (9th Cir. 2019) (internal quotations omitted). The court is not required to accept legal

2    conclusions couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

3         To survive a 12(b)(6) motion, a complaint must contain sufficient factual matter to

4    "state a claim to relief that is plausible on its face." *Ashcroft*, 556 U.S. at 678 (quoting

5    *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). A claim is plausible on its face if

6    the pleaded facts allow the court to draw the reasonable inference that the defendant is

7    liable for the misconduct alleged. *Ashcroft,* 556 U.S. at 678. When evaluating an Fed. R.

8    Civ. P. 12(b)(6) motion, the court may only consider the complaint, materials

9    incorporated into the complaint by reference, and matters of which the court may take

10   judicial notice. *Cedar Point Nursery*, 923 F.3d at 530; *Khoja v. Orexigen Therapeutics,*

11   *Inc.,* 899 F.3d 988, 998-99, 1002-03 (9th Cir. 2018).[1] The Court does not resolve factual

12   disputes at the pleading stage. *Khoja,* at 1003.

13        A Rule 12(b)(6) motion is an appropriate vehicle for considering the question of

14   patentability. *Yu v. Apple Inc.*, 1 F.4th 1040, 1042 (Fed. Cir. 2021). The public interest

15   that is served by "eliminating defective patents … counsels strongly in favor of resolving

16   subject matter eligibility at the threshold of litigation." *Ultramercial, Inc. v. Hulu, LLC*, 772

17   F.3d 709, 719 (Fed. Cir. 2014) (Mayer, C. J. concurring).

18        "Patent eligibility under 35 U.S.C. § 101 is a question of law, based on underlying

19   factual findings … [i]t may only be resolved in a Rule 12(b)(6) motion 'when there are no

20   factual allegations that, taken as true, prevent resolving the eligibility as a matter of

21

22   ---

     [1] Plaintiff objects to the defendant's citation of third-party literature. Dkt. 38, Plaintiff's Response, at 26.
23   The Court should refuse to consider any material that does not fall within the complaint, materials
     attached to the complaint by reference, and matters of which the court may take judicial notice. It appears
24   that the defendant's citation to third-party literature (Dkt. 34 at 21, n.4) does not fall into any of these
     categories, and therefore should not be considered.
25

REPORT AND RECOMMENDATION - 10

1   law.'" *Uniloc USA, Inc. v. LG Elecs. USA, Inc.*, 957 F.3d 1303, 1306 (Fed. Cir. 2020)

2   (internal citation omitted) (quoting *Aatrix Software, Inc. v. Green Shades Software, Inc.*,

3   882 F.3d 1121, 1125 (Fed. Cir. 2018)).

4        In order to determine whether an invention is patentable, courts apply a two-part

5   test. *Alice Corp.*, 573 U.S. at 217. First, the Court must determine whether the claims at

6   issue are directed to a patent-ineligible concept. *Yu,* 1 F.4th at 1043. If so, the Court

7   must determine whether the claim includes an inventive concept sufficient to "transform

8   the nature of the claim into a patent-eligible application." *Id.* For purpose of deciding a

9   motion to dismiss, the Court may assume, without deciding, that any disputed claim

10  terms should be construed in the manner proposed by, or most favorable to the

11  patentee. *Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.,* 776 F.3d

12  1343, 1349 (Fed. Cir. 2014).

13       1.  Step One – Abstract Idea

14       When deciding step one, the Court must consider "what the patent asserts to be

15  the focus of the claimed advance over the prior art," focusing on the language of the

16  asserted claim in light of the specification. *Yu,* 1 F.4th at 1043. The mere existence of a

17  patent-ineligible concept underlying a claim is insufficient to render an invention a

18  patent-ineligible concept. *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 765

19  (Fed. Cir. 2019). Rather, the Court must weigh the entirety of the claims to determine

20  whether the character of the claims as a whole is directed to excluded subject matter. *Id*

21       For cases involving software innovations, the Court considers "whether the

22  claims focus on specific asserted improvements in computer capabilities or instead on a

23  process or system that qualifies as an abstract idea for which computers are invoked

24

25

merely as a tool." *Uniloc*, 957 F.3d at 1306. A claim is an abstract idea when it is

directed to a result or effect that is itself an abstract idea or merely invokes generic

processes rather than specifying a means or method that improves the relevant

technology. *Yu*, 1 F.4th at 1043. Additionally, if the improvements alleged amount to

benefits flowing from performing an abstract idea within a well-known structure, the

invention is still directed at unpatentable subject matter. *BSG Tech LLC v. Buyseasons,*

*Inc.*, 899 F.3d 1281, 1288 (Fed. Cir. 2018).

Applying an abstract idea on a generic computer does not transform the abstract

idea into patentable subject matter. *BASCOM Global Internet Servs. v. AT&T Mobility*

*LLC*, 827 F.3d 1341, 1348 (Fed. Cir. 2016). The Federal Circuit has suggested that to

be patent eligible, computer-based patents should describe how the invention solves

the problem in a manner encompassing more than the principle in the abstract.

*Dropbox, Inc. v. Synnchronoss Techs., Inc.*, 815 Fed. Appx. 529, 533 (Fed. Cir. 2020)

("The patent has to describe *how* to solve the problem in a manner that encompasses

something more than the 'principle in the abstract" … [a]nd, that solution has to be

evident from the claims.") (emphasis in original)(internal citations omitted); *Affinity Labs*

*of Tex. v. DIRECTV, LLC*, 838 F.3d 1253, 1262 (Fed. Cir. 2016) (holding an invention

abstract at step one because the patent was not directed to the implementation of a

solution to a technical problem nor to an improvement in computer or network

functionality); *Ancora Techs. V. HTC Am., Inc.*, 908 F.3d 1343, 1348-49 (Fed. Cir. 2018)

(holding an invention was not directed at an abstract idea where the patent defined a

specific technique to solve a specific computer problem that departs from earlier

approaches and specifically identified how the invention improved the system

functionality).

Longstanding commercial practices and methods of organizing human activity

are abstract concepts. *BSG Tech LLC,* 899 F.3d at 1285; *Intellectual Ventures I LLC v.*

*Symantec Corp.*, 838 F.3d 1307, 1313 (Fed. Cir. 2016); *Planet Bingo, LLC v. VKGS*

*LLC*, 576 Fed. Appx. 1005, 1007-08 (Fed. Cir. 2014) (holding that a system and method

for managing a bingo game that allows users to play across multiple sessions was a

method of organizing human activity and therefore directed at an abstract concept).

2.   Step Two – Inventive Concept

At step two of the *Alice* test, the Court must determine whether the claim that is

directed at an abstract idea includes an "inventive concept" that transforms the nature of

the claim to a patent-eligible application. *Yu*, 1 F.4th at 1043. Any material questions of

fact on the subject of "inventive concepts" precludes a dispositive ruling on patentability.

*Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018) ("Whether a claim recites

patent eligible subject matter is a question of law which may contain disputes over

underlying facts.), *Data Engine Techs. LLC v. Google LLC*, 906 F.3d 999, 1007 (Fed.

Cir. 2018) ("Patent eligibility can be determined on the pleadings under Rule 12(c) when

there are no factual allegations that, when taken as true, prevent resolving the eligibility

question as a matter of law."). Additionally, the party challenging the validity of a patent

bears the burden of proving the pertinent disputed facts by clear and convincing

evidence. *Berkheimer*, 881 F.3d at 1368.

1    An "inventive concept" is an element or combination of elements that sufficiently

2    ensure that the patent in practice amounts to significantly more than a patent on the

3    abstract concept itself. *Alice*, 573 U.S. at 217-18.

4    In assessing whether the patent includes an "inventive concept" the Court must

5    consider whether the elements of the claims go beyond "well-understood, routine, or

6    conventional" activities known in the industry at the time of the invention. *Aatrix*

7    *Software, Inc.*, 882 F.3d at 1126-1130; *TLI Commc'ns LLC*, 823 F.3d at 613 (holding

8    that for computer-implemented inventions, any concrete, tangible components in the

9    claim must involve more than the performance of well-understood, routine, or

10    conventional activities previously known to the industry). But, computer components

11    themselves may supply an inventive concept when they amount to more than "generic

12    computer components." *Customedia Techs., LLC v. Dish Network Corp.*, 951 F.3d

13    1359, 1366 (Fed. Cir. 2020). Additionally, an invention can have inventive concept by

14    establishing non-conventional and non-generic arrangements of known or conventional

15    pieces of computing components. *BASCOM Global Internet Servs. v. AT&T Mobility*

16    *LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016).

17    With regard to computer-based patents, "not all claims purporting to address

18    internet-centric challenges are eligible for patents." *DDR Holdings, LLC v. Hotels.com*,

19    *L.P.*. 773 F.3d 1245, 1258 (Fed. Cir. 2014). To have an inventive concept, the patent

20    must do more than generally claim use of a computer or internet to achieve a desired

21    result, the patent must specify *how* computers are used to achieve a desired result.

22    *Amdocs Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288, 1312 (Fed. Cir. 2016). Similarly,

23

24

25

patents purporting to address a technological challenge must specify *how* the invention overcomes the alleged challenge. *Id.*

## B. Analysis of 071 Patent, 954 Patent, and 157 Patent (The"Multi-Instance, Multi-User Animation Platforms" [MMAP] Patents)

Regarding **step one**, defendant contends the plaintiff's claims do not provide any technical detail about how the MMAP Patents would implement any specific means or method of accomplishing the virtual reality space that accommodates a larger number of avatars. Dkt. 34, Motion to Dismiss, at 20. Defendant alleges the MMAP Patents are therefore directed at an abstract idea, and do not meet the first step of the two-part criteria explained in *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014).

Plaintiff alleges that the 071 Patent, 954 Patent and the 157 Patent are part of a family of patents that share substantially the same specification. Dkt. 1 at ¶ 19. Plaintiff further alleges that the 157 Patent is a continuation of the 954 Patent, and that the 954 Patent is a continuation of the 071 Patent. *Id.* The complaint cites to the 071 Patent as being representative of this set of patents. *See*, Dkt. 1.

These patents acknowledge that the creation of three-dimensional virtual worlds is well known in the art. Dkt. 1-4 at 11.The patents also state that it is known that multiple people may participate in the environment through three dimensional representations known as avatars. *Id.* The patents allege that due to technological limitations, previous virtual environment limited the number of simultaneous participants that can interact with the environment. *Id.*

Plaintiff contends that these patents overcome the limitations by allowing computer-generated virtual worlds to support large numbers of participants. Dkt. 1 at 6,

1     ¶ 23. Specifically, plaintiff claims that these patents solve for the problem of limited

2     space within a virtual environment by providing "a method, system and apparatus for

3     dramatically establishing and managing multiple instances of a space within a VRU."

4     Dkt. 1-4 at 12.

5         The inventions purportedly permit such instances "to be utilized in a manner that

6     does little or nothing to impair the ability of the VRU to emulate those portions of the real

7     world environment that may be crucial to a positive experiences within a VRU." Dkt. 1-4

8     at 12. The 071 Patent instructs that each time an occupancy capacity in an instance is

9     met, a duplicate parallel instance is generated for the excess avatars and as avatar

10    populations decline the parallel instances are collapsed into fewer instances. *Id.* The

11    071 Patent inventions also allow the instances to interact with or influence each other by

12    defining certain portions of the instances as visible to or interactable with other

13    instances. *Id.*

14        The 071 Patent, 954 Patent and the 157 Patent all assert as their claims

15    methods by which a computer is used to create multiple duplicate instances within a

16    virtual reality environment, assign avatars to one of the instances and model a common

17    space between the multiple instances. Dkt. 1-4 at 19; Dkt. 1-5 at 19; Dkt. 1-6 at 19.

18        The 071 Patent, 954 Patent and 157 Patent are directed at solving technological

19    limitations within previous virtual reality environments that limited the number of people

20    who could participate in the virtual environment. These patents do not claim the creation

21    of three-dimensional virtual environments, the process of allowing multiple-users to

22    access an environment or avatars that represent users within the environment. Instead,

23    the focus of the alleged advancement is the process of creating multiple instances of a

24

25

REPORT AND RECOMMENDATION - 16

1 | virtual environment so that multiple avatars may interact with the environments in a way
2 | that avoids overcrowding.

3 |      Unlike the situation in *Ancora Techs. V. HTC Am., Inc.*, 908 F.3d 1343, 1348-49
4 | (Fed. Cir. 2018), where the Court held that an invention was not directed at an abstract
5 | idea -- because the patent defined a specific technique to solve a specific computer
6 | problem that was a departure from earlier methodology and specifically identified
7 | improvements in system functionality -- in this case, the plaintiff has not shown how
8 | their methodology is a departure from earlier methods, nor have they shown how
9 | system functionality is specifically being improved.

10 |      The focus of these inventions amounts to an abstract concept – the organization
11 | of data and organization of human activity. Plaintiff alleges "a method, system and
12 | apparatus for dramatically establishing and managing multiple instances of a space
13 | within a VRU." Dkt. 1 at 9, ¶ 31. The inventions do not specify a method for improving
14 | the relevant technology, rather the improvements alleged amount to benefits flowing
15 | from explaining an abstract idea and using computer technology to implement that idea
16 | within multi-layered three-dimensional virtual environments.

17 |      Applying the legal standard of step one, the Court should find that the 071
18 | Patent, 954 Patent, and 157 Patent, are directed at an abstract concept.

19 |      At **step two** the Court must consider prior art to determine what concepts were
20 | well-understood, routine, or conventional activity known in the industry at the time of the
21 | invention.

22 |      The defendant contends the MMAP Patents fail to provide any detail about *how*
23 | the creation of multiple parallel dimensions, with vast numbers of participants in
24 |
25 |

common experiences, would be achieved. Dkt. 34 at 23. Plaintiff's complaint explains

that prior art disclosed the process of "assigning one of a plurality of avatars … so that

each of the plurality of avatars populates a respective one of the parallel dimensions

and each of the plurality of parallel dimensions is populated by a unique subset of the

plurality of avatars so as to prevent over-population of any one of the parallel

dimensions by avatars." Dkt. 1 at ¶ 49 (citing to U.S. Patent No. 6,767,287). Plaintiff

argues the Asserted Patents are distinguishable because the prior art failed to teach the

use of parallel instances in a virtual reality universe. *Id.*

Plaintiff's complaint also states that prior art disclosed: 1) enhancing users

experience in a multiplayer game by limiting the number of avatars present at one time

to avoid overcrowding (U.S. Patent No. 6,476,830); 2) developing a virtual world having

a predetermined radius formed around a pilot avatar and one or more avatar and one or

more objects wherein the system limits the number of objects in the world (U.S. Patent

No. 0,216,853); 3) a system for controlling communications with proximate avatars in a

virtual world by using user selected criteria and limiting the number of results to avoid

overpopulation (U.S. Patent No. 8,026,918). Dkt 1 at ¶¶ 49-52. Plaintiff asserts that the

157 Patent and the 954 Patent are different than these prior arts because the prior art

failed to teach a method for creating multiple parallel instances within the virtual

environment with a common space in relation to all parallel instances. Dkt. 1 at ¶ 53.

Based in plaintiff's complaint and the claim language of the 071 Patent, 954

Patent and 157 Patent, plaintiff's alleged inventive concept is the method of creating

multiple parallel instances within a multi-dimensional virtual reality space with a

common space so that at least one object within the common space is visible from view-

1    points located inside each of the parallel instances. These patents state that this

2    method allows for avatars to be assigned amongst the parallel instances in a manner

3    that allows avatars to concurrently share a common experience without overcrowding.

4         Based on the foregoing, and considering the Patents in the light most favorable

5    to the non-moving party, plaintiff is plausibly alleging that these patents contain an

6    inventive concept because they establish non-conventional and non-generic

7    arrangements of known computer components and virtual-reality environment

8    components.

9         Plaintiff also contends that these methods provide a benefit and yield certain

10   technological advantages over prior art. Any material questions of fact on the subject of

11   "inventive concepts" precludes a dispositive ruling on patentability. *Berkheimer v. HP*

12   *Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018). The Court does not resolve factual disputes

13   at the pleading stage. *Khoja v. Orexigen Therapeutics, Inc.,* 899 F.3d 988, 998-99,

14   1002-03 (9th Cir. 2018).

15        The Court should find that plaintiff's complaint sufficiently alleges that the MMAP

16   Patents -- the 071 Patent, 954 Patent and 157 Patent, contain an inventive concept for

17   purposes of surviving a Rule 12(b)(6) motion to dismiss. Therefore, the Court should

18   deny defendant's motion to dismiss with regards to these patents.

19        **C.   <u>Analysis of 605 Patent</u>**

20        Regarding **step one**, the defendant contends that the 605 Patent is simply an

21   "abstract idea of collecting, displaying, and manipulating data." Dkt. 34 at 25. Defendant

22   argues the recording and classifying of scenes and scripts would be an abstract idea,

23   because simply replaying a recorded experience without identifying specific techniques

24

25

REPORT AND RECOMMENDATION - 19

1   or system improvements, amounts to an abstract idea. *Id.* at 26. Plaintiff alleges that the

2   605 Patent is directed generally to playing back an experience in a virtual worlds

3   system. Dkt. 1 at ¶ 20. Plaintiff alleges that the 605 Patent allows for massively

4   populated virtual worlds in which participants can come back to view a shared

5   experience again, experiencing it as observer or avatar, with other observers and

6   avatars, with newly-recorded objects and scenes, each participant having their own

7   unique angle and perspective, without over-crowding. Dkt. 1 at ¶ 39, Dkt. 1-7, Exhibit G,

8   605 Patent.

9       The 605 Patent acknowledges that computer generated three-dimensional virtual

10  reality universes are well known. Dkt. 1-7 at 12. The 605 Patent also states that users

11  may participate in these environments and interact with other users by using avatars. *Id.*

12  Further, the 605 Patent explains that it is possible "to record a state of a VRU

13  environment so that users may log out of the VRU and upon their return, resume an

14  activity at the point where they left off." *Id.*

15      The 605 Patent claims a method of using computer data to create a new instance

16  or scene, retrieving a recorded experience from the memory, and saving subsequent

17  changes and respective times during a time period of the recorded experience. Dkt. 1-7

18  at 16: : ¶¶ 37-47. The 605 Patent also claims a method of playing back the recorded

19  device by displaying objects of the initial scene in the new instance and rendering

20  updates to the initial scene based on subsequent changes over time. *Id.* at 10:48-53.

21  The final part of claim one claims a method of automatically transporting an avatar to an

22  instance within the recorded scene. *Id.* at 16: : ¶¶ 54-58.

23

24

25

1    Claim 2 of the 605 Patent is dependent on claim 1. Dkt. 1-7 at 16: ¶¶ 59-62. The

2    605 Patent, at Claim 2 states "[t]he method of claim 1, wherein movement within the

3    new instance by the one or more avatars associated with at least one client device is

4    limited by objects of the recorded experiences." *Id.*

5    The claims asserted by the 605 Patent are directed at an abstract concept. First,

6    the claims in the 605 Patent are directed at the concept of using generic computer

7    functions to record, transmit and playback data, which is an abstract idea. *See*, *Cellspin*

8    *Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1315 (Fed. Cir. 2019) ("we have consistently

9    held that … claims reciting the collection, transfer, and publishing of data are directed to

10   an abstract idea."), *TLI Communs. LLC v. AV Auto., L.L.C.*, 823 F.3d 607, 610-12 (Fed.

11   Cir. 2016) (concluding that claims reciting "recording … transmitting… and storing"

12   digital images were directed at an abstract idea).

13   Additionally, the alleged improvements from the 605 Patent are the ability to

14   transport one or more avatars to the recorded instance. However, the claims do not

15   explain how this is done or how this improves the relevant technology. Rather, this

16   alleged improvement states a benefit flowing from applying the abstract concepts

17   withing a well-known computer-generated environment. The 605 Patent claims an

18   abstract idea which invokes a computer merely as a tool.

19   The Court should find that the 605 Patent is directed at an abstract idea.

20   As to the **step two** inquiry, the defendant contends there is no inventive concept,

21   because the playback of an interactive recorded experience is nothing more than the

22   same abstract idea discussed above at step one. Dkt. 34 at 26. The defendant also

23   argues that transporting avatars automatically into another parallel space when a

24

25

1    capacity limit has occurred in the initial scene is not explained with any technical detail –

2    therefore plaintiff fails step two because plaintiff does not show how the allegedly new

3    methodology achieves the result, or how there is any system improvement. *Id.* at 26-27.

4         According to plaintiff, the 605 Patent claims using computer memory to record an

5    instance, record any subsequent changes to the instance, retrieve the recording and

6    playing back the recording. These abstract ideas implemented on a computer are

7    insufficient, standing alone, to establish an inventive concept. *Alice*, 573 U.S. at 223.

8         Next, plaintiff asserts the 605 Patent claims as an inventive concept

9    "automatically transporting the one or more avatars to a different new instance of the

10   scene, upon occurrence of a threshold event, wherein the threshold event comprises

11   when a maximum capacity of avatars has been reached in the new instance". Dkt. 1-7

12   at 16: ¶¶ 54-58 (Claim 1). And the 605 Patent also describes "movement within the new

13   instance by the one or more avatars associated with at least one client device is limited

14   by objects of the recorded experience." Dkt. 1-7 at 16: ¶¶ 59-62 (Claim 2).

15        The 605 Patent explains that "the method of playing back a recorded experience

16   described herein allows a user to navigate through the recorded experience rather than

17   simply watch a video playback. In addition, the method. . .allows for users to interact

18   with other users who are also participating in the playback of the recorded experience."

19   Dkt. 1-7 at 16:  ¶¶ 15-21. In addition, the 605 Patent elaborates that "the recorded

20   experience is not limited by a point of view from which the recording was captured.

21   Because the user is able to navigate through the recorded experience by changing their

22   position and orientation within the recorded experience, they may view objects from any

23

24

25

1    angle that they choose. As such playback of the same recorded experience may be

2    different for all users." *Id.* at 16: ¶¶ 23-29; Dkt. 1 at 12.

3        Methodologies are described in the 605 Patent that include digitally creating new

4    experiences, new scenes, and new scripts, being layered in various ways, allowing for

5    collisions – and creating objects having different boundaries -- and all are being joined

6    with the recorded experiences. Dkt. 1-7 at 14-15. The complaint alleges that in the

7    Travis Scott virtual concert example, the avatars were not able to perform certain

8    activities with respect to certain objects, such as not being able to run, jump, or dance,

9    during the underwater portion of the VRU. Dkt. 1 at 47-48, ¶¶ 138-140.

10       An invention can have inventive concept by establishing non-conventional and

11   non-generic arrangements of known or conventional pieces of computing components.

12   *CosmoKey Solutions GmbH & Co.. KG v. Duo Security LLC,* __ F.4th __, , No. 2020-

13   2043, 2021 WL 4515279 at *5-*6 (D.C. Cir. October 4, 2021); *BASCOM Global Internet*

14   *Servs. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016). Any material

15   questions of fact on the subject of "inventive concepts" precludes a dispositive ruling on

16   patentability. *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018). The Court

17   does not resolve factual disputes at the pleading stage. *Khoja v. Orexigen Therapeutics,*

18   *Inc.,* 899 F.3d 988, 998-99, 1002-03 (9th Cir. 2018).

19       Based on the foregoing, and considering the 605 Patent in the light most

20   favorable to the non-moving party, plaintiff is plausibly alleging the 605 Patent contains

21   an inventive concept because they establish non-conventional and non-generic

22   arrangements of known computer components and virtual-reality environment

23   components.

24

25

The Court should hold that Claims 1 and 2 of the 605 Patent[2] are plausibly directed at patent eligible subject matter, under step two of the criteria explained in *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014).

<u>CONCLUSION</u>

Based on the foregoing discussion, the Court should DENY defendant's motions with regards to plaintiff's claims based on the 071 Patent (First Cause of Action), the 954 Patent (Second Cause of Action), the 157 Patent (Third Cause of Action), and the 605 Patent (Fourth Cause of Action).

The parties have **fourteen (14) days** from service of this Report and Recommendation to file written objections thereto. 28 U.S.C. § 636(b)(1); FRCP 6; FRCP 72(b)(2). Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985). If objections are filed, the parties shall have **fourteen (14) days** from the service of the objections to file a response. FRCP 72(b)(2). Accommodating this time limitation, this matter shall be set for consideration on  November 19, 2021, as noted in the caption.

Dated this 2nd day of November, 2021.


Theresa L. Fricke
United States Magistrate Judge

---

[2] The two claims of the 605 Patent that plaintiff alleges defendant infringed. Dkt. 1 at ¶¶ 122-143.

REPORT AND RECOMMENDATION - 24