# EXHIBIT A

THE HONORABLE RICARDO S. MARTINEZ

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WASHINGTON

AT SEATTLE

| | |
|---|---|
| UTHERVERSE GAMING LLC,<br><br>                  Plaintiff,<br><br>     v.<br><br>EPIC GAMES, INC.,<br><br>                  Defendant. | Case No. 2:21-cv-00799-RSM-TLF<br><br>**REQUEST FOR INTERNATIONAL JUDICIAL ASSISTANCE (LETTER ROGATORY)** |

1    TO THE SUPREME COURT OF BRITISH COLUMBIA:

2        The United States District Court for the Western District of Washington presents its compliments

3    to the Supreme Court of British Columbia and requests judicial assistance to compel the attendance of

4    witnesses at an oral deposition in British Columbia and the production of documents to be used at trial

5    this Court in the above-captioned matter.  This Court requests the assistance described herein as

6    necessary in the interests of justice and directs this request to the appropriate Judicial Authority in the

7    Province of British Columbia, Canada.

8    **I.      SUMMARY OF ACTION**

9        Plaintiff Utherverse Gaming LLC ("Utherverse Gaming") filed this action against Epic Games,

10   Inc. ("Epic") on June 11, 2021, alleging infringement of United States Patent Nos. 8,276,071, 8,812,954,

11   9,123,157, and 9,724,605 (collectively, the "Asserted Patents").  Utherverse Gaming alleges that Epic

12   infringes the Asserted Patents by holding certain live virtual special events in the online video game

13   *Fortnite*.  Epic denies that it infringes the Asserted Patents and alleges that the Asserted Patents are

14   invalid in view of various prior art and because they claim subject matter not eligible for patenting under

15   U.S. patent law.  Utherverse Gaming denies that the patents are invalid.

16       The Asserted Patents were issued between September 25, 2012 and August 8, 2017.  Each of the

17   patents was initially assigned to Utherverse Digital Inc. ("Utherverse Digital"), a British Columbia

18   corporation headquartered in Vancouver.  Utherverse Digital describes itself as "a social network of

19   interconnected virtual worlds" that offers "opportunities for people to meet, play and work together

20   regardless of their physical location."[1]

21       The named inventors of the '071, '954, and '157 patents are Brian Shuster and Gary Shuster.  The

22   named inventors of the '605 patent are Brian Shuster and Aaron Burch.  According to disclosures

23   provided under Federal Rule of Civil Procedure 26 in this action, Messrs. Shuster and Mr. Burch reside

24   in British Columbia.  Further, according to Utherverse Gaming's interrogatory responses, while Brian

25   Shuster is currently a member of Utherverse Gaming's Board of Managers, neither Gary Shuster nor Mr.

26   Burch currently hold or have ever held a position as Utherverse Gaming officers, directors, or managing

27

28
_____
[1] https://www.utherverse.net/index.html

REQUEST FOR INTERNATIONAL JUDICIAL
ASSISTANCE (LETTER ROGATORY)- 1
(CASE NO. 2:21-CV-00799-RSM-TLF)

**Durie Tangri LLP**, 217 Leidesdorff Street,
San Francisco, CA, Tel: 415-362-6666

1    agents.

2          Utherverse Gaming is a U.S. corporation organized under the laws of Delaware.  According to its

3    certificate of formation, attached hereto as Exhibit A-1, Utherverse Gaming was formed on October 22,

4    2020.  According to information filed with the U.S. Patent and Trademark Office, the Asserted Patents

5    were assigned by Utherverse Digital to Utherverse Gaming on December 21, 2020.

6    **II.    ASSISTANCE REQUIRED**

7          This request seeks assistance in obtaining documents from Brian Shuster, and in obtaining

8    documents and testimony from Gary Shuster, Aaron Burch, and Utherverse Digital.  This Court has

9    jurisdiction under the Federal Rules of Civil Procedure to order discovery, including depositions of

10   witnesses upon oral examination and production of documents from any person regarding any matter

11   which is relevant to the subject matter of the pending action.  This Court requests that the proper judicial

12   authorities of British Columbia authorize legal process to compel these individuals to produce documents

13   and/or provide deposition testimony as set forth below for potential use at trial in this litigation.  The

14   requests for specific documents and testimony are posed subject to any valid claim of privilege that these

15   individuals may assert.

16         This Court further requests that the proper judicial authorities of British Columbia cause the

17   depositions to be recorded in writing by a qualified court reporter, to cause the recordings of the

18   depositions to be authenticated, to allow the depositions to be videotaped, and to cause the authenticated

19   records to be delivered to Utherverse Gaming and Epic's counsel.  It is hereby requested that Epic's

20   representatives be granted the option to have the testimony videotaped by a qualified videographer.  The

21   original transcripts of the testimony, and if the testimony is videotaped, the videotapes, should be

22   returned to Epic's representatives for retention and production at the time of trial.

23         **A.    Relevance of Requested Materials and Testimony**

24         Messrs. Shuster and Burch are the only three named inventors on the Asserted Patents, who have

25   been identified on Utherverse Gaming's Initial Disclosures as individuals who have information relevant

26   to Utherverse Gaming's claims and defenses.  Epic contends that as the sole inventors, Messrs. Shuster

27   and Burch have key documents and information concerning the conception, reduction to practice, and

28   scope of the claimed inventions, as well as the prosecution of the Asserted Patents, and that their

testimony and documents are likely to be central to trial in this action.

Utherverse Digital was the technology company for which the allegedly inventive work underlying the Asserted Patents was performed.  Epic contends that Utherverse Digital therefore is likewise likely to have key documents and information concerning the conception, reduction to practice, and scope of the claimed inventions, the prosecution of the Asserted Patents as well as information concerning any systems or products embodying the Asserted Patents that were made, marketed, or attempted to be made or marketed by Utherverse Digital (which may be relevant to Epic's invalidity defenses at trial, as well Utherverse Gaming's damages demand).  Epic contends that Utherverse Digital is also likely to have information about the licensing of and/or attempts to license the Asserted Patents and related patents, the circumstances of the transfer or sale of the Asserted Patents to Utherverse Gaming, comparable licenses relevant to the damages analysis in this case, as well as any valuation of the Asserted Patents or inventions claimed therein that may have been performed in the course of prosecution, licensing, and sale or transfer of the patents.  As employees and/or officers of Utherverse Digital at or around the time of invention, Messrs. Shuster and Mr. Burch may also have some of these documents and information in their individual capacities.  Epic contends that these documents and testimony are important to establishing its claims and defenses at trial.

**B.      Inability to Obtain Requested Materials and Testimony Without Judicial Assistance**

Under Federal Rule of Civil Procedure 30, because Mr. Brian Shuster is a managing agent of Utherverse Gaming, Utherverse Gaming must produce him for deposition on notice and without a subpoena.  (Accordingly, this Request does not seek Mr. Brian Shuster's deposition.)  However, though he is represented by Utherverse Gaming's counsel, he is not required to collect and produce documents in his possession, custody or control in his personal capacity in response to Epic's requests absent compulsory process, and Utherverse Gaming's counsel has indicated he will not do so.  Mr. Brian Shuster being a Canadian resident, he is not readily subject to this Court's compulsory process for obtaining relevant documents.

Because Mr. Gary Shuster and Mr. Burch are not officers, directors, or managing agents, the Federal Rules of Civil Procedure do not provide a mechanism for Epic to obtain their depositions without a subpoena, and Utherverse Gaming's counsel (who also represent Mr. Shuster and Mr. Burch) have

indicated that they will not appear voluntarily.  As with Mr. Brian Shuster, Mr. Gary Shuster and Mr. Burch are likewise not required to collect and produce documents in their personal possession, custody, or control absent compulsory process, and Utherverse Gaming's counsel has indicated they will not do so.  Being Canadian residents, Mr. Gary Shuster and Mr. Burch are not readily subject to this Court's compulsory process for obtaining relevant documents and deposition testimony.

As a third party to this action, Utherverse Digital need not produce documents or a witness to testify on its behalf in this litigation without a subpoena, and Utherverse Gaming's counsel, who represents Utherverse Digital, has indicated that Utherverse Digital will not do so.  As a Canadian corporation with no formal U.S. presence, Utherverse Digital is not subject to this Court's compulsory process for obtaining relevant documents and deposition testimony.

### C. Protection of Confidential Information

This Court has entered a Protective Order in this Action, which is attached as Exhibit A-2 to this Request.  The Protective Order enables those producing documents or providing testimony in this litigation, including third parties, to designate that material confidential and thereby obligate the receiving parties to comply with its terms against disclosure.

### D. Reciprocity

Pursuant to 28 U.S.C. § 1782, this Court stands ready to extend similar assistance to the Courts of the Province of British Columbia in like cases.

### E. Reimbursement of Costs

Epic, through its counsel at Durie Tangri LLP, are willing to provide reimbursement of reasonable costs incurred in executing this Letter Rogatory, if necessary and requested by the judicial authorities of Canada.

## REQUESTS FOR DISCOVERY

This request calls for the production of documents in the possession or control of each witness as set forth below.  This request also calls for each witness to provide deposition testimony concerning the topics set forth below.  In the case of Utherverse Digital, this request calls for Utherverse Digital to designate a knowledgeable witness to provide deposition testimony on behalf of the company concerning the topics set forth below.

### F.      DEFINITIONS

The term "Asserted Patent" means any of United States Patent Nos. 8,276,071, 8,812,954, 9,123,157, and 9,724,605.

The term "Related Patent" means any patent that claims priority to an Asserted Patent or to any patent or application to which an Asserted Patent also claims priority, or any foreign counterpart or equivalent of an Asserted Patent.

### G.      WITNESSES, DOCUMENTS, AND TOPICS

**1.      Brian Mark Shuster**
**2701-565 Smithe Street**
**Vancouver, BC V6B 0E4**

Documents are requested from Mr. Shuster as follows:

a.      All documents concerning the conception, reduction to practice, development, or testing of the alleged inventions described or claimed in the Asserted Patents.

b.      All documents that evidence failings in the art preceding the conception and reduction to practice of the alleged inventions described or claimed in the Asserted Patents.

c.      All documents concerning the assignment of any right, title, or interest in any of the Asserted Patents or Related Patents.

d.      All documents concerning the sale of the Asserted Patents to Utherverse Gaming LLC.

e.      All communications with Utherverse Gaming LLC concerning any actual, potential, contemplated, or proposed transaction or involving or relating to the Asserted Patents or Related Patents.

f.      All documents concerning any licenses to the Asserted Patents or Related Patents or attempts to license the Asserted Patents or Related Patents.

g.      All documents concerning any efforts to enforce the Asserted Patents or Related patents, including via demand letter or litigation.

h.      All documents concerning the prosecution of the patent applications from which the Asserted Patents issued or to which they claim priority.

i.      All documents relating to any assertion by any third party other than the U.S. Patent and Trademark Office that an Asserted Patent or Related Patent is invalid, unenforceable, and/or not infringed.

j.      All documents relating to any "objective indicia of non-obviousness" applying to the Asserted Patents, such as industry praise for the claimed invention, failure of others to create the claimed invention, or commercial success of the claimed invention.

k.      All documents concerning any efforts or plans to monetize the Asserted Patents or Related Patents.

l.      All documents concerning attempts by Mr. Shuster or Utherverse Digital, Inc. to build or implement a product or system embodying or practicing any of the inventions claimed in the Asserted Patents.

m.      Documents sufficient to show the structure, function, and operation of any product or system or contemplated product or system described in request [l].

n.      Documents sufficient to show the commercial success or lack thereof of any product or system described in request [l].

o.      The results of any search for potential prior art to the Asserted Patents or Related Patents.

p.      All documents concerning any valuation (formal or informal) of the Asserted Patents or Related Patents, alone or as part of a broader portfolio or broader transaction.

q.      Documents sufficient to show Mr. Shuster's financial interest in this litigation, if any.

r.      Documents sufficient to determine the amounts of money received by Mr. Shuster as a result of any arrangement with Utherverse Gaming LLC concerning the Asserted Patents or Related Patents.

**2.      Gary Stephen Shuster**
**2705-1201 Marinaside Crescent**
**Vancouver, BC V6Z 2V2**

Documents are requested from Mr. Shuster as follows:

a.      All documents concerning the conception, reduction to practice, development, or testing of the alleged inventions described or claimed in the Asserted Patents.

b.      All documents evidencing failings in the art preceding the conception and reduction to practice of the alleged inventions described or claimed in the Asserted Patents.

c.      All documents concerning the assignment of any right, title, or interest in any of the Asserted Patents or Related Patents.

d.      All documents concerning the sale of the Asserted Patents to Utherverse Gaming LLC.

e.      All communications with Utherverse Gaming LLC concerning any actual, potential, contemplated, or proposed transaction or involving or relating to the Asserted Patents or Related Patents.

f.      All documents concerning any licenses to the Asserted Patents or Related Patents or attempts to license the Asserted Patents or Related Patents.

g.      All documents concerning any efforts to enforce the Asserted Patents or Related patents, including via demand letter or litigation.

h.      All documents concerning the prosecution of the patent applications from which the Asserted Patents issued or to which they claim priority.

i.      All documents relating to any assertion by any third party other than the U.S. Patent and Trademark Office that an Asserted Patent or Related Patent is invalid, unenforceable, and/or not infringed.

j.      All documents relating to any "objective indicia of non-obviousness" applying to the Asserted Patents, such as industry praise for the claimed invention, failure of others to create the claimed invention, or commercial success of the claimed invention.

k.      All documents concerning any efforts or plans to monetize the Asserted Patents or Related Patents.

l.      All documents concerning attempts by Mr. Shuster or Utherverse Digital, Inc. to build or implement a product or system embodying or practicing any of the inventions claimed in the Asserted Patents.

m.      Documents sufficient to show the structure, function, and operation of any product or system or contemplated product or system described in request [l].

n.      Documents sufficient to show the commercial success or lack thereof of any product or system described in request [l].

o.      The results of any search for potential prior art to the Asserted Patents or Related Patents.

p.      All documents concerning any valuation (formal or informal) of the Asserted Patents or Related Patents, alone or as part of a broader portfolio or broader transaction.

q.      Documents sufficient to show Mr. Shuster's financial interest in this litigation, if any.

r.      Documents sufficient to determine the amounts of money received by Mr. Shuster as a result of any arrangement with Utherverse Gaming LLC concerning the Asserted Patents or Related Patents.

Testimony is requested from Mr. Shuster on the following topics:

a.      The conception, reduction to practice, development, or testing of the alleged inventions described or claimed in the Asserted Patents, and Mr. Shuster's role in or contribution to the above.

b.      Failings in the art preceding the conception and reduction to practice of the alleged inventions described or claimed in the Asserted Patents.

c.      The negotiation, circumstances, and terms of any assignment of any right, title, or interest in any of the Asserted Patents or Related Patents.

d.      Communications with Utherverse Gaming LLC concerning any actual, potential, contemplated, or proposed transaction or involving or relating to the Asserted Patents or Related Patents.

e.      The negotiation, circumstances, and terms of any licenses to the Asserted Patents or Related Patents.

f.      Any attempts to license the Asserted Patents or Related Patents.

g.      Any efforts to enforce the Asserted Patents or Related patents, including via

demand letter or litigation.

        h.    Any efforts or plans to monetize the Asserted Patents or Related Patents.

        i.    The prosecution of the patent applications from which the Asserted Patents issued or to which they claim priority.

        j.    Any assertion by any third party other than the U.S. Patent and Trademark Office that an Asserted Patent or Related Patent is invalid, unenforceable, and/or not infringed.

        k.    Any "objective indicia of non-obviousness" applying to the Asserted Patents, such as industry praise for the claimed invention, failure of others to create the claimed invention, or commercial success of the claimed invention.

        l.    The nature of Utherverse Digital, Inc.'s business, Mr. Shuster's role or involvement in that business, an identification of any products and systems Utherverse Digital, Inc. has made or marketed, and its success or lack thereof.

        m.    Attempts by Mr. Shuster or Utherverse Digital, Inc. to build or implement a product or system embodying or practicing any of the inventions claimed in the asserted patents.

        n.    The structure, function, and operation of any product or system or contemplated product or system described in request [l].

        o.    The commercial success or lack thereof of any product or system described in request [l].

        p.    Any search for potential prior art to the Asserted Patents or Related Patents and the results of that search.

        q.    Any valuation (formal or informal) of the Asserted Patents or Related Patents, alone as or part of a broader portfolio or broader transaction.

        r.    Mr. Shuster's financial interest in this litigation, if any.

        s.    The amounts of money received by Mr. Shuster as a result of any arrangement with Utherverse Gaming LLC concerning the Asserted Patents or Related Patents.

        **3.**    **Aaron Burch**
                        **4041 Derby Court**
                        **Port Coquitlam, BC V3B6M3**

Documents are requested from Mr. Burch as follows:

a.     All documents concerning the conception, reduction to practice, development, or testing of the alleged inventions described or claimed in the Asserted Patents.

b.     All documents evidencing failings in the art preceding the conception and reduction to practice of the alleged inventions described or claimed in the Asserted Patents.

c.     All documents concerning the assignment of any right, title, or interest in any of the Asserted Patents or Related Patents.

d.     All documents concerning the sale of the Asserted Patents to Utherverse Gaming LLC.

e.     All communications with Utherverse Gaming LLC concerning any actual, potential, contemplated, or proposed transaction or involving or relating to the Asserted Patents or Related Patents.

f.     All documents concerning any licenses to the Asserted Patents or Related Patents or attempts to license the Asserted Patents or Related Patents.

g.     All documents concerning any efforts to enforce the Asserted Patents or Related patents, including via demand letter or litigation.

h.     All documents concerning the prosecution of the patent applications from which the Asserted Patents issued or to which they claim priority.

i.     All documents relating to any assertion by any third party other than the U.S. Patent and Trademark Office that an Asserted Patent or Related Patent is invalid, unenforceable, and/or not infringed.

j.     All documents relating to any "objective indicia of non-obviousness" applying to the Asserted Patents, such as industry praise for the claimed invention, failure of others to create the claimed invention, or commercial success of the claimed invention.

k.     All documents concerning any efforts or plans to monetize the Asserted Patents or Related Patents.

l.     All documents concerning attempts by Mr. Burch or Utherverse Digital, Inc. to build or implement a product or system embodying or practicing any of the inventions claimed in the

Asserted Patents.

m.    Documents sufficient to show the structure, function, and operation of any product or system or contemplated product or system described in request [l].

n.    Documents sufficient to show the commercial success or lack thereof of any product or system described in request [l].

o.    The results of any search for potential prior art to the Asserted Patents or Related Patents.

p.    All documents concerning any valuation (formal or informal) of the Asserted Patents or Related Patents, alone or as part of a broader portfolio or broader transaction.

q.    Documents sufficient to show Mr. Burch's financial interest in this litigation, if any.

r.    Documents sufficient to determine the amounts of money received by Mr. Burch as a result of any arrangement with Utherverse Gaming LLC concerning the Asserted Patents or Related Patents.

Testimony is requested from Mr. Burch on the following topics:

a.    The conception, reduction to practice, development, or testing of the alleged inventions described or claimed in the Asserted Patents, and Mr. Burch's role in or contribution to the above.

b.    Failings in the art preceding the conception and reduction to practice of the alleged inventions described or claimed in the Asserted Patents.

c.    The negotiation, circumstances, and terms of any assignment of any right, title, or interest in any of the Asserted Patents or Related Patents.

d.    Communications with Utherverse Gaming LLC concerning any actual, potential, contemplated, or proposed transaction or involving or relating to the Asserted Patents or Related Patents.

e.    The negotiation, circumstances, and terms of any licenses to the Asserted Patents or Related Patents.

f.    Any attempts to license the Asserted Patents or Related Patents.

g.      Any efforts to enforce the Asserted Patents or Related patents, including via demand letter or litigation.

h.      Any efforts or plans to monetize the Asserted Patents or Related Patents.

i.      The prosecution of the patent applications from which the Asserted Patents issued or to which they claim priority.

j.      Any assertion by any third party other than the U.S. Patent and Trademark Office that an Asserted Patent or Related Patent is invalid, unenforceable, and/or not infringed.

k.      Any "objective indicia of non-obviousness" applying to the Asserted Patents, such as industry praise for the claimed invention, failure of others to create the claimed invention, or commercial success of the claimed invention.

l.      The nature of Utherverse Digital, Inc.'s business, Mr. Burch's role or involvement in that business, an identification of any products and systems Utherverse Digital, Inc. has made or marketed, and its success or lack thereof.

m.      Attempts by Mr. Burch or Utherverse Digital, Inc. to build or implement a product or system embodying or practicing any of the inventions claimed in the asserted patents.

n.      The structure, function, and operation of any product or system or contemplated product or system described in request [l].

o.      The commercial success or lack thereof of any product or system described in request [l].

p.      Any search for potential prior art to the Asserted Patents or Related Patents and the results of that search.

q.      Any valuation (formal or informal) of the Asserted Patents or Related Patents, alone or as part of a broader portfolio or broader transaction.

r.      Mr. Burch's financial interest in this litigation, if any.

s.      The amounts of money received by Mr. Burch as a result of any arrangement with Utherverse Gaming LLC concerning the Asserted Patents or Related Patents.

        **4.      Utherverse Digital, Inc.**
                **1040 Hamilton St., Suite 201**
                **Vancouver, BC V6B 2R9**

REQUEST FOR INTERNATIONAL JUDICIAL
ASSISTANCE (LETTER ROGATORY) - 12
(CASE NO. 2:21-CV-00799-RSM-TLF)

**Durie Tangri LLP**, 217 Leidesdorff Street,
San Francisco, CA, Tel: 415-362-6666

Documents are requested from Utherverse Digital, Inc. as follows:

a.      All documents concerning the conception, reduction to practice, development, or testing of the alleged inventions described or claimed in the Asserted Patents.

b.      All documents evidencing failings in the art preceding the conception and reduction to practice of the alleged inventions described or claimed in the Asserted Patents.

c.      All documents concerning the assignment of any right, title, or interest in any of the Asserted Patents or Related Patents.

d.      All documents concerning the sale of the Asserted Patents to Utherverse Gaming LLC.

e.      All communications with Utherverse Gaming LLC concerning any actual, potential, contemplated, or proposed transaction or involving or relating to the Asserted Patents or Related Patents.

f.      All documents concerning any licenses to the Asserted Patents or Related Patents or attempts to license the Asserted Patents or Related Patents.

g.      Any patent license agreement to which Utherverse Digital, Inc. is a party.

h.      All documents concerning any efforts to enforce the Asserted Patents or Related patents, including via licensing demand or litigation.

i.      All documents concerning the prosecution of the patent applications from which the Asserted Patents issued or to which they claim priority.

j.      All documents relating to any assertion by any third party other than the U.S. Patent and Trademark Office that an Asserted Patent or Related Patent is invalid, unenforceable, and/or not infringed.

k.      All documents relating to any "objective indicia of non-obviousness" applying to the Asserted Patents, such as industry praise for the claimed invention, failure of others to create the claimed invention, or commercial success of the claimed invention.

l.      All documents concerning any efforts or plans to monetize the Asserted Patents or Related Patents.

m.      All documents concerning any attempts by Utherverse Digital, Inc. to build or

1  implement a product or system embodying or practicing any of the inventions claimed in the Asserted
2  Patents.

3        n.      Documents sufficient to identify any products to which Utherverse Digital Inc.
4  holds a license under the Asserted Patents.

5        o.      Documents sufficient to show the structure, function, and operation of any product
6  or system or contemplated product or system described in requests [m] and [n].

7        p.      Documents sufficient to show the commercial success or lack thereof of any
8  product or system described in requests [m] and [n].

9        q.      The results of any search for potential prior art to the Asserted Patents or Related
10  Patents.

11        r.      All documents concerning any valuation (formal or informal) of the Asserted
12  Patents or Related Patents, alone or as part of a broader portfolio or broader transaction.

13        s.      Documents sufficient to show quarterly revenues, costs, profits, and losses
14  associated with any product made or marketed by Utherverse Digital, Inc. involving one or more
15  massively multiplayer online digital worlds.

16        t.      Documents sufficient to show Utherverse Digital, Inc.'s financial interest in this
17  litigation, if any.

18        u.      Documents sufficient to determine the amounts of money received by Utherverse
19  Digital, Inc. as a result of any arrangement with Utherverse Gaming LLC concerning the Asserted
20  Patents or Related Patents.

21        Testimony is requested from Utherverse Digital, Inc. concerning its corporate knowledge, if any,
22  on the following topics:

23        a.      The conception, reduction to practice, development, or testing of the alleged
24  inventions described or claimed in the Asserted Patents.

25        b.      Failings in the art preceding the conception and reduction to practice of the alleged
26  inventions described or claimed in the Asserted Patents.

27        c.      The negotiation, circumstances, and terms of any assignment of any right, title, or
28

1  interest in any of the Asserted Patents or Related Patents.

2       d.     Communications with Utherverse Gaming LLC concerning any actual, potential,

3  contemplated, or proposed transaction or involving or relating to the Asserted Patents or Related Patents.

4       e.     The negotiation, circumstances, and terms of any licenses to the Asserted Patents

5  or Related Patents.

6       f.     The negotiation, circumstances, and terms of any patent license agreement to

7  which Utherverse Digital, Inc. is a party.

8       g.     Any attempts to license the Asserted Patents or Related Patents.

9       h.     Any efforts to enforce the Asserted Patents or Related patents, including via

10  demand letter or litigation.

11       i.     Any efforts or plans to monetize the Asserted Patents or Related Patents.

12       j.     The prosecution of the patent applications from which the Asserted Patents issued

13  or to which they claim priority.

14       k.     Any assertion by any third party other than the U.S. Patent and Trademark Office

15  that an Asserted Patent or Related Patent is invalid, unenforceable, and/or not infringed.

16       l.     Any "objective indicia of non-obviousness" applying to the Asserted Patents, such

17  as industry praise for the claimed invention, failure of others to create the claimed invention, or

18  commercial success of the claimed invention.

19       m.     The nature of Utherverse Digital, Inc.'s business, an identification of any products

20  and systems Utherverse Digital, Inc. has made or marketed, and its success or lack thereof.

21       n.     Attempts by Utherverse Digital, Inc. to build, or implement a product or system

22  embodying or practicing any of the inventions claimed in the Asserted Patents.

23       o.     An identification of any products to which Utherverse Digital, Inc. holds a license

24  under the Asserted Patents.

25       p.     The structure, function, and operation of any product or system or contemplated

26  product or system described in requests [n] and [o].

27       q.     The commercial success or lack thereof of any product or system described in

28  requests [n] and [o].

REQUEST FOR INTERNATIONAL JUDICIAL
ASSISTANCE (LETTER ROGATORY) - 15
(CASE NO. 2:21-CV-00799-RSM-TLF)

**Durie Tangri LLP**, 217 Leidesdorff Street,
San Francisco, CA, Tel: 415-362-6666

1         r.      Any search for potential prior art to the Asserted Patents or Related Patents and the

2 results of that search.

3         s.      Any valuation (formal or informal) of the Asserted Patents or Related Patents,

4 alone or as part of a broader portfolio or broader transaction.

5         t.      The meaning and correct interpretation of any financial documents produced by

6 Utherverse Digital, Inc. in response to the above document requests.

7         u.      The amounts of money received by Utherverse Digital, Inc. as a result of any

8 arrangement with Utherverse Gaming LLC concerning the Asserted Patents or Related Patents.

9         v.      The extent to which Utherverse Digital, Inc. competes with Epic Games, the

10 market in which Utherverse Digital, Inc. competes with Epic Games, and the products with respect to

11 which Utherverse Digital, Inc. competes with Epic Games.

12         w.      Utherverse Digital, Inc.'s financial interest in this litigation, if any.

Dated this ___ day of _____, 2022

_____

HONORABLE RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE

# EXHIBIT A-1

State of Delaware
Secretary of State
Division of Corporations
Delivered 04:26 PM 10/22/2020
FILED 04:26 PM 10/22/2020
SR 20207988800 - File Number 3953061

# CERTIFICATE OF FORMATION

## OF

## UTHERVERSE GAMING LLC

…………………………………………………………..

*Pursuant to Section § 18-201 of the Limited Liability Company Act*

*of the State of Delaware*

…………………………………………………………..

**FIRST:**   The name of the limited liability company is **Utherverse Gaming LLC.**

**SECOND:**   The address of the registered office of the limited liability company in the State of Delaware is Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801.  The name of its registered agent at such address is The Corporation Trust Company.

**IN WITNESS WHEREOF**, the undersigned has executed this Certificate of Formation this 22 day of October 2020.

By: _____

Name:   William A. Covino
Title:   Authorized Person

EXHIBIT A-2

THE HONORABLE THERESA L. FRICKE

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WASHINGTON

AT SEATTLE

| | |
|---|---|
| UTHERVERSE GAMING, LLC,<br><br>Plaintiff,<br><br>v.<br><br>EPIC GAMES, INC.,<br><br>Defendant. | CASE NO. 2:21-cv-00799<br><br>**STIPULATED<br>PROTECTIVE ORDER**<br><br>**NOTE ON MOTION<br>CALENDAR: MARCH 15, 2022** |

1.  <u>PURPOSES AND LIMITATIONS</u>

Discovery in this action is likely to involve production of confidential, proprietary, or private information for which special protection may be warranted. Accordingly, the parties hereby stipulate to and petition the court to enter the following Stipulated Protective Order. The parties acknowledge that this agreement is consistent with LCR 26(c). It does not confer blanket protection on all disclosures or responses to discovery, the protection it affords from public disclosure and use extends only to the limited information or items that are entitled to confidential treatment under the applicable legal principles, and it does not presumptively entitle parties to file confidential information under seal.

**Durie Tangri LLP**, 217 Leidesdorff Street,
San Francisco, CA, Tel: 415-362-6666

2. "CONFIDENTIAL" MATERIAL

"CONFIDENTIAL" material shall include documents and tangible things produced or otherwise exchanged that contain or reflect information that is confidential, proprietary and/or commercially sensitive, in particular:

    i.    information about the producing party's product development, design, or specifications for products or services made available to third parties;

    ii.    information the producing party is obligated by law or by contract to maintain in confidence;

    iii.    accounting/financial information, books, and records that are not made public;

    iv.    sales information about commercial products that are not made public, including information on pricing and sales volumes;

    v.    customer information and data;

    vi.    business and marketing plans, strategies, analyses, or surveys;

    vii.    information on producing party's competitors and competitive environment;

    viii.    contracts and agreements or any draft, negotiations, or summaries thereof;

    ix.    information that is subject to the privacy interest of any individual (e.g., medical records, financial information, etc.).

3. "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" MATERIAL

"HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" material is CONFIDENTIAL material that includes extremely commercially sensitive information, disclosure of which to another party or non-party would create a substantial risk of serious harm that could not be avoided by less restrictive means. Such information shall include but is not limited to trade secrets; confidential research and development; any non-public financial, technical, marketing, pricing and revenue information; and any other commercially sensitive trade secret information.

4. "HIGHLY CONFIDENTIAL – SOURCE CODE" MATERIAL

"HIGHLY CONFIDENTIAL – SOURCE CODE" material is CONFIDENTIAL material that includes confidential source code and associated comments, revision histories, and other accompanying documentation contained within source code files, disclosure of which to another

party or non-party would create a substantial risk of serious harm that could not be avoided by less restrictive means. The restrictions herein on confidential source code do not apply to publicly-available source code (e.g., code available as open source code).

5.    SCOPE

The protections conferred by this agreement cover not only confidential material (as defined above), but also (1) any information copied or extracted from confidential material; (2) all copies, excerpts, summaries, or compilations of confidential material; and (3) any testimony, conversations, or presentations by parties or their counsel that might reveal confidential material.

However, the protections conferred by this agreement do not cover information that is in the public domain or becomes part of the public domain through trial or otherwise.

6.    ACCESS TO AND USE OF CONFIDENTIAL MATERIAL

6.1    Basic Principles.  A receiving party may use confidential material that is disclosed or produced by another party or by a non-party in connection with this case only for prosecuting, defending, or attempting to settle this litigation.  CONFIDENTIAL material may be disclosed only to the categories of persons and under the conditions described in this agreement. CONFIDENTIAL material must be stored and maintained by a receiving party at a location and in a secure manner that ensures that access is limited to the persons authorized under this agreement.

6.2    Disclosure of "CONFIDENTIAL" Information or Items.  Unless otherwise ordered by the court or permitted in writing by the designating party, a receiving party may disclose any confidential material only to:

(a)    the receiving party's counsel of record in this action, as well as employees of counsel to whom it is reasonably necessary to disclose the information for this litigation;

(b)    the officers, directors, and employees (including in house counsel) of the receiving party to whom disclosure is reasonably necessary for this litigation;

(c)    experts, consultants, and mock jurors to whom disclosure is reasonably necessary for this litigation and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

STIPULATED PROTECTIVE ORDER - 3
(CASE NO. 2:21-CV-00799-RSM-TLF)

**Durie Tangri LLP**, 217 Leidesdorff Street,
San Francisco, CA, Tel: 415-362-6666

(d)     the court, court personnel, and court reporters and their staff;

(e)     copy or imaging services or e-discovery vendors retained by counsel to assist in the duplication of confidential material, provided that counsel for the party retaining the copy or imaging service instructs the service not to disclose any confidential material to third parties and to immediately return all originals and copies of any confidential material;

(f)     during their depositions, witnesses in the action to whom disclosure is reasonably necessary and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A), unless otherwise agreed by the designating party or ordered by the court.  Pages of transcribed deposition testimony or exhibits to depositions that reveal confidential material must be separately bound by the court reporter and may not be disclosed to anyone except as permitted under this agreement;

(g)     the author or recipient of a document containing the information or a custodian or other person who otherwise possessed or knew the information.

6.3     <u>Disclosure of "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" Materials</u>.  Unless otherwise ordered by the court or permitted in writing by the designating party, a receiving party may disclose any HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY materials only to:

(a)     the receiving party's counsel of record in this action (but not employees, officers, or affiliates of a Party), as well as employees of counsel to whom it is reasonably necessary to disclose the information for this litigation;

(b)     experts, consultants, and mock jurors to whom disclosure is reasonably necessary for this litigation and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

(c)     the court, court personnel, and court reporters and their staff;

(d)     copy or imaging services or e-discovery vendors retained by counsel to assist in the duplication of confidential material, provided that counsel for the party retaining the copy or imaging service instructs the service not to disclose any confidential material to third parties and to immediately return all originals and copies of any confidential material;

(e)     the author or recipient of a document containing the information or a custodian or other person who otherwise possessed or knew the information.

6.4     Disclosure of "HIGHLY CONFIDENTIAL – SOURCE CODE ONLY" Materials. Unless otherwise ordered by the court or permitted in writing by the designating party, a receiving party may disclose any HIGHLY CONFIDENTIAL – SOURCE CODE materials pursuant to Section 8.5 of this Order only to:

(a)     the receiving party's counsel of record in this action (but not employees, officers, or affiliates of a party), as well as employees of counsel to whom it is reasonably necessary to disclose the information for this litigation;

(b)     up to four experts or consultants to whom disclosure is reasonably necessary for this litigation, who have been specifically designated by the receiving party to receive HIGHLY CONFIDENTIAL – SOURCE CODE materials, and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

(c)     the court, court personnel, and court reporters, provided that the court reporters have agreed to keep the material confidential under the terms of this Agreement;

(d)     at their depositions or on the witness stand, employees of the producing party who authored or are otherwise familiar with the HIGHLY CONFIDENTIAL – SOURCE CODE materials and/or who have been designated by the producing party to provide testimony about the HIGHLY CONFIDENTIAL – SOURCE CODE materials.

Notwithstanding the above, a receiving party may include excerpts of HIGHLY CONFIDENTIAL – SOURCE CODE material in pleadings, exhibits, expert reports, and discovery materials in accordance with the procedures set forth in Section 10.6 below.

In no event will contract attorneys be given access to HIGHLY CONFIDENTIAL – SOURCE CODE material.

6.5     Procedures for Approving or Objecting to Disclosure of "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE" material:

(a)     Unless otherwise ordered by the court or agreed to in writing by the

designating party, a party that seeks to disclose to an expert or consultant any information or item that has been designated "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE" pursuant to paragraph 6.3(b) or 6.4(b) first must make a written request to the designating party that (1) identifies what category of information, whether it is "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE," that the receiving party seeks permission to disclose to the expert or consultant, (2) sets forth the full name of the expert or consultant and the city and state of his or her primary residence, (3) attaches a copy of the expert or consultant's current resume, (4) identifies the expert or consultant's current employer(s), (5) to the extent non-confidential and not privileged, identifies each person or entity from whom the expert has received compensation or funding for work in his or her areas of expertise or to whom the expert has provided professional services, including in connection with a litigation, at any time during the preceding five years, and (6) identifies (by name and number of the case, filing date, and location of court) any litigation in connection with which the Expert has offered expert testimony, including through a declaration, report, or testimony at a deposition or trial, during the preceding five years.

(b)     A party that makes a request and provides the information specified in the preceding respective paragraphs may disclose the subject protected material to the identified expert or consultant unless, within 7 days of delivering the request, the party receives a written objection from the designating party.  Any such objection must set forth in detail the grounds on which it is based.

(c)     A party that receives a timely written objection must meet and confer with the designating party to try to resolve the matter by agreement within seven days of the written objection.  If no agreement is reached, the party seeking to make the disclosure to the expert or consultant may seek a conference with the Court pursuant to the Court's Order at Dkt. No. 19 and, if necessary, file a motion as provided in Local Civil Rule 7 seeking permission from the court. Any such motion must describe the circumstances with specificity, set forth in detail the reasons why the disclosure to the expert or consultant is reasonably necessary, assess the risk of harm that the disclosure would entail, and suggest any additional means that could be used to reduce that

**Durie Tangri LLP**, 217 Leidesdorff Street,
San Francisco, CA, Tel: 415-362-6666

risk.  In addition, any such motion must be accompanied by a competent declaration describing the parties' efforts to resolve the matter by agreement (i.e., the extent and the content of the meet and confer discussions) and setting forth the reasons advanced by the designating party for its refusal to approve the disclosure.  In any such proceeding, the party opposing disclosure to the expert or consultant shall bear the burden of proving that the risk of harm that the disclosure would entail (under the safeguards proposed) outweighs the receiving party's need to disclose the protected material to its expert or consultant.

(d)     This section does not apply to disclosure of "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" material pursuant to paragraph 6.3(b) to jury consultants, mock trial consultants, or mock jurors.

6.6     Filing Confidential Material.  Before filing confidential material or discussing or referencing such material in court filings, the filing party shall confer with the designating party, in accordance with Local Civil Rule 5(g)(3)(A), to determine whether the designating party will remove the confidential designation, whether the document can be redacted, or whether a motion to seal or stipulation and proposed order is warranted.  When the filing party intends to file information designated as confidential by another party, at least 24 hours before the filing, the filing party shall reasonably identify the material to be filed, discussed, or referenced.  Within 24 hours of receipt of the identification, the designating party must confirm in writing that a motion to seal is warranted, provide a redacted copy of the material that can be filed without sealing, or remove the confidential designation.  Local Civil Rule 5(g) sets forth the procedures that must be followed and the standards that will be applied when a party seeks permission from the court to file material under seal.  It will be the responsibility of the designating party to file a response that satisfies the requirements of Local Civil Rule 5(g)(3)(B).

7.     DESIGNATING PROTECTED MATERIAL

7.1     Exercise of Restraint and Care in Designating Material for Protection.  Each party or non-party that designates information or items for protection under this agreement must take care to limit any such designation to specific material that qualifies under the appropriate standards. The designating party must designate for protection only those parts of material,

documents, items, or oral or written communications that qualify, so that other portions of the material, documents, items, or communications for which protection is not warranted are not swept unjustifiably within the ambit of this agreement.

Mass, indiscriminate, or routinized designations are prohibited. Designations that are shown to be clearly unjustified or that have been made for an improper purpose (e.g., to unnecessarily encumber or delay the case development process or to impose unnecessary expenses and burdens on other parties) expose the designating party to sanctions.

If it comes to a designating party's attention that information or items that it designated for protection do not qualify for protection, the designating party must promptly notify all other parties that it is withdrawing the mistaken designation.

7.2    <u>Manner and Timing of Designations</u>.    Except as otherwise provided in this agreement (see, e.g., second paragraph of paragraph 7.2(a) below), or as otherwise stipulated or ordered, disclosure or discovery material that qualifies for protection under this agreement must be clearly so designated before or when the material is disclosed or produced.

(a)    Information in documentary form: (e.g., paper or electronic documents and deposition exhibits, but excluding transcripts of depositions or other pretrial or trial proceedings), the designating party must affix the designation "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL – SOURCE CODE" to each page that contains confidential material.  If only a portion or portions of the material on a page qualifies for protection, the producing party also must clearly identify the protected portion(s) (e.g., by making appropriate markings in the margins).

A party or non-party that makes original documents or materials available for inspection need not designate them for protection until after the inspecting party has indicated which material it would like copied and produced.  During the inspection and before the designation, all the material made available for inspection shall be deemed "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," or, for source code related materials, "HIGHLY CONFIDENTIAL – SOURCE CODE."  After the inspecting party has identified the documents it wants copied and produced, the producing party must determine which documents, or portions

thereof, qualify for protection under this Order. Then, before producing the specified documents, the producing party must affix the appropriate designation in the manner described above.

(b)     Testimony given in deposition or in other pretrial proceedings: the parties and any participating non-parties may identify on the record, during the deposition or other pretrial proceeding, all protected testimony, without prejudice to their right to so designate other testimony after reviewing the transcript. The parties shall treat each transcript containing testimony as HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY until 15 days after receiving the final transcript. Any party or non-party may, within fifteen days after receiving the final transcript of the deposition or other pretrial proceeding, designate the transcript, portions thereof, or exhibits thereto, as confidential. If a party or non-party desires to protect confidential information at trial, the issue should be addressed during the pre-trial conference.

(c)     Other tangible items: the producing party must affix in a prominent place on the exterior of the container or containers in which the information or item is stored the designation "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE" as appropriate. If only a portion or portions of the information or item warrant protection, the producing party, to the extent practicable, shall identify the protected portion(s).

7.3     <u>Inadvertent Failures to Designate</u>. Inadvertent or unintentional production of documents, information or material without a confidentiality designation shall not be deemed a waiver in whole or in part of a claim for confidential treatment. Any party that produces material qualifying for confidential treatment under this order without designating it, may request destruction of that material by notifying the receiving party after the producing party becomes aware of the disclosure, and providing replacement material that is properly designated. The receiving party shall then destroy all copies of the material that does not bear the correct designation.

8.     <u>CHALLENGING CONFIDENTIALITY DESIGNATIONS</u>

8.1     <u>Timing of Challenges</u>. Any party or non-party may challenge a designation of confidentiality at any time. A party does not waive its right to challenge a confidentiality

designation by electing not to mount a challenge promptly after the original designation is disclosed.

8.2     <u>Meet and Confer</u>.  The parties must make every attempt to resolve any dispute regarding confidential designations without court involvement.   Any motion regarding confidential designations or for a protective order must include a certification, in the motion or in a declaration or affidavit, that the movant has engaged in a good faith meet and confer conference with other affected parties in an effort to resolve the dispute without court action.  The certification must list the date, manner, and participants to the conference.  A good faith effort to confer requires a face-to-face meeting or a telephone conference.

8.3     <u>Judicial Intervention</u>.  If the parties cannot resolve a challenge without court intervention, the designating party may file and serve a motion to retain confidentiality under Local Civil Rule 7 (and in compliance with Local Civil Rule 5(g), if applicable).  The burden of persuasion in any such motion shall be on the designating party.  Frivolous challenges, and those made for an improper purpose (e.g., to harass or impose unnecessary expenses and burdens on other parties) may expose the challenging party to sanctions.  All parties shall continue to maintain the material in question as confidential until the court rules on the challenge.

9.     <u>PROSECUTION BAR</u>

Absent written consent from the producing party, any individual who receives access to HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY material or HIGHLY CONFIDENTIAL – SOURCE CODE material shall not be involved in the prosecution of patents or patent applications directed to interactive entertainment, virtual worlds, or game engines, including without limitation the patents asserted in this action and any patent or application claiming priority to or otherwise related to the patents asserted in this action, before any foreign or domestic agency, including the United States Patent and Trademark Office ("the Patent Office").  For purposes of this paragraph, "prosecution" includes drafting, amending, advising, or otherwise affecting the scope or maintenance of patent claims.  To avoid any doubt, this paragraph does not preclude an individual from representing a party challenging or defending a patent before a domestic or foreign agency (including, but not limited to, a reissue protest, ex parte

reexamination or inter partes review or reexamination)—however, in the case where the individual is defending a patent before a domestic or foreign agency, while that individual may participate in the defense of the patent, that individual may not suggest, review, direct, or prepare any claim amendments. This Prosecution Bar shall begin when access to the Highly Confidential Attorneys' Eyes Only material or Highly Confidential Source Code material is first received by the affected individual and shall end two (2) years after the receiving individuals involvement with this action ends or two (2) years after final termination of this action, whichever comes first.

10.    SOURCE CODE

   10.1    To the extent production of confidential source code becomes necessary in this case, a producing party may designate confidential source code as "HIGHLY CONFIDENTIAL – SOURCE CODE" in accordance with paragraph 4 above.

   10.2    Access to a party's confidential source code shall be provided only to approved individuals pursuant to paragraph 6.4, on "stand-alone" computer(s) (that is, the computer may not be linked to any network, including a local area network ("LAN"), an intranet or the Internet). The stand-alone computer(s) will be connected to a printer (printouts shall be made as specified in paragraph 10.7 below). The stand-alone computer(s) shall have an external mouse and an additional monitor both to be provided by or at the expense of the receiving party. The stand-alone computer(s) will be placed in a secured room at the corporate offices of the producing party, at the office of the producing party's outside counsel, or other location as agreed upon by the parties. The producing party shall make its best effort to make a breakout room available within a reasonable distance to the secured room where the receiving party may use the internet and personal electronic devices. No recordable media, recordable devices, computers, cell phones, or other electronic devices may be brought into the secured room. The person(s) conducting the confidential source code review for the receiving party shall be permitted to take notes relating to the confidential source code, but the notes may not include any verbatim copying of the confidential source code into the notes. In addition, all such notes will be taken on bound (spiral or other type of permanently bound) paper notebooks. The receiving party may not bring loose paper or other paper that can be used in a printer into the secure room. No copies of all or any

portion of the confidential source code may leave the room in which the confidential source code is inspected except as otherwise provided herein. The producing party shall also be entitled to have a person who is not an attorney visually monitor, from outside of the secured room, the receiving party's actions in the secured room to ensure compliance with the provisions of this agreement governing confidential source code, provided, however, that said person shall not be permitted to view, from outside the secured room, the screen of the stand-alone computer(s), shall not be permitted to view any work product generated by the receiving party's representative(s), and the producing party shall not install any keystroke or other monitoring software on the stand-alone computer(s).

10.3    The receiving party shall make reasonable efforts to restrict its requests for such access to the stand-alone computer(s) to normal business hours, which for purposes of this paragraph shall be 8:30 a.m. through 5:30 p.m. local time. However, upon reasonable notice from the receiving party, the producing party shall make reasonable efforts to accommodate the receiving party's request for access to the stand-alone computer(s) outside of normal business hours. The parties agree to cooperate in good faith such that maintaining the producing party's confidential source code at its corporate offices or other location agreed to by the parties shall not unreasonably hinder the receiving party's ability to efficiently and effectively conduct the prosecution or defense of this Action. The parties likewise agree to cooperate in good faith to avoid the necessity to conduct inspections over weekends and holidays unless necessary, and shall meet and confer concerning any such requests.

10.4    The producing party shall provide the receiving party with information explaining how to start, log on to, and operate the stand-alone computer(s) in order to access the produced confidential source code on the stand-alone computer(s).

10.5    The producing party will produce confidential source code in computer searchable format on the stand-alone computer(s) as described above.

10.6    A receiving party may include excerpts of confidential source code in a pleading, exhibit, expert report, infringement contentions, discovery document, deposition transcript, other Court document, provided that such materials are appropriately marked under this Order, restricted

to those who are entitled to have access to them as specified in paragraph 6.4, and, if filed with the Court, filed under seal in accordance with the Court's rules, procedures and orders. To the extent portions of confidential source code are quoted or reproduced in a document pursuant to the above, confidential source code not cited or relied upon must be redacted and, either (1) the entire document will be stamped and treated as HIGHLY CONFIDENTIAL – SOURCE CODE or (2) those pages containing quoted or reproduced confidential source code will be separately stamped and treated as HIGHLY CONFIDENTIAL – SOURCE CODE.

10.7    The stand-alone computer(s) shall be equipped with a high-speed laser printer (with commercially reasonable printing speeds) to print copies of the confidential source code. The receiving party shall be permitted to print a reasonable number of pages of confidential source code that are reasonably necessary for the preparation of court filings, pleadings, expert reports, or other papers, or for deposition or trial, but shall not request paper copies for the purposes of reviewing the confidential source code other than electronically as set forth in paragraph (a) in the first instance. Printouts shall be designated and clearly labeled "HIGHLY CONFIDENTIAL – SOURCE CODE." Printouts shall be limited to 500 total pages of source code, with no contiguous block greater than 50 pages. The receiving party may request to print additional pages or longer contiguous blocks beyond the aforementioned limits and the parties will meet and confer in good faith regarding such a request. If an agreement cannot be reached, the burden shall be on the receiving party to demonstrate that such printed portions are no more than is reasonably necessary for a permitted purpose and not merely printed for the purposes of review and analysis elsewhere. Printed source code pages shall not be removed from the secured room by the receiving party, but shall instead be left in the secured room at the end of the review day. Within three (3) business days of the review day on which the pages were printed, the producing party shall either raise an objection in accordance with this paragraph or else Bates-stamp the printed pages, label them "HIGHLY CONFIDENTIAL – SOURCE CODE," and produce them. The receiving party's outside counsel may make no more than two (2) additional paper copies of any portions of the confidential source code, not including copies attached to court filings or used at depositions or attached to expert reports. The receiving party shall be permitted to print the folder structures, if

any, containing the confidential source code, including the filenames contained therein. Such printout of the folder structure shall be clearly labeled "HIGHLY CONFIDENTIAL – SOURCE CODE," and such printout shall not count against the aforementioned page limits.

10.8    The receiving party shall maintain a log of all paper copies of the confidential source code including the names of the custodian(s) or location(s) where the paper copies are stored when the paper copies are not in use. No more than a total of ten (10) individuals identified by the receiving party shall have access to the printed portions of confidential source code (except insofar as such code appears in any court filing or expert report). The receiving party shall provide a copy of this log to the producing party upon request.

10.9    No additional written or electronic copies of confidential source code beyond the additional copies provided in paragraph 10.7 shall be made without prior written consent of the producing party, except as provided in paragraphs 10.6 through 10.8 above and as necessary to create documents which, pursuant to the Court's rules, procedures and order, must be filed or served electronically.

10.10    Proper identification of all authorized persons shall be provided prior to any access to the secure room or the computer(s) containing confidential source code. Proper identification requires showing, at a minimum, a photo identification card sanctioned by the government of any State of the United States or, by the government of the United States. Access to the secure room or the confidential source code computer(s) may be denied, at the discretion of the producing party, to any individual who fails to provide proper identification until such proper identification is provided.

10.11    If the receiving party's outside counsel, consultants, experts, or any other authorized person obtain printouts or photocopies of confidential source code, the receiving party shall ensure that such outside counsel, consultants, experts, or person keeps the printouts or photocopies in a secured locked area in the offices of such outside counsel. The receiving party may also temporarily keep the printouts or photocopies in a secured location under lock and key at: (i) the Court for any proceedings(s) relating to the confidential source code, for the dates associated with the proceeding(s); (ii) the sites where any deposition(s) relating to the confidential

source code are taken, for the dates associated with the deposition(s); and (iii) any secure intermediate location reasonably necessary to transport the printouts or photocopies.

10.12 A producing party's confidential source code may only be transported by the receiving party at the direction of outside counsel, on paper via secure and reliable hand carry. Confidential source code may not be transported or transmitted electronically over a network of any kind, including a LAN, an intranet, or the Internet except as provided in paragraph 10.6 above and as necessary to create documents which, pursuant to the Court's rules, procedures and order, must be filed or served electronically.

10.13 The producing party shall install a reasonable number of non-redundant commercially available software tools of the receiving party's choice for viewing and searching confidential source code on the confidential source code computers at the requested date and time of inspection, provided, however, that such other software tools are in compliance with all of the terms, conditions, and protections herein. Software tools may include, but are not limited to, Eclipse, Microsoft Visual Studio, Source-Navigator, PowerGrep, ExamDiff Pro, Understand, Notepad++, Windows GREP, dtSearch, Beyond Compare, Crimson Editor, or similar programs. In no event shall the receiving party use said software tools to compile the confidential source code or otherwise attempt to execute the confidential source code. At least five (5) business days in advance of the inspection, the receiving party must provide the producing party with the software tool(s) either via a CD or DVD containing such software tool(s) or directions for downloading the software tool(s). The receiving party is responsible for the cost of and for obtaining any necessary licenses for any such software tool(s). The software tool(s) provided by the receiving party shall not be modified by the producing party prior to or after installation; and

10.14 The receiving party's outside counsel and retained experts or consultants otherwise allowed to view confidential source code shall be entitled to take notes relating to the confidential source code provided, however, that no one may copy confidential source code into said notes. No provision in this Protective Order gives the producing party the right to inspect or review any notes and/or other work product of the receiving party. However, if the producing party has good cause to believe that the provisions of this Protective Order have been violated, then the producing

party may request that the Court conduct an in-camera review of said notes.

11.     PROTECTED MATERIAL SUBPOENAED OR ORDERED PRODUCED IN OTHER LITIGATION

        If a party is served with a subpoena or a court order issued in other litigation that compels disclosure of any information or items designated in this action as "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," OR "HIGHLY CONFIDENTIAL – SOURCE CODE," that party must:

        (a)     promptly notify the designating party in writing and include a copy of the subpoena or court order;

        (b)     promptly notify in writing the party who caused the subpoena or order to issue in the other litigation that some or all of the material covered by the subpoena or order is subject to this agreement.  Such notification shall include a copy of this agreement;

        (c)     not produce the designating party's confidential material until either: (1) the designating party provides its consent in writing; (2) fourteen days has passed since the notification to the designating party without any response from the designating party; or (3) if the designating party objects and indicates that it intends to seek a protective order shielding the designated material from production, the request has been resolved against the designating party;

        (d)     cooperate with respect to all reasonable procedures sought to be pursued by the designating party whose confidential material may be affected.

12.     UNAUTHORIZED DISCLOSURE OF PROTECTED MATERIAL

        If a receiving party learns that, by inadvertence or otherwise, it has disclosed confidential material to any person or in any circumstance not authorized under this agreement, the receiving party must immediately (a) notify in writing the designating party of the unauthorized disclosures, (b) retrieve all unauthorized copies of the protected material, (c) inform the person or persons to whom unauthorized disclosures were made of all the terms of this agreement, and (d) request that such person or persons execute the "Acknowledgment and Agreement to Be Bound" that is attached hereto as Exhibit A.

13. <u>INADVERTENT PRODUCTION OF PRIVILEGED OR OTHERWISE PROTECTED MATERIAL</u>

When a producing party gives notice to receiving parties that certain inadvertently produced material is subject to a claim of privilege or other protection, the obligations of the receiving parties are those set forth in Federal Rule of Civil Procedure 26(b)(5)(B). The producing party must provide a privilege log for the clawed back material within five (5) days of giving notice to the receiving party of the inadvertent production and claim of privilege. This provision is not intended to modify whatever procedure may be established in an e-discovery order or agreement that provides for production without prior privilege review. The parties agree to the entry of a non-waiver order under Fed. R. Evid. 502(d) as set forth herein.

14. <u>MATERIAL PRODUCED BY THIRD PARTIES</u>

Third parties who produce documents in this litigation, whether pursuant to subpoena or voluntarily, may designate documents in accordance with this Agreement, and documents so designated shall receive the full protection of this Agreement as if produced by one of the parties to this matter.

15. <u>NON TERMINATION AND RETURN OF DOCUMENTS</u>

Within 60 days after the termination of this action, including all appeals, each receiving party must return all confidential material to the producing party, including all copies, extracts and summaries thereof. Alternatively, the parties may agree upon appropriate methods of destruction.

Notwithstanding this provision, counsel are entitled to retain one archival copy of all documents filed with the court, trial, deposition, and hearing transcripts, correspondence, deposition and trial exhibits, expert reports, attorney work product, and consultant and expert work product, even if such materials contain confidential material.

The confidentiality obligations imposed by this agreement shall remain in effect until a designating party agrees otherwise in writing or a court orders otherwise.

IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD.

Dated:  March 15, 2022                           Respectfully submitted,

                                            By:     /s/ Jessica M. Andrade
                                                    Jessica M. Andrade (WSBA No. 39297)
                                                    **POLSINELLI PC**
                                                    1000 Second Avenue, Suite 3500
                                                    Seattle, WA  98104
                                                    Tel:  206-393-5400
                                                    Fax: 206-393-5401
                                                    Email: jessica.andrade@polsinelli.com

                                                    Mark Deming (*pro hac vice*)
                                                    **POLSINELLI PC**
                                                    150 N. Riverside Place, Suite 3000
                                                    Chicago, IL  60606
                                                    Tel:  312-819-1900
                                                    Fax: 312-819-1901
                                                    Email: mdeming@polsinelli.com

*Of Counsel:*                                       Enes Ovcina (*pro hac vice*)
                                                    **POLSINELLI PC**
Colby B. Springer (admitted *pro hac vice*)         1000 Louisiana Street, Suite 6400
Melenie Van (admitted *pro hac vice*)               Houston, TX  77002
**POLSINELLI LLP**                                  Tel:  713-374-1600
Three Embarcadero Center, Suite 2400                Fax: 713-374-1601
San Francisco, CA  94111                            Email: eovcina@polsinelli.com
Tel:  415-248-2100
Fax: 415-248-2101                                   Attorneys for Plaintiff
Email: cspringer@polsinelli.com                     UTHERVERSE GAMING LLC
Email: mvan@polsinelli.com

1

2 Dated: March 15, 2022                    By: */s/ Matthaeus Martino-Weinhardt*

3                                              Matthaeus Martino-Weinhardt (*pro hac vice*)
                                               mweinhardt@durietangri.com

4                                              Mark A. Lemley (*pro hac vice*)
                                               mlemley@durietangri.com

5                                              Eugene Novikov (*pro hac vice*)
                                               enovikov@durietangri.com

6                                              Timothy C. Saulsbury (*pro hac vice*)
                                               tsaulsbury@durietangri.com

7                                              Bethany D. Bengfort (*pro hac vice*)
                                               bbengfort@durietangri.com

8                                              Nari E.C. Ely (*pro hac vice*)
                                               nely@durietangri.com

9                                              DURIE TANGRI LLP

10                                             217 Leidesdorff Street

11                                             San Francisco, CA 94111
                                               Telephone: (415) 362-6666

12                                             Facsimile: (415) 236-6300

13
                                               Attorneys for Defendant
14                                             EPIC GAMES, INC.

15 Dated: March 15, 2022

16
                                          By: */s/ Antoine M. McNamara*
17                                             Antoine M. McNamara (WSBA No. 41701)
                                               Christina J. McCullough (WSBA No. 47147)
18                                             PERKINS COIE LLP
                                               1201 Third Avenue, Suite 4900
19                                             Seattle, WA 98101-3099
                                               Telephone: 206-359-8000
20                                             Facsimile: 206-359-9000
                                               Email: AMcNamara@perkinscoie.com
21                                             Email: CMcCullough@perkinscoie.com

22

23                                             Attorneys for Defendant
                                               EPIC GAMES, INC.
24

25

26

27

28

PURSUANT TO STIPULATION, IT IS SO ORDERED

IT IS FURTHER ORDERED that pursuant to Fed. R. Evid. 502(d), the production of any documents in this proceeding shall not, for the purposes of this proceeding or any other federal or state proceeding, constitute a waiver by the producing party of any privilege applicable to those documents, including the attorney-client privilege, attorney work-product protection, or any other privilege or protection recognized by law.

DATED: _March 21, 2022_

_Theresa L. Fricke_

Theresa L. Fricke
United States Magistrate Judge

## EXHIBIT A

### ACKNOWLEDGMENT AND AGREEMENT TO BE BOUND

I, _____ [print or type full name], of

_____ [print or type full address], declare under penalty of

perjury that I have read in its entirety and understand the Stipulated Protective Order that was

issued by the United States District Court for the Western District of Washington on _____

in the case of *Utherverse Gaming, LLC v. Epic Games Inc.*, Case No. 2:21-cv-00799-RSM-TLF.

I agree to comply with and to be bound by all the terms of this Stipulated Protective Order and I

understand and acknowledge that failure to so comply could expose me to sanctions and

punishment in the nature of contempt. I solemnly promise that I will not disclose in any manner

any information or item that is subject to this Stipulated Protective Order to any person or entity

except in strict compliance with the provisions of this Order.

I further agree to submit to the jurisdiction of the United States District Court for the

Western District of Washington for the purpose of enforcing the terms of this Stipulated Protective

Order, even if such enforcement proceedings occur after termination of this action.

Date: _____

City and State where sworn and signed: _____

Printed name: _____

Signature: _____