THE HONORABLE RICARDO S. MARTINEZ

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WASHINGTON

AT SEATTLE

| | |
|---|---|
| UTHERVERSE GAMING LLC,<br><br>     Plaintiff,<br><br> v.<br><br>EPIC GAMES, INC.,<br><br>     Defendant. | Case No. 2:21-cv-00799-RSM-TLF<br><br>**AMENDED ANSWER TO COMPLAINT FOR PATENT INFRINGEMENT AND COUNTERCLAIMS** |

**Morrison & Foerster LLP**, 425 Market Street,
San Francisco, CA, Tel: 415-268-7000

Defendant Epic Games, Inc. ("Epic") hereby answers the Complaint of Plaintiff Utherverse Gaming LLC ("Utherverse") as follows.  All allegations not specifically admitted herein are denied.

## I.      INTRODUCTION

1.       Epic admits that Utherverse has asserted claims of patent infringement in this action.  Epic denies the remaining allegations in this paragraph.

2.       Denied.

3.       Denied.

4.       Epic lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph and, on that basis, denies them.

5.       Epic admits that it is a video game and software developer, that it developed a popular multiplayer cross-platform game called Fortnite, and that Fortnite includes a competitive PvP game called "battle royale" and a game mode called "party royale."  Epic further admits that Fortnite hosted in-game events featuring Marshmello, Travis Scott, and a movie trailer premiere for the Star Wars movie the Rise of Skywalker.  Epic denies the remaining allegations in this paragraph.

6.       Epic admits that Fortnite has more than 350 million registered accounts and that the millions of Fortnite players have collectively logged billions of hours of gameplay.  Epic denies the remaining allegations in this paragraph, and specifically denies that it has committed any acts of patent infringement in this district or anywhere else.

7.       Admitted.

## II.      THE PARTIES

8.       Epic lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph and, on that basis, denies them.

9.       Epic admits that it is a corporation organized and existing under the laws of the State of Maryland, and that it has an office at 10400 NE 4th Street Suite 800, Bellevue, Washington 98004.

### III.   JURISDICTION AND VENUE

10.   Epic admits that Utherverse purports to bring this action for patent infringement under the patent laws of the United States, 35 U.S.C. § 271 *et seq.*, and that subject matter jurisdiction is proper in this Court for matters of patent infringement.  Epic specifically denies that it has committed any acts of patent infringement in this district or anywhere else.

11.   Epic specifically denies that it has committed any acts of patent infringement in this district or anywhere else.

12.   Epic admits, for the purposes of this action only, that venue is proper in this Court.  Epic specifically denies that it has committed any acts of patent infringement in this district or anywhere else.

13.   Epic admits that it has an office in this district, and that it has maintained an office in this district since 2012.  Epic admits that Exhibit C appears on its face to be a gamesindustry.biz article containing the recited quotations.  Epic lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph, including the truth or accuracy of the information contained in the gamesindustry.biz article, and, on that basis, denies them.

14.   Epic admits that its Bellevue office employs more than 80 people, and that some of these employees work on software or tools related to the Fortnite product.  Epic does not partner with any third party to develop Fortnite or its other titles, though like most developers it outsources certain work to contractors while maintaining creative control.  Certain of Epic's subsidiaries have conducted development work on behalf of other game developers on a work-for-hire basis, though these commitments are not a part of Epic's ongoing business and have been wound down.  Epic denies the remaining allegations of this paragraph.

### IV.   FACTS

15.   Epic admits that U.S. Patent No. 8,276,071 is titled "Multi-Instance, Multi-User Animation Platforms" and states on its face that it was issued on September 25, 2012.  Epic denies that the '071 patent is valid and enforceable.  Epic lacks knowledge or information

sufficient to form a belief about the truth of the remaining allegations in this paragraph and, on that basis, denies them.

16.     Epic admits that U.S. Patent No. 8,812,954 is titled "Multi-Instance, Multi-User Virtual Reality Spaces" and states on its face that it was issued on August 19, 2014.  Epic denies that the '954 patent is valid and enforceable.  Epic lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph and, on that basis, denies them.

17.     Epic admits that U.S. Patent No. 9,123,157 is titled "Multi-Instance, Multi-User Virtual Reality Spaces" and states on its face that it was issued on September 1, 2015.  Epic denies that the '157 patent is valid and enforceable.  Epic lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph and, on that basis, denies them.

18.     Epic admits that U.S. Patent No. 9,724,605 is titled "Method, System and Apparatus of Recording and Playing Back an Experience in a Virtual Worlds System" and states on its face that it was issued on August 8, 2017.  Epic denies that the '605 patent is valid and enforceable.  Epic lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph and, on that basis, denies them.

19.     Epic admits that the '071, '954 and '157 patents are part of the same family of patents and share substantially the same specification.  Epic further admits that the '157 patent is a continuation of the '954 patent, and that the '954 patent is a continuation of the '071 patent.  Epic lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph and, on that basis, denies them.

20.     Epic admits that the '605 patent is not in the same family of patents as the '071, '954 and '157 patents.  Epic denies that the '605 patent "relates to a second family of patents" as there are currently no other issued patents in the same family as the '605 patent.  Epic further denies that the '605 patent is "directed generally to playing back an experience in a virtual worlds system" as the '605 patent purports to be directed generally to playing back a **recorded**

experience in a virtual worlds system. Epic lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph and, on that basis, denies them.

21. Paragraph 21 does not contain any allegation of fact and, therefore, no answer is required.

22. Epic admits that Exhibit H appears on its face to be a Financial Post article containing the recited quotations. Epic lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph, including the truth or accuracy of the information contained in the Financial Post article, and, on that basis, denies them.

23. Epic admits that the quoted material appears in the specification of the '071 patent. Epic denies the remaining allegations in this paragraph, including as to the truth or accuracy of the quoted material.

24. Epic admits that the quoted material appears in the specification of the '071 patent. Epic denies the remaining allegations in this paragraph, including as to the truth or accuracy of the quoted material.

25. Epic specifically denies the allegations in this paragraph to the extent that they purport to describe drawbacks or features common to all virtual reality games, or all virtual reality games that existed by early 2007. Epic admits that the quoted material appears in the specification of the '071 patent. Epic denies the remaining allegations in this paragraph, including as to the truth or accuracy of the quoted material.

26. Epic admits that computer processing speed, network bandwidth, and server and client capacity are factors that are considered when designing some games. Epic admits that the quoted material appears in the specification of the '071 patent. Epic denies the remaining allegations in this paragraph, including as to the truth or accuracy of the quoted material.

27.     Epic admits that the quoted material appears in the specification of the '071 patent.  Epic denies the remaining allegations in this paragraph, including as to the truth or accuracy of the quoted material.

28.     Epic admits that game designers generally want to minimize undesired experiences for players, provide interesting in-game opportunities and experiences, and accommodate increasing numbers of players, which must be weighed among many other considerations.  Epic admits that the quoted material appears in the specification of the '071 patent.  Epic denies the remaining allegations in this paragraph, including as to the truth or accuracy of the quoted material.

29.     Denied.

30.     Denied.

31.     Epic admits that the quoted material appears in the specification of the '071 patent.  Epic denies the remaining allegations in this paragraph, including as to the truth or accuracy of the quoted material.

32.     Epic admits that the quoted material appears in the specification of the '071 patent.  Epic denies the remaining allegations in this paragraph, including as to the truth or accuracy of the quoted material.

33.     Epic admits that the quoted material appears in the specification of the '071 patent.  Epic denies the remaining allegations in this paragraph, including as to the truth or accuracy of the quoted material.

34.     Epic admits that the quoted material appears in the specification of the '071 patent.  Epic denies the remaining allegations in this paragraph, including as to the truth or accuracy of the quoted material.

35.     Epic admits that the quoted material appears in the specification of the '071 patent.  Epic denies the remaining allegations in this paragraph, including as to the truth or accuracy of the quoted material.

36.     Epic admits that claim 1 of the '157 patent recites the cited material.  Epic denies the remaining allegations in this paragraph.

37.     Denied.

38.     Denied.

39.     Epic admits that the quoted material appears in the specification of the '605 patent.  Epic denies the remaining allegations in this paragraph, including as to the truth or accuracy of the quoted material.  Epic specifically denies that the '605 patent discloses an embodiment in which a player may "record a state of a VRU environment so that the users may log out of the VRU and, upon their return, resume an activity at the point where they left off," as this passage appeared in a description of the prior art, not in a description of the claimed invention.

40.     Epic admits that the quoted material appears in the specification of the '605 patent.  Epic denies the remaining allegations in this paragraph, including as to the truth or accuracy of the quoted material.

41.     Epic admits that the quoted material appears in the specification of the '605 patent.  Epic denies the remaining allegations in this paragraph, including as to the truth or accuracy of the quoted material.

42.     Epic admits that the quoted material appears in the specification of the '605 patent.  Epic denies the remaining allegations in this paragraph, including as to the truth or accuracy of the quoted material.

43.     Epic admits that the quoted material appears in the specification of the '605 patent.  Epic denies the remaining allegations in this paragraph, including as to the truth or accuracy of the quoted material.

44.     Epic admits that claim 1 of the '605 patent recites the cited material.  Epic denies the remaining allegations in this paragraph.

45.     Denied.

46.     Epic admits that the quoted statements appear in the cited documents and are accurate within the context the statements were made.  Epic denies the remaining allegations in this paragraph.

47.     Epic admits that the quoted statement appears in the cited document.  Epic admits that cosmetic items and emotes related to Travis Scott were available for purchase.  Epic denies the remaining allegations in this paragraph, including to the extent that they assert the truth or accuracy of statements made in the cited article.

48.     Denied.

49.     Epic admits that the quoted material appears in the prosecution history of the '071 patent.  Epic denies the remaining allegations in this paragraph, including as to the truth or accuracy of the quoted material.

50.     Epic admits that the quoted material appears in the prosecution history of the '157 patent.  Epic denies the remaining allegations in this paragraph, including as to the truth or accuracy of the quoted material.

51.     Epic admits that the quoted material appears in the prosecution history of the '157 patent.  Epic denies the remaining allegations in this paragraph, including as to the truth or accuracy of the quoted material.

52.     Epic admits that the quoted material appears in the prosecution history of the '157 patent.  Epic denies the remaining allegations in this paragraph, including as to the truth or accuracy of the quoted material.

53.     Epic admits that the quoted material appears in the prosecution history of the '157 patent.  Epic denies the remaining allegations in this paragraph, including as to the truth or accuracy of the quoted material.

54.     Denied.

55.     Denied.

56.     Epic admits that it developed Fortnite, and that Fortnite is an online video game that was released in 2017.  Epic admits that Fortnite has multiple game modes, including Fortnite

Battle Royale, Fortnite Save the World, and Fortnite Creative.  Epic admits that Fortnite currently has over 350 million registered accounts, that it had over 250 million registered accounts in March 2019, and that it had over 125 million registered accounts in May 2018.  Epic denies the remaining allegations in this paragraph.

57.     Epic admits that the network architecture supporting Fortnite permits large numbers of players to attend Fortnite's events, and that the players and their avatars are divided among multiple instances of the Fortnite game world hosting the event.  Epic denies that Fortnite employs parallel dimensions as described by the Asserted Patents.  Epic denies the remaining allegations in this paragraph.

58.     Epic admits that Fortnite has hosted large-scale events.  Epic denies the remaining allegations in this paragraph, including as to the truth or accuracy of the quoted fandom.com website.

59.     Epic admits that Fortnite hosted an event featuring music from the artist Marshmello in February of 2019.  Epic further admits that over ten million players attended the event, and that the players and their avatars were divided among multiple instances of the Fortnite game world hosting the Marshmello concert.  Epic denies the remaining allegations in this paragraph, including as to the truth or accuracy of the content of the cited YouTube video.

60.     Epic admits that Exhibit P appears on its face to be an internet article from The Verge, and that the article purports to describe the Marshmello event hosted by Fortnite.  Epic denies the allegations in this paragraph to the extent that they assert the truth or accuracy of the statements made in the article from The Verge.

61.     Epic admits that Fortnite hosted an event in December 2019 for the premiere of a trailer for The Rise of Skywalker and that this event featured certain elements from the Star Wars universe.  Epic denies the remaining allegations in this paragraph.

62.     Epic admits that Exhibits Q and R appear on their face to be articles from Forbes and The Verge, and that the articles purport to describe the Star Wars event hosted by Fortnite.

Epic denies the allegations in this paragraph to the extent that they assert the truth or accuracy of the statements made in the cited articles.

63.     Epic admits that Fortnite hosted multiple events featuring music from the artist Travis Scott in April of 2020.  Epic further admits that millions of players attended the events, and that the players and their avatars were divided among multiple instances of the Fortnite game world hosting the events.  Epic denies the remaining allegations in this paragraph.

64.     Denied.

65.     Epic admits that Exhibit S appears on its face to be an NME article containing the information described.  Epic lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph, including the truth or accuracy of the information contained in the NME article, and, on that basis, denies them.

66.     Denied.

### V.     CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### INFRINGEMENT OF THE '071 PATENT

67.     Paragraph 67 does not contain any allegation of fact and, therefore, no answer is required.

68.     Denied.

69.     Admitted.

70.     Denied.

71.     Epic admits that the Marshmello concert employed a three-dimensional virtual environment through which player avatars could move.  Epic denies the remaining allegations of this paragraph, including as to the truth or accuracy of the content of the cited YouTube video.

72.     Epic admits that more than ten million players attended the Marshmello event and that the players and their avatars were assigned to one of multiple instances of the Fortnite game world hosting the event.  Epic denies the remaining allegations in this paragraph.

73.     Admitted.

74.     Denied.

75.     Epic admits that millions of players attended the Marshmello event and that the players and their avatars were assigned to one of multiple instances of the Fortnite game world hosting the event.  Epic denies the remaining allegations in this paragraph, including as to the truth or accuracy of the content of the cited YouTube video.

76.     Denied.

77.     Admitted.

78.     Denied.

79.     Epic admits that players attending the Marshmello concert could view the concert at different angles depending on the position of their avatars within the virtual environment. Epic denies the remaining allegations of this paragraph, including as to the truth or accuracy of the content of the cited YouTube video.

80.     Denied.

81.     Admitted.

82.     Denied.

83.     Denied.

84.     Denied.

85.     Epic admits that it does not have a license to the '071 patent from Utherverse Gaming.  Epic denies the remaining allegations in this paragraph.

86.     Denied.

## SECOND CAUSE OF ACTION
## INFRINGEMENT OF THE '954 PATENT

87.     Paragraph 87 does not contain any allegation of fact and, therefore, no answer is required.

88.     Denied.

89.     Admitted.

90.     Denied.

91.   Epic admits that the Marshmello concert employed a three-dimensional virtual environment.  Epic denies the remaining allegations in this paragraph, including as to the truth or accuracy of the content of the cited YouTube video.

92.   Epic admits that more than ten million players attended the Marshmello event and that the players and their avatars were assigned to one of multiple instances of the Fortnite game world hosting the event.  Epic denies the remaining allegations in this paragraph.

93.   Admitted.

94.   Denied.

95.   Epic admits that players participating in the Marshmello event were assigned to one of multiple instances of the Fortnite game world hosting the event.  Epic denies the remaining allegations in this paragraph, including as to the truth or accuracy of the content of the cited YouTube video.

96.   Denied.

97.   Admitted.

98.   Denied.

99.   Epic admits that the quoted material appears in Exhibit T and is accurate within the context of that article.  Epic denies the remaining allegations in this paragraph, including as to the truth or accuracy of the content of the cited YouTube videos.

100.   Admitted.

101.   Denied.

102.   Denied.

103.   Denied.

104.   Epic admits that it does not have a license to the '954 patent from Utherverse Gaming.  Epic denies the remaining allegations in this paragraph.

105.   Denied.

1
2

## THIRD CAUSE OF ACTION
## INFRINGEMENT OF THE '157 PATENT

3

106.    Paragraph 106 does not contain any allegation of fact and, therefore, no answer is

4

required.

5

107.    Denied.

6

108.    Admitted.

7

109.    Denied.

8

110.    Epic admits that the Marshmello concert employed a three-dimensional virtual

9

environment.  Epic denies the remaining allegations in this paragraph, including as to the truth or

10

accuracy of the content of the cited YouTube video.

11

111.    Epic admits that more than ten million players attended the Marshmello event and

12

that the players and their avatars were assigned to one of multiple instances of the Fortnite game

13

world hosting the event.  Epic denies the remaining allegations in this paragraph.

14

112.    Admitted.

15

113.    Denied.

16

114.    Epic admits that players participating in the Marshmello event were assigned to

17

one of multiple instances of the Fortnite game world hosting the event.  Epic denies the

18

remaining allegations in this paragraph, including as to the truth or accuracy of the content of the

19

cited YouTube video.

20

115.    Denied.

21

116.    Admitted.

22

117.    Denied.

23

118.    Denied.

24

119.    Denied.

25

120.    Epic admits that it does not have a license to the '157 patent from Utherverse

26

Gaming.  Epic denies the remaining allegations in this paragraph.

27

121.    Denied.

28

**FOURTH CAUSE OF ACTION**
**INFRINGEMENT OF THE '605 PATENT**

122.    Paragraph 122 does not contain any allegation of fact and, therefore, no answer is required.

123.    Denied.

124.    Admitted.

125.    Denied.

126.    Denied.

127.    Admitted.

128.    Denied.

129.    Denied.

130.    Admitted.

131.    Denied.

132.    Denied.

133.    Denied.

134.    Admitted.

135.    Denied.

136.    Denied.

137.    Admitted.

138.    Denied.

139.    Denied.

140.    Denied.

141.    Denied.

142.    Epic admits that it does not have a license to the '605 patent from Utherverse Gaming.  Epic denies the remaining allegations in this paragraph.

143.    Denied.

# VI.     PRAYER FOR RELIEF

Epic denies that Utherverse is entitled to any of the relief requested in the section of the Complaint entitled "Prayer for Relief," or to any relief in any form from either the Court or from Epic. Epic respectfully requests that the Court enter judgment in its favor and against Utherverse on all of Utherverse's claims, deny each of Utherverse's prayers for relief, find this case exceptional pursuant to 35 U.S.C. § 285, and award Epic its costs, attorneys' fees, and any other further relief deemed appropriate by the Court.

# VII.     DEMAND FOR JURY TRIAL

Utherverse's request for a jury trial includes no allegations and, therefore, requires no response.

# VIII.   ADDITIONAL DEFENSES

Epic asserts the following defenses. Epic does not concede that it bears the burden of proof as to any of the defenses asserted. Discovery is still ongoing, therefore, Epic has not yet collected and reviewed all of the information and materials that may be relevant to the matters and issues herein. Accordingly, Epic reserves the right to amend, modify, or expand these defenses and to take further positions as discovery proceeds in this case.

## FIRST AFFIRMATIVE DEFENSE

### *(Invalidity of the '071 patent)*

One or more of the claims of the '071 patent are invalid under 35 U.S.C. §§ 102 and/or 103 as anticipated and/or obvious in view of existing prior art. Further, one or more of the claims the '071 patent fail to meet the requirements of 35 U.S.C. § 101. Further, one or more of the claims of the '071 patent fail to meet the requirements of 35 U.S.C. § 112, including because they are indefinite, lack written description, and/or are not enabled.

## SECOND AFFIRMATIVE DEFENSE

### *(Non-infringement of the '071 patent)*

Epic has not infringed, and will not infringe, directly or indirectly, literally or under the doctrine of equivalents, any valid and enforceable claim of the '071 patent.

1

2

### THIRD AFFIRMATIVE DEFENSE

*(Invalidity of the '954 patent)*

3

4

5

6

7

One or more of the claims of the '954 patent are invalid under 35 U.S.C. §§ 102 and/or 103 as anticipated and/or obvious in view of existing prior art.  Further, one or more of the claims the '954 patent fail to meet the requirements of 35 U.S.C. § 101.  Further, one or more of the claims of the '954 patent fail to meet the requirements of 35 U.S.C. § 112, including because they are indefinite, lack written description, and/or are not enabled.

8

9

### FOURTH AFFIRMATIVE DEFENSE

*(Non-infringement of the '954 patent)*

10

11

Epic has not infringed, and will not infringe, directly or indirectly, literally or under the doctrine of equivalents, any valid and enforceable claim of the '954 patent.

12

13

### FIFTH AFFIRMATIVE DEFENSE

*(Invalidity of the '157 patent)*

14

15

16

17

18

One or more of the claims of the '157 patent are invalid under 35 U.S.C. §§ 102 and/or 103 as anticipated and/or obvious in view of existing prior art.  Further, one or more of the claims the '157 patent fail to meet the requirements of 35 U.S.C. § 101.  Further, one or more of the claims of the '157 patent fail to meet the requirements of 35 U.S.C. § 112, including because they are indefinite, lack written description, and/or are not enabled.

19

20

### SIXTH AFFIRMATIVE DEFENSE

*(Non-infringement of the '157 patent)*

21

22

Epic has not infringed, and will not infringe, directly or indirectly, literally or under the doctrine of equivalents, any valid and enforceable claim of the '157 patent.

23

24

### SEVENTH AFFIRMATIVE DEFENSE

*(Invalidity of the '605 patent)*

25

26

27

One or more of the claims of the '605 patent are invalid under 35 U.S.C. §§ 102 and/or 103 as anticipated and/or obvious in view of existing prior art.  Further, one or more of the claims the '605 patent fail to meet the requirements of 35 U.S.C. § 101.  Further, one or more of

28

the claims of the '605 patent fail to meet the requirements of 35 U.S.C. § 112, including because they are indefinite, lack written description, and/or are not enabled.

## EIGHTH AFFIRMATIVE DEFENSE

### *(Non-infringement of the '605 patent)*

Epic has not infringed, and will not infringe, directly or indirectly, literally or under the doctrine of equivalents, any valid and enforceable claim of the '605 patent.

## NINTH AFFIRMATIVE DEFENSE

### *(Prosecution History Estoppel)*

Utherverse is estopped, based on statements, representations, and admissions made in the specification of the patent applications, made during prosecution of the patents applications that led to the Asserted Patents, and/or made during prosecution of related applications, from asserting that the claims of the Asserted Patents are infringed by Epic, or by Epic's products or services, either directly, indirectly, contributorily, through the doctrine of equivalents, or otherwise.  For example, during prosecution of the '605 patent, the applicant distinguished the invention from the prior art by asserting that "the instant invention allows users to participate in *past events* (in other words, travel back in time) and participate in a recorded experience," thus making clear that a playable experience that was not a recording of a past event would not infringe the claims.

## TENTH AFFIRMATIVE DEFENSE

### *(Limitation on Costs)*

Utherverse is not entitled to costs and its costs are limited under 35 U.S.C. § 288.

## ELEVENTH AFFIRMATIVE DEFENSE

### *(Limitation on Damages)*

Utherverse's claims for damages are statutorily limited by 35 U.S.C. § 287, including by Utherverse's failure to comply with the marking statute under 35 U.S.C. § 287.

**TWELFTH AFFIRMATIVE DEFENSE**

*(Invalidity of the '071 Patent[1] for Incorrect Inventorship)*

The '071 patent is invalid under 35 U.S.C. §§ 101, 115(a), 116(a) and (c), and 256(b) for failing to name the correct inventors of the subject matter being patented.  The '071 patent lists only Brian Shuster and Gary Shuster as inventors.  However, aspects of the '071 patent's claims, including the requirements of independent claim 1 that are part of every asserted claim in this case, were in fact conceived and reduced to practice by Robert Flesch and William Andrew as part of contract work that Flesch and Andrew performed for Brian and Gary Shuster's company, Utherverse, Inc.

In particular, Flesch and Andrew conceived of and developed at least the "instancing" functionality that the '071 patent attempts to claim as "modeling . . . a plurality of parallel dimensions in a computer memory," "assigning ones of a plurality of avatars within the computer memory so that each of the plurality of avatars populates a respective one of the parallel dimensions," and thereafter "animating . . . avatars populating different ones of the parallel dimensions."  In 2005, Brian and Gary Shuster contracted with Flesch and Andrew, and their company, Prototerra, Inc., to develop software that Utherverse Digital would attempt to market as the "Red Light Center," an adult-oriented virtual world.  As of that time, the instancing functionality claimed in claim 1 of the '071 patent was already part of the Prototerra codebase that Flesch and Andrew would later try to customize at the direction of Brian and Gary Shuster.  Brian and Gary Shuster had no input into the development of that codebase prior to 2005, did not make any inventive contributions to its instancing aspects after 2005, and did not themselves conceive or reduce to practice claim 1 of the '071 patent.

In 2007, Flesch and Andrew were listed as co-inventors along with Brian and Gary

---

[1] This affirmative defense would also apply to the '954 patent and the '157 patent, each of which was formerly asserted in this case.  There are no live claims with respect to the '954 patent or the '157 patent as of April 20, 2023, when the Court granted the parties' stipulated motion to dismiss without prejudice Utherverse's infringement claims as to those patents. Dkt. No. 199.  Should any claims with respect to the '954 patent or the '157 patent be revived, Epic would assert this affirmative defense with respect to those patents.

Shuster on provisional patent application no. 60/893,531, to which the '071 patent claims priority. In 2008, Flesch and Andrew were listed as co-inventors on two applications that claimed priority to the '531 provisional application and whose specifications are substantially identical to the '071 patent specification: (1) Canadian application no. CA2685353; and (2) PCT patent application no. WO/2008/109798. However, in 2009, after the Shusters were unable to reach a deal with Flesch and Andrew to share rights in the intellectual property arising out of their joint development efforts, they filed the application that issued as the '071 patent without listing Flesch and Andrew as inventors. In 2010 they filed a false affidavit with the Canadian Intellectual Property Office to remove Flesch and Andrew as inventors from the Canadian application, claiming that they had been identified in error. However, there had been no error. Flesch and Andrew were correctly listed on the provisional, Canadian, and PCT applications, and the '071 patent is invalid for omitting them.

### THIRTEENTH AFFIRMATIVE DEFENSE

### (Unenforceability of the '071 Patent[2] for Inequitable Conduct)

The '071 Patent is unenforceable for inequitable conduct because Brian and Gary Shuster deliberately misled the USPTO with respect to the correct inventorship of the '071 Patent. In particular, Brian and Gary Shuster lied to the USPTO when they filed U.S. Patent Application No. 12/554,744 ("the '744 Application") on September 4, 2009 without listing Robert Flesch and William Andrew as joint inventors. Brian and Gary Shuster also did not correct the inventorship prior to September 25, 2012 when the '071 patent issued from the '744 Application.

**The omission of Robert Flesch and William Andrew was false.** Flesch and Andrew

---

[2] This affirmative defense would also apply to the '954 patent and the '157 patent, each of which was formerly asserted in this case. There are no live claims with respect to the '954 patent or the '157 patent as of April 20, 2023, when the Court granted the parties' stipulated motion to dismiss without prejudice Utherverse's infringement claims as to those patents. Dkt. No. 199. Should any claims with respect to the '954 patent or the '157 patent be revived, Epic would assert this affirmative defense with respect to those patents.

conceived of and developed[3] at least the "instancing" functionality that the '071 patent attempts to claim as "modeling . . . a plurality of parallel dimensions in a computer memory," "assigning ones of a plurality of avatars within the computer memory so that each of the plurality of avatars populates a respective one of the parallel dimensions," and thereafter "animating . . . avatars populating different ones of the parallel dimensions."  In 2005, Brian and Gary Shuster contracted with Flesch and Andrew, and their company, Prototerra, Inc., to develop software that Utherverse Digital would attempt to market as the "Red Light Center," an adult-oriented virtual world.  As of that time, the instancing functionality claimed in claim 1 of the '071 patent was already part of the Prototerra codebase that Flesch and Andrew would later try to customize at the direction of Brian and Gary Shuster.  Brian and Gary Shuster had no input into the development of that codebase prior to 2005, did not make any inventive contributions to its instancing aspects after 2005, and did not themselves conceive or reduce to practice claim 1 of the '071 patent.

**The omission of Robert Flesch and William Andrew was material.**  The naming of the correct inventors is a condition of patentability under 35 U.S.C. §§ 101, 115, and 116, as well as pre-AIA 35 U.S.C. § 102(f).  The obfuscation of the true inventors of subject matter sought to be patented is material to patentability for inequitable conduct purposes.  *PerSeptive Biosystems, Inc. v. Pharmacia Biotech, Inc.*, 225 F.3d 1315, 1322 (Fed. Cir. 2000).  Information concerning Flesch and Andrew's contributions to the subject matter claimed in the '071 patent would have caused a reasonable examiner to refuse to issue a patent unless inventorship was corrected, per 35 U.S.C. § 256.

**The omission of Robert Flesch and William Andrew was made with intent to deceive the USPTO.**  In 2007, Flesch and Andrew were listed as co-inventors along with Brian and Gary Shuster on provisional patent application no. 60/893,531, to which the '071 patent claims

---

[3] Epic makes these allegations without asserting that Flesch and Andrew were the first to do instancing, and without prejudice to Epic's claim that the '071 patent is invalid under 35 U.S.C. §§ 102 and 103.

1  priority.  In 2008, Flesch and Andrew were listed as co-inventors on two applications submitted

2  by Ideaflood, Inc. (a company controlled by Brian Shuster and Gary Shuster) that claimed

3  priority to the '531 provisional application and whose specifications are substantially identical to

4  the '071 patent specification: (1) Canadian application no. CA2685353; and (2) PCT patent

5  application no. WO/2008/109798.  As Ideaflood's counsel would later represent in an affidavit

6  submitted to the Canadian Intellectual Property Office in support of its Canadian application, the

7  determination that Flesch and Andrew should be listed as inventors was made by Brian Shuster.

8  In 2009, Gary Shuster attempted to reach a deal with Flesch that would result in Flesch and

9  Andrew assigning their rights in any issued patent to Utherverse Digital or another joint entity,

10  noting that the PCT application was "a core one for more than one company."  After Flesch

11  proved unwilling to reach an arrangement that would satisfy Gary Shuster in 2009, the Shusters

12  filed the '744 Application that September deliberately omitting Flesch and Andrew as inventors.

13  Five months later, in February 2010, Brian and Gary Shuster also filed, through counsel for

14  Ideaflood, a false affidavit with the Canadian Intellectual Property Office to remove Flesch and

15  Andrew as inventors from the Canadian application, claiming that they had been identified in

16  error.  The omission of Flesch and Andrew from the '744 application, and the affidavit seeking

17  to remove them from the Canadian application, were filed not because there had been a bona fide

18  error in identifying them as inventors but, instead, because Brian and Gary Shuster had not been

19  able to secure their portion of the rights to the claimed inventions under terms acceptable to them

20  and instead decided to simply remove their names from the pending Canadian application and

21  future applications to claim total ownership.

22      As further evidence that Brian and Gary Shuster omitted Flesch and Andrew from the

23  '744 Application with intent to deceive the PTO, in 2020 Brian and Gary Shuster paid Flesch

24  and Andrew $60,000 each in order to sign declarations "confirming" that they "did not

25  contribute to any of the patentable disclosure either currently claimed in or that can be

26  subsequently claimed in" the applications to which the '071 Patent claims priority.  Brian and

27  Gary Shuster made this inducement because they were then attempting to sell the patent portfolio

28

that included the '071 Patent, and the prospective buyer had flagged a potential gating issue concerning inventorship.  The $60,000 per declarant was supposedly paid for "consulting work" to be performed for Utherverse, Inc. and Utherverse Digital, but neither Flesch nor Andrew have performed any such "consulting work" since the signing of the declarations, nor have they been asked to do so.  Flesch and Andrew signed the declarations after conducting only a cursory review of the relevant patent applications and did not consult counsel despite having no understanding of what constitutes a "patentable disclosure" that can be claimed in a current or future patent application.

The above affirmative, egregious misconduct constitutes inequitable conduct rendering the patent unenforceable in litigation.  *PerSeptive Biosystems, Inc. v. Pharmacia Biotech, Inc.*, 225 F.3d 1315, 1322 (Fed. Cir. 2000); *Advanced Magnetic Closures, Inc. v. Rome Fastener Corp.*, 607 F.3d 817, 830 (Fed. Cir. 2010).

## COUNTERCLAIMS

Epic Gaming, Inc., by and through its undersigned counsel, brings these counterclaims against Utherverse Gaming LLC and alleges as follows:

### I.   NATURE OF THE ACTION

1.    Epic brings these counterclaims for declaratory judgment of invalidity and non-infringement of United States Patent Nos. 8,276,071 (the "'071 Patent"), 8,812,954 (the "'954 Patent"), 9,123,157 (the "'157 Patent"), and 9,724,605 (the "'605 Patent") (collectively, the "Asserted Patents"), arising pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, et seq. and the patent laws of the United States, 35 U.S.C. § 1, et seq.

### II.   THE PARTIES

2.    Counterclaim-Plaintiff Epic Gaming, Inc. ("Epic") is corporation organized and existing under the laws of State of Maryland, with its principal place of business at 620 Crossroads Boulevard, Cary, North Carolina.

3.      Upon information and belief, Counterclaim-Defendant Utherverse Gaming LLC ("Utherverse") is a Delaware limited liability company with a place of business at 1740 Broadway, 15th Floor, New York, New York, 10019.

## III.      JURISDICTION AND VENUE

4.      This action arises under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, and under the patent laws of the United States, 35 U.S.C. §§ 1 et seq.

5.      This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331, 1338(a), and 2201(a).

6.      This Court has personal jurisdiction over Utherverse because it has consented and submitted itself to such jurisdiction by filing claims for patent infringement of the Asserted Patents in this district.

7.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and § 1400 because a substantial part of the events giving rise to these counterclaims, including the filing of the underlying case against Epic, occurred in this District.

## IV.      COUNTERCLAIMS

### FIRST COUNTERCLAIM
### (Non-Infringement of U.S. Patent No. 8,276,071)

8.      Epic incorporates herein by reference the contents of each of the preceding paragraphs of its Counterclaims.

9.      Utherverse has asserted claims against Epic for infringement of the '071 patent, creating a valid and justiciable controversy within the meaning of 28 U.S.C. § 2201.  In particular, Utherverse has accused certain events hosted by Epic's videogame Fortnite, including events featuring Travis Scott, Marshmello, and a Star Wars trailer premiere (the "Fortnite Events"), of infringing the '071 patent.

10.     Epic has not infringed and does not infringe any claim of the '071 patent, either directly or indirectly, literally or under the doctrine of equivalents.

11.     Epic does not infringe any claim of the '071 patent because the Fortnite Events do not practice at least the following '071 claim limitations: (1) "modeling . . . a plurality of parallel dimensions in a computer memory" and equivalent variations thereof; (2) "limits that are defined by at least one model of a three dimensional object"; (3) "a unique subset of the plurality of avatars"; (4) "so as to prevent over-population of any one of the parallel dimensions by avatars" and equivalent variations thereof; (5) a "computer" and "computer memory"; (6) "at least a portion of each of the plurality of parallel instances and avatars populated therein"; and (7) a "common space".

12.     Epic does not infringe any method claim of the '071 patent because Amazon Web Services, a third party, performs at least one step in each claimed method, and Epic does not direct and control Amazon Web Services.

13.     Epic does not infringe any system claim of the '071 patent because it does not make, use, sell, offer to sell, import, or otherwise make available any system that performs all of the required steps.

14.     Epic does not induce infringement of the '071 patent because: (1) no relevant party directly infringes or infringed the '071 patent; (2) Epic does not and did not encourage any party to use the Fortnite Events in a manner that infringes the '071 patent; and (3) Epic does not and did not have specific intent to induce infringement of the '071 patent.

15.     Epic does not contribute to infringement of the '071 patent because: (1) no relevant party directly infringes or infringed the '071 patent using Epic's software; (2) Epic did not have knowledge of the '071 patent until Utherverse filed its complaint; (3) Epic did not have knowledge of infringement of the '071 patent at any relevant time; and (4) the Fortnite Events have substantial non-infringing uses.

16.     A judicial determination of non-infringement is necessary and appropriate so that Epic may ascertain its rights regarding the '071 patent.

## SECOND COUNTERCLAIM
### (Invalidity of U.S. Patent No. 8,276,071)

17.     Epic incorporates herein by reference the contents of each of the preceding paragraphs of its Counterclaims.

18.     The claims of the '071 patent are invalid for failing to satisfy one or more of the conditions of patentability of Title 35 of the United States Code, including, but not limited to, 35 U.S.C. §§ 102 and/or 103 as anticipated and/or obvious in view of existing prior art; 35 U.S.C. § 101 as failing to recite patent-eligible subject matter, and 35 U.S.C. § 112, as the claims are indefinite, lack written description, and/or are not enabled.

19.     In particular, the claims of the '071 patent are anticipated and/or obvious in view of, for example, U.S. Patent No. 9,555,334 ("Bernard"); prior art publications "Learning Through Game Modding" by Magy El-Nasr, "Network Software Architectures for Real-Time Massively-Multiplayer Online Games" by Roger McFarlane, "Massive Multiplayer Online Game Architectures" by Martijn Moraal, "Scaling Online Games on the Grid" by Jens Müller, and "Enabling Player-Created Online Worlds with Grid Computing and Streaming" by Philip Rosedale; and video game systems Guild Wars, World of Warcraft, and Second Life.

20.     The claims of the '071 patent are invalid under 35 U.S.C. § 101 because they are directed to the abstract idea of grouping players of a multiplayer game into duplicate environments to prevent overpopulation.  The asserted claims do not specify any novel technical means of achieving that goal, including any novel server or network architecture or any novel programming to permit the creation of multiple parallel dimensions of a virtual world with the characteristics and in the circumstances specified in the claims.

21.     The claims of the '071 patent are invalid under 35 U.S.C. § 112 because, for example, the specification of the '071 patent fails to enable a person of skill in the art to practice certain claim limitations, including the "common space" and "template space" limitations, and fails to provide objective boundaries for at least the "display including at least a portion of each

of the plurality of parallel dimensions and avatars populated therein" and "modeling occupancy" limitations.

22.    The '071 patent is invalid under 35 U.S.C. §§ 101, 115(a), 116(a) and (c), and 256(b) for failing to name the correct inventors of the subject matter being patented.[4]   The '071 patent lists only Brian Shuster and Gary Shuster as inventors.  However, aspects of the '071 patent's claims, including the requirements of independent claim 1 that are part of every asserted claim in this case, were in fact conceived and reduced to practice by Robert Flesch and William Andrew as part of contract work that Flesch and Andrew performed for Brian and Gary Shuster's company, Utherverse, Inc.

23.    In particular, Flesch and Andrew conceived of and developed[5] at least the "instancing" functionality that the '071 patent attempts to claim as "modeling . . . a plurality of parallel dimensions in a computer memory," "assigning ones of a plurality of avatars within the computer memory so that each of the plurality of avatars populates a respective one of the parallel dimensions," and thereafter "animating . . . avatars populating different ones of the parallel dimensions."  In 2005, Brian and Gary Shuster contracted with Flesh and Andrew, and their company, Prototerra, Inc., to develop software that Utherverse Digital would attempt to market as the "Red Light Center," an adult-oriented virtual world.  As of that time, the instancing functionality claimed in claim 1 of the '071 patent was already part of the Prototerra codebase that Flesch and Andrew would later try to customize at the direction of Brian and Gary Shuster.  Brian and Gary Shuster had no input into the development of that codebase prior to 2005, did not

---

[4] This counterclaim would also apply to the '954 patent and the '157 patent, each of which was formerly asserted in this case.  There are no live claims with respect to the '954 patent or the '157 patent as of April 20, 2023, when the Court granted the parties' stipulated motion to dismiss without prejudice Utherverse's infringement claims as to those patents.  Dkt. No. 199.  Should any claims with respect to the '954 patent or the '157 patent be revived, Epic would assert this counterclaim with respect to those patents.

[5] Epic makes these allegations without asserting that Flesch and Andrew were the first to do instancing, and without prejudice to Epic's claim that the '071 patent is invalid under 35 U.S.C. §§ 102 and 103.

make any inventive contributions to its instancing aspects after 2005, and did not themselves conceive or reduce to practice claim 1 of the '071 patent.

24.     In 2007, Flesch and Andrew were listed as co-inventors along with Brian and Gary Shuster on provisional patent application no. 60/893,531, to which the '071 patent claims priority.  In 2008, Flesch and Andrew were listed as co-inventors on two applications that claimed priority to the '531 provisional application and whose specifications are substantially identical to the '071 patent specification: (1) Canadian application no. CA2685353; and (2) PCT patent application no. WO/2008/109798.  However, in 2009, after the Shusters were unable to reach a deal with Flesch and Andrew to share rights in the intellectual property arising out of their joint development efforts, they filed the application that issued as the '071 patent without listing Flesch and Andrew as inventors.  In 2010 they filed a false affidavit with the Canadian Intellectual Property Office to remove Flesch and Andrew as inventors from the Canadian application, claiming that they had been identified in error.  However, there had been no error.  Flesch and Andrew were correctly listed on the provisional, Canadian, and PCT applications, and the '071 patent is invalid for omitting them.

25.     Epic is entitled to a declaration by the Court that each claim of the '071 patent is invalid.

### THIRD COUNTERCLAIM
### (Non-Infringement of U.S. Patent No. 8,812,954)

26.     Epic incorporates herein by reference the contents of each of the preceding paragraphs of its Counterclaims.

27.     Utherverse has asserted claims against Epic for infringement of the '954 patent, creating a valid and justiciable controversy within the meaning of 28 U.S.C. § 2201.  In particular, Utherverse has accused certain events hosted by Epic's videogame Fortnite, including events featuring Travis Scott, Marshmello, and a Star Wars trailer premiere (the "Fortnite Events"), of infringing the '954 patent.

28.     Epic has not infringed and does not infringe any claim of the '954 patent, either directly or indirectly, literally or under the doctrine of equivalents.

29.     Epic does not infringe any claim of the '954 patent because the Fortnite Events do not practice at least the following '954 claim limitations: (1) "modeling, in a computer memory, multiple parallel instances" and equivalent variations thereof; (2) "multi-dimensional avatars"; (3) "a unique subset of the plurality of avatars"; (4) "generating an additional parallel instance . . . based on detecting an increase in a number of a plurality of client devices" and equivalent variations thereof; (5) a "computer" and "computer memory"; (6) a "common space"; (7) "at least a portion of each of the plurality of parallel instances and avatars populated therein"; and (8) "a communication channel between avatars populating different ones of the plurality of parallel instances."

30.     Epic does not infringe any method claim of the '954 patent because Amazon Web Services, a third party, performs at least one step in each claimed method, and Epic does not direct and control Amazon Web Services.

31.     Epic does not infringe any system claim of the '954 patent because it does not make, use, sell, offer to sell, import, or otherwise make available any system that performs all of the required steps.

32.     Epic does not induce infringement of the '954 patent because: (1) no relevant party directly infringes or infringed the '954 patent; (2) Epic does not and did not encourage any party to use the Fortnite Events in a manner that infringes the '954 patent; and (3) Epic does not and did not have specific intent to induce infringement of the '954 patent.

33.     Epic does not contribute to infringement of the '954 patent because: (1) no relevant party directly infringes or infringed the '954 patent using Epic's software; (2) Epic did not have knowledge of the '954 patent until Utherverse filed its complaint; (3) Epic did not have knowledge of infringement of the '954 patent at any relevant time; and (4) the Fortnite Events have substantial non-infringing uses.

34.     A judicial determination of non-infringement is necessary and appropriate so that Epic may ascertain its rights regarding the '954 patent.

### FOURTH COUNTERCLAIM
### (Invalidity of U.S. Patent No. 8,812,954)

35.     Epic incorporates herein by reference the contents of each of the preceding paragraphs of its Counterclaims.

36.     The claims of the '954 patent are invalid for failing to satisfy one or more of the conditions of patentability of Title 35 of the United States Code, including, but not limited to, 35 U.S.C. §§ 102 and/or 103 as anticipated and/or obvious in view of existing prior art; 35 U.S.C. § 101 as failing to recite patent-eligible subject matter, and 35 U.S.C. § 112, as the claims are indefinite, lack written description, and/or are not enabled.

37.     In particular, the claims of the '954 patent are anticipated and/or obvious in view of, for example, U.S. Patent No. 9,555,334 ("Bernard"); prior art publications "Learning Through Game Modding" by Magy El-Nasr, "Network Software Architectures for Real-Time Massively-Multiplayer Online Games" by Roger McFarlane, "Massive Multiplayer Online Game Architectures" by Martijn Moraal, "Scaling Online Games on the Grid" by Jens Müller, and "Enabling Player-Created Online Worlds with Grid Computing and Streaming" by Philip Rosedale; and video game systems Guild Wars, World of Warcraft, and Second Life.

38.     The claims of the '954 patent are invalid under 35 U.S.C. § 101 because they are directed to the abstract idea of grouping players of a multiplayer game into duplicate environments to prevent overpopulation.  The asserted claims do not specify any novel technical means of achieving that goal, including any novel server or network architecture or any novel programming to permit the creation of multiple parallel dimensions of a virtual world with the characteristics and in the circumstances specified in the claims.

39.     The claims of the '954 patent are invalid under 35 U.S.C. § 112 because, for example, the specification of the '954 patent fails to enable a person of skill in the art to practice certain claim limitations, including the "common space" and "communication channel between

avatars populating different ones of the plurality of parallel instances" limitations, and fails to provide objective boundaries for at least the "display including at least a portion of each of the plurality of parallel dimensions and avatars populated therein," and "multi-dimensional avatar" limitations.

40.     Epic is entitled to a declaration by the Court that each claim of the '954 patent is invalid.

**FIFTH COUNTERCLAIM**
**(Non-Infringement of U.S. Patent No. 9,123,157)**

41.     Epic incorporates herein by reference the contents of each of the preceding paragraphs of its Counterclaims.

42.     Utherverse has asserted claims against Epic for infringement of the '157 patent, creating a valid and justiciable controversy within the meaning of 28 U.S.C. § 2201.  In particular, Utherverse has accused certain events hosted by Epic's videogame Fortnite, including events featuring Travis Scott, Marshmello, and a Star Wars trailer premiere (the "Fortnite Events"), of infringing the '157 patent.

43.     Epic has not infringed and does not infringe any claim of the '157 patent, either directly or indirectly, literally or under the doctrine of equivalents.

44.     Epic does not infringe any claim of the '157 patent including because the Fortnite Events do not practice at least the following '157 claim limitations: (1) "modeling, in a computer memory, multiple parallel instances" and equivalent variations thereof; (2) "multi-dimensional avatars"; (3) "a unique subset of the plurality of avatars"; (4) a "computer" and "computer memory"; (5) a "common space"; and (6) "a communication channel between avatars populating different ones of the plurality of parallel instances."

45.     Epic does not infringe any method claim of the '157 patent because Amazon Web Services, a third party, performs at least one step in each claimed method, and Epic does not direct and control Amazon Web Services.

46.     Epic does not infringe any system claim of the '157 patent because it does not make, use, sell, offer to sell, import, or otherwise make available any system that performs all of the required steps.

47.     Epic does not induce infringement of the '157 patent because: (1) no relevant party directly infringes or infringed the '157 patent; (2) Epic does not and did not encourage any party to use the Fortnite Events in a manner that infringes the '157 patent; and (3) Epic does not and did not have specific intent to induce infringement of the '157 patent.

48.     Epic does not contribute to infringement of the '157 patent because: (1) no relevant party directly infringes or infringed the '157 patent using Epic's software; (2) Epic did not have knowledge of the '157 patent until Utherverse filed its complaint; (3) Epic did not have knowledge of infringement of the '157 patent at any relevant time; and (4) the Fortnite Events have substantial non-infringing uses.

49.     A judicial determination of non-infringement is necessary and appropriate so that Epic may ascertain its rights regarding the '157 patent.

## SIXTH COUNTERCLAIM
### (Invalidity of U.S. Patent No. 9,123,157)

50.     Epic incorporates herein by reference the contents of each of the preceding paragraphs of its Counterclaims.

51.     The claims of the '157 patent are invalid for failing to satisfy one or more of the conditions of patentability of Title 35 of the United States Code, including, but not limited to, 35 U.S.C. §§ 102 and/or 103 as anticipated and/or obvious in view of existing prior art; 35 U.S.C. § 101 as failing to recite patent-eligible subject matter, and 35 U.S.C. § 112, as the claims are indefinite, lack written description, and/or are not enabled.

52.     In particular, the claims of the '157 patent are anticipated and/or obvious in view of, for example, U.S. Patent No. 9,555,334 ("Bernard"); prior art publications "Learning Through Game Modding" by Magy El-Nasr, "Network Software Architectures for Real-Time Massively-Multiplayer Online Games" by Roger McFarlane, "Massive Multiplayer Online Game

1   Architectures" by Martijn Moraal, "Scaling Online Games on the Grid" by Jens Müller, and

2   "Enabling Player-Created Online Worlds with Grid Computing and Streaming" by Philip

3   Rosedale; and video game systems Guild Wars, World of Warcraft, and Second Life.

4       53.    The claims of the '157 patent are invalid under 35 U.S.C. § 101 because they are

5   directed to the abstract idea of grouping players of a multiplayer game into duplicate

6   environments to prevent overpopulation.  The asserted claims do not specify any novel technical

7   means of achieving that goal, including any novel server or network architecture or any novel

8   programming to permit the creation of multiple parallel dimensions of a virtual world with the

9   characteristics and in the circumstances specified in the claims.

10       54.    The claims of the '157 patent are invalid under 35 U.S.C. § 112 because, for

11   example, the specification of the '157 patent fails to enable a person of skill in the art to practice

12   certain claim limitations, including the "common space" and "communication channel between

13   avatars populating different ones of the plurality of parallel instances" limitations, and fails to

14   provide objective boundaries for at least the "multi-dimensional avatars" limitation.

15       55.    Epic is entitled to a declaration by the Court that each claim of the '157 patent is

16   invalid.

17   **SEVENTH COUNTERCLAIM**
**(Non-Infringement of U.S. Patent No. 9,724,605)**

18       56.    Epic incorporates herein by reference the contents of each of the preceding

19   paragraphs of its Counterclaims.

20       57.    Utherverse has asserted claims against Epic for infringement of the '605 patent,

21   creating a valid and justiciable controversy within the meaning of 28 U.S.C. § 2201.  In

22   particular, Utherverse has accused certain events hosted by Epic's videogame Fortnite, including

23   an event featuring Travis Scott (the "Fortnite Events"), of infringing the '605 patent.

24       58.    Epic has not infringed and does not infringe any claim of the '605 patent, either

25   directly or indirectly, literally or under the doctrine of equivalents.

26

27

28

59.     Epic does not infringe any claim of the '605 patent because the Fortnite Events do not practice at least the following '605 claim limitations: (1) "retrieving a recorded experience file from memory, the recorded experience file having been generated by saving an initial scene state and saving subsequent changes . . ."; (2) "playing back the recorded experience file by rendering . . . objects of the initial scene state in the new instance, including one or more avatars, and rendering updates to the initial scene state"; (3) "automatically transporting the one or more avatars to a different new instance of the scene"; (4) "a threshold event . . . compris[ing] when a maximum capacity of avatars has been reached"; (5) a "threshold number of users waiting to view the recorded experience"; and (6) "automatically chang[ing] to a difference scene based upon occurrence of a threshold event."

60.     Epic does not infringe any method claim of the '605 patent because Amazon Web Services, a third party, performs at least one step in each claimed method, and Epic does not direct and control Amazon Web Services.

61.     Epic does not infringe any system claim of the '605 patent because it does not make, use, sell, offer to sell, import, or otherwise make available any system that performs all of the required steps.

62.     Epic does not induce infringement of the '605 patent because: (1) no relevant party directly infringes or infringed the '605 patent; (2) Epic does not and did not encourage any party to use the Fortnite Events in a manner that infringes the '605 patent; and (3) Epic does not and did not have specific intent to induce infringement of the '605 patent.

63.     Epic does not contribute to infringement of the '605 patent because: (1) no relevant party directly infringes or infringed the '605 patent using Epic's software; (2) Epic did not have knowledge of the '605 patent until Utherverse filed its complaint; (3) Epic did not have knowledge of infringement of the '605 patent at any relevant time; and (4) the Fortnite Events have substantial non-infringing uses.

64.     A judicial determination of non-infringement is necessary and appropriate so that Epic may ascertain its rights regarding the '605 patent.

1

2

## EIGHTH COUNTERCLAIM
### (Invalidity of U.S. Patent No. 9,724,605)

3

65.     Epic incorporates herein by reference the contents of each of the preceding

paragraphs of its Counterclaims.

4

5

66.     The claims of the '605 patent are invalid for failing to satisfy one or more of the

conditions of patentability of Title 35 of the United States Code, including, but not limited to,

6

35 U.S.C. §§ 102 and/or 103 as anticipated and/or obvious in view of existing prior art;

7

35 U.S.C. § 101 as failing to recite patent-eligible subject matter, and 35 U.S.C. § 112, as the

8

claims are indefinite, lack written description, and/or are not enabled.

9

67.     In particular, the claims of the '605 patent are anticipated and/or obvious in view

10

of, for example, U.S. Patent No. 9,364,743 ("Miura"); Patent Application Nos. US

11

2008/0268961 ("Brook"), US 2012/0021827 ("Raitt"), and WO 2008/104782 ("Sony"); prior art

12

publications "Applications of Temporal Links: Recording and Replaying Virtual Environments"

13

by Chris Greenhalgh, "Temporal Links: Recording and Replaying Virtual Environments" by

14

Chris Greenhalgh, and "Developing Your Own Replay System" by Cyrille Wagner; and video

15

game systems MASSIVE-3 and Starcraft II.

16

68.     The claims of the '605 patent are invalid under 35 U.S.C. § 101 because they are

17

directed to the abstract idea of replaying an interactive experience in an instanced environment.

18

The asserted claims do not specify any novel technical means of achieving that goal, including

19

any novel server or network architecture or any novel programming to permit replaying an

20

interactive experience in an instanced environment, beyond the recitation of routine,

21

conventional, and plainly non-novel technique of object state recording.  The specification does

22

not recite any challenges inherent in performing object state recording in an instanced

23

environment, and the claims do not recite any solution to any such problem; they simply

24

combine the abstract idea of instancing (including creating a new instance when one fills up)

25

with the abstract idea of replay.

26

27

28

**Morrison & Foerster LLP**, 425 Market Street,
San Francisco, CA, Tel: 415-268-7000

69.     The '605 patent claims are invalid under 35 U.S.C. § 112 because, for example, the specification of the '605 patent (1) fails to enable a person of skill in the art to practice certain claim limitations; and (2) fails to provide objective boundaries for certain claim limitations, including, with respect to both (1) and (2), the "automatically transporting the one or more avatars to a different new instance of the scene, upon occurrence of a threshold event" limitation.

70.     Epic is entitled to a declaration by the Court that each claim of the '605 patent is invalid.

### NINTH COUNTERCLAIM
### (Unenforceability of U.S. Patent No. 8,276,071[6] for Inequitable Conduct)

71.     The '071 Patent is unenforceable for inequitable conduct because Brian and Gary Shuster deliberately misled the USPTO with respect to the correct inventorship of the '071 patent.  In particular, Brian and Gary Shuster lied to the USPTO when they filed U.S. Patent Application No. 12/554,744 ("the '744 Application") on September 4, 2009 without listing Robert Flesch and William Andrew as joint inventors.  Brian and Gary Shuster also did not correct the inventorship prior to September 25, 2012 when the '071 patent issued from the '744 Application.

72.     **The omission of Robert Flesch and William Andrew was false.**  Flesch and Andrew conceived of and developed[7] at least the "instancing" functionality that the '071 patent attempts to claim as "modeling . . . a plurality of parallel dimensions in a computer memory," "assigning ones of a plurality of avatars within the computer memory so that each of the plurality

---

[6] This counterclaim would also apply to the '954 patent and the '157 patent, each of which was formerly asserted in this case.  There are no live claims with respect to the '954 patent or the '157 patent as of April 20, 2023, when the Court granted the parties' stipulated motion to dismiss without prejudice Utherverse's infringement claims as to those patents. Dkt. No. 199.  Should any claims with respect to the '954 patent or the '157 patent be revived, Epic would assert this counterclaim with respect to those patents.

[7] Epic makes these allegations without asserting that Flesch and Andrew were the first to do instancing, and without prejudice to Epic's claim that the '071 patent is invalid under 35 U.S.C. §§ 102 and 103.

1   of avatars populates a respective one of the parallel dimensions," and thereafter "animating . . .

2   avatars populating different ones of the parallel dimensions."  In 2005, Brian and Gary Shuster

3   contracted with Flesch and Andrew, and their company, Prototerra, Inc., to develop software that

4   Utherverse Digital would attempt to market as the "Red Light Center," an adult-oriented virtual

5   world.  As of that time, the instancing functionality claimed in claim 1 of the '071 patent was

6   already part of the Prototerra codebase that Flesch and Andrew would later try to customize at

7   the direction of Brian and Gary Shuster.  Brian and Gary Shuster had no input into the

8   development of that codebase prior to 2005, did not make any inventive contributions to its

9   instancing aspects after 2005, and did not themselves conceive or reduce to practice claim 1 of

10   the '071 patent.

11         73.    **The omission of Robert Flesch and William Andrew was material.**  The

12   naming of the correct inventors is a condition of patentability under 35 U.S.C. §§ 101, 115, and

13   116, as well as pre-AIA 35 U.S.C. § 102(f).  The obfuscation of the true inventors of subject

14   matter sought to be patented is material to patentability for inequitable conduct purposes.

15   *PerSeptive Biosystems, Inc. v. Pharmacia Biotech, Inc.*, 225 F.3d 1315, 1322 (Fed. Cir. 2000).

16   Information concerning Flesch and Andrew's contributions to the subject matter claimed in the

17   '071 patent would have caused a reasonable examiner to refuse to issue a patent unless

18   inventorship was corrected, per 35 U.S.C. § 256.

19         74.    **The omission of Robert Flesch and William Andrew was made with intent to**

20   **deceive the USPTO.**  In 2007, Flesch and Andrew were listed as co-inventors along with Brian

21   and Gary Shuster on provisional patent application no. 60/893,531, to which the '071 patent

22   claims priority.  In 2008, Flesch and Andrew were listed as co-inventors on two applications

23   submitted by Ideaflood, Inc. (a company controlled by Brian Shuster and Gary Shuster) that

24   claimed priority to the '531 provisional application and whose specifications are substantially

25   identical to the '071 patent specification: (1) Canadian application no. CA2685353; and (2) PCT

26   patent application no. WO/2008/109798.  As Ideaflood's counsel would later represent in an

27   affidavit submitted to the Canadian Intellectual Property Office in support of its PCT application,

28

the determination that Flesch and Andrew should be listed as inventors was made by Brian

Shuster.  In 2009, Gary Shuster attempted to reach a deal with Flesch that would result in Flesch

and Andrew assigning their rights in any issued patent to Utherverse Digital or another joint

entity, noting that the PCT application was "a core one for more than one company."  After

Flesch proved unwilling to reach an arrangement that would satisfy Gary Shuster in 2009, the

Shusters filed the '744 Application that September, deliberately omitting Flesch and Andrew as

inventors.  Five months later, in February 2010, Brian and Gary Shuster also filed, through

counsel for Ideaflood, a false affidavit with the Canadian Intellectual Property Office to remove

Flesch and Andrew as inventors from the Canadian application, claiming that they had been

identified in error.  The omission of Flesch and Andrew from the '744 Application, and the

affidavit seeking to remove them from the Canadian application, were filed not because there

had been a bona fide error in identifying them as inventors but, instead, because Brian and Gary

Shuster had not been able to secure their portion of the rights to the claimed inventions under

terms acceptable to them and instead decided to simply remove their names from the pending

Canadian application and future applications to claim total ownership.

75.    As further evidence that Brian and Gary Shuster omitted Flesch and Andrew from

the '744 Application with intent to deceive the PTO, in 2020 Brian and Gary Shuster paid Flesch

and Andrew $60,000 each in order to sign declarations "confirming" that they "did not

contribute to any of the patentable disclosure either currently claimed in or that can be

subsequently claimed in" the applications to which the '071 Patent claims priority.  Brian and

Gary Shuster made this inducement because they were then attempting to sell the patent portfolio

that included the '071 Patent, and the prospective buyer had flagged a potential gating issue

concerning inventorship.  The $60,000 per declarant was supposedly paid for "consulting work"

to be performed for Utherverse, Inc. and Utherverse Digital, but neither Flesch nor Andrew have

performed any such "consulting work" since the signing of the declaration, nor have they been

asked to do so.  Flesch and Andrew signed the declarations after conducting only a cursory

review of the relevant patent applications and did not consult counsel despite having no

understanding of what constitutes a "patentable disclosure" that can be claimed in a current or future patent application.

76.     The above affirmative, egregious misconduct constitutes inequitable conduct rendering the patent unenforceable in litigation.  *PerSeptive Biosystems, Inc. v. Pharmacia Biotech, Inc.*, 225 F.3d 1315, 1322 (Fed. Cir. 2000); *Advanced Magnetic Closures, Inc. v. Rome Fastener Corp.*, 607 F.3d 817, 830 (Fed. Cir. 2010).  A judicial determination of unenforceability due to inequitable conduct is necessary and appropriate so that Epic may ascertain its rights regarding the '071 patent.

## V.     PRAYER FOR RELIEF

WHEREFORE, Epic prays for the following relief:

    a.   A judgment declaring non-infringement of the Asserted Patents;

    b.   A judgment declaring that the Asserted Patents are invalid;

    c.   A judgment declaring that this case is exceptional pursuant to 35 U.S.C. § 285 and an award to Epic of its costs and attorneys' fees; and

    d.   Such other relief as the Court deems just and proper.

## VI.     JURY DEMAND

Epic demands a jury trial on all issues and claims so triable.

1    Dated:  August 3, 2023

2                                              By:  */s/ Eugene Novikov*
                                                   _____
3                                                  Eugene Novikov (*pro hac vice*)
                                                   ENovikov@mofo.com
4                                                  Timothy C. Saulsbury (*pro hac vice*)
                                                   Tsaulsbury@mofo.com
5                                                  Eric C. Wiener (*pro have vice*)
                                                   Ewiener@mofo.com
6                                                  Bethany D. Bengfort (*pro hac vice*)
                                                   Bbengfort@mofo.com
7                                                  Matthaeus Martino-Weinhardt (*pro hac vice*)
                                                   MmartinoWeinhardt@mofo.com
8                                                  MORRISON & FOERSTER LLP
                                                   425 Market Street
9                                                  San Francisco, CA 94105
                                                   Telephone:    415-268-7000
10                                                 Facsimile:    415-268-7522

11                                                 Katherine E. McNutt (*pro hac vice*)
                                                   KmcNutt@mofo.com
12                                                 MORRISON & FOERSTER LLP
                                                   707 Wilshire Boulevard, Suite 6000
13                                                 Los Angeles, CA 90017-3543
                                                   Telephone:    213-892-5200
14                                                 Facsimile:    213-892-5454

15                                                 Mark A. Lemley (*pro hac vice*)
                                                   mlemley@lex-lumina.com
16                                                 LEX LUMINA PLLC
                                                   745 Fifth Avenue, Suite 500
17                                                 New York, NY 10151
                                                   Telephone: (646) 898-2055

18

19   Dated:  August 3, 2023              By:    */s/ Antoine M. McNamara*
                                                _____
20                                              Antoine M. McNamara (WSBA No. 41701)
                                                AMcNamara@perkinscoie.com
21                                              Christina J. McCullough (WSBA No. 47147)
                                                CMcCullough@perkinscoie.com
22                                              PERKINS COIE LLP
                                                1201 Third Avenue, Suite 4900
23                                              Seattle, WA 98101-3099
                                                Telephone:    206-359-8000
24                                              Facsimile:    206-359-9000

25                                              *Attorneys for Defendant Epic Games, Inc.*

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 3, 2023 the within document was filed with the Clerk of the Court using CM/ECF which will send notification of such filing to the attorneys of record in this case.

*Eugene Novikov*
EUGENE NOVIKOV