THE HONORABLE RICARDO S. MARTINEZ

THE HONORABLE THERESA L. FRICKE

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WASHINGTON

AT SEATTLE

| | |
|---|---|
| UTHERVERSE GAMING LLC,<br><br>    Plaintiff,<br><br> v.<br><br>EPIC GAMES, INC.,<br><br>    Defendant. | Case No. 2:21-cv-00799-RSM-TLF<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO STAY PENDING *EX PARTE* REEXAMINATION**<br><br>**ORAL ARGUMENT REQUESTED**<br><br>Noting Date: October 20, 2023 |

PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION TO STAY
CASE NO. 2:21-CV-00799-RSM-TLF

POLSINELLI
1000 SECOND AVENUE, SUITE 3500
SEATTLE, WA 98104 • Tel: 206-393-5400

# TABLE OF CONTENTS

Page

I. INTRODUCTION ............................................................................................................. 1

II. RELEVANT PROCEDURAL HISTORY ....................................................................... 2

    A. History of the Litigation............................................................................................ 2

    B. Epic Concealed its Intentions from the Court .......................................................... 3

III. LEGAL STANDARD....................................................................................................... 4

IV. ARGUMENT ................................................................................................................... 5

    A. The Advanced Stage of the Case Does Not Warrant a Stay .................................... 5

    B. *Ex Parte* Reexamination Will Not Simplify These Proceedings ........................... 7

    C. Utherverse Gaming Would be Prejudiced by Epic's Dilatory Motives ................... 9

V. CONCLUSION............................................................................................................... 11



# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Avago Technologies Fiber IP (Singapore) Pte. Ltd. v. IPtronics Inc.*,
  No. 10-cv-02863-EJD, 2011 WL 3267768 (N.D. Cal. July 28, 2011) ................................... 9

*Bio-Rad Lab. v. 10X Genomics, Inc.*
  C.A. No. 18-1679-RGA, 2020 WL 2849989 (D. Del. June 2, 2020) ....................................... 6

*Comcast Cable Communications Corp., LLC v. Finisar Corp.*,
  No. C 06-04206 WHA, 2007 WL 1052883 (N.D. Cal. Apr. 5, 2007) ................................... 11

*Dietich v. Boeing Co.*,
  14 F.4th 1089 (9th Cir. 2021) ............................................................................................... 11

*Ecolab, Inc. v. FMC Corp.*,
  No. 05-CV-831(JMR/FLN), 2007 WL 1582677 (D. Minn. May 30, 2007) .......................... 6

*Ethicon, Inc. v. Quigg*,
  849 F.2d 1422 (Fed. Cir. 1988) ............................................................................................. 4

*F5 Networks, Inc. v. A10 Networks Inc.*,
  No. C 10-654MJP, 2010 WL 5138375 (W.D. Wash. Dec. 10, 2010) ........................... 5, 9, 11

*Hunts Point Ventures Inc. v. Wors*,
  No. C 15-979 MJP, 2015 WL 12631549 (W.D. Wash. Oct. 16, 2015) .................................. 4

*Implicit Networks, Inc. v. Advanced Micro Devices, Inc.*,
  No. C 08-184JLR, 2009 WL 357902 (W.D Wash. Feb. 9, 2009) .......................................... 5

*Interwoven, Inc. v. Vertical Computer Systems, Inc.*,
  No. C 10-04645 RS, 2012 WL 761692 (N.D. Cal. Mar. 8, 2012) ...................................... 6, 9

*In re Trans Texas Holdings Corp.*,
  498 F.3d 1290 (Fed. Cir. 2007) ............................................................................................. 2

*Kahn v. Gen. Motors Corp.*,
  889 F.2d 1078 (Fed. Cir. 1989) ........................................................................................... 11

*Landis v. North American Co.*,
  299 U.S. 218 (1936) ............................................................................................................... 4

*Lennon Image Technologies, LLC v. Macy's Retail Holdings, Inc.*,
  No. 2:13-cv-235-JRG, 2014 WL 4652117 (E.D. Tex. September 18, 2014) ....................... 11

PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION TO STAY
- ii
CASE NO. 2:21-CV-00799-RSM-TLF

POLSINELLI
1000 SECOND AVENUE, SUITE 3500
SEATTLE, WA 98104 • Tel: 206-393-5400

*New World Medical Inc. v. MicroSurgical Technology, Inc.*,
    No. 2:20-cv-01621-RAJ-BAT, 2021 WL 952456 (W.D. Wash. Feb. 18, 2021).
    Docket ...................................................................................................................4, 5

*Olean Wholesale Grocery Coop. v. Bumble Bee Foods*,
    993 F.3d 774 (9th Cir. 2021) ...........................................................................................8

*Oracle Corp. v. Parallel Networks, LLP*,
    Civ. No. 06-414-SLR, 2010 WL 3613851 (D. Del. Sept. 8, 2010) ...............................10

*Polaris Innovations Ltd. v. Kingston Tech. Co.*,
    No. 8:16-cv-00300-CJC-RAO, 2016 WL 7496740 (C.D. Cal. Nov. 17, 2016) ..............5

*Realtime Data, LLC v. Rackspace US, Inc.*,
    No. 6:16-cv-00961-RWS-JDL, 2017 WL 772654 (E.D. Tex. Feb. 28, 2017) ................5

*Telemac Corp. v. Teledigital, Inc.*,
    450 F. Supp. 2d 1107 (N.D. Cal. 2006) ..........................................................................9

*ThroughPuter, Inc. v. Microsoft Corp.*,
    No. 2:22-CV-344-BJR, 2022 WL 2498754 (W.D. Wash. June 1, 2022) .....................10

*In re Trans Texas Holdings Corp.*,
    498 F.3d 1290 (Fed. Cir. 2007) .......................................................................................2

*Universal Electronics, Inc. v. Universal Remote Control, Inc.*,
    943 F. Supp. 2d 1028 (C.D. Cal. 2013) ..........................................................................6

*WSOU Invs., LLC v. F5 Networks, Inc.*,
    No. 2:20-CV-01878-BJR, 2022 WL 766997 (W.D. Wash. Mar. 14, 2022) .................10

**Statutes**

35 U.S.C. § 134 ........................................................................................................................9

35 U.S.C. § 305 ........................................................................................................................7

35 U.S.C. § 306 ........................................................................................................................9

35 U.S.C. § 315(b) ...................................................................................................................8

**Other Authorities**

37 C.F.R. § 1.550 ....................................................................................................................7

Fed. R. Civ. P. 1 ......................................................................................................................5

PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION TO STAY
- iii
CASE NO. 2:21-CV-00799-RSM-TLF

POLSINELLI
1000 SECOND AVENUE, SUITE 3500
SEATTLE, WA 98104 • Tel: 206-393-5400

## I. **INTRODUCTION**

On March 14, 2023, more than twenty-one months after Utherverse Gaming LLC ("Utherverse Gaming") brought this action, Defendant Epic Games, Inc. ("Epic") sought *ex parte* reexamination of one of the two patents-in-suit: U.S. patent number 8,276,071 (the "'071 Patent"). *See* DKT. 318 (EPIC'S MOTION TO STAY) at 2:12-14. Epic then waited seven *more* months until October 4, 2023, to move the Court to stay this litigation pending the outcome of that reexamination. *See generally id.* The dilatory timing of Epic's motion speaks volumes.

Oppositions to *Daubert* motions and motions for summary judgment are actively being drafted by *both* parties. *See generally* DKT. 294, 300, 305, 314. Opposition and reply briefing come due October 20 and November 10; oral argument is scheduled for November 21. DKT. 291; *see also* CLERK'S E-MAIL NOTICE OF SEPT. 8, 2023.[1] Epic's belated motion also comes after extensive motion practice brought or compelled by Epic at the close of fact discovery. This included a motion to strike portions of Utherverse Gaming's expert report on infringement (DKT. 231), motion practice resulting from Epic's refusal to receive previously agreed upon supplemental infringement contentions (DKT. 209), an effort to pierce the attorney-client privilege of two third parties (DKT. 205), and a motion to amend the pleadings (DKT. 240). The Court invested substantial time hearing oral argument and issuing extensive orders for each of those motions. *See* DKT. 277, 279, 281.

Epic's untimely filibuster also comes despite *numerous* opportunities to advise the Court of not only the reexamination but the intent to seek a stay. The motion is brought after Epic suffered losses in its prior motion practice and after unsuccessful mediation efforts. The motion is brought with the possibility of Epic's invalidity case being set aside for evidentiary failures by its expert. A stay would upend the extensive (and expensive) efforts of the parties and the Court. The Court should see this maneuver for what it is: a last-gasp gambit to bring this case to a halt.

---

[1] Utherverse Gaming requests oral argument on the present motion concurrent with DKT. 294, 300, 305, and 314 (*i.e.,* on November 21, 2023).



Epic's Motion to Stay should be denied.

## II. RELEVANT PROCEDURAL HISTORY

### A. History of the Litigation

Utherverse Gaming filed this action on June 11, 2021. DKT. 1. Utherverse Gaming served its DISCLOSURE OF ASSERTED CLAIMS AND INFRINGEMENT CONTENTIONS on November 2, 2021. *See* EX. A (INITIAL INFRINGEMENT CONTENTIONS) (claim charts omitted). Epic served its initial invalidity contentions on December 1, 2021.[2] Epic was thus aware of the invalidity arguments now taken in reexamination fifteen months prior to seeking reexam and twenty-two months prior to seeking a stay.

The parties later engaged in claim construction, including submission of a JOINT CLAIM CONSTRUCTION AND PREHEARING STATEMENT on March 3, 2022. DKT. 63. The parties lodged extensive briefing in anticipation of the August 16, 2022 *Markman* hearing. DKT. 72, 76, 81, 83 (BRIEFING); DKT. 111 (MINUTE ENTRY OF HEARING). The Court issued its claim construction orders on October 20 and November 15, 2022. DKT. 133, 146. Epic was thus aware of the interpretation of the claims for which it sought reexamination as much as a year prior to seeking reexamination and nineteen months prior to seeking a stay.[3]

The Court entered an order on October 15, 2022, setting operative deadlines, including disclosure of expert reports and the completion of all discovery. DKT. 131. Utherverse Gaming faced extensive and repeated obstacles from Epic throughout fact discovery related to provisioning of technical materials, meaningful review of source code, and an integrated development

---

[2] Epic amended those contentions (with the stipulated consent of Utherverse Gaming) on June 1, 2022, and December 13, 2022. *See* DKT. 88, 109. The prior art asserted by Epic in its reexamination request was presented in ***all*** three iterations of its invalidity contentions.

[3] Claim construction is irrelevant to reexamination. The Patent Office is not bound by the Court's claim construction order. The lack of estoppel obviates any argument that claim construction was necessary prior to seeking reexamination. *See In re Trans Texas Holdings Corp.*, 498 F.3d 1290, 1298, 1301 (Fed. Cir. 2007). Epic simply elected to delay its filing.

PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION TO STAY
- 2
CASE NO. 2:21-CV-00799-RSM-TLF

POLSINELLI
1000 SECOND AVENUE, SUITE 3500
SEATTLE, WA 98104 • Tel: 206-393-5400

environment for the accused product. *See e.g.* DKT. 166, 180, 181, 189. Utherverse Gaming met all discovery deadlines despite Epic's efforts. Utherverse Gaming took to heart the Court's charge to maintain the schedule without unnecessary or unannounced delay.

### B. Epic Concealed its Intentions from the Court

Epic did not submit its Request for *Ex Parte* Reexamination until March 2023. DKT. 319-3. Epic delayed doing so despite having notice of Utherverse Gaming's asserted claims in November 2021, having formulated invalidity theories by December 2021, and even knowing the Court's claim constructions in October 2022. Utherverse Gaming significantly narrowed the asserted claims of the '071 Patent to only claims 8, 10, and 11 prior to the time Epic filed its belated reexam request. *See* EX. B (FIRST AMENDED DISCLOSURE OF ASSERTED CLAIMS AND INFRINGEMENT CONTENTIONS) (claim charts omitted). Epic nevertheless requested the Patent Office unnecessarily reexamine *seventeen* of the '071 Patent's twenty-five claims. DKT. 319-3.

Epic had multiple opportunities to advise the Court of its pending reexamination request but failed to do so. On March 30, 2023, the Court held a status conference to address discovery issues. *See* DKT. 196 (MINUTE ENTRY). The Court specifically inquired as to whether there were issues that created a need to revisit the case scheduling order. DKT. 197 (MARCH 30, 2023 TRANS.) at 13:10-15. Utherverse Gaming suggested a 30-day extension given the protracted efforts to review source code and pending depositions. *Id*. at 13:16-16:12. Epic said nothing of its March 14 filing or its intent to seek a stay. Epic instead unequivocally declared "[w]e don't think an extension is necessary or warranted here." *Id*. at 16:14-15; *see also id*. at 17:10-15 (Epic stating it is "really interested in keeping things moving" and the Court responding that its preference is "to have a request from both parties rather than a request from one party and an objection from the other"); 17:25-18:1 (Epic failing to address the reexamination request and subsequent request for stay despite the Court inquiring as to any other issues requiring its attention); *c.f.* DKT. 181 at 2:9-3:19 (status report wherein Epic rejected Utherverse Gaming's suggestion of an extension of time).

Epic filed multiple motions at the conclusion of discovery still having failed to advise the

PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION TO STAY
- 3
CASE NO. 2:21-CV-00799-RSM-TLF

POLSINELLI
1000 SECOND AVENUE, SUITE 3500
SEATTLE, WA 98104 • Tel: 206-393-5400

Court of the pending reexamination request or its intent to seek a stay. DKT. 205, 216, 231, 240. The Court held oral argument on June 16, 2023. DKT. 249. At the conclusion of oral argument, the Court advised the parties that it would be adjusting the schedule given the time needed to consider the motions and issue appropriate orders. DKT. 284 (JUNE 30, 2016 TRANS.) at 3:20-4:7, 56:5-13. The Court again inquired if anything additional should be brought to its attention. *Id*. at 56:14. Epic remained silent saying nothing about reexamination or a stay. *Id*. at 56:17-18.

The Court held yet another status conference on August 11, 2023. DKT. 288. The parties and Court discussed deadlines for dispositive and *Daubert* motions. DKT. 292 (AUGUST 11, 2023 TRANS.) at 4:20-5:13. The Court once again asked: "[a]nything else the parties would like to raise before I close the hearing?" *Id*. at 6:9-16, 8:11-12. For the *third* time, Epic declined to advise the Court of its reexamination request and intent to seek a stay. *Id*. at 9:8-9.

Epic informed the Court of the reexamination request and moved for a stay on October 4, 2023. Twenty-eight months from the beginning of this action, twenty-two months after exchanging its initial invalidity position, eight months after its final invalidity positions, and nearly seven months after requesting reexamination, Epic finally decided to let the Court know it sought a stay. Epic's motion came without any prior advisement to the Court or opposing counsel.

## III. LEGAL STANDARD

"Courts have inherent power to manage their dockets and stay proceedings, including the authority to order a stay pending conclusion of a PTO reexamination." *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426–27 (Fed. Cir. 1988) (internal citation omitted). "[A] court is under no obligation," however, "to delay its own proceedings by yielding to ongoing PTO patent reexaminations." *New World Medical Inc. v. MicroSurgical Technology, Inc.*, No. 2:20-cv-01621-RAJ-BAT, 2021 WL 952456 *2 (W.D. Wash. Feb. 18, 2021). Docket management "calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Landis v. North American Co.*, 299 U.S. 218 at 254–55 (1936), *see also Hunts Point Ventures Inc. v. Wors*, No. C 15-979 MJP, 2015 WL 12631549, at *2 (W.D. Wash. Oct. 16, 2015).



Epic blithely contends that the Ninth Circuit has a "liberal policy in favor of granting motions to stay proceedings pending [PTO reexamination]." DKT. 318 at 4:1-4. But the Western District of Washington has expressly noted that "it is unaware of any 'policy' which *favors* the granting of such stays." *F5 Networks, Inc. v. A10 Networks Inc.*, No. C 10-654MJP, 2010 WL 5138375, at *1 (W.D. Wash. Dec. 10, 2010) (emphasis in original). "[T]here is no per se rule that patent cases should be stayed pending PTO proceedings, because such a rule would invite parties to unilaterally derail litigation." *Realtime Data, LLC v. Rackspace US, Inc.*, No. 6:16-cv-00961-RWS-JDL, 2017 WL 772654, at *2 (E.D. Tex. Feb. 28, 2017).

In considering whether to grant a stay pending reexamination, courts consider "(1) the stage of the case; (2) whether a stay will simplify the court proceedings; and (3) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party." *New World Medical Inc.*, 2021 WL 952456, at *2; *see also Implicit Networks, Inc. v. Advanced Micro Devices, Inc.*, No. C 08-184JLR, 2009 WL 357902, at *2 (W.D Wash. Feb. 9, 2009). These factors provide guidance, but ultimately courts must consider the totality of the circumstances in determining the appropriateness of a stay. *Polaris Innovations Ltd. v. Kingston Tech. Co.*, No. 8:16-cv-00300-CJC-RAO, 2016 WL 7496740, at *1 (C.D. Cal. Nov. 17, 2016). These factors as addressed herein evidence a stay is not warranted.

## IV. ARGUMENT

### A. The Advanced Stage of the Case Does Not Warrant a Stay

The Federal Rules of Civil Procedure urge the Court to "secure the just, speedy, and inexpensive determination of every action and proceeding." FED. R. CIV. P. 1. Significant time and financial resources have been invested in this litigation. *See supra,* SECTION II. Invalidity contentions were thrice provided by Epic from December 2021 to December 2022. Discovery has been complete since June. Expert reports and deposition testimony have been offered based on the claims of the '071 Patent as construed by the Court. Those constructions and expert opinions are directly implicated in both parties' motions for summary judgment and Utherverse Gaming's



*Daubert* motion. *See* DKT. 314, § V; DKT. 300, §§ III, IV, 294. Epic—in the *third* year of this litigation—articulates no legitimate reason why it did not move for a stay sooner. Epic nevertheless seeks to derail the efforts of the parties and the Court to timely advance the matter to summary judgment and trial.

The significant expenditure of resources weighs against a stay. *See Universal Electronics, Inc. v. Universal Remote Control, Inc.*, 943 F. Supp. 2d 1028, 1031-32 (C.D. Cal. 2013) ("The Court's expenditure of resources is an important factor in evaluating the stage of the proceedings"); *see also Interwoven, Inc. v. Vertical Computer Systems, Inc.*, No. C 10-04645 RS, 2012 WL 761692, *4 (N.D. Cal. Mar. 8, 2012) (denying a stay while discovery remained open and following claim construction). This case repeatedly taxed the Court's resources by invoking its assistance in resolving discovery disputes. *See* DKT. 101, 141, 205, 214 (MOTIONS TO COMPEL DISCOVERY). The Court held multiple status conferences and hearings on motions, drafted numerous opinions, and wrote three reports and recommendations, including two *after* Epic filed its reexamination request but failed to advise the Court. DKT. 277 (R&R ON MOTION FOR LEAVE TO FILE INFRINGEMENT CONTENTIONS), 281 (R&R ON MOTION TO AMEND ANSWER AND COUNTERCLAIMS).

"Stays are favored when the most burdensome stages of the case—completing discovery, preparing expert reports, filing and responding to pretrial motions, preparing for trial, going through the trial process, and engaging in post-trial motion practice—***all lie in the future***." *Bio-Rad Lab. v. 10X Genomics, Inc.* C.A. No. 18-1679-RGA, 2020 WL 2849989, at *1 (D. Del. June 2, 2020) (emphasis added). But this case has progressed through the bulk of pre-trial proceedings; that is reason enough to deny a stay. *See Ecolab, Inc. v. FMC Corp.*, No. 05-CV-831(JMR/FLN), 2007 WL 1582677, at *2 (D. Minn. May 30, 2007). The *Ecolab* court denied a stay because "the case has been litigated for more than two years, resulting in 274 docket entries. All disputed claims have been construed, discovery is closed; expert opinions have been rendered; and summary judgment on validity and infringement has been denied." *Id.* The similarities of *Ecolab* to the present action are positively uncanny. Given the totality of the circumstances, including the



pendency of dispositive and *Daubert* motions, a stay would be both inappropriate and contrary to the interests of justice. A stay would derail the substantial progress of this litigation and discount (*i.e.,* waste) the judicial and party resources that made that progress possible. This factor thus disfavors a stay.

### B. *Ex Parte* Reexamination Will Not Simplify These Proceedings

There are *two* patents in this litigation. Epic's reexamination request addresses only one of those patents. The outcome of reexamination will have no impact on the assertion of U.S. patent number 9,724,605 (the "'605 Patent"). This factor alone would unduly complicate proceedings.

Epic's Motion incorrectly claims that "the PTO recently determined that all asserted claims of . . . the '071 Patent, are invalid over the prior art." DKT. 318 at 1:4-6. This is demonstrably false. Epic refers only to an initial office action and not a final determination of patentability; Utherverse Gaming has not even responded to that initial action. *See* 35 U.S.C. § 305; 37 C.F.R. § 1.550. Epic's own Exhibit 11 clearly shows the September 18, 2023 action is a "Non-Final Action." DKT. 319-11, at 5 (emphasis in original). The Patent Office also acknowledges that Utherverse Gaming's June 28, 2023 "Petition for Suspension of the Rules and for Termination of Reexamination" has not been decided—a decision that could itself terminate the proceedings for material procedural failures by Epic. *Id*.

Epic also incorrectly asserts "*all* reexamined claims are amended or canceled in 79.1% of instituted reexamination proceedings." DKT. 318 at 4:26-27 (emphasis added). Epic offers a misleading depiction of out-of-date statistics from 2020. While 79.1% is the total percentage of reexamination certificates that resulted in changed or canceled claims, only 13.1% of claims were canceled entirely; 66% resulted in changed or amended claims. *See* DKT. 319-1, at 2. These statistics provide no information about "all" claims slated for trial as Epic contends. Nor do they show the likelihood that the two asserted claims in litigation—themselves representing only a portion (11.8%) of the claims of which Epic requested reexamination—will be canceled or amended. Epic disingenuously presents an ecological fallacy—the interpretation of statistical data

PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION TO STAY
- 7
CASE NO. 2:21-CV-00799-RSM-TLF

POLSINELLI
1000 SECOND AVENUE, SUITE 3500
SEATTLE, WA 98104 • Tel: 206-393-5400

about a group as if it applies to individual probabilities—while ignoring individual probabilities or differences. *See Olean Wholesale Grocery Coop. v. Bumble Bee Foods,* 993 F.3d 774, 787 n. 6 (9th Cir. 2021) (finding "it would be injudicious to swallow [statistical evidence] uncritically").

Even if the reexamination impacted the claims as Epic suggests, litigation would be unduly complicated, not simplified. The parties progressed the action since October of 2022 based on at least the Court's claim construction. Fact discovery was extensive and inclusive of documents and fact witness testimony procured in person across the United States and Canada. Expert witnesses drafted reports and offered testimony based on those constructions and factual record. Dispositive motions are pending based on the foregoing.

Under Epic's erroneous statistical approach, a stay pending reexamination would render all those efforts worthless. Changed or amended claims (as Epic fallaciously suggests is inevitable) would require revisiting claim construction, document productions, source code review, fact witnesses, expert reports, and expert testimony. The present *Daubert* and summary judgment motions would likewise be worthless. Epic naively argues that a stay would assist the Court by providing the "benefit of the PTO's guidance and the patent owner's positions on claim scope." DKT. 381 at 6:1-2. If Epic's intent was altruistic as it now suggests, Epic would have sought both reexamination and a stay months sooner. Any purported guidance that the Patent Office might provide is now of zero value given the completion of fact and expert discovery, multiple motions and hearings, and pending dispositive and *Daubert* motions.

Finally, it is significant that Epic elected *ex parte* reexamination and not *inter partes* reexamination.[4] The Northern District of California summarized the importance of the distinction:

> *Inter partes* reexaminations—unlike *ex parte* reexaminations—are guaranteed to finally resolve at least some issues of validity because the requesting party is barred from seeking district court review on any grounds that it could have raised in the reexamination. 35 U.S.C. § 315(c). **No such estoppel arises from *ex parte***

---

[4] Epic allowed the *inter partes* deadline to lapse on June 15, 2022. *See* 35 U.S.C. § 315(b); *see also* DKT. 16 (evidencing service on June 15, 2021).

PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION TO STAY
- 8
CASE NO. 2:21-CV-00799-RSM-TLF

POLSINELLI
1000 SECOND AVENUE, SUITE 3500
SEATTLE, WA 98104 • Tel: 206-393-5400

**reexaminations**. Since the reexaminations at issue on this motion are both *ex parte*, the only way they will finally resolve any issues of validity is if the PTO cancels some claims entirely.

*Avago Technologies Fiber IP (Singapore) Pte. Ltd. v. IPtronics Inc.*, No. 10-cv-02863-EJD, 2011 WL 3267768, *5 (N.D. Cal. July 28, 2011) (emphasis added); *see also F5 Networks*, 2010 WL 5138375, at *3 (observing that an ***advantage for a defendant*** seeking *ex parte* reexamination is that "it will ***not be bound*** by findings of validity or modification, so once again the Court cannot predict if the issues will actually be simplified at the conclusion of the reexamination process") (emphasis added). Epic, by its own prior inactions, cannot now persuasively argue that a stay will simplify the issues before the Court given that Epic may relitigate the very *ex parte* reexam now pending before the Patent Office. *See also Interwoven,* 2012 WL 761692, at *3 ("simplification of issues is unlikely to result" because of lack of estoppel, low number of reexaminations resulting in cancellation, and narrow scope of proceedings). This factor, too, weighs against a stay.

### C. Utherverse Gaming Would be Prejudiced by Epic's Dilatory Motives

Delay alone does not constitute prejudice. *See Telemac Corp. v. Teledigital, Inc.*, 450 F. Supp. 2d 1107, 1111 (N.D. Cal. 2006). But in considering delay, courts must evaluate evidence of dilatory motives or tactics that suggest a party is "taking advantage of opportunities for delay." *Id*. Epic's motion and the timing of the requested stay is unquestionably opportunistic.

Patent Office statistics provided by Epic show that the average pendency of reexamination is 25.7 months. *See* DKT. 319-1, at 2. That two-plus year period does not include a patent owner's right to appeal an adverse determination to the Patent Trial and Appeal Board ("PTAB") or seek subsequent review by the United States Court of Appeals for the Federal Circuit. *See* 35 U.S.C. § 306; 35 U.S.C. § 134. A stay in this matter could easily become several ***years*** and result in considerable additional expense should claim construction and discovery re-open.

Epic admits it has known about the prior art raised in its reexam request since ***at least*** December 1, 2021. DKT. 318 at 2:1-5; DKT. 319-2. But Epic's discussion of the alleged pertinence



of that art concerns rejections in pending *patent applications* that have no bearing on this action. DKT. 318 at 2:6-13, DKT. 319-5, 319-6, 319-7. While admittedly part of the same patent family, those applications each recite their own claims that differ in scope from those of the '071 Patent.

Given the advanced stage of these proceedings, Epic seeks not the clarification of issues in this action but to delay serious flaws in its case. *See Oracle Corp. v. Parallel Networks, LLP*, Civ. No. 06-414-SLR, 2010 WL 3613851, at *3 (D. Del. Sept. 8, 2010) (finding that the timing of a request for reexamination can lead to the inference that the motion for a stay "seeks an inappropriate tactical advantage"); *WSOU Invs., LLC v. F5 Networks, Inc.*, No. 2:20-CV-01878-BJR, 2022 WL 766997, at *2 (W.D. Wash. Mar. 14, 2022) ("the Court agrees that the filing of the IPR petitions appears to be little more than a dilatory tactic, in a case in which the court has already been called upon to compel F5 to respond to discovery"); *ThroughPuter, Inc. v. Microsoft Corp.*, No. 2:22-CV-344-BJR, 2022 WL 2498754, at *2 (W.D. Wash. June 1, 2022) ("Thus, if the court were to grant a stay, this case—already pending for 14 months—could be at a virtual standstill for a year and a half or more. This court will not sanction such a delay"). Epic waited to seek a stay until it received Utherverse Gaming's Motion for Partial Summary Judgment (DKT. 314) and *Daubert* motion seeking to exclude certain opinions and testimony of invalidity expert Benjamin Ellinger (DKT. 294). Epic now seeks to leverage a requested delay to its strategic advantage.

Epic sees both the legal and factual argument as to how the accused Fortnite events infringe the asserted claims of the '071 Patent. Epic sees the legal and factual critique of Mr. Ellinger's unsupported opinions and testimony and evidentiary errors related to the same. The Court also encouraged the parties to engage in settlement discussions. Those efforts were not successful given that the action persists. Epic's sudden appeal for a stay is readily exposed as veiled gamesmanship that should not be rewarded.

Epic further suggests that since Utherverse Gaming "is a patent-licensing company that does not make any products and does not compete with Epic," it will not be prejudiced by a stay. DKT. 318 at 8:15-16. While Utherverse Gaming does license its patents, a delayed resolution of



this action hinders its ability to do so. Delay in resolution of these proceedings creates uncertainty in the market; Utherverse Gaming, as a patent holder, "has an interest in the timely enforcement of its patent right." *Lennon Image Technologies, LLC v. Macy's Retail Holdings, Inc.*, No. 2:13-cv-235-JRG, 2014 WL 4652117, at *2 (E.D. Tex. September 18, 2014).

The Federal Circuit has likewise held that "recognition must be given to the strong public policy favoring expeditious resolution of litigation." *Kahn v. Gen. Motors Corp.*, 889 F.2d 1078, 1080 (Fed. Cir. 1989). A stay of this matter, particularly given the Patent Office's review timeline and the potential of PTAB and Federal Circuit appeals, would further delay Utherverse Gaming's entitlement to relief as well as risks the later unavailability of witnesses. Such a delay "conflict[s] with one of the basic principles of our legal system—justice delayed is justice denied." *Dietich v. Boeing Co.*, 14 F.4th 1089, 1095 (9th Cir. 2021); see also *F5 Networks*, 2010 WL 5138375, at *3 ("The Court is further persuaded to deny the motion by the increasing likelihood that, between now and the point several years from now when the reexamination is concluded and litigation resumed, witnesses will become unavailable and memories will fade, a further prejudice to Plaintiff"). This factor, likewise, favors denial of a stay.

## V. CONCLUSION

"If litigation were stayed every time a claim in suit undergoes reexamination, federal infringement actions would be dogged by fits and starts. Federal court calendars should not be hijacked in this manner." *Comcast Cable Communications Corp., LLC v. Finisar Corp.*, No. C 06-04206 WHA, 2007 WL 1052883, at *1 (N.D. Cal. Apr. 5, 2007). A fair consideration of all of the relevant factors applied to the circumstances of this litigation counsel against staying these proceedings. For the foregoing reasons, Utherverse Gaming requests that the court deny Epic's Motion to Stay Pending *Ex Parte* Reexamination.

PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION TO STAY
- 11
CASE NO. 2:21-CV-00799-RSM-TLF

POLSINELLI
1000 SECOND AVENUE, SUITE 3500
SEATTLE, WA 98104 • Tel: 206-393-5400

DATED this 16th day of October, 2023    Respectfully submitted,

                                                       */s/ Emily C. McNally*
By:   Emily McNally (WSBA No. 60710)
       **POLSINELLI PC**
       1000 Second Avenue, Suite 3500
       Seattle, WA 98104
       Tel: 206-393-5400
       Fax: 206-393-5401
       Email: emcnally@polsinelli.com

*Of Counsel:*

Colby B. Springer (admitted *pro hac vice)*
Miya Yusa (admitted *pro hac vice*)
**POLSINELLI LLP**
Three Embarcadero Center, Suite 2400
San Francisco, CA 94111
Tel: 415-248-2100
Fax: 415-248-2101
Email: cspringer@polsinelli.com
Email: myusa@polsinelli.com

Melenie Van (admitted *pro hac vice)*
**POLSINELLI LLP**
2049 Century Park East, Suite 2900
Los Angeles, CA 90067
Tel:   (310) 229-1355
Fax:  (415) 276-8959
Email: mvan@polsinelli.com

Mark T. Deming (admitted *pro hac vice*)
**POLSINELLI PC**
150 N. Riverside Place, Suite 3000
Chicago, IL 60606
Tel: 312-819-1900
Fax: 312-819-1901
Email: mdeming@polsinelli.com

Jonathan Spivey (admitted *pro hac vice*)
**POLSINELLI PC**
1000 Louisiana Street, Suite 6400
Houston, TX 77002
Tel.: (713) 374-1600
Fax: (713) 374-1601
Email: jspivey@polsinelli.com

Attorneys for Plaintiff
UTHERVERSE GAMING LLC

The signatory certifies that this memorandum contains 4,133 words, in compliance with the Local Civil Rules. Counsel relied on the word count of a word-processing system used to prepare the brief.