1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

THE HONORABLE RICARDO S. MARTINEZ

THE HONORABLE THERESA L. FRICKE

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WASHINGTON

AT SEATTLE

UTHERVERSE GAMING LLC,

                Plaintiff,

    v.

EPIC GAMES, INC.,

                Defendant.

Case No. 2:21-cv-00799-RSM-TLF

**PLAINTIFF'S OPPOSITION TO
DEFENDANT EPIC GAMES, INC.'S
*DAUBERT* MOTION TO EXCLUDE**

**FILED UNDER SEAL**

NOTED FOR CONSIDERATION:
NOVEMBER 10, 2023

ORAL ARGUMENT SCHEDULED:
NOVEMBER 21, 2023, 10:00 AM

UTHERVERSE GAMING'S OPPOSITION TO
EPIC'S *DAUBERT* MOTION TO EXCLUDE
(CASE NO. 2:21-CV-00799-RSM-TLF)

POLSINELLI

1000 SECOND AVENUE, SUITE 3500
SEATTLE, WA  98104 • Tel:  206-393-5400

1

## TABLE OF CONTENTS

2

Page No.

3  I.   INTRODUCTION ........................................................................1

4  II.  LEGAL STANDARDS ...............................................................1

5       A.   Admissibility of Expert Testimony...........................................1

6       B.   Apportionment ......................................................................2

7  III. STATEMENT OF THE FACTS ...............................................3

8       A.   Ms. Riley Accounted For Non-Patented Features Involved In The Accused
9            Events' Success................................................................................4

10      B.   Ms. Riley Performed Apportionment As Part Of Her Calculation Of The
             Royalty Base, Including Technological Comparisons Between The
11           Asserted Patents and License Agreements ..................................5

12 IV.  ARGUMENT ..............................................................................8

13      A.   Ms. Riley's ███ License Analysis Is Reliable Because She Considered
             The Facts, Terms, And Circumstances Underlying The ███ License To
14           That Of The Hypothetical Negotiation In This Case ..................9

15      B.   Ms. Riley's ███ License Analysis Is Reliable Because She Included
             Technological Comparability...............................................10

16      C.   Ms. Riley's Other "Comparable Transactions" Analysis Is Reliable
             Because She Did Apportion Damages .....................................11

17 V.   CONCLUSION............................................................................12

18

19

20

21

22

23

24

25

26

UTHERVERSE GAMING'S OPPOSITION TO
EPIC'S *DAUBERT* MOTION TO EXCLUDE - i
(CASE NO. 2:21-CV-00799-RSM-TLF)

**POLSINELLI**
1000 SECOND AVENUE, SUITE 3500
SEATTLE, WA  98104  •  Tel:  206-393-5400

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ActiveVideo Networks, Inc. v Verizon Communications, Inc.*,
 694 F3d 1312 (Fed. Cir. 2012)..................................................................................3, 8

*Apple Inc. v. Motorola, Inc.*,
 757 F.3d 1286 (Fed. Cir. 2014)..................................................................................2, 11

*AstraZeneca AB v. Apotex Corp.*,
 782 F.3d 1324 (Fed. Cir. 2015)..................................................................................2

*Estate of Barabin v. AstenJohnson, Inc.*,
 740 F.3d 457 (9th Cir. 2014) .....................................................................................1

*Commonwealth Sci. & Indus. Rsch. Organisation v. Cisco Sys., Inc.*,
 809 F.3d 1295 (Fed. Cir. 2015)..................................................................................3

*Daubert v. Merrell Dow Pharms., Inc.*,
 509 U.S. 579 (1993)...................................................................................................1, 12

*Eagle Harbor Holdings, LLC v. Ford Motor Co.*,
 No. C11-5503 BHS, 2015 WL 12670404 (W.D. Wash. Mar. 9, 2015).....................10

*Ericsson, Inc. v. D-Link Sys., Inc.*,
 773 F.3d 1201 (Fed. Cir. 2014)..................................................................................2, 3, 8, 9, 11

*Exmark Mfg. Co. v. Briggs & Stratton Power Prods. Grp, LLC*,
 879 F.3d 1332 (Fed. Cir. 2018)..................................................................................2

*Fortune Dynamic v. Victoria's Secret Stores Brand Management, Inc.*,
 618 F.3d 1025 (9th Cir. 2010) ...................................................................................2

*Freeman v. Gerber Prod. Co.*,
 450 F. Supp. 2d 1248 (D. Kan. 2006).........................................................................12

*Inventio Ag v. Otis Elevator Co.*,
 No. 06 Civ. 5377, 2011 WL 3359705 (S.D.N.Y. June 22, 2011).............................3, 11

*Micro Chem., Inc. v. Lextron, Inc.*,
 317 F.3d 1387 (Fed. Cir. 2003)..................................................................................1

*Microsoft Corp. v. Motorola, Inc.*,
 904 F. Supp. 2d 1109 (W.D. Wash. 2012)..................................................................2, 3, 8, 9, 11

UTHERVERSE GAMING'S OPPOSITION TO
EPIC'S DAUBERT MOTION TO EXCLUDE -ii
(CASE NO. 2:21-CV-00799-RSM-TLF)

POLSINELLI
1000 SECOND AVENUE, SUITE 3500
SEATTLE, WA  98104  •  Tel:  206-393-5400

*Novozymes A/S v. Genencor Int'l, Inc.*,
  474 F. Supp. 2d 592 (D. Del. 2007)..................................................................................12

*NXP USA, Inc. v. Impinj*
  No. 2:20-CV-01503-JHC, 2023 WL 3933877 (W.D. Wash. June 8, 2023)...........................12

*Primiano v. Cook*,
  598 F.3d 558 (9th Cir. 2010) .................................................................................................1

*Uniloc USA, Inc. v. Microsoft Corp.*,
  632 F.3d 1292 (Fed. Cir. 2011)...........................................................................................3, 9

*Virnetx, Inc. v. Cisco Sys., Inc.*,
  767 F.3d 1308 (Fed. Cir. 2014)..........................................................................................3, 11

**Other Authorities**

Federal Rule of Evidence 702.....................................................................................................1

POLSINELLI
1000 SECOND AVENUE, SUITE 3500
SEATTLE, WA  98104 • Tel:  206-393-5400

## I.   __INTRODUCTION__

Plaintiff Utherverse Gaming LLC's ("Utherverse Gaming") respectfully requests that the Court deny Defendant Epic Games, Inc.'s ("Epic") *Daubert* motion to exclude certain testimony or opinions of Utherverse Gaming's damages expert, Michele Riley (ECF No. 309) ("Motion"). Epic's criticisms of Ms. Riley go to the weight of her opinions and not admissibility. Contrary to Epic's characterizations, Ms. Riley ***did*** conduct an apportionment analysis: she accounted for non-patented features and Epic's contribution to the Accused Events when calculating an appropriate royalty base. As part of her royalty rate determination, Ms. Riley then analyzed the similarities and differences between the asserted infringement and comparable licenses and transactions. Ms. Riley's analysis is consistent with the application of the *Georgia-Pacific* factors. Epic may disagree with the ultimate conclusions Ms. Riley drew from her analysis, but these issues are more properly explored on cross-examination and are not bases to exclude an expert's testimony.

## II.   __LEGAL STANDARDS__

### A.   **Admissibility of Expert Testimony**

Federal Rule of Evidence 702 allows admission of "scientific, technical, or other specialized knowledge" by a qualified expert if it will "help the trier of fact to understand the evidence or to determine a fact in issue." Expert testimony is admissible if it is both relevant and reliable. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993). A district court's decision to admit expert testimony under *Daubert* in a patent case follows the law of the regional circuit. *Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1390-91 (Fed. Cir. 2003).

In the Ninth Circuit, the trial court acts as a "gatekeeper" by assessing the soundness of the expert's methodology. *Estate of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457, 463 (9th Cir. 2014). The inquiry into admissibility of expert opinion is a "flexible one," where "***admissible evidence is to be attacked by cross examination***, contrary evidence, and attention to the burden of proof, not exclusion." *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010) (internal citation omitted) (emphasis added). The standard for admitting expert testimony focuses on the expert's principles

and methodology, not on their conclusions. *NXP USA, Inc. v. Impinj*, Inc., No. 2:20-CV-01503-JHC, 2023 WL 3933877, at *1 (W.D. Wash. June 8, 2023) (citing *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1313–14 (Fed. Cir. 2014)). A party seeking to exclude an expert's opinion based on criticisms "go[ing] to 'issues of methodology, survey design, reliability, ... [and] critique of conclusions…go to the weight of the [opinion] rather than its admissibility" and the expert's opinion will not be excluded on such basis. *Microsoft Corp. v. Motorola, Inc.*, 904 F. Supp. 2d 1109, 1120 (W.D. Wash. 2012) (citing *Fortune Dynamic v. Victoria's Secret Stores Brand Management, Inc.*, 618 F.3d 1025, 1038 (9th Cir. 2010)) (internal quotations omitted).

## B. Apportionment

 "[W]here multi-component products are involved," apportionment requires "that the ultimate combination of ***royalty base*** and ***royalty rate*** [] reflect the value attributable to the infringing features of the product, and no more." *NXP USA*, 2023 WL 3933877, at *1 (citing *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014)) (emphasis added). "[A]n economist could [perform this assessment]…by careful selection of the royalty base to reflect the value added by the patented feature, where that differentiation is possible; by adjustment of the royalty rate so as to discount the value of a product's non-patented features; or by a combination thereof." *Ericsson*, 773 F.3d at 1226. "The essential requirement is that the ultimate reasonable royalty award must be based on the incremental value that the patented invention adds to the end product." *Id*.

When apportioning the royalty rate, the Federal Circuit recognizes that "one possible way to do this is through a proper analysis of the *Georgia-Pacific* factors." *Exmark Mfg. Co. v. Briggs & Stratton Power Prods. Grp, LLC*, 879 F.3d 1332, 1348 (Fed. Cir. 2018) (internal citation omitted). "[T]he standard *Georgia-Pacific* reasonable royalty analysis takes account of the importance of the inventive contribution in determining the royalty rate that would have emerged from the hypothetical negotiation." *AstraZeneca AB v. Apotex Corp.*, 782 F.3d 1324, 1338 (Fed. Cir. 2015). This approach begins with an initial royalty rate that is adjusted "on the basis of a

UTHERVERSE GAMING'S OPPOSITION TO
EPIC'S *DAUBERT* MOTION TO EXCLUDE –
2
(CASE NO. 2:21-CV-00799-RSM-TLF)

POLSINELLI
1000 SECOND AVENUE, SUITE 3500
SEATTLE, WA  98104 • Tel:  206-393-5400

hypothetical negotiation, occurring between the parties at the time that infringement began," using the *Georgia–Pacific* factors to determine a reasonably royalty rate. *Microsoft*, 904 F. Supp. 2d at 1117; *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1312 (Fed. Cir. 2011). The initial royalty rate can be based on prior license agreements provided they are not "so divorced" from the facts of the case. *Microsoft*, 904 F. Supp. 2d at 1117–18 (citing *Inventio Ag v. Otis Elevator Co.*, No. 06 Civ. 5377, 2011 WL 3359705, at *3 (S.D.N.Y. June 22, 2011)); *Commonwealth Sci. & Indus. Rsch. Organisation v. Cisco Sys., Inc.*, 809 F.3d 1295, 1303 (Fed. Cir. 2015).

Because they are almost never perfectly analogous to the infringement action, testimony relying on prior licenses must account for distinguishing facts when invoking them to value the patented invention. *Ericsson*, 773 F.3d at 1227 (citing *Virnetx, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1330 (Fed. Cir. 2014)). Courts recognize the constraints of such comparisons and have found that the fact that a license is not perfectly analogous generally goes to the weight of the evidence, not its admissibility. *Id.*; *ActiveVideo Networks, Inc. v Verizon Communications, Inc.*, 694 F3d 1312, 1333 (Fed. Cir. 2012) ("The degree of comparability of the [cited] license agreements as well as any failure on the part of [plaintiff's] expert to control for certain variables are factual issues best addressed by cross examination and not by exclusion.").

## III.   STATEMENT OF THE FACTS

In her report, Ms. Riley considered the three standard quantitative valuation methods: Income, Market, and Cost Approaches. **Exhibit A** ("Riley Report") at ¶ 229-301. As part of those approaches, Ms. Riley calculated an apportioned royalty base. *Id.* at ¶¶ 294, 304, 355. Ms. Riley's royalty base reflects the value attributable to the infringing features. *Id.* at ¶¶ 138, 143-144. Ms. Riley recognized that consumer demand for the Accused Events was not driven entirely by the patented features and that Epic independently contributed to the Accused Events. *Id.* at ¶ 138. Ms. Riley also relied on prior licenses as a basis for her royalty rate opinion while distinguishing facts and circumstances that are similar and those that are different to account for the value of the Asserted Patents and the technology covered in the prior licenses. *Id.* at ¶¶ 128-133, 245-258, 259-

UTHERVERSE GAMING'S OPPOSITION TO
EPIC'S *DAUBERT* MOTION TO EXCLUDE –
3
(CASE NO. 2:21-CV-00799-RSM-TLF)

POLSINELLI
1000 SECOND AVENUE, SUITE 3500
SEATTLE, WA  98104  •  Tel:  206-393-5400

285, 292, 308. After arriving at her royalty base of ████████ Ms. Riley utilized the *Georgia–Pacific* factors to arrive at her ultimate ████ royalty rate opinion. *Id.* at ¶¶ 114, 294, 305-348; **Exhibit B** ("Riley Depo. Tr.") at 339:3-15, 340:3-17.

### A.   Ms. Riley Accounted For Non-Patented Features Involved In The Accused Events' Success

In calculating the incremental revenue that the Asserted Patents allowed Epic to earn from hosting the Accused Events (*i.e.*, event-specific item revenue, incremental microtransaction revenue microtransactions, value of incremental users), Ms. Riley accounted for non-patented features involved in the Accused Events and contributions made to the Accused Events by Epic. Ex. A at ¶¶ 156-228, 314-316; Ex. B at 329:17-332:3. Ms. Riley discussed the history and operations of Epic, *Fortnite*, and *Fortnite* Live Events. Ex. A at ¶ 43-55, 56-59. Ms. Riley considered Epic's company-wide profitability and *Fortnite's* contribution to that profitability as part of her Income Approach under her Royalty Rate Analysis. *Id.* at ¶ 238-240. Ms. Riley also accounted for the fact that Epic developed and provided the *Fortnite* platform. Ex. A at ¶¶ 43-59, 238-240; Ex. B at 258:14-259:4, 331:1-332:3.

During deposition, Ms. Riley elaborated that her methodology accounts for the success of the Accused Events in part being driven by the artists with which Epic collaborates:

- "My analysis is just new and returning users who are stemming from the concert, so we know that [the users are] interested in playing Fortnite and generating revenue for Epic beyond looking at Travis Scott and interacting with him and his avatar." Ex. B at 332:4-333:11.

- "[T]hat's why [Epic] paid them ████. That's why I'm saying here's the margin on the event. I account for what [Epic] paid them." *Id.* at 333:12-334:11.

- "…I'm saying the calculated margin based on the revenue is something like ████████. And then [Epic] get the benefit of the next ███ days of revenue from the users." *Id.* at 334:12-335:17.

- "Travis Scott is not present when the players are playing Fortnite for the next ███ days." *Id.* at 337:1-19.

UTHERVERSE GAMING'S OPPOSITION TO
EPIC'S *DAUBERT* MOTION TO EXCLUDE –
4
(CASE NO. 2:21-CV-00799-RSM-TLF)

**POLSINELLI**
1000 SECOND AVENUE, SUITE 3500
SEATTLE, WA  98104 • Tel:  206-393-5400

Specifically, Ms. Riley does not include in her royalty base calculations revenue from microtransactions that may have been associated with the individual artists separate and apart from the Accused Events as she excluded revenue associated from microtransactions that occurred after the Accused Events. Ex. A at ¶¶ 157-158, 180, 211.

Ms. Riley further accounted for external factors outside of the Accused Events that may have caused a user to spend more on microtransactions during the Accused Events. *Id.* at ¶¶ 166, 187-188, 201, 219. In estimating the incremental profit that Epic earned from the Accused Events, Ms. Riley considered the incremental costs that Epic would incur in hosting the Accused Events, including expenses associated with promotional activities for each of the Accused Events, expenses associated with paying the artists and their teams, and incremental server costs needed for Epic to host the Accused Events. *Id.* at ¶ 235-237; Ex. B at 258:14-259:4, 330:16-21, 331:13-332:3.

Nonetheless, the Accused Events' success was not possible without use of the patented technologies. Based on her discussion with Utherverse Gaming's technical expert Dr. Rosenberg, Ms. Riley understood that the Accused Events would not have been possible or successful without the Asserted Patents and users would not experience the Accused Events the same way without the Asserted Patents.  Ex. A at ¶¶ 238, 350. Based on the same discussion, Ms. Riley also understood that there are no commercially-acceptable, non-infringing alternatives to the Asserted Patents. Ex. A at ¶ 300; Ex. B at 185:5-11, 185:20-186:5, 207:2-21.

**B.      Ms. Riley Performed Apportionment As Part Of Her Calculation Of The Royalty Base, Including Technological Comparisons Between The Asserted Patents and License Agreements**

In addition to apportioning for non-patented features, discussed above, Ms. Riley arrived at her royalty rate by distinguishing facts and circumstances that are similar and different between the prior licenses and transactions (made available by the parties in this matter) and the Asserted Patents to account for the value of the Asserted Patents and the technology covered in the prior licenses. Ex. A at ¶¶ 128-133, 245-258, 259-285, 292, 308, 353, 354; Ex. B at 40:5-21, 41:10-15,

UTHERVERSE GAMING'S OPPOSITION TO
EPIC'S *DAUBERT* MOTION TO EXCLUDE –
5
(CASE NO. 2:21-CV-00799-RSM-TLF)

POLSINELLI
1000 SECOND AVENUE, SUITE 3500
SEATTLE, WA  98104  •  Tel:  206-393-5400

48:20-49:21.

Ms. Riley discussed the licensing history, practices, and agreements of Utherverse Digital, Inc. ("Utherverse Digital")—the prior patent holder of the Asserted Patents. Ex.A at ¶¶ 32-43, 128-129, 245-258, 294. In doing so, Ms. Riley analyzed three Utherverse Digital agreements. *Id.* at ¶¶ 245-250, 251-254, 294. Ms. Riley also discussed the licensing history, practices, and agreements of Epic. *Id.* at ¶¶ 130-133, 259-285. In doing so, Ms. Riley analyzed: (1) an internal Epic document related to the Travis Scott Accused Event, (2) two license agreements pertaining to the use of the image and likeness of the artists of the Accused Events to create merchandise, and (3) six license agreements that pertain to patents. *Id.* at ¶ 260-285.

An agreement produced by Epic that resulted in a ████████████████████████████ ████████████████████████████████████████████████████████. *Id.* at ¶ 269. The agreement involved ████████████████████████████████████████████████████ ███████████████████████████████. *Id.* at ¶ 269. ████████████████████████████████ ████████████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████. *Id.* at ¶¶ 269, 277-279.

As Ms. Riley calculated her reasonable royalty rate, she considered the technology covered by ███████████████████████████ and the similarities and differences of relevant agreements. *Id.* at ¶¶ 270-279, 291-293; Ex. B at 205:3-16, 360:20-361:8. In doing so, Ms. Riley reviewed and relied on ████████████ itself, agreements that Epic produced (**Exhibit C**, **Exhibit D**, and the deposition testimony of Epic witnesses Mark Imbriaco and Matt Weissinger, Epic's public webpages, and ████████ public webpages. Ex. A at ¶ 270-279. In comparing the agreement between ██████████ to the hypothetical negotiation for the Asserted Patents, Ms. Riley specifically noted similarities and differences, including:

- "There are certain similarities that this agreement has with the hypothetical negotiation that would make this agreement informative. Specifically, the agreement   was ████████████████████████████████████████



█████████████████████████████████████████████████████
█████████████████████████████████████████████████████
█████████████████████████████████████████████████████
█████████████████████████████████████████████████████
" *Id.* at ¶ 291.

- "[T]he parties to this agreement are similarly situated to Utherverse Digital and Epic at the hypothetical negotiation. ████████████████████ ████████████████████████████████████ similar to how Brian Shuster and Gary Shuster were the owners and inventors of the Patents-in-Suit. ██████ is in the field of computer graphics and software development, similar to Epic, in that it uses the Unreal Engine "3D creation tool"[622] for Fortnite.[623] Epic has also incorporated the technology associated with █████ ██████ within its Unreal Engine 4 product.[624] According to Mark Imbriaco, "Fortnite is built on Unreal Engine" and each of the Accused Events took place within Fortnite.[625]" *Id.* at ¶ 292.

- "[T]here are certain differences between the agreement and the license contemplated at the hypothetical negotiation that would need to be taken into account when considering how this agreement might inform the hypothetical negotiation. For example, this agreement ████████████ ████████████████████ while the parties at the hypothetical negotiation would be negotiation for the rights to two United States Patents. This difference indicates that the parties at the hypothetical negotiation would apply upward pressure to the ████████████ from this agreement." *Id.* at ¶ 293.

After analyzing the various license agreements, Ms. Riley provided a royalty base of 

and confirms that the range aligns with industry benchmarks. *Id.* at ¶ 294; Ex. B at 339:3-15, 340:3-17. Ms. Riley specifically noted that the 2020 Royalty Rate Industry Summary from IPSCIO, **Exhibit E**, reports the software industry had an average royalty rate of 15% based upon analysis of 616 technology license agreements as of 2020. Ex. A at ¶ 294. Ms. Riley used the *Georgia-Pacific* factors to make further adjustments to the royalty rate. *Id.* at ¶ 114, 294, 305-348; Ex. B at 339:3-15, 340:3-17. Ms. Riley then arrived at her overall opinion that Utherverse Gaming and Epic would negotiate a final ████ royalty for both the '071 and '605 Patents based upon her understanding of the benefits provided by Asserted Patents from Dr. Rosenberg and upon the totality of the facts and circumstances in this case and the information available to her. Ex. A at ¶ 357.

UTHERVERSE GAMING'S OPPOSITION TO
EPIC'S *DAUBERT* MOTION TO EXCLUDE –
7
(CASE NO. 2:21-CV-00799-RSM-TLF)

**POLSINELLI**
1000 SECOND AVENUE, SUITE 3500
SEATTLE, WA  98104 • Tel: 206-393-5400

## IV.     ARGUMENT

The Motion to Exclude Riley's royalty rate opinion and damages calculation rests on Epic's criticisms of Ms. Riley's ultimate conclusions, which go to the weight of her opinions rather than their admissibility, and as such is not a proper basis for a motion to exclude an expert's opinion. *Microsoft Corp.*, 904 F. Supp. 2d at 1120. Epic argues that Ms. Riley does not include: (1) technological comparison of prior licenses; or (2) apportionment. Motion at 2:2-13, 8:4-12:4. However, Ms. Riley does include such analyses in her damages report – Epic just disagrees with the conclusions reached as part of this analysis. *See supra* section III.

Contrary to Epic's argument, Ms. Riley is not using the " License as a substitute for apportionment." Motion at 8:4-6. In fact, the  License is just one data point that Ms. Riley considers after her apportionment analysis. Ex. A at ¶ 294; Ex. B at 339:3-15, 340:3-17. Ms. Riley considered the non-patented features involved in the Accused Events and Epic's contributions to *Fortnite* and the Accused Events. Ex. A at ¶¶ 156-228, 314-316; Ex. B at 329:17-332:3. Ms. Riley considered three Utherverse Digital agreements. Ex. A at ¶¶ 245-254, 294. Ms. Riley considered eight agreements produced by Epic. *Id.* at ¶ 262-285. In considering the  License, Ms. Riley reviewed the licensed technology and the technology covered by the Asserted Patents and discussed the same with Dr. Rosenberg—in addition to comparing the terms and circumstances surrounding the  License to the hypothetical negotiation between Utherverse Digital and Epic. *Id.* at ¶¶ 238, 250, 270-279, 291-293, 300; Ex. B at 185:5-11, 185:20-186:5, 186:10-19, 187:15-18, 188:9-189:9, 205:3-16, 207:2-21, 360:20-361:8. Ms. Riley's ultimate  royalty rate conclusion is not an arbitrary number, but very much tied to her extensive and reliable analysis, valuation methods, and application of the *Georgia-Pacific* factors. Epic may disagree with it, and may cross-examine her, but her opinion should not be excluded. *Ericsson*, 773 F.3d at 1227; *ActiveVideo*, 694 F3d at 1333.

Case 2:21-cv-00799-RSM-TLF   Document 324   Filed 10/20/23   Page 13 of 17

**A.** **Ms. Riley's ▉▉▉ License Analysis Is Reliable Because She Considered The Facts, Terms, And Circumstances Underlying The ▉▉▉ License To That Of The Hypothetical Negotiation In This Case**

Factors to be considered in apportionment based on prior licenses include whether allegedly comparable licenses cover more or less patents than are at issue in the action, whether the license include cross-licensing terms, and whether the license was calculated as some percentage of the value of a multi-component product. *Ericsson*, 773 F.3d at 1227. Here, Ms. Riley conducts such analysis.

Ms. Riley acknowledged that Epic has incorporated ▉▉▉▉▉▉ within its Unreal Engine 4 product; specifically, ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉" Ex. A at ¶ 272. In addition to considering the technology comparability between the ▉▉▉ License and the Asserted Patents (*see supra* section IV(B)), Ms. Riley also analyzed the facts, terms, and circumstances underlying the ▉▉▉ License (Ex. A at ¶ 267-279). Ms. Riley explained the similarities and differences in the parties' circumstances between the ▉▉▉ License and the hypothetical negotiation in the current case. Ex. A at ¶ 291-293; *see also supra* section III(B). Epic's arguments take Ms. Riley's testimony out of context, and Epic's claim that Ms. Riley failed to conduct such analysis is incorrect. Motion at 9:10-18, 10:27-11:11.

Furthermore, under the *Georgia–Pacific* methodology, an expert arrives at an initial royalty rate and then determines a reasonable royalty by making adjustments "on the basis of a hypothetical negotiation, occurring between the parties at the time that infringement began," using the fifteen *Georgia–Pacific* factors **to guide that hypothetical negotiation**. *Microsoft*, 904 F. Supp. 2d at 1117; *Uniloc*, 632 F.3d at 1312. Contrary to Epic's argument, the *Georgia-Pacific* factors are not applied twice—once to the ▉▉▉ License **and then again** to the hypothetical negotiation. Motion at 10:18-24. Ms. Riley's methodology of calculating an initial royalty rate and then modifying that rate on the basis of the *Georgia–Pacific* is a tried and true method widely accepted by courts. *Microsoft*, 904 F. Supp. 2d at 1117 (recognizing that the "methodology of beginning

EPIC'S *DAUBERT* MOTION TO EXCLUDE –
9
(CASE NO. 2:21-CV-00799-RSM-TLF)

POLSINELLI

1000 SECOND AVENUE, SUITE 3500
SEATTLE, WA  98104  •  Tel:  206-393-5400

1  with an initial royalty rate and then analyzing the *Georgia–Pacific* [factors] to reconstruct a

2  hypothetical negotiation has thoroughly been subjected to peer review and publication.")

3         Because Epic's criticisms go to the weight, and not admissibility, of Ms. Riley's opinions,

4  the Court should deny the motion.

5         **B.**      **Ms. Riley's ▮▮▮▮ License Analysis Is Reliable Because She Included**

6                  **Technological Comparability**

7         Ms. Riley's opinion should not be excluded because she included technological

8  comparability of ▮▮▮▮▮▮▮▮▮▮▮▮ to that of the Asserted Patents. The

9  ▮▮ License involves technology covered by ▮▮▮▮▮▮▮▮▮▮▮▮

10  ▮▮▮▮▮ Ex. A at ¶ 269. In her report, Ms. Riley described ▮▮▮▮▮▮

11  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

12  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* at

13  ¶ 270-274. In doing so, Ms. Riley reviewed ▮▮▮▮▮▮ itself, agreements that Epic produced,

14  the deposition testimony of Epic witnesses Mark Imbriaco and Matt Weissinger, Epic's public

15  webpages, and ▮▮▮▮▮ public webpages. Ex. A at ¶ 270-279. Ms. Riley acknowledged that

16  ▮▮▮▮▮▮▮▮▮▮▮▮ cover different technology from that of the Asserted

17  Patents, which allow a large number of participants to connect with others in a virtual computer-

18  generated environment in order to enjoy common virtual experiences. *Id.* at ¶ 95. Ms. Riley also

19  discussed the technology covered by the Asserted Patents, ▮▮▮▮▮▮▮▮▮▮▮

20  ▮▮▮ with Dr. Rosenberg. *Id.* at ¶ 293; Ex. B at 186:10-19, 187:15-18, 188:9-189:9, 205:3-16.[1]

21  In conjunction with her discussion with Dr. Rosenberg, Ms. Riley understood "that the technology

---

[1] Epic argues that Riley cannot rely on her discussion with Dr. Rosenberg because Dr. Rosenberg did not disclose the opinion in his own report. Motion at 10:5-13. However, this Court had previously ruled on a similar situation and had decided to reserve the issue for trial. *Eagle Harbor Holdings, LLC v. Ford Motor Co.*, No. C11-5503 BHS, 2015 WL 12670404, at *3 (W.D. Wash. Mar. 9, 2015) ("The parties dispute whether Dr. Min actually provided any opinion on the issue of comparable technology. The Court concludes that this issue shall be reserved for trial. If Dr. Min does provide the requisite foundational testimony, then Mr. Wagner may rely upon that testimony. Otherwise, Mr. Wagner will not be allowed to discuss the absence of any license for comparable technology.")

POLSINELLI
1000 SECOND AVENUE, SUITE 3500
SEATTLE, WA  98104 • Tel: 206-393-5400

licensed as part of this ██ agreement is less valuable than the technology of the Patents-in-Suit would be to Epic at the hypothetical negotiation" and that without the Asserted Patents, the Accused Events would never have been able to occur. Ex. A at ¶¶ 293, 300; Ex. B at 185:5-11, 185:20-186:5, 207:2-21.

Ms. Riley does include a technological comparison of ██ License. Epic may disagree with the results of that analysis, but disagreements about the degree of comparability between prior licenses and the infringement at-issue generally go to the weight of the evidence, not its admissibility. *Ericsson*, 773 F.3d at 1226; *Virnetx*, 767 F.3d at 1330; *Apple*, 757 F.3d at 1326. Therefore, the Court should not exclude Ms. Riley's opinion.

### C.   Ms. Riley's Other "Comparable Transactions" Analysis Is Reliable Because She Did Apportion Damages

Epic claims that Ms. Riley cannot rely on: (1) Epic's internal document regarding payment to an artist of one of the Accused Events, (2) Epic's merchandise agreements, (3) a published industry report, and (4) a Utherverse Digital license agreement to form her royalty base. Motion at 11:14-12:4. Epic's basis is that Ms. Riley allegedly did not account for the technology underlying the materials or conduct apportionment. *Id*. Epic is wrong on each point.

With respect to Epic's internal document and merchandise agreements, Ms. Riley properly considered the materials and explained her reliance upon them as they directly relate to Epic's royalty payment goal with respect to the Accused Events. Ex. A at ¶¶ 260-285. Therefore, the materials provide insight into the royalty rates that Epic, a party to the litigation, would seek in connection with the Accused Events. *See Microsoft*, 904 F. Supp. 2d at 1117–18 (citing *Inventio*, 2011 WL 3359705, at *3) (Expert can rely on prior license agreements so long as they provide some indicia of the appropriate rate and such agreement and rate are not so divorced from the facts of the case.).

Regarding the Utherverse Digital license agreement, Ms. Riley explained that it pertains to the development of a virtual reality universe, which directly relates to the Asserted Patents because the Asserted Patents allow a large number of participants to connect with others in a virtual



computer-generated environment in order to enjoy common virtual experiences. Ex. A at ¶¶ 95, 294.

Finally, regarding the published industry report, Ms. Riley explained that the report is from IPSCIO, which is an independent organization that retains IP experts and industry partners to maintain an IP royalty rates database and to create specialized and insightful industry study reports. *Id.* at ¶ 294; Ex. B at 384:5-18.[2] Courts have approved the use of such materials in other cases and, therefore, Ms. Riley's reliance on the published industry report is appropriate as one factor, among many, to consider in determining a reasonable royalty rate. *Freeman v. Gerber Prod. Co.*, 450 F. Supp. 2d 1248, 1262 (D. Kan. 2006); *Novozymes A/S v. Genencor Int'l, Inc.*, 474 F. Supp. 2d 592, 601, 608 (D. Del. 2007).

## V.    CONCLUSION

For the foregoing reasons, Epic's *Daubert* Motion to Exclude should be denied.

---

[2] *See also* https://ipscio.com/.

UTHERVERSE GAMING'S OPPOSITION TO
EPIC'S *DAUBERT* MOTION TO EXCLUDE –
12
(CASE NO. 2:21-CV-00799-RSM-TLF)



1000 SECOND AVENUE, SUITE 3500
SEATTLE, WA  98104 • Tel: 206-393-5400

DATED this 20th day of October, 2023

Respectfully submitted,

*/s/ Emily C. McNally*

By:  Emily McNally (WSBA No. 60710)
**POLSINELLI PC**
1000 Second Avenue, Suite 3500
Seattle, WA  98104
Tel:  206-393-5400
Fax:  206-393-5401
Email:  emcnally@polsinelli.com

*Of Counsel:*

Colby B. Springer (admitted *pro hac vice)*
Miya Yusa (admitted *pro hac vice*)
**POLSINELLI LLP**
Three Embarcadero Center, Suite 2400
San Francisco, CA  94111
Tel:  415-248-2100
Fax:  415-248-2101
Email:  cspringer@polsinelli.com
Email:  myusa@polsinelli.com

Melenie Van (admitted *pro hac vice*)
**POLSINELLI LLP**
2049 Century Park East, Suite 2900
Los Angeles, CA 90067
Tel:      (310) 229-1355
Fax:     (415) 276-8959
Email:  mvan@polsinelli.com

Mark T. Deming (admitted *pro hac vice*)
**POLSINELLI PC**
150 N. Riverside Place, Suite 3000
Chicago, IL  60606
Tel:  312-819-1900
Fax:  312-819-1901
Email:  mdeming@polsinelli.com

Jonathan Spivey (admitted *pro hac vice*)
**POLSINELLI PC**
1000 Louisiana Street, Suite 6400
Houston, TX 77002
Tel.: (713) 374-1600
Fax: (713) 374-1601
Email: jspivey@polsinelli.com

Attorneys for Plaintiff
UTHERVERSE GAMING LLC

The signatory certifies that this memorandum contains 4,177 words, in compliance with the Local Civil Rules.  Counsel relied on the word count of a word-processing system used to prepare the brief.

