UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

UTHERVERSE GAMING, LLC

                  Plaintiff,

    v.

EPIC GAMES, INC.,

                  Defendant.

Case No. 2:21-cv-799-RSM-TLF

REPORT AND RECOMMENDATION ON PLAINTIFF'S MOTION TO EXCLUDE

NOTED FOR JANUARY 12, 2024

This matter comes before the Court on Plaintiff Utherverse Gaming, LLC's ("Utherverse") motion to exclude Benjamin Ellinger's opinions and testimony regarding the invalidity of the 071' Patent. Dkt. 294. Defendant, Epic Games, Inc. ("Epic") filed a response (Dkt. 330) and Plaintiff filed a reply (Dkt. 351). The Court held oral argument on November 21, 2023. For the following reasons, the Court should DENY in part and GRANT in part Plaintiff's motion to exclude.

## I.     LEGAL STANDARD

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993), the Supreme Court held that Federal Rule of Evidence 702 creates "a gatekeeping role for the [trial] judge" in order to "ensur[e] that an expert's testimony both rests on a reliable

foundation and is relevant to the task at hand." Federal Rule of Evidence 702 provides that[1]:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the fact of the case.

"Before admitting expert testimony into evidence, the district court must perform a gatekeeping role of ensuring that the testimony is both relevant and reliable under Rule 702." *United States v. Ruvalcaba-Garcia*, 923 F.3d 1183, 1188 (9th Cir. 2019) (internal quotation marks omitted) (quoting *Daubert*, 509 U.S. at 597). This requires the court to determine if the expert's reasoning or methodology underlying the testimony: (1) is scientifically valid (i.e., reliable); and (2) can be applied to the facts at issue (i.e., relevant). *Daubert*, 509 U.S. at 592–593.

The reliability inquiry "requires that the expert's testimony have a reliable basis in the knowledge and experience of the relevant discipline." *Ruvalcaba-Garcia*, 923 F.3d. at 1188–1189 (internal quotation marks omitted) (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999)). If an expert's opinion is found to be reliable, however, "[v]igorous cross-examination, presentation of contrary evidence, and careful

---

[1] This recitation of FRE 702 reflects the amended rule that was adopted on December 1, 2023. The amendment clarifies that an expert's qualifications is based on the preponderance of the evidence standard. In anticipation of this amendment, the Court requested the parties to submit supplemental briefing on how, if at all, the changes to FRE 702, as amended, would impact any motions relating to experts. Dkt. 348; Dkt. 360; Dkt. 361.

instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 592, 596.

"Expert opinion testimony is relevant if the knowledge underlying it has a valid connection to the pertinent inquiry." *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010) (quoting *United States v. Sandoval-Mendoza*, 472 F.3d 645, 654 (9th Cir. 2006)). "Reliable expert testimony need only be relevant, and need not establish every element that the plaintiff must prove, in order to be admissible." *Id*., citing *Stilwell v. Smith & Nephew, Inc.*, 482 F.3d 1187, 1192 (9th Cir. 2007).

The party seeking to introduce expert testimony evidence must show by a preponderance of the evidence that the testimony is admissible under Rule 702. *Daubert*, 509 U.S. at 592, n.10. However, Rule 702 should be applied with a "liberal thrust" favoring admission. *Messick v. Novartis Pharms. Corp.*, 747 F.3d 1193, 1196 (9th Cir. 2014).

As to the materials an expert relies on, Federal Rule of Evidence 703 also applies. "Rule 703 does not make admissible otherwise inadmissible evidence." 4 *Weinstein's Federal Evidence* § 703.05 n.12. That is because "Rule 703 is not, itself, an exception to or exclusion from the hearsay rule or any other evidence rule that makes the underlying information inadmissible." *Id.* § 703.05. Rule 703 does not authorize admitting inadmissible evidence "on the pretense that it is the basis for expert opinion when, in fact, the expert adds nothing to the [inadmissible evidence] other than transmitting [it] to the jury." 29 Charles Alan Wright, Arthur R. Miller & Victor J. Gold, *Federal Practice and Procedure* § 6274 (2d ed. 2020). "In such a case, Rule 703 is

1  simply inapplicable and the usual rules regulating the admissibility of evidence control."

2  *Id.*

3      Evidence Rule 703 permits the proponent of an expert's opinion to disclose the

4  underlying material to a jury if "experts in the particular field would reasonably rely on"

5  the underlying material and "if [the underlying material's] probative value in helping the

6  jury evaluate the opinion substantially outweighs [its] prejudicial effect." Fed. R. Evid.

7  703. But "the trial judge must give a limiting instruction upon request, informing the jury

8  that the underlying information must not be used for substantive purposes." Fed. R.

9  Evid. 703 advisory committee's notes to the 2000 amendments.

10                    II.      DISCUSSION

11      Utherverse contends that the Court should exclude Mr. Ellinger's opinions that

12  are (1) based on non-prior art and/or unauthenticated Internet documents that contain

13  hearsay; (2) offered from the perspective of a game player as opposed to a game

14  developer; and (3) based on uncorroborated and untestable interpretations of third-party

15  source code. *See* Dkt. 294 at 6.

16      Utherverse seeks to specifically exclude the following: (a) the Ellinger Invalidity

17  Report at ¶¶ 119, 120, 125, 126, 133, 134, 137, 139, 143, 148, 150, 151, 153, 155, 159,

18  160, 164, 169, 170, 171, 173, 180, 181-192, 182, 196, 213, 215, 220, 225, 230, 237,

19  238, 239, 241, 242, 245, 247, 248, 251, 253, 257, 258, 260, 264, 265, 266, 268, 274-

20  280, 281, 287, 359 (b) documents relied upon by Ellinger in that report: EPIC-

21  00000468, EPIC-00000471, EPIC-00000567, EPIC-00000573, EPIC-00000607, EPIC-

22  00027039, EPIC-0027138, EPIC-00027272, EPIC-00027329; (c) YouTube Videos from

23  'Wooden Potatoes' and 'c0ncept' and relied upon by Ellinger in that report; and (d)

24

25

source code from Activision Blizzard and ArenaNet and relied upon by Ellinger in that report. *See* Dkt. 294 at 12.

   A.  Mr. Ellinger's Qualifications and Opinions as a Game Developer

   Utherverse critiques Mr. Ellinger for providing opinions as a game player, rather than a game developer. *See* Dkt. 294 at 9.

   Mr. Ellinger has over 25 years of experience in software and game development as both an engineer and a designer. Dkt. 331, Exhibit 1 (Ellinger's Invalidity Report) at ¶7. In addition to his professional experience, he has played, designed and developed video games as a hobby for several years. *See id.* at ¶8.

   "'Disputes as to the strengths of [an expert's] credentials, faults in his use of [a particular] methodology, or lack of textual authority for his opinion, go to the weight, not the admissibility, of his testimony.' " *Kennedy v. Collagen Corp.*, 161 F.3d 1226, 1231 (9th Cir. 1998) (quoting *McCullock v. H.B. Fuller Co.*, 61 F.3d 1038, 1044 (2d Cir. 1995). The parties appear to agree both that a person of ordinary skill in the art in this context is a game developer, and that Mr. Ellinger is in fact a game developer.

   Mr. Ellinger asserts that he has extensive experience in playing World of Warcraft during the relevant timeframe. Yet, in several paragraphs of his report, Mr. Ellinger analyzes the *source code* of World of Warcraft, as well. *See* Dkt. 331, Exhibit 1 at ¶ 127, 138, 141, 142, 146, 150, 151, 152, 161, 163, 172, 193, 207, 214, 216, 217. Mr. Ellinger similarly inspected and analyzed the source code for Guild Wars. *See id.* at ¶229, 231, 240, 243, 244, 249, 250, 259, 261, 267, 282, 288. Inspecting source code, the parties agree, is the skill of a game developer as opposed to an individual who only plays the games.

1    B.  Mr. Ellinger's Reliance on Non-Prior Art and Internet Sources

2          Utherverse argues that the articles from Polygon.com, Engadget.com, and

3    Fandom.com that Mr. Ellinger relies on contain third-party hearsay characterizations of

4    World of Warcraft and Guild Wars. *See* Dkt. 294 at 8. Further, Utherverse claims these

5    articles and *wikis* were published or visited after March 7, 2007, and are therefore,

6    considered non-prior art. *See id.*

7          To begin with, it is not clear that internet sources are inherently unreliable. *See*

8    *generally, Oracle America, Inc. v. Google, Inc.*, 2011 WL 5914033, at *3 (N.D. Cal. Nov.

9    28, 2011) (finding that Google's damages experts can reasonably rely on interviews,

10   postings on internet blogs and other online sources as long as the foundational facts are

11   properly laid at trial).

12         Yet, the sources relied upon by an expert have material bearing for the analysis

13   of a *Daubert* motion. The Federal Rules of Evidence require that an expert's testimony

14   be "the product of reliable principles and methods" applied to "sufficient facts or data."

15   Fed.R.Evid. 702(b), (c). Although an expert's data need not be admissible, in order to be

16   considered reliable, the data may not be derived from a manifestly unreliable source.

17   *See Power Integrations, Inc. v. Fairchild Semiconductor Intern., Inc.,* 711 F.3d. 1348,

18   1373 (Fed. Cir. 2013) (finding expert's damages testimony unreliable in part because

19   the source of documents that the expert relied on were unknown). *See, e.g.,*

20   *Montgomery County v. Microvote Corp.,* 320 F.3d 440, 448 (3d Cir.2003) (finding

21   expert's data source unreliable where "some of the things that were shown to [the

22   expert] he didn't seem to know where they were from or what the source of them were");

23   *Emigh v. Consol. Rail Corp.,* 710 F.Supp. 608, 612 (W.D.Pa.1989) ("[W]hen the

24

25

underlying source is so unreliable as to render it more prejudicial than probative, ... Rule 703 cannot be used as a backdoor to get the evidence before the jury.").

Here, with respect to the information obtained from Polygon.com, Engadget.com, Fandom.com, Mr. Ellinger testified that he reviewed them all to "make sure that they were at the links they were at" and he used his "professional background in game development to make sure that they were things that – that were accurate." *See* Dkt. 295, Exhibit C (Benjamin Ellinger's Deposition Transcript) at 284:10-17. Further, when asked if he knew how the crowd-sourced information on websites like Fandom.com were verified, he testified that he did not know who controlled the website nor did he have knowledge about whether there was an "internal editing process." *See id.* at 404:2-11.

While Epic is correct that information from these articles and video do not need to be admissible for Mr. Ellinger's opinion to be admitted, the expert would be expected under Evidence Rule 702 to have sufficient knowledge about the reliability of the sources he is relying on. The reliability inquiry "requires that the expert's testimony have a reliable basis in the knowledge and experience of the relevant discipline." *Ruvalcaba-Garcia*, 923 F.3d. at 1188–1189 (internal quotation marks omitted) (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999)). Based on the Court's review of his deposition testimony, Mr. Ellinger's lack of knowledge of the reliability of these sources could prejudice and confuse the jury.

Therefore, Utherverse's motion to exclude Mr. Ellinger's opinions where he relies on articles from Polygon.com, Engadget.com, Fandom.com (i.e., ¶¶120, the last bullet point of 126, 137, 148, 150, 160, 164, 196, the last bullet point of 230, 239, 245, 248,

257, 258, 260, 274 and EPIC-00000468, EPIC-00000471, EPIC-00000567, EPIC-00000573, EPIC-00000607, EPIC-00027272, EPIC-00027329) should be GRANTED.

With respect to the two YouTube.com videos relied upon by Mr. Ellinger, Utherverse contends that because Mr. Ellinger does not personally know the individuals who uploaded those videos, his reliance on them is inappropriate.

Yet, there is a distinction between these gameplay videos and the crowd-sourced articles. The gameplay videos (i.e., the c0cept video and the WoodenPotatoes video) are not based on another individual's description of the games; rather the videos directly depict gameplay upon which Mr. Ellinger bases his opinions.

Thus, Utherverse's motion to exclude Mr. Ellinger's opinions where he relies on the YouTube.com videos from "WoodenPotatoes" and "c0ncept" should be DENIED.

C.  Mr. Ellinger's Reliance on Guild Wars and War of Warcraft game manuals

Unlike the crowd-sourced sources that Mr. Ellinger relied on discussed above, the World of Warcraft and Guild War game manuals -- that Mr. Ellinger also relied on -- came from the gamers' developers. *See* Dkt. 331 at Exhibit 5; Exhibit 6. The archived captures of the World of Warcraft guide was authenticated via an affidavit from the Internet Archive. *See* Dkt. 331 at Exhibit 11.

Utherverse argues that Mr. Ellinger's opinions based on the manuals should be excluded because he could not properly authenticate the manuals. Utherverse did not, however, argue that the manuals were unreliable. As discussed above, it is not necessary for the evidence that an expert relies on to be admissible at trial. For the purposes of the instant motion, it *is* necessary that the expert is not deriving his data

from a manifestly unreliable source. That is not the situation with respect to the game manuals.

Therefore, Utherverse's motion to exclude Mr. Ellinger's opinions based on the game manuals should be DENIED.

D. Mr. Ellinger's Opinion as to Third-Party Source Code

Finally, Utherverse contends that Mr. Ellinger's reliance on and interpretation of source code produced by Activision Blizzard and ArenaNet was unreasonable and speculative because Mr. Ellinger did not verify his source code analysis with those third-parties.

Utherverse relies on *Wi-LAN Inc. v. Sharp Elecs. Corp.* and argues that Mr. Ellinger should have verified his source code analysis with Activision Blizzard and ArenaNet. 992 F.3d 1366 (Fed. Cir. 2021). The Court in *Wi-LAN* found that the third-party source code itself lacked "trustworthiness" and the circumstances of the source code's production gave the court concern. *Id.* at 1373-74.

Here, Utherverse is not arguing that the source codes themselves lack trustworthiness or that the production of the source codes was concerning. To the extent Utherverse has concerns about Mr. Ellinger's interpretation of those codes, it goes to the weight of Mr. Ellinger's opinion and should be handled through cross examination and presentation of contrary evidence.

Therefore, Utherverse's motion to exclude Mr. Ellinger's reliance on the source code from Activision Blizzard and ArenaNet should be DENIED.

III.    CONCLUSION

Utherverse's motion to exclude certain invalidity opinions of Mr. Ellinger should be DENIED in part and GRANTED in part. The Court should exclude Mr. Ellinger's invalidity report at ¶¶120, 126 (only the last bullet point), 137, 148, 150, 160, 164,196, 230 (only the last bullet point), 239, 245, 248, 257, 258, 260, and 274 where he specifically relied on articles from Polygon.com, Engadget.com and Fandom.com and EPIC-00000468, EPIC-00000471, EPIC-00000567, EPIC-00000573, EPIC-00000607, EPIC-00027272, and EPIC-00027329. Mr. Ellinger's opinions based on the World of Warcraft and Guildwars manuals, the two YouTube videos and the Activision Blizzard and ArenaNet source codes should not be excluded.

1

2        Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall

have fourteen (14) days from service of this report to file written objections. *See also*

3   Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for

4   purposes of *de novo* review by the district judge, *see* 28 U.S.C. § 636(b)(1)(C), and can

5   result in a waiver of those objections for purposes of appeal. *See Thomas v. Arn*, 474

6   U.S. 140, 142 (1985); *Miranda v. Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012) (citations

7   omitted). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the Clerk is

8   directed to set the matter for consideration on January 12, 2024, as noted in the

9   caption.

10       Dated this 26th day of December, 2023.

11

12

13

          Theresa L. Fricke
14        United States Magistrate Judge

15

16

17

18

19

20

21

22

23

24

25