UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

UTHERVERSE GAMING LLC,

Plaintiff,

v.

EPIC GAMING, INC.,

Defendant.

Case No. 2:21-cv-799-RSM-TLF

REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

NOTED FOR JANUARY 12, 2024

Defendant Epic Gaming's moves for summary judgment. Dkt. 300. The motion has been fully briefed. Dkt. 300, 334, 336, 353.

For the reasons discussed below, the Court should:

1. Grant summary judgment for the defendant on the basis of non-infringement as to each claim asserted for the '071 Patent;

2. Deny summary judgment as to each claim asserted for the '605 Patent;

3. Grant summary judgment for defendant as to the '071 Patent on the basis it is invalid under 35 U.S.C. § 101 and the second part of the test in *Alice Corp. Pty. Ltd. v. CLS Bank Int'l,* 573 U.S. 208 (2014); and

4. Deny summary judgment on the issue of whether the marking statute was complied with (if the Court denies defendant's motion for summary judgment on the other issues pertaining to the '071 Patent).

REPORT AND RECOMMENDATION ON DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT - 1

I.      Background

Plaintiff, Utherverse Gaming, LLC, accuses defendant, Epic Games, Inc., of infringing two patents. The '071 Patent describes separating players into virtual dimensions, and each player is represented by an avatar. The allegedly infringing events were four performances that were attended by large audiences of individual players who were playing within smaller groups in parallel instances of Epic's Fortnight videogame.

The allegations plaintiff makes about the '605 Patent infringement are in respect to two performances, which occurred in Epic's Fortnight videogame. The '605 Patent describes a virtual experience being recorded and later played back.

For the '071 patent, two claims are at issue: Claim 8 and Claim 10; Claim 1 is not asserted. Dkt. 314, plaintiff's motion for partial summary judgment, at 8; Dkt. 334, 336, plaintiff's opposition to defendant's motion for summary judgment, at 24, 27, 31; Dkt. 335-14, Plaintiff's Second Amended Disclosure of Asserted Claims and Infringement Contentions, at 3.

For the '605 patent, dependent Claims 2, 5, and 8 are asserted; Claim 1 is not asserted. Dkt. 334, 336, plaintiff's opposition to defendant's motion for summary judgment, at 13-14; Dkt. 335-14, Plaintiff's Second Amended Disclosure of Asserted Claims and Infringement Contentions, at 3.

The plaintiff asserts that defendant infringed the '071 patent during four accused events:

1.  Marshmello concert on February 2, 2019

2. Star Wars promotional event on December 14, 2019

3. Travis Scott concert – April 23 – April 25, 2020

4. Ariana Grande concert – August 6 – 8, 2021

Dkt. 1, Complaint, at 22-28; Plaintiff's opposition to defendant's motion for summary judgment, Dkt. 334, 336, at 2-11.

Plaintiff asserts the defendant infringed the '605 patent during two of these events – the Travis Scott concert, and the Ariana Grande concert. Dkt. 1, Complaint, at 37-48; Dkt. 293, Plaintiff's Answer to Defendant's Amended Counterclaim, Seventh Counterclaim, at 9, ¶ 57; Dkt. 334, 336, at 12-14.

## II.  Analysis

Summary judgment is supported if the materials in the record "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Federal Rule of Civil Procedure (FRCP) 56 (a),(c). The moving party bears the initial burden to demonstrate the absence of a genuine dispute of material fact for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). The moving party is not always required to produce evidence – they may point out "there is an absence of evidence to support" an element of the non-moving party's case. *Exigent Technology, Inc. v. Atrana Solutions, Inc.,* 442 F.3d 1301, 1308 (Fed. Cir. 2006) (quoting *Celotex*, 477 U.S. at 325).

A genuine dispute concerning a material fact is presented when there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). In this context, materiality means the fact

is one that is "relevant to an element of a claim or defense and whose existence might affect the outcome of the suit"; thus, materiality is "determined by the substantive law governing the claim." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The non-moving party is required to show that genuine issues of material fact "'can be resolved only by a finder of fact *because they may reasonably be resolved in favor of either party." California Architectural Bldg. Products., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987) (quoting *Anderson,* 477 U.S. at 250) (emphasis in original). When the Court considers a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [their] favor." *Anderson,* at 255. Yet the Court is not allowed to perform the jury's function – the Court may not weigh evidence, draw legitimate inferences from facts, or decide credibility. *Id.*

If the moving party meets their initial burden, an adverse party may not rest upon the mere allegations or denials of their pleading; their response, by affidavits or as otherwise provided in FRCP 56, must set forth specific facts showing there is a genuine issue for trial. FRCP 56(c); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586-587 (1986). The Court may not disregard evidence solely based on its self-serving nature. *Nigro v. Sears, Roebuck & Co.,* 784 F.3d 495, 497 (9th Cir. 2015). "The district court can disregard a self-serving declaration that states only conclusions and not facts that would be admissible evidence." *Id.*

1

2

**A. Whether there are genuine disputes of material facts regarding**

**infringement as to the claims of the '071 and '605 patents**

3    To prevail on a cause of action for patent infringement under a theory of literal

4 infringement, the plaintiff (patentee or patent holder) must prove by a preponderance of

5 evidence that the defendant made, used, sold, offered for sale within, or imported into

6 the United States a product or process that meets all the asserted claims, and that

7 defendant did so without permission of the plaintiff during the time the patent was in

8 force. *Mas -Hamilton Grp. v. LaGard, Inc.* 156 F.3d 1206, 1211 (Fed. Cir. 1998). In a

9 summary judgment motion regarding the issue of whether a patent has been infringed,

10 the defendant must state that the patentee had no evidence of infringement and point to

11 "specific ways in which accused [products] did not meet the claim limitations." *Exigent*

12 *Technology. Inc. v. Atrana Solutions., Inc.,* 442 F.3d 1301, 1309 (Fed. Cir. 2006). When

13 this showing is made by the defendant, the burden of production shifts to plaintiff and

14 they must "identify genuine issues that preclude summary judgment." *Optivus*

15 *Technology, Inc. v. Ion Beam Applications S.A.,* 469 F.3d 978, 990 (Fed. Cir. 2006).

16    The Court must determine the scope and meaning of each of the patent claims;

17 the claims, as properly interpreted for the scope and meaning, are then compared to the

18 allegedly infringing method. *Sound View Innovations, LLC v. Hulu, LLC,* 33 F.4th 1326,

19 1335 (Fed. Cir. 2022).

20    The first step – determining the scope and meaning of each patent claim -- is an

21 issue of law. *02 Micro Intern. Ltd. v. Beyond Innovation Technology Co., Ltd.,* 521 F.3d

22 1351, 1360 (Fed. Cir. 2008).

23

24

25

The second step is a question of fact. *Bowers v. Baystate Technologies, Inc.,* 320 F.3d 1317, 1323 (Fed. Cir. 2003). This involves "a comparison of the claim with the allegedly infringing device". *Id.* at 1334. For plaintiff to successfully defeat the defendant's motion for summary judgment, plaintiff must present affirmative evidence, to be construed by the Court as believable (i.e., the Court cannot make credibility determinations) and all justifiable inferences are to be drawn in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 257 (1986). If there is even a single claim limitation that has not been met, the plaintiff has failed to prove literal infringement. *MicroStrategy Inc. v. Business Objects, S.A.,* 429 F.3d 1344, 1352 (Fed. Cir. 2005).

Summary judgment in favor of defendant as to non-infringement would be appropriate if plaintiff fails to provide admissible evidence to establish a genuine issue of material fact that the defendant's accused events satisfy the limitations of each of the asserted claims, "and thus perform every step of the asserted claims". *Treehouse Avatar LLC v. Valve Corporation,* 54 F.4th 709, 715 (Fed. Cir. 2022). If there is "no basis on which a reasonable jury could find that [defendant's] accused [events] infringe" on each of the asserted claims, then summary judgment in favor of defendant would be warranted. *See Bowers,* 320 F.3d at 1334 (reversing the district court's decision to deny defendant's motion for judgment as a matter of law and overturning the jury's patent infringement verdict).

1. <u>'071 Patent (Dkt. 1-4, Exhibit D, Complaint; Dkt. 312-1, Exhibit A, McNally Declaration)</u>

### a.  Common space and parallel dimensions – Claims 8 and 10

"Common space" was described in the Court's claim construction order as "[a] defined (i.e. bounded) area or portion of multiple dimensions that provides for simultaneous (*i.e.* real-time) interactions with multiple parallel dimensions/instances." Dkt. 133 at 4. This was the construction proposed by plaintiff. Dkt. 114 at 27-31, Dkt. 133 at 3, 11-12.

"Common space" is referred to in Claim 8: "The method of claim 1, further comprising modeling a common space in the computer memory configured in relation to the plurality of parallel dimensions so that at least one object located inside the common space is visible from view-points located inside each of the plurality of parallel dimensions." Dkt. 1-4, Complaint, Ex. D, at 20, '071:19:24-29. It is also referred to in Claim 10: "The method of claim 1, further comprising modeling a common space in the computer memory configured in relation to the plurality of parallel dimensions so that a modeled object originating from the common space is capable of passing into at least one of the plurality of parallel dimensions." *Id.* at 20, '071:19:37-45. In this case, Epic has produced evidence that the limitations of common space, as interpreted in the Court's claim construction order, are not satisfied as to any of the four accused events.

First, Epic has produced evidence that the "lobby" was separate from game play, was utilized by one player at a time, and only for purposes of a menu screen. Dkt. 341-11, Dkt. 343-18, Benjamin Ellinger, rebuttal expert report, at 29-33. Epic contends the lobby was not shared by players – it would only be "visible to an individual player on their own client device – not to multiple players." *Id.*  at 61, ¶ 152.Therefore, Epic

1    argues, the lobby did not practice the limitations of common space. Dkt. 300,

2    defendant's motion for summary judgment, at 13.

3           Second, Epic has produced evidence that the other alleged common space -- an

4    area where a mannequin appears in each of the accused events, that were the focus of

5    the performance (e.g., Marshmello, or the Star Wars performers, or Travis Scott, or

6    Ariana Grande) during game play – also did not satisfy the claim limitations of a

7    common space environment in any of the four accused events. Dkt. 341-11, Dkt. 343-

8    18, at pp. 62-64, ¶¶ 146-149; and at pp. 73-90, ¶¶ 178-219. According to Epic's

9    evidence, the area where a mannequin performed was included in software provided to

10   each of the client devices operated by each player (the mannequin is a skeletal mesh

11   actor that would not be controlled by a human player or by artificial intelligence; it was

12   controlled by sequences known as a "Master" and "Level") and the area was visible to

13   the player; this mannequin-performance area was a discrete space within each of the

14   instances of gameplay. Dkt. 341-11 at 42-43; see also Dkt. 313-6, Deposition of Peter

15   Axt, at 7-9.

16          Therefore, any one player would be able to observe and move their avatar near

17   that space – but could not enter the exact space where the mannequin skeletal mesh

18   actor was performing; yet – for example if player A in dimension 1 is watching the

19   mannequin in that "parallel instance" of their gameplay, and player B in dimension 2 is

20   watching the mannequin in that "parallel instance" of their gameplay, player A would not

21   be able to observe the mannequin performing in dimension 2, and player B would not

22   be able to observe the mannequin performing in dimension 1, and players A and B

23

24

25

would not be able to observe each other across the multiple parallel

dimensions/instances. *Id.*

According to Epic's evidence, one dimension or instance would have its own

dedicated server (a server dedicated to hosting that specific game session). Dkt. 299-5,

Benjamin Ellinger, Rebuttal Expert Report (sealed) at 32-36, 41, 52, 54-55 (explaining

that mannequins could not be controlled, created, or destroyed by the human player

and the mannequins would perform all functions on the client device – "not involved in

the replication process managed by the dedicated server").

Utherverse points to the deposition of Mark Imbriaco as support, but Mr.

Imbriaco's deposition is consistent with analysis of the Ellinger Rebuttal Expert Report.

See Dkt. 313-8 at 11-13, Mark Imbriaco Deposition (stating that the map of the game

state for each player is included in the individual player's installation package).

Utherverse also points to the Fed. R. Civ. Pro. 30(b)(6) deposition of Peter Axt, and

argues that this shows a "common space" was the lobby in the accused event.

1 ████████████████████████████████████████████

2 ████████████████████████████████████████████

3 ██████████████████████████████████████████

4 ███████████████████████████████████████████

5 ██████████████████████████████████████████

6 ████████████████████████████

7    Epic's counsel stated during oral argument at the claim construction hearing,

8 Utherverse's construction of "multiple dimensions" would be too broad a definition –

9 because "it includes something like three separate theaters with three separate stages.

10 And all of these would be a portion of multiple dimensions. And there would be real-time

11 interactions between each of those stages and the audience in those theaters." Dkt. 114

12 at 36.

13    Utherverse produced evidence[1] that the common space did not need to be

14 viewed across all dimensions; Dr. Rosenberg stated in his report that "<u>each parallel

15 dimension can see at least one object that is located inside the common space</u>. . .."

16 Dkt. 337-1, Ex. GG, Excerpts of Rosenberg expert report, at 11 (underlining in original).

17 He explained: "There is no requirement that the common space needs to be its own

18 instance (e.g., parallel dimension) and there is no requirement that the at least one

19 object needs to be visible from every parallel dimension." Dkt. 337-1 at 11-12.

20    Dr. Rosenberg also stated (Dkt. 313-4, Full Expert Report of Rosenberg, at 34

21 [Marshmello], 57 [Star Wars], 71 [Travis Scott], 84 [Arianna Grande]), ████████████

22

23 ───────────────────
[1] The Court has reviewed the evidence relating to defendant's, and plaintiff's, summary judgment motions, and other
evidence that pertains to these motions. See Fed. R. Civ. P. 56(c)(3) "The court need consider only the cited
24 materials, but it may consider other materials in the record."

25

1 ████████████████████████████████████████████████████████

2 ████████████████████████████████████████████

3        The plaintiff contends Epic is "includ[ing] additional limitations in the construction

4 of common space." Dkt. 336, at 9. Utherverse argues that Epic has "attempted to

5 reconstrue the common space such that it is now a *singular* space that

6 *simultaneously interacts* with *all dimensions*." Dkt. 336 at 10 (emphasis in original).

7        Yet, as construed by the Court's claim construction, there is a limitation that a

8 common space "provides for simultaneous (*i.e.* real-time) interactions *with multiple*

9 *parallel dimensions/instances*". Dkt.133 at 11-12 (emphasis added). ████████████

10 ████████████████████████████████████████████████████████

11 ████████████████████████████████████████████████████████

12 ████████████████████████████████████████████████████████████

13 ████████████████████████████████████████████████████████

14 ████████████████████████████ Dkt. 337-1, ex. GG, at 9-23.

15        Claims 8 and 10 also refer to "parallel dimensions" and this term is used

16 interchangeably with "parallel instances". Dkt. 133, at 12.

17        The Court construed this term to mean: "a duplicate or recognizable counterpart

18 of a bounded, computer-modeled space that is accessible via a common environment."

19 Dkt. 133 at 12-13, quoting the '071 patent at 13:37-39; *see,* Complaint, Ex. D, '071

20 Patent, Dkt. 1-4, at 17. The Court did not adopt Utherverse's proposed construction –

21 instead, the Court relied on the language of a definition provided in the Background

22 portion of the patent. Plaintiff's proposed construction, rejected by the Court, was:

23

24

25

"Simultaneously existing dimensions in a virtual reality universe, each of which are originally duplicates or recognizable counterparts of one another." Dkt 133 at 3.

The scope and meaning of the limitation is an issue of law; Dr. Rosenberg's opinion would be inconsistent with the Court's claim construction as to the interpretation of Claim 8, and Claim 10, and therefore the Court, applying the claim construction order as a matter of law, should find there is not sufficient evidence for a reasonable jury to return a verdict for the non-moving party, Utherverse. There is not a genuine dispute of material fact concerning the operation of Epic's software; the undisputed facts show neither Claim 8 nor Claim 10 were infringed by Epic with respect to the common space and multiple dimensions or instances.

The claim construction order requires interaction between the "common space" and multiple "parallel instances". "Common space" was described in the Court's claim construction order as "[a] defined (i.e. bounded) area or portion of multiple dimensions that provides for simultaneous (*i.e.* real-time) interactions with multiple parallel dimensions/instances." There is no evidence from Utherverse that such interaction occurred in Epic's system for producing these four events.

The unrefuted evidence from Epic shows that the lobby was not a common space, because only one player at a time would use the lobby before that player could join an instance of gameplay. Thus, the Lobby was a menu, and not part of the game environment.

If the alleged common space is the area where the mannequins perform, this space was delivered by Epic's software to the specific device operated by the individual player. The common space is not controlled by the individual player, and cannot be

1   influenced by the player at all – and Utherverse has not shown how this area where the

2   mannequin/skeleton mesh performer was located interacted at all with multiple parallel

3   instances – it is only a skeleton mesh performance area that is present on the single

4   instance of game play on the device operated by one player.

5        Utherverse contends, based on Dr. Rosenberg's report, that if each individual

6   player believes they are sharing the experience with every other player who is seeing

7   the area with the mannequin/skeleton mesh performer, this would satisfy the limitations

8   of Claim 8 and Claim 10. Dkt. 313-4, Full Expert Report of Dr. Rosenberg, at 41-43

9   (Marshmello); 55-57 (Star Wars); 69-71 (Travis Scott); 84-85 (Ariana Grande). Yet a

10  skeleton mesh performance area that is present on the single instance of game play on

11  the device operated by one player is not interacting simultaneously with multiple parallel

12  instances – it is only connected with one parallel instance and one player within that

13  instance. Dkt. 299-5, Benjamin Ellinger, Rebuttal Expert Report, at 32-36, 41, 52, 54-55

14  (explaining that mannequins could not be controlled, created, or destroyed by the

15  human player and the mannequins would perform all functions on the client device –

16  "not involved in the replication process managed by the dedicated server").

17       Therefore, the Court should grant summary judgment in favor of the defendant

18  on Claim 8 and Claim 10 of the '071 Patent. Because the plaintiff would be required to

19  show that all limitations are met, as to each claim of the '071 patent, summary judgment

20  in favor of defendant on this limitation that includes both "common space" and "parallel

21  instances" means the Court should enter an order stating the '071 patent has not been

22  infringed.

23

24

25

Although this would be a dispositive ruling as to non-infringement of the '071 Patent, and it is unnecessary to consider the additional arguments of plaintiff, it is possible the District Judge may disagree with this Report and Recommendation and reach a different conclusion – therefore, remaining issues concerning the '071 patent will be analyzed below.

**b. Modeling, using a computer, a plurality of parallel dimensions in a computer memory; and animating ones of the plurality of avatars populating different ones of the parallel dimensions in response to input from respective corresponding ones of a plurality of clients to provide virtual-reality data, using the computer.**

In Claim 1, Patent '071[2] states a limitation of "[a] method for managing a multi-instance, multi-user animation process, comprising: modeling, <u>using a computer</u>, a plurality of parallel dimensions in <u>a computer memory</u>. . .assigning ones of a plurality of avatars <u>within the computer memory</u>. . .animating ones of the plurality of avatars populating different ones of the parallel dimensions in response to input from the respective corresponding ones of a plurality of clients to provide virtual-reality data, <u>using the computer</u>, . . ." Dkt. 1-4, 18:46-50, 63-67 (underlining added).

The Court's Claim Construction Order, Dkt. 133 at 12, determined that Epic's construction of the term "modeling" was in alignment with the patent language. The construction adopted by the Court is: "[d]efining the positions of a set of points such that

---

[2] Claim 8 and Claim 10 of the '071 Patent incorporate Claim 1. (Dkt. 1-4, Exhibit D, Complaint; Dkt. 312-1, Exhibit A, McNally Declaration)

they form the shape of an object or space that can be rendered." *Id.* at 3. The Court

determined that preambles of claims 24 and 25 of the '071 Patent were not limiting, but

did not rule on whether there were any limitations in Claim 1 (as opposed to a preamble

of claims 24 and 25) that was incorporated into Claims 8 and 10, or whether such

limitation was to be interpreted in a specific way with reference to the single computer or

a single set of computers. Dkt. 72 at 27; Dkt. 133 at 14-15.

If a limitation refers to "a computer" but later refers to "the computer", the

language requires at least one of those computers identified in the "a computer" portion

of the limitation, to perform all the functions listed in the claims of the patent. *Finjan LLC*

*v. SonicWall, Inc.,* 84 F.4th 963, 975 (Fed. Cir. 2023).

Epic contends that claim 1 has limitations that must be interpreted to mean that

the same computer ("a computer") and memory described in the modeling process,

must also be used for all other steps ("the computer"). Epic argues that if one computer

or a single set of computers is involved in the modeling, the additional steps of the

method described in this limitation would need to be carried out by precisely the same

single computer, or single set of computers, that is referred to in the first phrase as "a

computer" that has "a memory", and is later referred back to, as "the computer".

The record shows that the accused events do not meet the requirements of this

limitation, because the computer or set of computers that provided modeling, are not the

same computers that carried out the rest of the steps. ██████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

1 ████████████████████████████████████████████████████

2 ██████████████████████████████████████████████████████████

3 ███████████████████████████████████████████████████

4 ████████████████████████████████████████████████

5 ███████████████████████████████████████████████████████

6 ██████████████████████████████████████████████████████

7 ███████████████████████████████████████████████████

8 █████████████████████████████████████████████████████████

9 ████████████████

10      Therefore, the Court should hold that there is no genuine dispute of material fact

11 regarding the single computer, or single set of computers, required in this limitation. No

12 reasonable jury could find that a single computer or single set of computers performed

13 the functions required by claim 1 of the '071 patent.

14

15      2.   '605 patent (Dkt. 1-7, Exhibit G, Complaint; Dkt. 301-3, Exhibit

16           3, Bengfort Declaration)

17      Utherverse asserted claims 2, 5, and 8. See Dkt. 301-3 at 16-17. Each of these

18 claims incorporates "[t]he method of claim 1" (*Id.* at 16) and is dependent on claim 1.

19 The scope of each claim of a patent will be presumed to be different from the scope of

20 any other claim. *Trustees of Columbia University in City of New York v. Symantec*

21 *Corp.,* 811 F.3d 1359, 1370 (Fed. Cir. 2016). An independent claim is not restricted if

22 the dependent claim has "no meaningful difference other than an added limitation". *Id.,*

23 *see also, Andersen Corp. v. Fiber Composites, LLC,* 474 F.3d 1361, 1369-1370 (Fed.

24

25

Cir. 2007) (the doctrine of claim differentiation does not require the Court to construe a claim as being different from another claim if the claims overlap).

**Retrieving a recorded experience file from [ ]memory**. **Play[ed] back the recorded experience file by rendering, for display by the at least one client device, objects of the initial scene state in the new instance, including one or more avatars.**

Plaintiff contends that Epic's Travis Scott and Ariana Grande events infringed the '605 Patent, by using a recorded experience file, "a file containing a recording of a prior experience that occurred in a virtual environment." Dkt. 336, Plaintiff's Response, at 12; Dk. 133, Court's Claim Construction Order, at 3. Utherverse contends the performance of Travis Scott, and the performance of Ariana Grande, met the limitations of the dependent claims 2, 5, and 8 of the '605 Patent, because the performances were recorded and the recording was in a virtual environment. Dkt. 336, at 12. Utherverse also states that the claims of the '605 Patent do not require any avatar, that the avatar would be optional. *Id.* at 13-14. Utherverse contends that Claim 2 of the '605 Patent recites "one or more avatars associated with at least one client device" and "limited by objects of the recorded experience." *Id.* Claim 2, according to Utherverse, requires the avatars to be associated with at least one client device; and Claim 2 only allows for avatars in the initial scene state – but does not require them. *Id.* at 14.

Epic contends the performances of Travis Scott and Ariana Grande mannequins were not generated by a recording of a prior showing of a performance within a virtual environment – instead, the performances of each mannequin were simply animations –

rather than recorded experiences. Each of the animations was "created from scratch using the Unreal Engine Sequencer, a software tool that permits artists to create digital animations by specifying the appearance and position of animated figures at various points in a sequence." Dkt. 300, Defendant's Motion for Summary Judgment, at 18. Epic argues that the Court's Claim Construction Order required that the prior experience must capture a prior *experience* in a virtual world rather than an animation. Dkt. 353, Reply Brief of Defendant, at 10.

Epic also asserts that neither the Travis Scott event, nor the Ariana Grande event, included one or more avatars from the initial scene state in the new instance. Dkt. 300 at 18-20. Epic contends this is a requirement of the '605 Patent because the Court's Claim Construction Order identified avatars as being controlled by the client – so the movements of the avatar are happening via a computer that is being operated by a human. Dkt. 353, Reply Brief of Defendant, at 10-11. Epic contends that the initial scene state in the accused events did not include an avatar – the mannequins were not avatars because they were not controlled by the players – the mannequins were part of the animation, and there were not any player-controlled avatars in the initial scene state. *Id.*

The Court's Claim Construction Order adopted Epic's proposed construction of the "[r]ecorded experience [file]" and construed this claim to mean "[a file containing] a recording of a prior experience that occurred in a virtual environment." Dkt. 133, at 3. The Court did not interpret this claim to mean that gameplay was the experience file that was being recorded. Dkt. 133, at 14 ("The Court agrees with Epic that Utherverse's proposed construction runs afoul of this disclaimer by encompassing new gameplay.

The Court finds that Epic's construction offers at least some insight into the claim scope and therefore adopts it.")

The Court construed "initial scene state" to mean: "[t]he initial scene state includes at least a position and orientation of objects, including avatars, rendered in the scene at a beginning of a time period of a new recording." Dkt. 133 at 13, citing the '605 Patent, 6:7-9. The Court did not interpret this to mean that avatars were required in the initial scene state. *Id.*

Regarding the construction of the term "avatar" in the '605 Patent, the Court held: "[si]milarly, claim 2 of the 605 patent describes that 'movement within the new instance by the one or more avatars associated with at least one client device is limited by objects of the recorded experience.' 605 patent at 10:59-62. Again, the client device is operated by a human player, so the avatars are as well. *See Id.* at 7:13-17." Dkt. 133, Claim Construction Order, at 10.

Both plaintiff's expert, Dr. Rosenberg, and defendant's expert, Mr. Ellinger, stated that they considered the Court's Claim Construction Order in determining the meaning of "initial scene state". Dkt. 299-5 (sealed) Expert Report of Ellinger, at 94; Dkt. 337-1, Excerpts of Expert Report of Rosenberg (sealed), at 25.

Yet the experts differ in their opinions regarding the playback -- Dr. Rosenberg states that the play back does not include avatars, because the initial scene state did not include an avatar, and this is allowed by the Court's claim construction. Mr. Ellinger states that the play back is not a recorded experience file, and instead it is simply a recorded animation – which did not include any avatars. Therefore according to Mr. Ellinger's Report, there was no infringement by either of the accused events – because

one or more avatars was required by the '605 Patent in the *playback* of the recorded experience.

If there is a genuine dispute of material fact as to credibility and weight of conflicting expert reports and opinions, and the expert reports and opinions pertain to an element that must be proved by plaintiff, summary judgment would not be appropriate. *Leggett & Platt, Inc. v. Hickory Springs Mfg. Co.,* 285 F.3d 1353, 1361-1362 (Fed. Cir. 2002).

In this case, the experts disagree on whether, considering the asserted claims of the '605 Patent – as construed by the Court's Claim Construction Order -- a play back of a recorded experience file occurred during the accused events. Dr. Rosenberg opines that in the accused events, the initial scene state and recorded experience file is more than an animation. Dkt. 335-3, Excerpts of Rosenberg Deposition (5-30-2023) at 12, ll. 14-23; at 13, ll. 16-25; at 14-16. Utherverse contends the sequencer was used to create an experience in a virtual environment, and this infringed the '605 Patent claim 2, incorporating claim 1. Dkt. 336, Plaintiff's Opposition to Defendant's Motion for Summary Judgment, at 12-13. Mr. Ellinger describes the initial scene state in the accused events as animation, and that it was not a recorded experience at all. Dkt. 299-5, at 98.

Although a disagreement between experts does not always preclude summary judgment, in this situation, there is sufficient question to create an issue of fact for the jury of whether the Travis Scott and Ariana Grande events used the limitations of the claims. *See Hilgraeve Corp. v. McAfee Associates, Inc.,* 224 F.3d 1349, 1353-1356 (Fed. Cir. 2000); and 265 F.3d 1336, 132-1344 (Fed. Cir. 2001) (summary judgment

should not be granted if there remains a factual question, illuminated by disagreement between the opposing parties' experts, whether the defendant infringed plaintiff's patent). Therefore, the Court should deny Epic's summary judgment motion on the '605 Patent.

### B. Whether there are genuine disputes of material facts concerning the '071 patent as being invalid because it recites conventional and generic arrangements of computer or virtual reality components, and therefore is not inventive.

Epic contends the '071 Patent is invalid, because the '071 describes "parallel instances" or "parallel dimensions" – and these instances existed in prior art; in other words, if Utherverse is interpreting the Claim Construction Order (as discussed above, pp. 6-13 of this Report and Recommendation relating to infringement of the '701 Patent) to mean that each of the common space areas is not interacting at all in a simultaneous way with multiple dimensions, then there is nothing new about the "common space" or the instances in the '071 patent that would make the method unconventional. Dkt. 300, at 20-24.

The Court should hold that if Utherverse's interpretation of the Court's Claim Construction Order is accepted, and the claims do not require interaction with common space across multiple parallel dimensions, then the patent would be invalid under *Alice Corp. Pty. Ltd. V. CLS Bank Int'l,* 573 U.S. 208 (2014). There is no genuine dispute of material fact, because Utherverse has not produced any evidence of how "common space" would simultaneously interact with multiple parallel dimensions.

Under 35 U.S.C. § 101, "[w]however invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." Laws of nature, natural phenomena and abstract ideas are not patentable. *Alice Corp. Pty. Ltd. V. CLS Bank Int'l,* at 216. There is a two-part test for deciding whether a specific invention is patentable: first, are the claims at issue directed to a patent-ineligible concept; second, if so, does the claim include an inventive concept sufficient to "transform the nature of the claim into a patent-eligible application." *Alice Corp. Pty. Ltd. V. CLS Bank Int'l,* at 217; *Yu v. Apple Inc.,* 1 F.4th 1040, 1043 (Fed. Cir. 2021).

As Mr. Ellinger stated, and Mr. Crane agreed, for decades there had been virtual reality components that operated in the manner described as "shards" and "separate private game environments" known as instancing. Dkt. 302-2, Ellinger Report, ¶¶85-94 at 7-9; Dkt. 301-6, Crane Report, ¶¶35-39, 46, 70-77, 114, 120, at pp. 3-8, 15-17. According to Mr. Crane, "the '071 Patent recites the use of a common space so that objects located in that space might be viewed across parallel dimensions. *See, e.g.,* '071 Patent at 19:24-29 (claim 8)". *Id.* at ¶70, p. 15. Mr. Crane suggests that "[t]he flaws of sharding were recognized by the inventors of the '071 Patent, and elements of their inventions such as the *parallel dimensions* captured in the asserted claims are an improvement over the old, flawed technology." Dkt. 301-6, Crane Report, ¶39, at 5 (emphasis in original).

Mr. Crane also states that "solutions of the '071 Patent are technological improvements that are unique to VRUs and have no analog in the physical world. . . .

1   [W]hen the computer is not being used as a mere tool, then the claims are not directed

2   to an abstract idea". *Id.*  at ¶75, p. 16.

3          Yet a description of an "abstract idea itself cannot supply the inventive concept,

4   no matter how groundbreaking the advance." *Trading Techs. Int'l, Inc. v. IBG LLC,* 921

5   F.3d 1378, 1385 (Fed. Cir. 2019) (citation omitted). If the plaintiff's patent claim does not

6   do anything more than "serve as a conduit for the abstract idea" then it fails part two of

7   the *Alice* criteria. *Yu v. Apple,* 1 F.4th at 1045.

8          If the Court were to accept Utherverse's factual contentions that the claims

9   require interaction across multiple parallel dimensions, *see* Crane Report, Dkt. 301-6 ¶

10  48, at 8, and ¶ 76 at 17, as discussed above, then the claims were not infringed by Epic;

11  and the '071 patent would be invalid because it does not supply the inventive concept –

12  and does not meet part two of the two-part *Alice* test – the claims do not describe how

13  any new invention would allow interaction across multiple parallel dimensions. *Trading*

14  *Techs. Int'l, Inc. v. IBG LLC,* at 1385.

15         But, if the Court were to accept Utherverse's factual contentions that there is

16  nothing in the claims that requires interaction across multiple dimensions, see Crane

17  Report, Dkt. 301-6, ¶76 at 17, then the Court should find the '071 patent is invalid

18  because it did not improve on prior art. *Alice Corp. Pty. Ltd. V. CLS Bank Int'l,* at 217;

19  *Yu v. Apple Inc.,* 1 F.4th at 1042.

20         In either event, there is no genuine dispute of material fact under *Alice Corp. Pty.*

21  *Ltd. v. CLS Bank Int'l,* 573 U.S. 208 (2014) – the criteria are not met by the '071 Patent

22  under either of Utherverse's factual contentions, and it should be invalidated.

23

24

25

1

2

### C. Whether there are genuine disputes of material facts concerning damages under the marking statute, 35 U.S.C. § 287, for '071 Patent

If the Court does not grant summary judgment in favor of the defendant on either the infringement or invalidity issues, then the Court should decline to grant summary judgment concerning the marking statute.

The marking statute, 35 U.S.C. § 287, serves the purposes of avoiding innocent infringement, encouraging patentees to give notice of a patent, and giving information to the public that a particular item is patented. *Nike, Inc., v. Wal-Mart Stores, Inc.,* 138 F.3d 1437, 1443 (Fed. Cir. 1998). The alleged infringer initially bears the burden of production – to identify products it believes are unmarked and are patented articles under § 287 -- to show that the item in question would be subject to the marking requirement. *Arctic Cat Inc., v. Bombardier Recreational Prods. Inc.,* 876 F.3d 1350, 1368 (Fed. Cir. 2017). If the alleged infringer meets this burden of production, the patentee is required to show either that the allegedly unmarked products do not practice the claim(s) of the patent; or that the product was marked, and that it complied with the marking statute. *Id.,* at 1367-1369. Compliance with the marking statute is a question of fact. *Maxwell v. J. Baker, Inc.,* 86 F.3d 1098, 1111 (Fed. Cir. 1996). Actual notice, or constructive notice, also present questions of fact. *Funai Elec. Co. v. Daewoo Elecs Corp.,* 616 F.3d 1357, 1373-1374 (Fed. Cir. 2010).

The statute requires the patentee to "give notice to the public that the same is patented, either by fixing thereon the word 'patent' or the abbreviation 'pat.', together with the number of the patent. . . ." 35 U.S.C. § 287. If the patentee fails to mark their

product, "no damages shall be recovered by the patentee in any action for infringement" unless the patentee can prove "the infringer was notified of the infringement and continued to infringe thereafter, in which event damages may be recovered only for infringement occurring after such notice." *Id.* Filing an infringement action constitutes notice. *Id.*

A patentee gives actual notice when they inform the accused infringer that specific products infringe a particular patent. *Funai Elec. Co. v. Daewoo Elecs Corp.,* 616 F.3d at 1373. Constructive notice happens when the patentee marks "substantially all" of its products with patent numbers. *Id*; *see also, Maxwell v. J. Baker, Inc.,* 86 F.3d 1098 (Fed. Cir. 1996).

Epic contends it has satisfied its burden of production. Dkt. 300, Defendant's Motion for Summary Judgment, at 27. Epic asserts that it identified unmarked products by a "Fourth Set of Interrogatories" – stating "software that enables or enabled the Utherverse Digital Events" and identifying events between 9-25-2012 and 6-11-2021, that occurred in "virtual environment[s] hosted by Utherverse Digital, Inc.," and this was also referred to by Epic as "Utherverse Classic". *Id.* Epic also asserts that it identified unmarked products in a letter dated 9-21-2022; and points to deposition testimony of Brian Shuster that "Utherverse Classic practiced every element of at least claim 1 of the '071 Patent. *Id.*

Plaintiff contends that Epic has failed to meet its burden of production, and that the marking statute does not apply. Dkt. 336, Plaintiff's Opposition to Defendant's Summary Judgment Motion, at 26-30. Utherverse argues that it has only asserted claims 8 and 10 of the '071 Patent, and both of those claims are purely method claims.

Plaintiff cites *Crown Packaging Technology, Inc. v. Rexam Beverage Can Co.,* 559 F.3d 1308, 1316-1317 (Fed. Cir. 2009) for the proposition that the marking statute does not apply to method claims.

The Court should deny summary judgment on this issue. Even if the '071 Patent contains claims that go beyond purely method, plaintiff has not *asserted* any claims except method claims as to claim 8 and claim 10 concerning the '071 Patent. Therefore, the marking statute potentially would not apply. *See, Crown Packaging Technology, Inc. v. Rexam Beverage Can Co.,* 559 F.3d 1308, 1316-1317 (Fed. Cir. 2009).

In *Michigan Motor Techs., LLC, v. Bayerische Motoren Werke AG,* No. 22 CV 3804, 2023 WL 4683428, at *14 (N.D. Ill. July 21, 2023), the district court held, "[I]f apparatus and method claims for a patent are asserted at any point in the litigation, the marking statue is triggered, even if the apparatus claims are later dropped." *See generally, Rembrant Wireless Technologies, LP v. Samsung Electronics Co.,* 853 F.3d 1370, 1382-1385 (Fed. Cir. 2017) (patent owner's disclaimer does not retroactively dissolve the marking requirement).

The Court's analysis in *Michigan Motor Techs., LLC, v. Bayerische Motoren Werke AG,* No. 22 CV 3804, 2023 WL 4683428, at *14 (N.D. Ill. July 21, 2023) is not appellate precedent from the Federal Circuit, and therefore is not binding authority for this Court; it is unclear whether the Federal Circuit would interpret the marking statute in that manner.

If the Court nonetheless finds the marking statute would apply, and defendant has met its burden of production, the Court should deny summary judgment on this

issue. If the Court denies summary judgment on the infringement and invalidity issues, there would potentially be genuine disputes of material fact concerning whether Utherverse Classic was practicing both claim 8 and claim 10 of the '071 patent. To establish the date that damages would become an issue, plaintiff would have been required to give actual or constructive notice if Utherverse Classic actually practiced the limitations of these asserted claims. If the Court denies summary judgment on infringement and validity issues, then the issue of whether Utherverse Classic actually practiced the limitations would be an issue of fact for the jury. Likewise, if the Court finds the defendant has met its burden of production, then the jury would also consider – if Utherverse Classic practiced the limitations of asserted claims 8 and 10 -- whether plaintiff gave actual or constructive notice and if so, on what date. Plaintiff points out, claim 1 is not a separately asserted claim. Dkt. 336 at 30-31.

III.    CONCLUSION

The Court recommends:

- The Court should grant summary judgment for defendant as to the '071 Patent, and find the '071 Patent is invalid under 35 U.S.C. § 101 and *Alice Corp. Pty. Ltd. V. CLS Bank Int'l,* 573 U.S. 208 (2014).

- The Court should grant summary judgment for the defendant on the basis of non-infringement for the asserted claims of the '071 Patent.

- The Court should deny summary judgment as to each claim asserted for the '605 Patent.

- If the Court denies summary judgment on the issues of infringement or invalidity, then the Court should deny summary judgment on the issue of whether the marking statute was complied with.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this report to file written objections to the report and recommendation on defendant's motion for summary judgment. *See also* Fed. R. Civ. P. 6; Fed. R. Civ. P. 72.

Failure to file objections will result in a waiver of those objections for purposes of *de novo* review by the district judge, *see* 28 U.S.C. § 636(b)(1)(C), and can result in a waiver of those objections for purposes of appeal. *See Thomas v. Arn*, 474 U.S. 140, 142 (1985); *Miranda v. Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012) (citations omitted). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the Clerk is directed to set the matter for consideration on January 12, 2024, as noted in the caption.

The Clerk is directed to send a copy of this order to each party.

Dated this 26th day of December, 2023.

*Theresa L. Fricke*

Theresa L. Fricke
United States Magistrate Judge