UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

UTHERVERSE GAMING LLC,

                                Plaintiff,

        v.

EPIC GAMING, INC.,

                                Defendant.

Case No. 2:21-cv-799-RSM-TLF

REPORT AND RECOMMENDATION ON PLAINTIFFS MOTION FOR PARTIAL SUMMARY JUDGMENT

NOTED FOR JANUARY 12, 2024

Plaintiff Utherverse Gaming LLC moves for an order of partial summary judgment concerning:

1.  Infringement as to claims 1 and 8 of the '071 patent.

2.  Defendant's Twelfth Affirmative Defense and Second Counterclaim concerning the challenge to inventorship.

3.  Defendant's Thirteenth Affirmative Defense and Ninth Counterclaim, concerning allegations of inequitable conduct.

The motion has been fully briefed. Dkt. 308, 312, 314 (sealed), 340, 342, 352, 356, 359.

The defendant has also moved for summary judgment to show non-infringement on the '071 Patent, claims 1, 8, and 10. See Dkt. 300, at 5-12.

For the reasons discussed below, the Court should:

- deny plaintiff's motion for partial summary judgment on infringement regarding claims 1 and 8 of the '071 Patent,

- grant plaintiff's motion for partial summary judgment on the '071 Patent regarding inventorship; and

- grant plaintiff's motion for partial summary judgment on the '071 Patent regarding inequitable conduct.

I.      Background

Plaintiff, Utherverse Gaming, LLC, accuses defendant, Epic Games, Inc., of infringing two patents; the plaintiff's motion for partial summary judgment pertains to the '071 Patent. The '071 Patent describes separating players into virtual dimensions, and each player is represented by an avatar. The allegedly infringing events were four performances that were attended by large audiences of individual players who were playing within smaller groups in parallel instances of Epic's Fortnight videogame.

Two claims of the '071 Patent are at issue: Claim 8 and Claim 10; Claim 1 is not asserted. Dkt. 314, plaintiff's motion for partial summary judgment, at 8; Dkt. 334, 336, plaintiff's opposition to defendant's motion for summary judgment, at 24, 27, 31; Dkt. 335-14, Plaintiff's Second Amended Disclosure of Asserted Claims and Infringement Contentions, at 3.

The plaintiff asserts that defendant infringed the '701 patent during four accused events:

1.  Marshmello concert on February 2, 2019

2.  Star Wars promotional event on December 14, 2019

3. Travis Scott concert – April 23 – April 25, 2020

4. Ariana Grande concert – August 6 – 8, 2021

Dkt. 1, Complaint, at 22-28; Plaintiff's opposition to defendant's motion for summary judgment, Dkt. 334, 336, at 2-11.

II.     Analysis

Summary judgment is supported if the materials in the record "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Federal Rule of Civil Procedure (FRCP) 56 (a), (c). The moving party bears the initial burden to demonstrate the absence of a genuine dispute of material fact for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). A genuine dispute concerning a material fact is presented when there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). In this context, materiality means the fact is one that is "relevant to an element of a claim or defense and whose existence might affect the outcome of the suit"; thus, materiality is "determined by the substantive law governing the claim." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The non-moving party is required to show that genuine issues of material fact "'can be resolved only by a finder of fact *because they may reasonably be resolved in favor of either party." California Architectural Bldg. Products., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987) (quoting *Anderson,* 477 U.S. at 250) (emphasis in original). When the Court considers a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to

be drawn in [their] favor." *Anderson,* at 255. Yet the Court is not allowed to perform the jury's function – the Court may not weigh evidence, draw legitimate inferences from facts, or decide credibility. *Id*. If the moving party meets their initial burden, an adverse party may not rest upon the mere allegations or denials of his pleading; his or her response, by affidavits or as otherwise provided in FRCP 56, must set forth specific facts showing there is a genuine issue for trial. FRCP 56(c); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,*475 U.S. 574, 586-587 (1986). The Court may not disregard evidence solely based on its self-serving nature. *Nigro v. Sears, Roebuck & Co.,* 784 F.3d 495, 497 (9th Cir. 2015). "The district court can disregard a self-serving declaration that states only conclusions and not facts that would be admissible evidence." *Id.*

    A. <u>Claim 8 – Literal Infringement '071 Patent (Dkt. 1-4, Exhibit D, Complaint; Dkt. 312-1, Exhibit A, McNally Declaration)</u>

    Plaintiff asserts that summary judgment should be granted in their favor as to Claims 1 and 8 of the '071 Patent, based on literal infringement. Dkt. 314, plaintiff's motion for partial summary judgment, at 1-13. Plaintiff argues that the defendant practices all the limitations of claims 1 and 8, and defendant's expert has made admissions that compel a summary judgment for plaintiff on this issue. *Id.* at 13, 17-24.

    The parties agree that there are four essential limitations at issue on Claims 1 and 8: "common space"; "parallel dimensions"; "a computer memory" that includes modeling of "a plurality of parallel dimensions"; and "computer" that would "animat[e] . . . avatars populating different ones of the parallel dimensions." Dkt. 308, 314 at 17-23; Dkt. 340, 342, at 10-11. The parties disagree about whether defendant has practiced

each of these limitations in the allegedly infringing accused events – Marshmello, Travis Scott, Ariana Grande, and Star Wars: Rise of Skywalker.

To evaluate whether the defendant has committed a literal infringement of Claims 1 and 8 of the '071 patent, the Court would be required to: (1) identify the Court's interpretation and claim construction for the essential limitations of Claims 1 and 8; and (2) "appl[y] the properly construed claim to the accused product." *Telemac Cellular Corp v. Topp Telecom, Inc.,* 247 F.3d 1316, 1323 (Fed. Cir. 2001). The Court interprets the claims, as a matter of law, in the first step. *Lifescan, Inc. v. Home Diagnostics, Inc.,* 76 F.3d 358, 359 (Fed. Cir. 1996).

To prevail on a cause of action for patent infringement under a theory of literal infringement, the plaintiff (patentee or patent holder) must prove by a preponderance of evidence that the defendant made, used, sold, offered for sale within, or imported into the United States a product or process that meets all the asserted claims, and that defendant did so without permission of the plaintiff during the time the patent was in force. *Mas -Hamilton Grp. v. LaGard, Inc.* 156 F.3d 1206, 1211 (Fed. Cir. 1998).

The Court must determine the scope and meaning of each of the patent claims; the claims, as properly interpreted for the scope and meaning, are then compared to the allegedly infringing method. *Sound View Innovations, LLC v. Hulu, LLC,* 33 F.4th 1326, 1335 (Fed. Cir. 2022).

The first step – determining the scope and meaning of each patent claim -- is an issue of law. *02 Micro Intern. Ltd v. Beyond Innovation Technology Co., Ltd.,* 521 F.3d 1351, 1360 (Fed. Cir. 2008).

The second step is a question of fact. *Bowers v. Baystate Technologies, Inc.,* 320 F.3d 1317, 1323 (Fed. Cir. 2003). This involves "a comparison of the claim with the allegedly infringing device". *Id.* at 1334. The Court cannot make credibility determinations and all justifiable inferences are to be drawn in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 257 (1986). If there is even a single claim limitation that has not been met, the plaintiff has failed to prove literal infringement. *MicroStrategy Inc. v. Business Objects, S.A.,* 429 F.3d 1344, 1352 (Fed. Cir. 2005).

If no "reasonable jury could find that [defendant's] accused [events do not] infringe" on each of the asserted claims, then summary judgment in favor of plaintiff would be warranted. *See Bowers,* 320 F.3d at 1334.

**Common space and parallel dimensions**

"Common space" was described in the Court's claim construction order as "[a] defined (i.e., bounded) area or portion of multiple dimensions that provides for simultaneous (*i.e.,* real-time) interactions with multiple parallel dimensions/instances." Dkt. 133 at 4. This was the construction proposed by plaintiff. Dkt. 114 at 27-31, Dkt. 133 at 3, 11-12.

"Common space" is referred to in Claim 8: "The method of claim 1, further comprising modeling a common space in the computer memory configured in relation to the plurality of parallel dimensions so that at least one object located inside the common space is visible from view-points located inside each of the plurality of parallel dimensions." Dkt. 1-4, Complaint, Ex. D, at 20, '071:19:24-29. In this case, Epic has

produced evidence that the limitations of common space, as interpreted in the Court's

Claim Construction Order, are not satisfied as to any of the four accused events.

First, Epic has produced evidence that the "lobby" was separate from game play,

was utilized by one player at a time, and only for purposes of a menu screen. Dkt. 341-

11 Dkt. 343-18, Benjamin Ellinger, rebuttal expert report, at 29-33. Epic contends the

lobby was not shared by players – it would only be "visible to an individual player on

their own client device – not to multiple players." *Id.*  at 61, ¶ 152.Therefore, Epic

argues, the lobby did not practice the limitations of common space. Dkt. 300,

defendant's motion for summary judgment, at 13.

Second, Epic has produced evidence that the other alleged common spaces --

an area where the mannequins appear in each of the accused events, that were the

focus of the performance (e.g., Marshmello, or the Star Wars performers, or Travis

Scott, or Ariana Grande) during game play – also did not satisfy the claim limitations of

a common space environment in any of the four accused events. Dkt. 341-11 (sealed),

Dkt. 343-18, at pp. 62-64, ¶¶ 146-149; and at pp. 73-90, ¶¶ 178-219. According to

Epic's evidence, the area where a mannequin performed was included in software

provided to each of the client devices operated by each player (the mannequin is a

skeletal mesh actor that would not be controlled by a human player or by artificial

intelligence; it was controlled by sequences known as a "Master" and "Level") and each

was visible to the player; this mannequin-performance area was a discrete space within

each of the instances of gameplay. Dkt. 341-11 at 42-43; see also Dkt. 313-6,

Deposition of Peter Axt, at 7-9. Therefore, any one player would be able to observe and

move their avatar near that space – but could not enter the exact space where the

mannequin skeletal mesh actor was performing; yet – for example if player A in dimension 1 is watching the mannequin in that "parallel instance" of their gameplay, and player B in dimension 2 is watching the mannequin in that "parallel instance" of their gameplay, player A would not be able to observe the mannequin performing in dimension 2, and player B would not be able to observe the mannequin performing in dimension 1, and players A and B would not be able to observe each other across the multiple parallel dimensions/instances. *Id*.

According to Epic's evidence, one dimension or instance would have its own dedicated server (a server dedicated to hosting that specific game session), and that server would have software that included the space for the mannequin performance. Dkt. 299-5, Benjamin Ellinger, Rebuttal Expert Report (sealed) at 32-36, 41, 52, 54-55 (explaining that mannequins could not be controlled, created, or destroyed by the human player and the mannequins would perform all functions on the client device – "not involved in the replication process managed by the dedicated server").

Utherverse points to the deposition of Mark Imbriaco as support, but Mr. Imbriaco's deposition is consistent with analysis of the Ellinger Rebuttal Expert Report. See Dkt. 313-8 at 11-13, Mark Imbriaco Deposition (stating that the map of the game state for each player is included in the individual player's installation package).

Utherverse also points to the Civ. R. Civ. P. 30(b)(6) deposition of Peter Axt, and argues that this shows a "common space" was the lobby in the accused event.

1 ████████████████████████████████████████████████████

2 ██████████████████████████████████████████████

3 ██████████████████████████████████████████████████████

4 ███████████████████████████████████████████████████████

5 █████████████████████████████████████████████████████

6 ███████████████████████████████████████████████████████

7 ██████████████████████████████████████████████████████

8 █████████████████████████████████████████████████████████

9 ████████████████████████████████████████████████

10 ████████████████████████████████████████████████████

11 ███████████████████████████████████████████████████

12 ███████████████████████████████████████

13     Epic's counsel stated during oral argument at the claim construction hearing, that

14 Utherverse's construction of "multiple dimensions" would be too broad a definition –

15 because "it includes something like three separate theaters with three separate stages.

16 And all of these would be a portion of multiple dimensions. And there would be real-time

17 interactions between each of those stages and the audience in those theaters." Dkt. 114

18 at 36.

19     Utherverse produced evidence[1] that the common space did not need to be

20 viewed across all dimensions; Dr. Rosenberg stated in his report that "<u>each parallel

21 dimension can see at least one object that is located inside the common space</u>. . .."

22

23 [1] The Court has reviewed the evidence relating to defendant's, and plaintiff's, summary judgment motions, and other

24 evidence that pertains to these motions. *See* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record.")

25

Dkt. 337-1, Ex. GG, Excerpts of Rosenberg expert report, at 11 (underlining in original).
He explained: "There is no requirement that the common space needs to be its own
instance (e.g., parallel dimension) and there is no requirement that the at least one
object needs to be visible from every parallel dimension." Dkt. 337-1 at 11-12.

Dr. Rosenberg also stated (Dkt. 313-4, Full Expert Report of Rosenberg, at 34
[Marshmello], 57 [Star Wars], 71 [Travis Scott], 84 [Arianna Grande]), ██████████
████████████████████████████████████████████████████████████
██████████████████████████████████████████████

The plaintiff contends Epic is "includ[ing] additional limitations in the construction
of common space." Dkt. 336, at 9. Utherverse argues that Epic has "attempted to
reconstrue the common space such that it is now a *singular* space that
*simultaneously interacts* with *all dimensions*." Dkt. 336 at 10 (emphasis in original).

Yet, as construed by the Court's Claim Construction Order, there is a limitation
that a common space "provides for simultaneous (*i.e.,* real-time) interactions *with
multiple parallel dimensions/instances*". Dkt.133 at 11-12 (emphasis added). ██
████████████████████████████████████████████████████
████████████████████████████████████████████████████
██████████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████ Dkt. 337-1,
ex. GG, at 9-23.

Claim 8 also refers to "parallel dimensions" and this term is used interchangeably
with "parallel instances". Dkt. 133, at 12.

The Court construed this term to mean: "a duplicate or recognizable counterpart of a bounded, computer-modeled space that is accessible via a common environment." Dkt. 133, Claim Construction Order, at 12-13, quoting the '071 patent at 13:37-39; *see*, Complaint, Ex. D, '071 Patent, Dkt. 1-4, at 17. The Court did not adopt Utherverse's proposed construction – instead, the Court relied on the language of a definition provided in the Background portion of the patent. Plaintiff's proposed construction, rejected by the Court, was: "Simultaneously existing dimensions in a virtual reality universe, each of which are originally duplicates or recognizable counterparts of one another." Dkt 133 at 3.

The scope and meaning of the limitation are an issue of law; Dr. Rosenberg's opinion would be inconsistent with the Court's Claim Construction Order as to the interpretation of Claim 8, and therefore the Court, as a matter of law, should find no reasonable jury would return a verdict for the moving party, Utherverse. There is not a genuine dispute of material fact concerning the operation of Epic's software; the undisputed facts show Claim 8 was not infringed by Epic with respect to the common space or the multiple dimensions or instances.

The Claim Construction Order requires interaction between the "common space" and multiple "parallel instances". "Common space" was described in the Court's claim construction order as "[a] defined (i.e. bounded) area or portion of multiple dimensions that provides for simultaneous (*i.e.* real-time) interactions with multiple parallel dimensions/instances." There is no evidence from Utherverse that such interaction occurred in Epic's system.

The unrefuted evidence from Epic shows that the lobby was not a common space, because only one player at a time would use the lobby before that player could join an instance of gameplay. Thus, the Lobby was a menu, and not part of the game environment.

If the alleged common space is the area where the mannequins perform, this space was delivered by Epic's software to the specific device operated by the individual player. The common space is not controlled by the individual player and cannot be influenced by the player at all – and Utherverse has not shown how this area where the mannequin/skeleton mesh performer was located interacted at all with multiple parallel instances – it is only a skeleton mesh performance area that is present on the single instance of game play on the device operated by one player.

Utherverse contends, based on Dr. Rosenberg's report, that if each individual player believes they are sharing the experience with every other player who is seeing the area with the mannequin/skeleton mesh performer, this would satisfy Claim 8. Dkt. 313-4, Full Expert Report of Dr. Rosenberg, at 41-43 (Marshmello); 55-57 (Star Wars); 69-71 (Travis Scott); 84-85 (Ariana Grande). Yet a skeleton mesh performance area that is present on the single instance of game play on the device operated by one player is not interacting simultaneously with multiple parallel instances – it is only connected with one parallel instance and one player within that instance. Dkt. 299-5, Benjamin Ellinger, Rebuttal Expert Report at 32-36, 41, 52, 54-55 (explaining that mannequins could not be controlled, created, or destroyed by the human player and the mannequins would perform all functions on the client device – "not involved in the replication process managed by the dedicated server").

1    Therefore, the Court should deny plaintiff's motion for partial summary judgment,

2   and grant summary judgment in favor of the defendant on Claim 8 of the '071 Patent.

3   Because the plaintiff would be required to show that all limitations are met, as to each

4   claim of the '071 patent, summary judgment in favor of defendant on this limitation that

5   includes both "common space" and "parallel instances" means the Court should enter

6   an order stating the '071 patent has not been infringed.

7    Although this would be a dispositive ruling as to infringement of the '071 Patent,

8   and it is unnecessary to consider the additional arguments of plaintiff, the District Judge

9   may reach a different conclusion -- therefore the remaining issues concerning the '071

10   patent will be analyzed below.

11

12    **Modeling, using a computer, a plurality of parallel dimensions in a**

13   **computer memory; and animating ones of the plurality of avatars**

14   **populating different ones of the parallel dimensions in response to input**

15   **from respective corresponding ones of a plurality of clients to provide**

16   **virtual-reality data, using the computer.**

17    In Claim 1, Patent '071[2] states a limitation of "[a] method for managing a multi-

18   instance, multi-user animation process, comprising: modeling, <u>using a computer</u>, a

19   plurality of parallel dimensions in <u>a computer memory</u>. . .assigning ones of a plurality of

20   avatars <u>within the computer memory</u>. . .animating ones of the plurality of avatars

21   populating different ones of the parallel dimensions in response to input from the

22

23   [2] Claim 8 and Claim 10 of the '071 Patent incorporate Claim 1. (Dkt. 1-4, Exhibit D, Complaint; Dkt. 312-1, Exhibit A, McNally Declaration)

24

25

respective corresponding ones of a plurality of clients to provide virtual-reality data,

<u>using the computer</u>, . . ." Dkt. 1-4, 18:46-50, 63-67 (underlining added).

The Court's Claim Construction Order, Dkt. 133 at 12, determined that Epic's construction of the term "modeling" was in alignment with the patent language. The construction adopted by the Court is: "[d]efining the positions of a set of points such that they form the shape of an object or space that can be rendered." *Id.* at 3. The Court determined that preambles of claims 24 and 25 of the '071 Patent were not limiting, but did not rule on whether there were any limitations in Claim 1 (as opposed to a preamble of claims 24 and 25) that was incorporated into Claims 8 and 10, or whether such limitation was to be interpreted in a specific way with reference to the single computer or a single set of computers. Dkt. 72 at 27; Dkt. 133 at 14-15.

If a limitation refers to "a computer" but later refers to "the computer", the language requires at least one of those computers identified in the "a computer" portion of the limitation, to perform all the functions listed in the claims of the patent. *Finjan LLC v. SonicWall, Inc.,* 84 F.4[th] 963, 975 (Fed. Cir. 2023).

Epic contends that Claim 1 has limitations that must be interpreted to mean that the same computer ("a computer") and memory described in the modeling process, must also be used for all other steps ("the computer"). Epic argues that if one computer or a single set of computers is involved in the modeling, the additional steps of the method described in this limitation would need to be carried out by precisely the same single computer, or single set of computers, that is referred to in the first phrase as "a computer" that has "a memory", and is later referred back to, as "the computer".

1   The record shows that the accused events do not meet the requirements of this

2   limitation, because the computers that provided modeling, are not the same computers

3   that carried out the rest of the steps. ████████████████████████████████

4   ████████████████████████████████████████████████████

5   ████████████████████████████████████████████████████

6   ██████████████████████████████████████████████

7   ████████████████████████████████████████████████

8   ██████████████████████████████████████████████████

9   ██████████████████████████████████████████████████

10  ██████████████████████████████████████████████████

11  ████████████████████████████████████████████████████

12  ████████████████████████████████████████████████████

13  ████████████████████████████████████████████████

14  ████████████████████████████████████████████████████

15  ████████████

16   To prove a literal infringement, the plaintiff must show "every limitation recited in

17  the claim is found in the accused device." *Kahn v. Gen. Motors Corp.,* 135 F.3d 1472,

18  1477 (Fed. Cir. 1988). Plaintiff bears the initial prima facie burden of proving each

19  accused product includes every limitation of an asserted claim. *L & W, Inc. v. Shertec,*

20  *Inc.,* 471 F.3d 1311, 1318 (Fed. Cir. 2006). Summary judgment should only be granted

21  if "only one conclusion as to infringement could be reached by a jury." *Telemac*, 247 F.d

22  1316, 1323.

23

24

25

In this case, plaintiff has not met its initial prima facie burden to prove that each accused event includes every limitation of Claim 1 and Claim 8. There is not "only one conclusion as to infringement" in favor of plaintiff; therefore, plaintiff's motion for partial summary judgment should be denied.

### B. Inventorship and Inequitable Conduct

Plaintiff also asserts that summary judgment should be granted in its favor to dismiss the defendant's counterclaim of inequitable conduct relating to inventorship, for failing to present sufficient evidence that another inventor contributed to the conception. Dkt. 314, at 24-32.

### 1. Failure to list inventor.

To prove the patent is invalid due to a failure to properly join all inventors, the defendant must prove the underlying facts of co-inventorship by clear and convincing evidence. *Pannu v. Iolab Corp.,* 155 F.3d 1344, 1350 (Fed. Cir 1998). If there is a co-inventor who was not listed, the Court must allow the patentee an opportunity to invoke 35 U.S.C. § 256 and correct the inventorship. Id., at 1350-1351. "Summary judgment is properly granted if the evidence, when viewed in a light most favorable to the non-moving party, fails to establish the inventorship of an omitted inventor by clear and convincing evidence." *Linear Technology Corp. v. Impala Linear Corp.,* 379 F.3d 1311, 1327 (Fed. Cir. 2004).

If a patent lists more than, or fewer than, the true inventors, the entire patent is invalid. *Plastipak Packaging, Inc. v. Premium Waters, Inc.,* 55 F.4th 1332, 1340 (Fed. Cir. 2022); *Gemstar-TV Guide Int'l, Inc. v. Int'l Trade Comm'n,* 383 F.3d 1352, 1381

1   (Fed. Cir. 2004). "Inventorship is a question of law based on underlying findings of fact."

2   *Duncan Parking Technologies, Inc. v. IPS Group, Inc.,* 914 F.3d 1347 (Fed. Cir. 2019).

3   The law of inventorship "requires only that a co-inventor make a contribution to

4   the conception of the subject matter of the claim." *Eli Lilly & Co. v. Aradigm Corp.,* 376

5   F.3d 1352, 1361-1362 (Fed. Cir. 2004). The contribution to the conception of the

6   invention must have been a contribution "in some significant manner". *Plastipak*

7   *Packaging, Inc. v. Premium Waters, Inc.,* 55 F.4th at 1340. There is a presumption that

8   the named inventors on a patent are the only, true inventors. *Gemstar-TV Guide,* 383

9   F.3d at 1352

10   Co-inventors do not need to contribute to the subject matter concerning each and

11   every patent claim. *Trovan, Ltd. V. Sokymat SA, Irori,* 299 F.3d 1292, 1302 (Fed. Cir.

12   2002). The Court should analyze the patent on a claim-by-claim basis, first construing

13   the asserted claim to determine the subject matter encompassed by the claim, and then

14   "compare the alleged contributions of each asserted co-inventor with the subject matter

15   of the properly construed claim to then determine whether the correct inventors were

16   named." *Id.,* (*quoting Ethicon, Inc. v. United States Surgical Corp.,* 135 F.3d 1456, 1462

17   (Fed. Cir. 1998).

18   To state a claim for invalidity based on improper inventorship, the Federal Court

19   Bar Association's Jury Instructions for Patent Cases set forth the following elements the

20   defendant must prove to successfully establish invalidity. The jury considers whether

21   the patent "fails to meet the requirement that all of the actual inventors, and only the

22   actual inventors, be named as inventors in the patent." FCBA Model Patent Jury

23   Instructions, B.4.3d, model instruction on inventorship, at 52 (May 2020). "To be an

24

25

inventor one must make a significant contribution to the conception of at least one of the claims of the patent [even if that claim has not been alleged to be infringed]. Whether the contribution is significant in quality is measured against the scope of the full invention." *Id.*

"Merely helping with experimentation, by carrying out the inventor's instructions, also does not make someone an inventor. What is required is some significant contribution to the idea claimed. Persons may be inventors even if they do not make the same type or amount of contribution, and even if they do not contribute to the subject matter of each claim of the patent. Persons may be joint or co-inventors even though they do not physically work together, but they must have some open line of communication during or at approximately the time of their inventive effort." *Id.*

The term "conception" means "[t]he complete mental part of the inventive act when the inventor forms a definite and permanent idea of an invention someone else could make without undue experimentation. Conception must be capable of proof, as by drawings, disclosure to another, etc." *Id.,* part C., Glossary, at 76.

The term "claim" means "[e]ach claim of a patent is a concise, formal definition of an invention and appears at the end of the specification in a separately numbered paragraph. In concept, a patent claim marks the boundaries of the patent in the same way that a legal description in a deed specifies the boundaries of land, i.e., similar to a landowner who can prevent others from trespassing on the bounded property, the inventor can prevent others from using what is claimed. . .." *Id.*

In this case, the Court should find that plaintiff is entitled to summary judgment on the issue of inventorship. This decision would necessarily lead to summary judgment in favor of plaintiff on the inequitable conduct or fraud issues.

Epic contends that the allegedly omitted inventors of the '071 patent, Robert Flesch and William Andrew, contributed the "parallel dimensions" aspect of claim 1 as incorporated by 8, because ███████████████████████████████████ ██████. Dkt. 340, Defendant's Brief in Opposition, at 20-21; Dkt. 313-15, Excerpts of deposition of Brian Shuster, at 21-23, 32-44. Epic asserts that Flesch and Andrew were listed as inventors initially, along with Gary and Brian Schuster, on provisional patent applications; but when the final application was submitted the only inventors listed were Gary and Brian Schuster. Dkt. 343, Decl. of Novikov, Dkt., 343-8, provisional application dated March 7, 2007, at 4; Dkt. 343-9, patent application dated September 12, 2008, at 2; Dkt. 343-12, at 62-63, excerpts of '071 Patent prosecution history, referring to the previous (March 7, 2007) provisional application, and showing Brian and Gary Schuster as the two inventors of the current application; Dkt. 359, McNally Decl.; Dkt. 359-2, Excerpts of Flesch deposition.

Yet the record shows that Flesch and Andrew did not testify that they were inventors. *See, General Electric v. Wilkins,* 750 F.3d 1324, 1330 (Fed. Cir. 2014) (putative inventor must give credible testimony that is corroborated "to verify the credibility of the putative inventor's story"). ██████████████████████████ ████████████████████████████ this was not a "conception" for the '071 Patent. Dkt. 359, McNally Decl, Dkt. 359-3, Excerpts of Andrew Deposition, at 4-9. Instancing already existed in 2005 at the time of the March 7, 2007 provisional application. Dkt.

313, McNally Decl., Dkt. 313-16, Excerpts of Andrew Deposition, at 11-12. As Mr. Ellinger stated, and Mr. Crane agreed, for decades there had been virtual reality components that operated in the manner described as "shards" and "separate private game environments" known as instancing. Dkt. 302-2, Ellinger Report, ¶¶85-94 at 7-9; Dkt. 301-6, Crane Report, ¶¶35-39, 46, 70-77, 114, 120, at pp. 3-8, 15-17.

Therefore, there is no genuine dispute of material facts concerning whether Andrew and Flesch would meet the criteria for being co-inventors of the '071 Patent. The instances were not an inventive concept of claim 1, as incorporated into claim 8, of the '071 Patent. As Epic has argued extensively in its' Motion for Summary Judgment, Dkt. 300 at 5-19, the description of the claim required a limitation that the common space would simultaneously interact with multiple parallel instances. There is no evidence that Flesch and Andrew were involved with any such conception, so no reasonable jury could render a verdict in the non-moving party's (defendant's) favor and find they should have been listed as inventors. Dkt. 313-16, Excerpts of Deposition of Andrew, at 6-13, 26, 37; Dkt. 313-21, Excerpts of Deposition of Flesch, at 26-27. The contribution to the conception of the invention must have been a contribution "in some significant manner". *Plastipak Packaging, Inc. v. Premium Waters, Inc.,* 55 F.4th 1332, 1340 (Fed. Cir. 2022).

Because there is no genuine dispute of material facts concerning Flesch and Andrew having contributed only the instancing, but not to any other aspect of claims 1 and 8 of the '071 Patent, summary judgment should be granted in favor of Utherverse, and the Court should dismiss Epic's Twelfth Affirmative Defense and Second Counterclaim as a matter of law.

2. <u>Unenforceable patent, due to inequitable conduct or fraud</u>.

To state a claim of inequitable conduct, the party must plead with particularity the "the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO." *Exergen Corp. v. Wal-Mart Stores, Inc.,* 575 F.3d 1312, 1328 (Fed. Cir. 2009).

The party asserting this defense must show "the patentee acted with the specific intent to deceive the PTO." *Therasense, Inc. v. Becton, Diskinson and Co.,* 649 F.3d 1276, 1288 (Fed. Cir. 2011) (en banc). The party asserting the defense "must prove by clear and convincing evidence that the applicant knew of the reference, knew that it was material, and made a deliberate decision to withhold it." *Id.,* at 1290. Materiality is separate from specific intent; failure to disclose an inventor is material information. *PerSeptive Biosystems, Inc. v. Pharmacia Biotech, Inc.,* 225 F.3d 1315, 1321-1322 (Fed. Cir. 2000). If inequitable conduct is found by clear and convincing evidence regarding any single claim, the entire patent is unenforceable. *Therasense,* at 1288.

In this case, the Court previously held that Epic asserts sufficient facts to state a claim under Fed. R. Civ. P. 9 regarding whether "the applicant knew of the reference, knew that it was material, and made a deliberate decision to withhold it." *Therasense, Inc. v. Becton, Diskinson and Co.,* 649 F.3d at 1290. Materiality of the information has been properly alleged in the amended pleading. Dkt. 236-2 at 26, ¶¶ 22-24; at 37, ¶¶ 71-73.

In the context of a summary judgment motion, the Court considers whether specific intent to deceive was the single most reasonable inference. *See, Ohio Willow Wood Co. v. Alps South, LLC,* 735 F.3d 1333, 1351 (Fed. Cir. 2013) ("specific intent to

commit inequitable conduct may be inferred from indirect and circumstantial evidence. . .. [but] deceptive intent must be 'the single most reasonable inference drawn from the evidence" (internal citations omitted)).

There are no facts from which the Court may determine that specific intent to deceive was the single most reasonable inference, because there are no facts to support a finding that Flesch and Andrew were inventors. Therefore, the Court should grant the plaintiff's summary judgment motion with respect to inequitable conduct allegations and dismiss Epic's Thirteenth Affirmative Defense and Ninth Counterclaim as a matter of law.

CONCLUSION

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this report to file written objections to the report and recommendation on Plaintiff's motion for partial summary judgment.

Failure to file objections will result in a waiver of those objections for purposes of *de novo* review by the district judge, *see* 28 U.S.C. § 636(b)(1)(C), and can result in a waiver of those objections for purposes of appeal. *See Thomas v. Arn*, 474 U.S. 140, 142 (1985); *Miranda v. Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012) (citations omitted). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the Clerk is directed to set the matter for consideration on January 12, 2024, as noted in the caption.

Dated this 26th day of December, 2023.

Theresa L. Fricke
United States Magistrate Judge