THE HONORABLE RICARDO S. MARTINEZ

THE HONORABLE THERESA L. FRICKE

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WASHINGTON

AT SEATTLE

| | |
|---|---|
| UTHERVERSE GAMING LLC,<br><br>               Plaintiff,<br><br>   v.<br><br>EPIC GAMES, INC.,<br><br>              Defendant. | Case No. 2:21-cv-00799-RSM-TLF<br><br>**PLAINTIFF UTHERVERSE GAMING'S OBJECTIONS TO REPORT AND RECOMMENDATIONS (DKT. NO. 369)**<br><br>Noting Date: January 26, 2024 |



**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ................................................................................................................1

II. LEGAL PRINCIPLES .........................................................................................................1

III. THE R&R INCORRECTLY RECOMMENDS A FINDING OF NON-INFRINGEMENT..................................................................................................................2

    A. The R&R Erroneously Requires the Lobby to Satisfy the Common Space ............2

    B. The Only Identified Common Space is the Performance Area, Which the R&R Establishes Meets the Construed Claim Limitation .......................................4

    C. The R&R Ignores Undisputed Evidence of Single Computers, Servers, and Memory.........................................................................................................6

IV. THE R&R INCORRECTLY RECOMMENDS A FINDING OF INVALIDITY ..............8

    A. The R&R Misapplied *Alice* Prong Two as a Matter of Law and Subsidiary Fact.............................................................................................................8

    B. The R&R Misapplied the Summary Judgment Standards and Incorrectly Weighed Evidence ..................................................................................10

    C. The R&R's Alternative Theory of Invalidity Conflicts with Precedent ................11

V. CONCLUSION..................................................................................................................13

PLAINTIFF'S OBJECTIONS TO REPORT AND
RECOMMENDATION - i
CASE NO. 2:21-CV-00799-RSM-TLF

POLSINELLI
1000 SECOND AVENUE, SUITE 3500
SEATTLE, WA  98104 • Tel:  206-393-5400

**TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Aatrix Software, Inc. v. Green Shades Software, Inc.*,
    882 F.3d 1121 (Fed. Cir. 2018)..................................................................................................9

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
    573 U.S. 208 (2014).......................................................................................................... *passim*

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. (1986)..........................................................................................................................8

*Bascom Global Internet Servs., Inc. v. AT&T Mobility LLC*,
    827 F.3d 1341 (Fed. Cir. 2016)..................................................................................................9

*Berkheimer v. HP Inc.*,
    881 F.3d 1360 (Fed. Cir. 2018).................................................................................8, 9, 10, 11

*CardioNet, LLC. v. InfoBionic, Inc.*,
    955 F.3d 1358, 1373 (Fed. Cir. 2020).....................................................................................12

*Cottrell v. I.C. System, Inc.*,
    2022 WL 17582374 (W.D. Wash., Dec. 12, 2022) ...................................................................8

*Diamond v. Diehr*,
    450 U.S. 175 (1981).................................................................................................................12

*Finjan LLC v. Sonicwall, Inc.*,
    84 F.4th 963 (Fed. Cir. 2023) ................................................................................................2, 6

*Jones v. Wood*,
    207 F.3d 557 (9th Cir. 2000) .....................................................................................................1

*Microsoft Corp. v. i4i Ltd. P'ship*,
    564 U.S. 91 (2011).....................................................................................................................9

*Turner v. Duncan*,
    158 F.3d 449 (9th Cir. 1998), *as amended on denial of reh'g* (Nov. 24, 1998) ........................1

*United States v. Reyna-Tapia*,
    328 F.3d 1114 (9th Cir. 2003) (en banc) ...............................................................................1, 2



## I. INTRODUCTION

Utherverse Gaming LLC objects to portions of the December 26, 2023 Report and Recommendation ("R&R"). *See generally* ECF 369 (SEALED).[1] The R&R wrongly recommends that the Court grant Epic Games, Inc.'s motion for summary judgment of non-infringement of the '071 Patent. ECF 369 at 1:14-16. The R&R also erroneously recommends that the asserted claims be found invalid under Section 101. *Id.* at 1:18-20 (*citing Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208 (2014)).

The R&R's non-infringement analysis concerns theories **neither** party advanced during summary judgment. The R&R also makes incorrect factual findings related to the Accused Events. The R&R next errs in application of the two-prong *Alice* inquiry. The R&R fails to address the first prong leaving only the second prong as the basis of the present objection.[2] But asserted claims 8 and 10 satisfy a legally proper review. A proper *Alice* inquiry contrasts with the R&R's reliance on unspecified assertions, a *sua sponte* **non-infringement** analysis inappropriately applied to **invalidity**, and improper weighing of disputed facts.

## II. LEGAL PRINCIPLES

"Failure to object to a magistrate judge's recommendation waives all objections to the judge's findings of fact." *Turner v. Duncan,* 158 F.3d 449, 455 (9th Cir. 1998), *as amended on denial of reh'g* (Nov. 24, 1998). A failure to object "does not waive objections to purely legal conclusions." *Jones v. Wood*, 207 F.3d 557, 562 at n. 2 (9th Cir. 2000). "A proper objection requires specific written objections to the findings and recommendations." *United States v. Reyna-*

---

[1] Utherverse Gaming indicated its "moving papers on the '071 [Patent] . . . operates [*sic*] almost as a cross motion for summary judgment with the Epic motion for non-infringement." ECF 365 (11/21/23 HEARING TRANSCRIPT) at 4:16-18. The Court acknowledged "some amount of overlap" with "the defense motion for summary judgment." ECF 365 at 32:13-14. The present objection encompasses those relevant factual findings from the recommendation to "deny plaintiff's motion for partial summary judgment on infringement." ECF 373 at 2:1-2.

[2] Utherverse Gaming reserves rights of appeal as to prong one of *Alice*. *See generally* ECF 53.

PLAINTIFF'S OBJECTIONS TO REPORT AND
RECONMMENDATION
CASE NO. 2:21-CV-00799-RSM-TLF

POLSINELLI
1000 SECOND AVENUE, SUITE 3500
SEATTLE, WA  98104  •  Tel:  206-393-5400

*Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc). The court must review the objected-to findings and recommendations *de novo*. *Id*. (*citing* 28 U.S.C. § 636(b)(1)(C)).

### III. THE R&R INCORRECTLY RECOMMENDS A FINDING OF NON-INFRINGEMENT

At least three errors each require reversing the R&R as to non-infringement. The R&R first conflates the claimed common *space* with the Accused Events' lobby environment. The lobby meets a separate element of the asserted claims—the common *environment* from which a user accesses a parallel dimension with a common space therein. The R&R next incorrectly imposes the requirement of a *single* common space for *all* dimensions and that allows for interactions *within*. Such a requirement is absent from the Court's claim construction and is otherwise contrary to the solutions offered by the '071 Patent. The Court lastly makes adverse factual findings concerning the Accused Events' infrastructure that are disputed by Epic witness testimony. That testimony obviates any remaining dispute concerning preambles or application of *Finjan LLC v. Sonicwall, Inc.*, 84 F.4th 963 (Fed. Cir. 2023).

#### A.  The R&R Erroneously Requires the Lobby to Satisfy the Common Space

The R&R incorrectly requires "the 'lobby'" to satisfy the common space claim limitation. ECF 369 at 7:18-8:2 (*citing* ECF 300 (EPIC MOTION) at 13)[3]. Epic did not present *the lobby* as evidence of the claimed *common space*. *See* ECF 300 at 6:1-4 (addressing "a stage area" in the '071 Patent); 6:12-13 (acknowledging that Utherverse Gaming "asserted that the 'common space' . . . "is a 'stage area' in which there is a representation of the performer (*e.g.*, Marshmello))." Epic argued consistently in reply: the common space concerned the stage area—not the lobby. *See* ECF 353 (EPIC REPLY) at 2:21-25 (addressing the stage area); *see also id.* at 3:10-11 (same).

---

[3] ECF 300 at 'footer' page 13 concerns the '605 Patent. Utherverse Gaming presumes *the Court* cites the ECF 'page X of Y' header (what would be footer page 8). ***Utherverse Gaming*** cites the 'footer' page number and corresponding line numbers.

2

PLAINTIFF'S OBJECTIONS TO REPORT AND
RECOMMENDATION
CASE NO. 2:21-CV-00799-RSM-TLF

POLSINELLI
1000 SECOND AVENUE, SUITE 3500
SEATTLE, WA  98104 • Tel:  206-393-5400

Nor did Utherverse Gaming suggest the lobby met the claimed common space limitation. Utherverse Gaming clearly identified a performance area or concert stage. *See e.g.,* ECF 314 (SEALED) (UTHERVERSE GAMING MOTION) at 1:12-14 (concert stage); 2:8-9 (area with performers and events); 3:11, 3:17, 3:21-22; 3:26-4:2 (performance area for each Accused Event); *see also* ECF 365 at 6:3-4 (discussing Utherverse Gaming demonstrative slide 9); and 6:4-18 (discussing the performance areas for certain events). Utherverse Gaming identified the lobby for a ***different*** construed claim element—the common *environment* used to access a parallel dimension. *See* ECF 314 at 2:23-24 (construction of parallel dimension); *see also* ECF 133 (CLAIM CONSTRUCTION) at 12-13.

"In each Accused Event, objects visible in a ***common space*** were visible from within the parallel dimensions"; those "parallel dimensions [were] accessible from a ***common environment***." ECF 314 at 16:8-16 (emphasis added); *see also id.* at 1:9-11; 13:14-15; 15:3-4; 16:1-2 (consistent analysis). Parallel dimensions include a common space (the performance area). The parallel dimensions (with their common space) are accessible from a common environment (the lobby). Player avatars enter the parallel dimensions (from the lobby) where they may then view objects within the common space of that parallel dimension thereby satisfying, for example, claim 8. *See* ECF 312-1 ('071 PATENT) at '071:19:24-29.

The common space performance area and common environment lobby are ***not*** the same. Neither Utherverse Gaming nor Epic made this argument. "That bounded [common] space is a portion of each parallel dimension." ECF 358 (SEALED) (UTHERVERSE GAMING REPLY) at 1:23. "The lobby is the common environment through which parallel dimensions were accessed." *Id.* at 4:16-17; *see also id.* at 3:4-4:14 (affirming Epic witness and expert testimony, reports, and documents); *see also* ECF 365 at 10:22-24, 11:4-7 (oral argument on the matter).

3

**B.      The Only Identified Common Space is the Performance Area, Which the R&R Establishes Meets the Construed Claim Limitation**

The R&R next addressed "the other alleged common space—an area where a mannequin appears in each of the accused events." ECF 369 at 8:3-4. But there is no 'other alleged common space.' There is *only* this performance space identified by both Utherverse Gaming and Epic. *Supra* SECTION III.A at 2:16-3:21.

Despite the incorrect conclusion above that commingled components of the Accused Events, the R&R demonstrates that the *performance area* meets the common space limitation: "[a]ccording to Epic's evidence, the area where a mannequin performed . . . this mannequin-performance area was a discrete space within each of the instances of gameplay." ECF 369 at 8:8-14. "[A]ny one player would be able to observe and move their avatar near that space—but could not enter the exact space where the mannequin skeletal actor was performing." *Id.* at 8:16-18. The R&R's analysis—on this point—agrees with Utherverse Gaming's briefing and argument:

> The participants, the user avatars, in these various parallel dimensions could then take part in various activities in their dimensions. They could be playing with one another, engaging with one another in the broader space of the dimension, but they could also be engaging with the common space. We identify specifically in our motion the fact you could sort of rush the stage and be blasted off or bounced back off the stage. That is reflected by use of these blocking volumes or wire meshes. That is also completely consistent with the specification of the '071 patent, which at column 5, line 29 through 30, discusses **access to such a stage or common area may be limited in any desired way**.

ECF 365 at 7:15-8:2 (emphasis added).

But the R&R errs in concluding that because "player A in dimension 1 is watching the mannequin in that 'parallel instance' of their gameplay, and player B in dimension 2 is watching the mannequin in that 'parallel instance' of their gameplay" that infringement is avoided because players A and B are watching different mannequins. ECF 369 at 8:18-20; *see id.* at 8:20:9:2. Players A and B are in fact watching *identical* copies of the *same mannequin* synchronized in time across **all parallel dimensions**. *See* ECF 365 at 7:5-14. Despite respective player dimensions,

4

PLAINTIFF'S OBJECTIONS TO REPORT AND
RECOMMENDATION
CASE NO. 2:21-CV-00799-RSM-TLF

POLSINELLI
1000 SECOND AVENUE, SUITE 3500
SEATTLE, WA 98104 • Tel: 206-393-5400

1 those parallel dimensions and their common space were ███████████████████

2 █████████████████████████████████████████████████████████████████████

3 ████████████████████████████████████████████████████; *see also* ECF 336

4 (SEALED) (UTHERVERSE GAMING OPPOSITION) at 4, n. 3, l. 25-26. ███████████

5 █████████████████████████████████████████████████████████████████████

6 ████████████████████████████ ECF 314 at 14:1-2; *c.f.* ECF 353 at 3:3-19 (disavowing

7 Epic's argument there be a singular space unifying ***all*** dimensions).

8       The R&R further erred in requiring that player avatars must *enter* or be *within* the common

9 space to infringe the claim. *See* ECF 369 at 12:21-13:4. Such a requirement is not reflected in the

10 claims, the Court's construction, or the supporting specification of '071 Patent. Utherverse

11 Gaming addressed this fallacy at oral argument:

> Epic has suggested that that interaction requires us to be inside the space. There is no such requirement in the construction. There is no such requirement that we get inside the space[;] bouncing off the space, engaging with the space, that physical interaction, that digitally physical interaction, or simply the [audio/visual] experience, itself, **as exemplified at column 9, lines 9 through 14, those all satisfy the interaction**.

ECF 365 at 8:3-10 (emphasis added). The R&R's imposition of a requirement that tens of millions of users be *within* one common space is not reflective of the problems the '071 Patent solves. *See also id.* at 7:23-8:2 (*citing* ECF 312-1 at '071:5:29-30) and 8:14-9:17. The Court's construction of common space "provides for . . . interactions *with*"—not *within*. *See* ECF 133 at 10-13 (emphasis added); *see also* ECF 312-1 at '071:11:61-12:4 (alternative embodiment where select avatars may—but are not required—to enter the common space).

      The R&R also wholesale discredits the opinions offered by Dr. Rosenberg from Utherverse Gaming in arriving at its incorrect interpretation of the record. *See* ECF 369 at 10:13-11:14. Weighing evidence *against* non-moving party Utherverse Gaming at summary judgment is improper in its own right. But the R&R also contradicts Epic's own admissions from claim construction. *See* ECF 365 at 10:7-21 (*citing* ECF 114 at 31:20-32:6).

5

PLAINTIFF'S OBJECTIONS TO REPORT AND
RECOMMENDATION
CASE NO. 2:21-CV-00799-RSM-TLF

POLSINELLI
1000 SECOND AVENUE, SUITE 3500
SEATTLE, WA 98104 • Tel: 206-393-5400

At *Markman*, Epic presented the Court with two choices concerning the common space: "a separate and distinct area from the parallel dimensions"—the Epic construction—or one "consist[ing] of separate parallel dimensions"—Utherverse Gaming's construction. ECF 114 at 31:21-24. Epic admitted "Utherverse's very broad construction [of common space] would also include ***separate portions*** of ***separate parallel dimensions***." ECF 114 at 32:3-4 (emphasis added). The R&R correctly notes "[t]his was the construction proposed by plaintiff" and adopted by the Court. ECF 369 at 7:2-6 (citations omitted). But the R&R instead incorrectly applies a variant of ***Epic's*** proposed construction. The scope of the ***correct*** construction as ***admitted to*** by Epic reads ***directly*** on the factual record cited by Utherverse Gaming; the accused common space performance area meets the limitation of claims 8 and 10.

### C. The R&R Ignores Undisputed Evidence of Single Computers, Servers, and Memory

The R&R finally addresses singular/same computers, servers, and memory. *See generally* ECF 369 at 14:12 *et seq*. Regardless of the preamble (or its construction) or any authority derived from *Finjan LLC v. Sonicwall, Inc.*[4]—Epic infringes. *Contra* ECF 369 at 14:19-15:6 (addressing preambles) and 15:7-17 (addressing *Finjan*). Utherverse Gaming presented evidence of infringement under Epic's 'single computer' theory. *See generally* ECF 314 at 11:23-12:10; 336 at 4:14-17, n.3 (l. 20-26); 358 at 5:24-7:11. Epic provided no evidentiary counter to that showing of proof—only attorney argument. *See* ECF 353 at 4:6-14.



---

[4] Utherverse Gaming maintains *Finjan* lacks relevance to the present dispute for those reasons of record.

6





Epic never substantively rebuts these facts.  And Epic cannot, for it would need to disavow the testimony of their own witness Mr. Imbriaco.  But the R&R also erroneously disregarded that testimony.  These facts—properly considered—require that summary judgment be denied and the R&R rejected.

7

PLAINTIFF'S OBJECTIONS TO REPORT AND
RECOMMENDATION
CASE NO. 2:21-CV-00799-RSM-TLF

POLSINELLI
1000 SECOND AVENUE, SUITE 3500
SEATTLE, WA  98104 • Tel:  206-393-5400

## IV. THE R&R INCORRECTLY RECOMMENDS A FINDING OF INVALIDITY

Prong two[5] of the *Alice* inquiry requires the court to "consider the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent eligible application." *Alice*, 573 U.S. at 217. The R&R incorrectly invalidated claims 8 and 10 despite contrary expert opinions concerning the second prong. ECF 369 at 22:11-23:2. The R&R improperly weighed these opinions in favor of Epic rather than Utherverse Gaming—the non-moving party. *Contra Cottrell v. I.C. System, Inc.*, 2022 WL 17582374, at *1 (W.D. Wash., Dec. 12, 2022) (evidence at summary judgment stage must be viewed in light most favorable to the non-movant). The R&R similarly failed to draw all reasonable inferences in Utherverse Gaming's favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 242, 248 (1986)). The R&R then incorrectly concluded under its characterization of two purported fact scenarios, which were themselves in error, that the '071 Patent failed the second prong of the *Alice* inquiry. ECF 369 at 23:8-22.

### A. The R&R Misapplied *Alice* Prong Two as a Matter of Law and Subsidiary Fact

The R&R erroneously concludes there is "no genuine dispute of material fact" because "the criteria [for *Alice* prong-two] are not met by the '071 Patent under either of Utherverse's factual contentions." ECF 369 at 23:8-22. But the R&R hinges its inquiry on supposed factual contentions related to *infringement* rather than the Supreme Court-mandated examination of "the elements of the claim to determine whether it contains an 'inventive concept' sufficient to 'transform' the claimed abstract idea into a patent-eligible application."[6] *Alice*, 573 U.S. at 221; *see Berkheimer v. HP Inc.*, 881 F.3d 1360 (Fed. Cir. 2018) (reversing a prong two finding of

---

[5] The R&R did not address prong one of the *Alice* two-step inquiry. Utherverse Gaming reserves all rights with respect to this deficiency, which is itself fatal to the R&R.

[6] The Court's errors in its so-called infringement contentions are outlined above. *Supra* SECTION III.A, B, 2:15-6:10.

8

PLAINTIFF'S OBJECTIONS TO REPORT AND
RECOMMENDATION
CASE NO. 2:21-CV-00799-RSM-TLF

POLSINELLI
1000 SECOND AVENUE, SUITE 3500
SEATTLE, WA  98104 • Tel:  206-393-5400

1 invalidity for the same reasons). The court is ***required*** to determine whether the claimed elements, individually ***and*** as an ordered combination, contain an inventive concept. *Berkheimer,* 881 F.3d at 1368.

Software-based cases such as the present dispute require the Court to consider whether the relevant implementation consists of more than "well-understood, routine, and conventional" activities previously known to the industry. *Id*. at 1369. The inquiry should have instead focused on whether the claim limitation or claimed combinations are well-understood, routine, conventional to a skilled artesian in the relevant field—not the factual contentions of infringement. The inquiry requires "more than recognizing that each claim element, *by itself*, was known in the art." *Bascom Global Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016).

Whether a claim element or combination of elements is well-understood, routine, and conventional to a skilled artisan in the relevant field is a question of fact. *Berkheimer*, 881 F.3d at 1367; *see also Aatrix Software, Inc. v. Green Shades Software, Inc.,* 882 F.3d 1121, 1128 (Fed. Cir. 2018) (finding "there can be subsidiary fact questions which must be resolved en route to the ultimate legal determination"). Because this fact is pertinent to the invalidity conclusion it must be proven by clear and convincing evidence. *See Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 95 (2011). Summary judgment was improper because whether the claimed invention is well-understood, routine, and conventional is a fact question for which Epic offered no evidence.

The R&R instead concluded that:

> [i]f the Court were to accept Utherverse's factual contentions that the claim require interaction across multiple parallel dimensions . . . the '071 [P]atent would be invalid because it does not supply the inventive concept and does not meet part two of the two-part *Alice* test – the claims do not describe how any new invention would allow interaction across multiple parallel dimensions.

ECF 369 at 23:8-14. That conclusion is not allowed for as a matter of law.

9

PLAINTIFF'S OBJECTIONS TO REPORT AND
RECOMMENDATION
CASE NO. 2:21-CV-00799-RSM-TLF

B. **The R&R Misapplied the Summary Judgment Standards and Incorrectly Weighed Evidence**

The R&R also overlooked the '071 Patent specification that describes the inventive feature of modeling a common space allowing it to be viewed across multiple parallel dimensions. ECF 312-1 at '071:5:24-35; 11:58-12:4. This allows for a common space—like the performance areas of the Accused Events—to be visible in each multiple parallel dimensions. This inventive common space feature overcomes the significant technical obstacles by improving the computational power, processing, and network bandwidth of virtual reality computing systems. *Id*. at '071:1:46-57. Mr. Crane—Utherverse's technical expert—similarly recognized that the claimed common space "overc[a]me the significant technical obstacles . . . including computational power, processing requirements, and network bandwidth." ECF 337-2, Ex. NN (CRANE REPORT) ¶ 67; See also ECF 336 at 12:17-24, 14:20-25; 15:7-15; 16:8-18. Mr. Crane opined that the common space "allowed for and recited in the claims of the '071 Patent" facilitated sharing a common parallel experience across multiple dimensions. ECF 337-2, Ex. NN ¶ 68.

The R&R instead relied on Epic's mischaracterization of competing technical expert testimony that instancing governed application of the second prong of the two-part *Alice* test. ECF 369 at 22:11-22. Whether instancing is part of the prior art has no bearing on the two-part *Alice* test. *Alice* mandates that the court examine the claimed "common space" limitation to determine if it is well-understood, routine, and conventional to a skilled artisan in the relevant field. *Berkheimer*, 881 F.3d at 1369.

Instancing in the prior art instead buttresses the Utherverse Gaming argument. The '071 Patent represents an inventive ***departure*** from conventional prior art instancing. *See id*. Mr. Crane opined the asserted claims of the '071 Patent are "a departure from earlier methodology" that "resulted in [an] improvement in system functionality." ECF 337-2, Ex. NN ¶ 88. This departure was likewise highlighted at oral argument. *See* ECF 365 at 5:10-22 ("this common space of the '071 patent was geared as an improvement over the prior art"; "the improvement was the

10

PLAINTIFF'S OBJECTIONS TO REPORT AND
RECOMMENDATION
CASE NO. 2:21-CV-00799-RSM-TLF

POLSINELLI
1000 SECOND AVENUE, SUITE 3500
SEATTLE, WA 98104 • Tel: 206-393-5400

1 introduction of parallel dimensions with common spaces. It is no longer simply shards. We take
2 these shards, we make them parallel, and also add this concept of common space. That common
3 space, that technological improvement that allows for improved efficiency, bandwidth, network
4 processing, et cetera"); *see also* UTHERVERSE'S DEMONSTRATIVE SLIDES, 4-5.

Mr. Crane's opinion combined with testimony of co-inventor Brian Shuster that the asserted claims recite unconventional inventive improvements creates a factual dispute as to well-understood, routine, and conventional activities. *See* ECF 337-3, Ex. OO (B. SHUSTER TR.), 58:18-59:23 (using a dimensioning system that allows dimensions to have differing characteristics and rule sets rather than standard instancing); 60:9-61:24 (patent teaches technology for hosting virtual worlds with unlimited avatars, which differs from that used for instancing). The Court is required to analyze the asserted claims to determine if they captured the testified-to improvements—not the allegations of infringement. *Contra Alice*, 573 U.S. at 221. Claims 8 and 10 of the '071 Patent clearly recite the "modeling a common space in the computer memory" limitation, which is directed to the unconventional inventive concept described in the specification. ECF 312-1 at '071:19:24–29 (claim 8), 19:37-41 (claim 10). Because the R&R failed to include the ***required*** inventive concept analysis of the asserted claims under prong two of *Alice*, it erroneously concluded that there were no underlying factual questions regarding Section 101. *Berkheimer*, 881 F.3d at 1370 (holding material dispute of fact regarding inventiveness created by improved redundancy, efficiency, computer functionality that are captured by claim elements precludes summary judgment of invalidity under Section 101).

### C. The R&R's Alternative Theory of Invalidity Conflicts with Precedent

The R&R's finding that "the Court should find the '071 Patent is invalid because it did not improve on prior art" conflicts with Supreme Court and Federal Circuit precedent. ECF 369 at 23:20-22. That the R&R failed to follow the *Alice* two-step inquiry is thoroughly objected to above. *Supra* 8:14-9:24. But the R&R's analysis and ultimate ruling also runs directly contrary to substantial precedent refusing an assessment of improvement on the prior art. The R&R's

11

PLAINTIFF'S OBJECTIONS TO REPORT AND
RECOMMENDATION
CASE NO. 2:21-CV-00799-RSM-TLF

POLSINELLI
1000 SECOND AVENUE, SUITE 3500
SEATTLE, WA  98104 • Tel: 206-393-5400

inclusion of a requirement to "improve on prior art" is an incorrect expansion of Section 101 well beyond its statutory gate-keeping function. As noted by the Federal Circuit in *CardioNet, LLC v. InfoBionic, Inc.*, "'[t]he § 101 patent-eligibility inquiry is only a threshold test' . . . and we reserve for §§ 102 and 103 purposes our comparison of the prior art and the claims to determine if the claims are, in fact, an improvement over the prior art." 955 F.3d 1358, 1373 (Fed. Cir. 2020).

The R&R's conclusion is one incorrectly based on patentability under Section 102 or Section 103 versus patent eligibility under Section 101. Section 101 ineligibility neither rises nor falls on whether an invention embodies minor and predictable differences from the prior art. "The questions of whether a particular invention meets the 'novelty' requirements of 35 U.S.C. § 102 or the 'nonobviousness' requirements of § 103 do not affect the determination of whether the invention falls into a category of subject matter that is eligible for patent protection under § 101." *Diamond v. Diehr*, 450 U.S. 175, 176 (1981).

Contrary to the R&R's conclusion, there is at least a genuine issue of material fact as to whether the asserted claims' recital of "**modeling a common space in the computer memory** configured in relation to the plurality of parallel dimensions so that at least one object located inside the common space is visible from viewpoints located inside each of the plurality of parallel dimensions" is an inventive concept that improves the computational power, processing, and network bandwidth. *See* ECF 312-1 at '071:19:24–29; 19:37-41; ECF 337-2, Ex. NN ¶ 88 (asserted claims of the '071 Patent are "a departure from earlier methodology" that "resulted in [an] improvement in system functionality"), ECF 337-2, Ex. NN ¶ 89 ("the claimed common[] spaces constitute a specific implementation of a specific solution to a specific problem in the software arts; one that improves functionality of virtual world systems"). A properly conducted *Alice* step two analysis requires the examination of "the elements of the claim to determine whether it contains an 'inventive concept' sufficient to 'transform' the claimed abstract idea into a patent-eligible application" as mandated by the Supreme Court. *Alice*, 573 U.S. at 221. The R&R's

12

PLAINTIFF'S OBJECTIONS TO REPORT AND
RECOMMENDATION
CASE NO. 2:21-CV-00799-RSM-TLF

POLSINELLI
1000 SECOND AVENUE, SUITE 3500
SEATTLE, WA 98104 • Tel: 206-393-5400

erroneous conclusion of invalidity under its equally erroneous alternative scenario of requiring improvement on prior art should not be adopted by the Court.

## V. CONCLUSION

Utherverse Gaming respectfully requests the Court overrule the R&R as set forth above.

DATED this 9th day of January, 2024                    Respectfully submitted,

                                                       */s/ Emily C. McNally*
                                                By:    Emily McNally (WSBA No. 60710)
                                                       **POLSINELLI PC**
                                                       1000 Second Avenue, Suite 3500
                                                       Seattle, WA  98104
                                                       Tel:  206-393-5400
                                                       Fax:  206-393-5401
*Of Counsel:*                                          Email:  emcnally@polsinelli.com

Colby B. Springer (admitted *pro hac vice)*            Mark T. Deming (admitted *pro hac vice*)
Miya Yusa (admitted *pro hac vice*)                    **POLSINELLI PC**
**POLSINELLI LLP**                                     150 N. Riverside Place, Suite 3000
Three Embarcadero Center, Suite 2400                   Chicago, IL  60606
San Francisco, CA  94111                               Tel:  312-819-1900
Tel:  415-248-2100                                     Fax:  312-819-1901
Fax:  415-248-2101                                     Email:  mdeming@polsinelli.com
Email:  cspringer@polsinelli.com
Email:  myusa@polsinelli.com                           Jonathan Spivey (admitted *pro hac vice*)
                                                       **POLSINELLI PC**
Melenie Van (admitted *pro hac vice*)                  1000 Louisiana Street, Suite 6400
**POLSINELLI LLP**                                     Houston, TX 77002
2049 Century Park East, Suite 2900                     Tel.: (713) 374-1600
Los Angeles, CA 90067                                  Fax: (713) 374-1601
Tel:     (310) 229-1355                                Email: jspivey@polsinelli.com
Fax:     (415) 276-8959
Email:  mvan@polsinelli.com
                                                       Attorneys for Plaintiff
                                                       UTHERVERSE GAMING LLC

The signatory certifies that this memorandum contains 4,140 words, in compliance with the Local Civil Rules.  Counsel relied on the word count of a word-processing system used to prepare the brief.

13

PLAINTIFF'S OBJECTIONS TO REPORT AND
RECOMMENDATION                                                     1000 SECOND AVENUE, SUITE 3500
CASE NO. 2:21-CV-00799-RSM-TLF                                     SEATTLE, WA  98104 • Tel:  206-393-5400