THE HONORABLE RICARDO S. MARTINEZ

# IN THE UNITED STATES DISTRICT COURT

# FOR THE WESTERN DISTRICT OF WASHINGTON

# AT SEATTLE

| | |
|---|---|
| UTHERVERSE GAMING LLC,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>EPIC GAMES, INC,<br><br>　　　　　Defendant. | Case No. 2:21-cv-00799-RSM<br><br>PLAINTIFF UTHERVERSE GAMING LLC'S MOTIONS *IN LIMINE*<br><br>Noting Date: September 13, 2024<br><br>[REDACTED] |



**MIL No. 1: Exclude Reference to Inventor Business or Employment Activities Outside of Utherverse Digital and Ideaflood.**

Utherverse Gaming requests the Court preclude Epic Games from introducing evidence or argument concerning business or employment activities of Brian Shuster and Aaron Burch outside of Utherverse Digital or Ideaflood.

Messrs. Shuster and Burch are the named inventors of the patent-in-suit: the '605 Patent. Mr. Shuster was the founder of Utherverse Digital and Ideaflood, both of which are non-parties to the lawsuit. Mr. Burch was formerly employed by Utherverse Digital. Prior to the filing of this lawsuit, Utherverse *Digital* assigned its right, title, and interest in the '605 Patent to Plaintiff Utherverse *Gaming*. Ideaflood was also a signatory to that agreement. Involvement by the inventors in business enterprises outside of Utherverse Digital and Ideaflood are unrelated to the '605 Patent or the parties' claims and defenses.

Reference to certain of those enterprises will inflame the jury and unfairly prejudice Plaintiff Utherverse Gaming. Mr. Shuster was previously involved with certain online publishing companies and websites that made available explicit content, including a company known as XPics Publishing. EX. A (DEPOSITION OF BRIAN SHUSTER (MARCH 3, 2023)) ("B. SHUSTER DEPO. TR.") at 28:14-29:9. Mr. Burch founded an early internet advertising and content-delivery company known as EMI Communication, which engaged in ad brokering in the adult content space. EX. B (DEPOSITION OF AARON BURCH (APRIL 11, 2023)) ("A. BURCH DEPO. TR.") at 14:19-15:20.

This prior work (and any other work) by Messrs. Shuster and Burch is separate from and unrelated to that of Utherverse Digital and Ideaflood. Such outside work is likewise separate from and unrelated to the subject matter, claims, conception, or assignment of the '605 Patent. Nor are any such outside endeavors related to the allegations of infringement against Epic Games and its *Fortnite* based concert events by Utherverse *Gaming*. Epic Games has raised no defense or counterclaim that invokes such outside work, affiliation, or involvement. Any such work,

affiliation, or involvement with other businesses or products is not relevant to the claims and defenses at issue and is not admissible. FED.R.EVID. 402.

Even if relevant, reference to these other business enterprises should be excluded as any probative value would be substantially outweighed by a danger of unfair prejudice to Utherverse *Gaming*. *See* FED.R.EVID. 403. Jurors could be confused and perceive a relationship between these other enterprises and the inventors' work for Utherverse Digital or Ideaflood when there is none. That confusion or perception could unfairly (and improperly) extend to Utherverse Gaming. *See Wood v. State of Alaska*, 957 F.2d 1544, 1552 (9th Cir. 1992) (affirming exclusion of evidence concerning pornographic and similar material for want of relevance and noting the "substantial" risk of juror confusion and prejudice "[b]ecause many people consider . . . pornography to be particularly offensive").

Introducing irrelevant and unfairly prejudicial evidence of Messrs. Shuster's and Burch's business and employment activities outside of Utherverse Digital and Ideaflood serves no purpose other than to confuse or inflame the jury. Such evidence should be excluded.

**MIL No. 2: Exclude Reference to Explicit or Graphic Activities on the Platform of Non-Party Utherverse Digital.**

Utherverse Gaming requests the Court preclude Epic Games from introducing evidence or argument regarding activity of an explicit or graphic nature on the virtual reality platform of non-party Utherverse Digital. Utherverse Digital is the entity from which Plaintiff Utherverse Gaming acquired the '605 Patent. Utherverse Gaming likewise requests that the Court preclude Epic Games from suggesting that any such activities constitute pornography.

Utherverse Digital hosts 'the Utherverse'—a social network of interconnected virtual worlds. Users can attend virtual events, conventions, concerts, museums, and the like. Certain of these virtual worlds are restricted to adult internet users over the age of 18. Adult users can, in

these worlds, experience various virtual "adult" activities, including visiting virtual adult establishments, engaging in virtual sexual activities, and experimenting with virtual psychoactive substances.

Evidence or argument related to such "adult" activities inside the Utherverse Digital virtual worlds has no relevance to the invention of the '605 Patent. Nor do these activities pertain to the allegations of infringement against Epic Games and its *Fortnite* based concert events. Epic Games has raised no defense or counterclaim that relates in any way to these "adult" activities within the virtual worlds hosted by non-party Utherverse Digital. Such evidence and argument are therefore not admissible. FED.R.EVID. 402. Such evidence would serve only to inflame the jury and unfairly prejudice Plaintiff Utherverse Gaming. Utherverse ***Gaming*** is not an affiliate of Utherverse Digital, nor does it host any virtual worlds, or have any relationship with any virtual "adult" activities made available through the Utherverse Digital 'Utherverse' platform.

Epic Games should similarly be precluded from referring to any of the explicit or graphic activities described herein as "pornography." Jurors may find descriptions of these graphic activities—and any improper reference to "pornography"—to be scandalous or immoral. *See Wood,* 957 F.2d at 1552-53 (acknowledging people may consider pornography to be particularly offensive and to influence their juror impressions). This is to say nothing of explaining the legal niceties between legal and not. *See, e.g., Pope v. Illinois*, 481 U.S. 497, 505 (J. Scalia, concurring) and *FCC v. Pacific Foundation*, 438 U.S. 726,743 (1978) (both addressing the challenges of delineating the artfully risqué from the illegally obscene). If Epic Games is permitted to introduce such evidence or argument, there exists an unquestionable risk jurors could be improperly influenced or distracted by matters not central to the issues in the case. Even if evidence of such explicit or graphic activities were relevant, it should be excluded as its probative value is substantially outweighed by the danger of unfair prejudice to Utherverse Gaming. FED.R.EVID. 403.

3
PLAINTIFF'S MOTIONS IN LIMINE
CASE NO. 2:21-CV-00799-RSM

**MIL No. 3: Exclude Derogatory and Pejorative References to Utherverse Gaming, Utherverse Digital, and/or the Inventors of the '605 Patent.**

Utherverse Gaming requests the Court preclude Epic Games from introducing evidence or argument referring to Utherverse Gaming, Utherverse Digital, and/or the inventors of the '605 Patent with derogatory or pejorative labels. This specifically includes a prohibition against calling Utherverse Gaming, Utherverse Digital and/or the inventors of the '605 Patent "patent trolls." Such references are irrelevant and have no probative value; they further risk unfair prejudice and confusion of issues. *See* FED. R. EVID. 402, 403; *see also Finjan, Inc. v. Cisco Sys., Inc.*, No. 17-cv-072, 2020 WL 13180008, at *2-3 (N.D. Cal. June 5, 2020) ("such projective labels are irrelevant, unhelpful to the jury, and in some instances carry negative connotations"); *SPEC Techs. v. Apricorn, Inc.*, No. 16-cv-07349, 2020 WL 1289546, at *2 (C.D. Cal. Jan. 21, 2020) (finding such terms improperly "suggest[] that there is something wrong with acquiring patent rights and then enforcing them").

Derogatory or pejorative labels further suggest that Plaintiff Utherverse Gaming is not entitled to the presumption of patent validity or should be treated differently from other patent litigants. *Contra SPEC Techs*, 2020 WL 1289546 at *2 ("the rights of a patent holder are the same whether the patent hold practices, chooses to license and enforce right or pursues any other lawful means exploit his rights"); *Texas Data Co. v. Target Brands, Inc.,* 771 F. Supp. 2d 630, 638 (E.D. Tex. 2011) (so-called "patent trolls" "own a legitimate property right[]"; "[t]he Court is not aware of any rules that apply differently to them"). The Court should preclude Epic Games from using such derogatory or pejorative labels.

1  **MIL No. 4: Preclude Reference to Litigation Funding / Attorney-Fee Structures.**

2  Utherverse Gaming requests the Court preclude Epic Games from introducing evidence or argument regarding funding of the litigation through investment funds managed by Fortress Investment Group ("Fortress"). Utherverse Gaming further requests a prohibition as to any comment on attorney-fee compensation, including amounts or structure of the same.

Epic Games sought testimony and documents from and about non-party Fortress during fact discovery. Epic Games' deposition designations suggest an intent to present related testimony and documents at trial. 

Evidence or argument regarding Fortress, the investment funds it manages, those funds' ownership of Utherverse Gaming's parent, any funding of this litigation through those funds, and/or the distribution of any damages award received by Utherverse Gaming is not relevant to any claim or defense in this patent infringement case. *See Space Data Corp. v. Google LLC*, 2018 WL 3054797, at *1 (N.D. Cal. June 11, 2018) ("[t]he Court is not persuaded that the [litigation funding] materials sought are relevant to any party's claim"); *MLC Intellectual Property LLC v. Micron Technology, Inc.*, 2019 WL 118595, at *2 (N.D. Cal. Jan. 7, 2019) ("[t]he Court concludes that [defendant] is not entitled to the [litigation funding] discovery it seeks because it is not relevant"). The probative value (if any) of evidence or argument on these matters is substantially outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, and wasting time. *See* FED. R. EVID. 401, 402, 403.

While some courts require disclosure of financial arrangements and persons or entities with a financial interest in the outcome of a litigation, that rationale has been to supplement Rule 7.1 disclosures for evaluating conflicts of interest. *See, e.g.*, *Nimitz Techs. LLC v. CNET Media, Inc.*, 2022 WL 17338396, at *1 (D. Del. Nov. 30, 2022). Courts across the country that have addressed the issue have held that litigation funding information is generally irrelevant to proving the claims and defenses in a case. *See V5 Techs. v. Switch, Ltd.,* 334 F.R.D. 306, 312 (D. Nev. 2019); *see also SSL Servs., LLC v. Citrix Sys., Inc.,* 2012 WL 12906091, at *1 (E.D. Tex. May 24, 2012) (precluding "reference to investors in the litigation [or] litigation financing"); *see also Yousefi v. Delta Elec. Motors, Inc*., 2015 WL 11217257, at *2 (W.D. Wash. May 11, 2015) ("[w]hether plaintiff is funding this litigation through savings, insurance proceeds, a kickstarter campaign, or contributions from the union is not relevant to any claim or defense at issue."); *see also Pinn, Inc. v. Apple Inc.*, 2021 WL 4777134, at *2 (C.D. Cal. July 14, 2021) (Carter, J.) (excluding evidence and argument of litigation funding and compensation agreements for trial counsel); *Constellation Designs, LLC v. LG Elecs., Inc.*, 2023 WL 4203414, at *3, 7 (E.D. Tex. June 27, 2023) (precluding patent defendant "from introducing any argument, evidence, or suggestion regarding Fortress or [plaintiff] receiving funding from Fortress"). This Court should find no differently.

Courts similarly and routinely bar reference to a party's fee agreement with counsel finding it irrelevant and unduly prejudicial. *See, e.g., In re Static Random Access Memory (SRAM) Antitrust Litig.*, 2010 WL 10086747, at *2 (N.D. Cal. Dec. 16, 2010) (excluding reference to plaintiffs' fee arrangements on relevance grounds); *Positive Ions, Inc. v. Ion Media Networks, Inc.*, 2007 WL 9701734, at *3 (C.D. Cal. Nov. 7, 2007) (excluding reference to fee arrangement on the grounds of unfair prejudice, confusion, and the potential to mislead). The Court should preclude evidence or argument regarding funding of the litigation or regarding any comment on attorney-fee compensation, including amounts or structure.

**MIL No. 5: Preclusion of Inventor Testimony Regarding Legal Issues, Claim Scope, and Prior Art.**

Utherverse Gaming requests the Court preclude either party from introducing or eliciting *inventor* testimony regarding their percipient understanding of: (a) legal issues pertaining to the '605 Patent, (b) the claims of the '605 Patent, and (c) what might constitute prior art.

Each inventor was, during deposition, shown the asserted claims and asked (without so much as the Court's claim construction order) what elements are known in the prior art and what elements are representative of their inventions. EX. A (B. SHUSTER DEPO. TR.) at 154:25-157:24, 158:6-160:12; EX. B (A. BURCH DEPO. TR.) at 123:1-136:4. Objections were proffered in response to those improper questions. *Id*. Utherverse Gaming's objections notwithstanding, the inventors provided *percipient, non-expert testimony* in an otherwise unfair and contextually devoid vacuum.

The inventors are not patent attorneys or agents. Nor are the inventors designated as experts. An inventor's *legal opinion* about the meaning or enablement of a patent claim and what may constitute prior art (even with the Court's claim construction) is not relevant. *See* FED. R. EVID. 402; *see also Solomon v. Kimberly-Clark Corp.*, 216 F.3d 1372, 1380 (Fed. Cir. 2000)) ("'inventor testimony, obtained in the context of litigation, should not be used to invalidate issued claims'") and *Koito Mfg. Co., Ltd. v. Turn-Key-Tech, LLC*, 381 F.3d 1142, 1156 (Fed. Cir. 2004) (not requiring testimony from inventors as to 'every detail' of their invention). The Federal Circuit correctly explained that "it is not unusual for there to be a significant difference between what an inventor *thinks* his patented invention is and what the ultimate scope of the claims is after allowance by the PTO." *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 985 (Fed. Cir. 1995) (*en banc*) (emphasis added). Inventor testimony in this context is accordingly irrelevant. *See Cordis Corp. v. Boston Sci. Corp.*, 561 F.3d 1319, 1338 (Fed. Cir. 2009) (affirming exclusion of inventor testimony where inventor had no special expertise).

Even if relevant, inventor testimony has limited probative value that is substantially outweighed by the danger of confusion of the issues or misleading the jury. *See* FED. R. EVID. 403. The Court and the inventors may give different interpretations of claim scope. Once the Court has construed the claims, "[n]o party may contradict the court's construction to a jury." *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1321 (Fed. Cir. 2009). Testimony or argument based on a construction other than the Court's is inadmissible. *See Regents of Univ. of Cal. v. Micro Therapeutics, Inc.*, 2007 WL 2429412, at *3 (N.D. Cal. Aug. 23, 2007) (striking expert testimony applying a construction different from the court). The Court should therefore preclude evidence or argument regarding inventor testimony or interpretation concerning the legalities of the claims or any prior art.

**MIL No. 6: Precluding Inconsistencies with the Court's Claim Construction.**

Utherverse Gaming requests the Court to preclude either party from introducing evidence or argument suggesting an interpretation of the claims that differs from that of the Court's Claim Construction Order, inclusive of its adopted constructions and reasoning. "Once a district court has construed the relevant claim terms, and unless altered by the district court, then that legal determination governs for purposes of trial." *Exergen Corp.,* 575 F.3d at 1321; *Dynetix Design Sols., Inc. v. Synopsys, Inc.*, No. C 11-cv-5973, 2013 WL 4537838, at *4 (N.D. Cal. Aug. 22, 2013) ("Any expert testimony must adhere to the court's claim constructions and must not apply alternative claim constructions"). Arguing alternative claim constructions to the jury presents an unacceptable risk of confusing the jury. *See Cytologix Corp. v. Ventana Med. Sys., Inc.*, 424 F.3d 1168, 1172 (Fed. Cir. 2005) (noting that "[t]he risk of confusing the jury is high when experts opine on claim construction" before the jury); *Sundance, Inc. v. Demonte Fabricating Ltd.*, 550 F.3d 1356, 1364 n6 (Fed. Cir. 2008) (noting that "allowing a witness to testify before the jury on claim construction would be improper").

The Court construed the term "initial scene state" as follows:

> "[t]he initial scene state includes at least a position and orientation of objects, including avatars, rendered in the scene at a beginning of a time period of a new recording."

DKT. 133 (CLAIM CONSTRUCTION ORDER) at 13:4-13. The Court also expressly explained that the claim does not "require[] the presence of avatars"; "[a]vatars may simply be included." *Id.*

The Court also construed the term "recorded experience file" as:

> "[A file containing] a recording of a prior experience that occurred in a virtual environment."

DKT. 133 at 3:22-25, 13:14-14:3. The Court again provided a corresponding explanation (and lifted from Epic Games' own arguments): that experience "must be from a prior experience rather than a display allowing for real-time interaction," including "new gameplay." *Id.* at 13:15-17.

Epic Games has nevertheless indicated that it intends to argue that the initial scene state must include an avatar; this contradicts the Court's construction and would confuse the jury about which construction to follow. Epic Games has similarly indicated its intent to argue that recorded experience files corresponding to the Ariana Grande and Travis Scott events must be from new and real-time interaction of those events as they occurred; this argument would similarly contradict the Court's construction not to mention Epic Games' own arguments to the Court. The Court should preclude such contrary argument and testimony. *See* FED. R. EVID. 403.

**MIL No. 7: Reference to Unasserted Prior Art Combinations or Analyses.**

Utherverse Gaming requests the Court preclude Epic Games from introducing evidence or argument regarding prior art not disclosed in a specific combination set forth in its expert report or from a qualified fact witness. This is inclusive of any untimely comparisons by Epic Games' expert of otherwise objectionable hearsay literature (*i.e.,* the "Greenhalgh-1" and "Greenhalgh-2" references) to any elements of the asserted claims of the '605 Patent.

"The Ninth Circuit and [the Federal Circuit] have concluded that the exclusion of evidence is often the appropriate sanction for the failure to comply with [case management] deadlines." *O2 Micro Int'l, Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1369 (Fed. Cir. 2006); *see also SanDisk Corp. v. Memorex Prods., Inc.*, 415 F.3d 1278, 1292 (Fed. Cir. 2005) (excluding theories not disclosed as required by the local patent rules and the court's scheduling order); *Wong v. Regents of Univ. of Cal.*, 410 F.3d 1052, 1060 (9th Cir. 2005) (""failure to comply strictly with scheduling and other orders . . . may properly support severe sanctions and exclusions of evidence"). Courts have accordingly granted motions *in limine* to preclude reliance at trial on theretofore undisclosed theories. *See, e.g., Changzhou Kaidi Elec. Co., Ltd. v. Okin America, Inc.*, 112 F. Supp. 3d 330, 335 (D. Md. 2015) (excluding expert reliance on "theories premised on combinations of prior art or references within the prior art not previously disclosed").

Epic Games has indicated an intent to allege (for the first time at trial) that Greenhalgh-1 and Greenhalgh-2 articles are invalidating prior art without previously disclosed opinions or testimony from its expert. While the existence of these references were disclosed, admissible evidentiary testimony correlating to that disclosure has not. Epic Games' expert—Benjamin Ellinger—indicated awareness of these references but he did not analyze or apply the same to the claims. EX. E (INVALIDITY REPORT OF BENJAMIN ELLINGER (APRIL 14, 2023) ("ELLINGER INVALIDITY REPORT"), at pp. vi-ix and §§ XIII(B)-(C) (p. 213-232); EX. F (DEPOSITION OF BENJAMIN ELLINGER (JUNE 1, 2023)), at 496:1-498:12, 504:21-505:8.

Epic Games also took the deposition of Mr. Greenhalgh. But Epic Games failed to elicit any admissible testimony that might be presented to a jury given obstacles of hearsay. Epic Games is left with no alternative but to present new arguments and theories. Such new arguments and theories could confuse or mislead the jury not to mention being prejudicial to Utherverse Gaming. *See* FED. R. EVID. 402, 403; *contra* FED. R. CIV. P. 26. The Court should preclude such argument or evidence.

**MIL No. 8: Preclusion of New Invalidity Theories, Including Those Against Unasserted Claims**

Utherverse Gaming requests the Court preclude Epic Games from alleging invalidity of claims 2, 5, and 8 based on indefiniteness and lack of enablement as well as any theory against unasserted claim 1. Epic Games has indicated that it will allege invalidity based on indefiniteness and lack of enablement, including against claims not asserted in this action. Epic Games did not raise indefiniteness or lack of enablement of the asserted claims during claim construction nor did it disclose any expert opinions on said issues during expert discovery. *See* EX. E (ELLINGER INVALIDITY REPORT), at § IV (p. 4-5). Conversely, Epic Games' expert *did* opine on the invalidity of the no-longer at issue '071 Patent based on indefiniteness. Epic Games was aware that such testimony was required. *Id.* at §XV (p. 266-269). Epic Games should not be permitted to introduce a new, unadvanced theory against the '605 Patent for the first time at trial.

Epic Games can only rely on its Amended Answer to justify its assertion of lack of enablement. *See* DKT. 287 at 34:1-6 (the '605 Patent "fails to enable a person of skill in the art to practice certain claim limitations" including "'automatically transporting the one or more avatars to a different new instance of the scene, upon occurrence of a threshold event'"). But Epic Games failed to elicit or present testimony on any alleged lack of enablement of the claims of the '605 Patent. Epic Games should be prohibited from attempting to do so for the first time at trial.

Moreover, "[i]ndefiniteness is a question of law and in effect part of claim construction." *ePlus, Inc. v. Lawson Software, Inc.*, 700 F.3d 509, 517 (Fed. Cir. 2012); *GPNE Corp. v. Apple Inc.,* 108 F. Supp. 3d 839, 872 (N.D. Cal. 2015) ("any indefiniteness issues will be decided by the Court, and not tried to the jury"). Permitting Epic Games to raise a new infiniteness (and lack of enablement) argument at trial is unfair and could confuse or mislead the jury. See FED. R. EVID. 402, 403. The Court should preclude such argument and testimony.

**MIL No. 9: Exclude References to Stipulation as to Entry of Judgment of Noninfringement.**

Utherverse Gaming requests the Court preclude Epic Games from referencing the JOINT STIPULATED MOTION FOR ENTRY OF JUDGMENT OF NONINFRINGEMENT. *See* DKT. NO. 199. Following claim construction, the parties (by stipulation) moved for entry of judgment of non-infringement on all claims and defenses relating to the '954 and '157 Patents. Dismissal of certain patents and claims from the case has no relevance to any claim or defense in this action as it pertains to the '605 Patent. *See* FED. R. EVID. 402; *see also Anderson v. Brown Indus.*, 2014 WL 12521732, at *4 (N.D. Ga. Mar. 14, 2014) ("[E]vidence concerning previously dismissed claims is not relevant and, consequently, is not admissible"). Mentioning that the parties agreed to a joint stipulated motion of non-infringement and subsequent dismissal could be prejudicial with no probative value. Such references could likewise confuse or mislead the jury. *See* FED. R. EVID. 403. The Court should preclude such argument and testimony.

**MIL No. 10: Exclude References to the Court's Summary Judgment Decisions.**

Utherverse Gaming requests the Court preclude the parties from introducing evidence or argument related the Court's orders on summary judgment that the claims of the '071 Patent were invalid and/or not infringed. The Court's summary judgment order as to the '071 Patent has no relevance any claim or defense in this case; the '071 Patent is no longer being tried. Nor does the

'605 Patent have any relation to the '071 Patent by way of priority or familial status. *See* FED. R. EVID. 402. Any probative value (none) is substantially outweighed by the danger of unfair prejudice, confusion of the issues, and/or misleading the jury. FED. R. EVID. 403; *see also S.E.C. v. Retail Pro, Inc.*, 2011 WL 589828, at *4 (S.D. Cal. Feb. 10, 2011) (excluding evidence or reference to a prior summary judgment order because it "presents a substantial risk of jury confusion and unfair prejudice to Defendant"); *Hewlett-Packard Co. v. Mustek Sys., Inc.*, 2001 WL 36166855, at *4 (S.D. Cal. June 11, 2001) (precluding plaintiff from referring to Court's description of prior art reference in summary judgment orders). The Court should preclude such argument and testimony.

DATED: August 30, 2024.

Respectfully submitted,

*/s/ Emily C. McNally*
Emily McNally (WSBA No. 60710)
**POLSINELLI PC**
1000 Second Avenue, Suite 3500
Seattle, WA 98104
Tel: 206-393-5400
Fax: 206-393-5401
Email: emcnally@polsinelli.com

Mark T. Deming (admitted pro hac vice)
**POLSINELLI PC**
150 N. Riverside Place, Suite 3000
Chicago, IL 60606
Tel: 312-819-1900
Fax: 312-819-1901
Email: mdeming@polsinelli.com

Jonathan Spivey (admitted pro hac vice)
**POLSINELLI PC**
1000 Louisiana Street, Suite 6400
Houston, TX 77002
Tel.: (713) 374-1600
Fax: (713) 374-1601
Email: jspivey@polsinelli.com

Colby B. Springer (admitted pro hac vice)
Miya Yusa (admitted pro hac vice)
**POLSINELLI LLP**
Three Embarcadero Center, Suite 2400
San Francisco, CA  94111
Tel:  415-248-2100
Fax:  415-248-2101
Email:  cspringer@polsinelli.com
Email:  myusa@polsinelli.com

Melenie Van (admitted pro hac vice)
**POLSINELLI LLP**
2049 Century Park East, Suite 2900
Los Angeles, CA 90067
Tel:  (310) 229-1355
Fax:  (415) 276-8959
Email:  mvan@polsinelli.com

The above signatory certifies that this memorandum contains 3,972 words, in compliance with the Local Civil Rules.

**CERTIFICATE OF CONFERRAL UNDER L.R. 7(d)(5)**

Pursuant to Local Civil Rule 7(d)(5), I hereby certify that on August 28, 2024, counsel for the parties met and conferred via video conference in a good faith effort to resolve the issues raised in these motions in limine.

DATED this 30 day of August, 2024.

                                                  */s/ Emily C. McNally*
                                                  Emily C. McNally

PLAINTIFF'S MOTIONS IN LIMINE
CASE NO. 2:21-CV-00799-RSM



1000 SECOND AVENUE, SUITE 3500
SEATTLE, WA 98104 • Tel: 206-393-5400

97550736.8
13763365v1