THE HONORABLE RICARDO S. MARTINEZ

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WASHINGTON

AT SEATTLE

| | |
|---|---|
| UTHERVERSE GAMING LLC, | Case No. 2:21-cv-00799-RSM |
| Plaintiff, | **DEFENDANT EPIC GAMES, INC.'S MOTIONS IN LIMINE** |
| v. | NOTE ON MOTION CALENDAR: September 13, 2024 |
| EPIC GAMES, INC., | [REDACTED] |
| Defendant. | |

## <u>TABLE OF CONTENTS</u>

**Page**

I.    INTRODUCTION ..................................................................................1

II.   BACKGROUND ON MOTIONS IN LIMINE ......................................1

III.  MOTION IN LIMINE 1: NO REFERENCES TO MOTIONS TO OR ORDERS
      OF THE COURT OR OF THE MAGISTRATE JUDGE, EXCEPT ULTIMATE
      CLAIM CONSTRUCTIONS.................................................................2

IV.   MOTION IN LIMINE 2: NO UNDISCLOSED EXPERT OPINIONS .................4

      A.    Dr. Rosenberg's Undisclosed Technical Opinions ......................................5

      B.    Dr. Rosenberg Cannot Offer the Undisclosed Opinions at Trial .................6

      C.    Ms. Riley Cannot Offer the Undisclosed Opinions at Trial .......................7

V.    MOTION IN LIMINE 3: NO REFERENCES TO EPIC VALUATIONS OR
      AGGREGATED *FORTNITE* REVENUES............................................9

VI.   MOTION IN LIMINE 4: NO REFERENCE TO OTHER EVENTS AS
      ALLEGEDLY INFRINGING ................................................................12

1

<u>**TABLE OF AUTHORITIES**</u>

2

**Page(s)**

3

**Cases**

4

*AVM Techs. LLC v. Intel Corp.*,
   No. 1-33-RGA, 2017 WL 2938191 (D. Del. Apr. 19, 2017)....................................................12

5

6

*Biomérieux, S.A. v. Hologic, Inc.*,
   No. 18-CV-0021-LPS, 2020 WL 583917 (D. Del. Feb. 6, 2020)...........................................11

7

*Biscotti v. Microsoft, Corp.*,
   No. 2:13-cv-01015-JRG-RSP, 2017 WL 2537021 (E.D. Tex. May 30, 2017) ......................12

8

9

*Black & Decker Inc. v. Robert Bosch Tool Corp.*,
   No. 04 C 7955, 2006 WL 3446144 (N.D. Ill. Nov. 29, 2006)...............................................12

10

11

*Cascade Yarns, Inc. v. Knitting Fever, Inc.*,
   No. C10-861 RSM, 2015 WL 11201216 (W.D. Wash. Jan. 30, 2015) ....................................4

12

*Cholakyan v. Mercedes-Benz, USA, LLC*,
   281 F.R.D. 534 (C.D. Cal. 2012) ........................................................................................7, 8

13

14

*Conti v. Corp. Servs. Grp., Inc.*,
   No. C12-245RAJ, 2013 WL 6095564 (W.D. Wash. Nov. 20, 2013) .......................................3

15

16

*Cordis Corp. v. Boston Sci. Corp.*,
   561 F.3d 1319 (Fed. Cir. 2009).............................................................................................3

17

*Dawson v. NaphCare, Inc.*,
   No. C19-1987RSM, 2022 WL 203487 (W.D. Wash. Jan. 24, 2022) ......................................7

18

19

*Dura Auto. Sys. of Indiana, Inc. v. CTS Corp.*,
   285 F.3d 609 (7th Cir. 2002) ..............................................................................................8

20

21

*Eagle Harbor Holdings, LLC v. Ford Motor Co.*,
   No. C11-5503 BHS, 2015 WL 12670404 (W.D. Wash. Mar. 9, 2015)...................................8

22

*Factory Mutual Insurance Co. v. Alon USA L.P.*,
   705 F.3d 518 (5th Cir. 2013) ..............................................................................................8

23

24

*Fresenius Med. Care Holdings, Inc. v. Baxter Int'l, Inc.*,
   No. C 03-1431, 2006 WL 1627065 (N.D. Cal. June 13, 2006) ........................................12, 13

25

26

*Hewlett-Packard Co. v. Mustek Sys., Inc.*,
   No. 99-CV-351-RHW, 2001 WL 36166855 (S.D. Cal. June 11, 2001)...................................4

27

28

*HTC Corp. v. Tech. Props. Ltd.*,
    No. 5:08-CV-00882-PSG, 2013 WL 4782598 (N.D. Cal. Sept. 6, 2013) ...............................11

*Kinetic Concepts, Inc. v. Bluesky Med. Corp.*,
    SA-08-CV-102-RF, 2010 WL 9098787 (W.D. Tex. Jan. 29, 2010)..........................................4

*LaserDynamics, Inc. v. Quanta Comput., Inc.*,
    694 F.3d 51 (Fed. Cir. 2012).................................................................................................10

*Leese v. Lockheed Martin Corp.*,
    6 F. Supp. 3d 546 (D.N.J. 2014) .............................................................................................8

*Loeffel Steel Prods., Inc. v. Delta Brands, Inc.*,
    387 F. Supp. 2d 794 (N.D. Ill. 2005), ....................................................................................8

*Loeffel Steel Prods., Inc. v. Delta Brands, Inc.*, No. 01 C 9389, 2005 WL 8178971
    (N.D. Ill. Sept. 8, 2005) ..........................................................................................................8

*Luce v. United States*,
    469 U.S. 38 (1984).................................................................................................................2

*Philip Morris USA Inc. v. Lee*,
    549 F. Supp. 2d 839 (W.D. Tex. 2008)..................................................................................13

*State Farm Fire & Cas. Co. v. Electrolux N. Am.*,
    No. 2:10-cv-1147 RSM, 2012 WL 161821 (W.D. Wash. Jan. 4, 2012)....................................7

*Uniloc USA, Inc. v. Microsoft Corp.*,
    632 F.3d 1292 (Fed. Cir. 2011).......................................................................................10, 11

*United States v. Heller*,
    551 F.3d 1108 (9th Cir. 2009) .................................................................................................1

*Vaporstream, Inc. v. Snap Inc.*,
    No. 2:17-cv-00220-MLH, 2020 WL 978731 (C.D. Cal. Feb. 28, 2020)..............................3, 4

*Visteon Global Techs., Inc. v. Garmin Int'l, Inc.*,
    No. 10-cv-10578, 2016 WL 6647334 (E.D. Mich. Nov. 10, 2016)........................................11

*Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*,
    259 F.3d 1101 (9th Cir. 2001) .................................................................................................7

**Other Authorities**

Fed. R. Civ. P. 26...........................................................................................................4, 6, 7

Fed. R. Civ. P. 37................................................................................................................4, 7

Fed. R. Evid. 401 ................................................................................................................12

Fed. R. Evid. 402 ..................................................................................................12

Fed. R. Evid. 403 ....................................................................................11, 12, 13

Fed. R. Evid. 404 ..................................................................................................12

Fed. R. Evid. 703 ....................................................................................................9

## I.     INTRODUCTION

Epic moves *in limine* to exclude evidence and testimony that, if allowed, would confuse the issues and mislead the jury.

*First*, the parties should be precluded from referring to any court orders or rulings other than the constructions the Court adopted for terms in the asserted claims.  Any reference to the Court's prior orders, or to isolated statements made in them, will invite the parties to argue about their significance and confuse the jury.  The Court's statements about the law should take the form of, and be limited to, the Court's rulings on claim construction and the Court's jury instructions.

*Second*, experts should not be permitted to offer opinions not properly disclosed in discovery, particularly when the proffering expert cannot recall reviewing the evidence underlying those opinions.  An expert's failure to disclose opinions in discovery deprives the parties of the ability to explore the bases for those opinions and ensure that the opinions are sufficiently reliable.  Nor should an expert be permitted to repeat or describe undisclosed opinions of another expert.

*Third*, the Court should exclude any reference to Epic company-wide financial information or revenue totals Epic makes from *Fortnite* overall (and not limited to the concerts accused of infringement).  Such financial information is not relevant to damages—or any other issue in this case—and would only serve to prejudice Epic by presenting large numbers to the jury to improperly skew the damages horizon.

*Fourth*, the Court should not permit any suggestion that any event other than the accused Travis Scott and Ariana Grande concerts was infringing.  Utherverse has not accused any other events of infringing the '605 patent.  Suggesting that other, non-accused events infringed would unfairly and improperly invite the jury to award damages to Utherverse for that purported infringement for which Epic has had no notice or opportunity to defend itself.

## II.     BACKGROUND ON MOTIONS IN LIMINE

"A motion *in limine* is a procedural mechanism to limit in advance testimony or evidence

1    in a particular area." *United States v. Heller*, 551 F.3d 1108, 1111 (9th Cir. 2009).  Motions *in*

2    *limine* may be "made before or during trial, to exclude anticipated prejudicial evidence before

3    the evidence is actually offered." *Luce v. United States*, 469 U.S. 38, 40 n.2 (1984).

### III.    MOTION IN LIMINE 1: NO REFERENCES TO MOTIONS TO OR ORDERS OF THE COURT OR OF THE MAGISTRATE JUDGE, EXCEPT ULTIMATE CLAIM CONSTRUCTIONS

The parties should be precluded from making reference to any Court order, including any dispositive, evidentiary, or procedural motion, other than to reference the Court's claim constructions for terms contained in the claims asserted at trial.  Otherwise, the jury may be misled into drawing improper and prejudicial inferences.

The risk of jury confusion and prejudice is not hypothetical.  Utherverse's infringement expert, Dr. Rosenberg, plucks a statement made by the Court in its claim construction opinion about one term to suggest, incorrectly, that the Court made a ruling about a different term that was not part of the term that was construed.  The Court construed the term "initial scene state." The parties agree that the Court's construction of "initial scene state" should be provided to the jury.  Dr. Rosenberg argues that the Court's discussion regarding the construction of the term "initial scene state" (which does not itself require the presence of avatars) means that avatars are also not required by a different claim limitation that the Court did not construe.  *See, e.g.*, Ex. 1[1] (Rosenberg Tr.) at 186:4-9 ("the Court has construed that whenever the patent is talking about initial scene state that avatars are optional . . . So I think that would carry over to the playing back limitation where [] it says . . . including one or more avatars").

Dr. Rosenberg's interpretation mischaracterizes the Court's order.  It is also flatly contradicted by what Utherverse told the Court during the claim construction proceedings.

During claim construction, the parties disputed the meaning of the term "initial scene state" in claim 1 of the '605 patent.  Dkt. 133 at 13.  Epic's proposed construction for initial scene state was "scene state information, including at least a position and orientation of objects,

---

[1] All referenced exhibits are to the Declaration of Katherine McNutt filed herewith.

**Morrison & Foerster LLP**, 425 Market Street,
San Francisco, CA, Tel: 415-268-7000

including avatars, rendered in the scene at a beginning of a time period of a new recording of a scene." *Id.* at 3.  Utherverse noted that the term "initial scene state" could not itself require the presence of avatars because that requirement also was found in a different part of the claim:  "***the recitation of the avatar actually appears in the claim***, so having it be part of [both] the construction [of initial scene state] and [] the claim would actually make it redundant and repetitive."  Ex. 2 (Markman Hrg. Tr.) at 86:15-19.  In other words, Utherverse argued that the claim already had a *separate* requirement to render "objects of the initial scene state, including one or more avatars," and that having avatars be part of the construction of "initial scene state" would therefore be superfluous.  The Court adopted Epic's proposed construction for "initial scene state," noting that it did not read Epic's construction of "initial scene state" as "requir[ing] the presence of avatars."  Dkt. 133 at 13.  The Court did not address or discuss the separate claim requirement that "objects of the initial scene state" include "one or more avatars," which neither side had asked the Court to construe.

Permitting Utherverse or its expert to present their interpretation of these sentences in the Court's order would be highly prejudicial.  As discussed above, Dr. Rosenberg is poised to testify that the Court has already ruled on the scope of a claim limitation that the Court never addressed.  That argument is also directly contrary to Utherverse's argument at the claim construction hearing that "one or more avatars" are separately recited by the claim language and so did not need to be included in the construction of "initial scene state."  Dr. Rosenberg's discussion of the order thus mischaracterizes the Court's ultimate holding, creating a substantial risk of jury confusion and prejudice.

The risk of jury confusion is particularly acute when it comes to matters of law like claim construction.  *Cordis Corp. v. Boston Sci. Corp.*, 561 F.3d 1319, 1337 (Fed. Cir. 2009) ("[I]t is improper to argue claim construction to the jury because the risk of confusing the jury is high when experts opine on claim construction.").  Courts routinely preclude parties from referencing the Court's prior rulings (aside from the final claim constructions) at trial.  *See, e.g.*, *Conti v. Corp. Servs. Grp.*, *Inc.*, No. C12-245RAJ, 2013 WL 6095564, at *14 (W.D. Wash. Nov. 20,

2013) (Hon. Judge Richard A. Jones)  ("Unless the court gives express permission, no party will refer to any of the court's pretrial rulings in front of the jury."); *Vaporstream, Inc. v. Snap Inc*., No. 2:17-cv-00220-MLH (KSx), 2020 WL 978731, at *10 (C.D. Cal. Feb. 28, 2020) ("in general, the parties should be precluded from referencing the Court's prior rulings and orders other than the Court's claim constructions due to the substantial risk of confusing and misleading the jury."); *Hewlett-Packard Co. v. Mustek Sys., Inc.*, No. 99-CV-351-RHW, 2001 WL 36166855, at *4 (S.D. Cal. June 11, 2001) ("The parties shall not refer to any of the Court's prior orders or rulings."); *Kinetic Concepts, Inc. v. Bluesky Med. Corp.*, SA-08-CV-102-RF, 2010 WL 9098787, at *1-2 (W.D. Tex. Jan. 29, 2010) (granting motions *in limine* "to exclude any statement, reference to, or evidence of any motion or objection made during the pre-trial phase of this case" and "to exclude any testimony, evidence of, or reference to Plaintiffs' request for a preliminary injunction, the Court's denial of that request, or the specific reasons for the denial"). The only permissible reference to this Court's claim construction order should be the ultimate claim constructions, and nothing more.  *See Vaporstream, Inc.*, 2020 WL 978731, at *10.

Epic therefore asks the Court to preclude the parties from referencing or characterizing statements made in the Court's prior orders (aside from the claim constructions the Court ultimately adopted).  Epic is not requesting via this motion that the Court revisit its decision regarding Epic's motion for summary judgment of non-infringement:  the Court has decided that is an issue for the jury.  *See* Dkt. 369 at 20-21 (Report and Recommendation); Dkt. 391 (Order adopting Report and Recommendation).  Epic seeks only to ensure that the parties do not use the Court's prior rulings to improperly suggest that the Court decided issues that it did not.

## IV.     MOTION IN LIMINE 2:  NO UNDISCLOSED EXPERT OPINIONS

Federal Rule of Civil Procedure 26 requires that an expert report "contain a complete statement of all opinions to be expressed and the basis and the reasons therefor."   Fed. R. Civ. P. 26(a)(2)(B)(i).  Opinions and theories are not admissible unless disclosed in a report.  *See* Fed. R. Civ. P. 37(c)(1); *Cascade Yarns, Inc. v. Knitting Fever, Inc.*, No. C10-861 RSM, 2015 WL 11201216, at *2 (W.D. Wash. Jan. 30, 2015) (citing *Hoffman v. Constr. Protective Servs., Inc.*,

541 F.3d 1175, 1179 (9th Cir. 2008)).

Epic seeks an order precluding experts from providing undisclosed opinions. Utherverse is poised to offer at least three undisclosed expert opinions from its infringement expert, Dr. Rosenberg. When Epic moved to exclude Utherverse's damages expert's royalty opinion, Utherverse's opposition relied heavily on technical opinions Dr. Rosenberg allegedly conveyed to her over the phone. Dkt. 324 at 5, 7, 8 & 10-11. Those opinions were not disclosed in Dr. Rosenberg's report. *Id*; *see* Ex. 3 (Rosenberg Report). Utherverse should be precluded from offering these undisclosed opinions either through Dr. Rosenberg (who did not disclose them) or through Ms. Riley (who lacks relevant expertise or an independent basis to testify to those opinions).

### A.    Dr. Rosenberg's Undisclosed Technical Opinions

Ms. Riley's expert report on damages references three opinions Dr. Rosenberg purportedly discussed with her in "conversations": the comparability of a third-party license agreement (the "Ephere License") to Utherverse's patents, Dkt. 324 at 8; the relative value (to Epic) of the technology in the Ephere License compared to Utherverse's patents, *id*. at 10-11; and Epic's (purported) inability to host the Travis Scott and Ariana Grande *Fortnite* concerts (the "Accused Events") without the use of Utherverse's patented technology, *id.* at 5. Dr. Rosenberg did not disclose any such opinions (or the bases therefor) on these topics in his expert report. *See, e.g.*, Ex. 3 (Rosenberg Report excerpts on the '605 patent) (not disclosing any of these opinions); *id.* at 22 (providing his summary of opinions and not mentioning these issues); *id.* at App'x B (Rosenberg materials considered not mentioning the Ephere license, produced at EPIC00017413-427, on his list of materials considered); Ex. 1 (Rosenberg Tr.) at 209:11-210:1 (Dr. Rosenberg confirming that he has not offered any opinions about, or the value of, U.S. Patent No. 6,720,962, the patent licensed in the Ephere License or any technical analysis of the product that allegedly embodied that patent). Dr. Rosenberg's report makes no mention of the Ephere License or the patent licensed therein. He confirmed under oath at his deposition that he never considered them. *Id.* a 209:13-19 (Dr. Rosenberg did not "recall reviewing" the Ephere-

licensed patent). Nor is there any mention in Dr. Rosenberg's report about the value to Epic of the Utherverse patents, or Epic's ability, or inability, to host the Accused Events without using the Utherverse patents. *See, e.g.*, Ex. 3 (Rosenberg Report excerpts regarding the '605 patent).

Ms. Riley's report cites to conversations with Dr. Rosenberg in which he relayed his conclusions, but this is not a disclosure of Dr. Rosenberg's opinions. *See, e.g.*, Ex. 4 (Riley Report) at 134. Rule 26 requires a written report containing "a complete statement of all opinions the witness will express and the basis and reasons for them" including "facts or data considered by the witness in forming them." Fed. R. Civ. P. 26(a)(2)(B); *see also id.* (requiring an expert to sign this report). The Advisory Committee Notes explain that "[T]he information disclosed under the former rule in answering interrogatories about the 'substance' of expert testimony was frequently so sketchy and vague that it rarely dispensed with the need to depose the expert and often was even of little help in preparing for a deposition of the witness." Fed. R. Civ. P. 26 1993 Advisory Committee Notes.

Dr. Rosenberg did not disclose these opinions in any signed written report. His report did not state, much less support, the opinions he purportedly told Ms. Riley. His report did not disclose the methodology he applied to reach those opinions or the materials he considered to do so. Nor did Ms. Riley identify in her report the bases for his conclusions. *See, e.g.*, Ex. 4 (Riley Report] at 134 ("I understand from Dr. Rosenberg that the technology licensed as part of [the Ephere License] is less valuable than the technology of the Patents-in-Suit would be to Epic at the hypothetical negotiation."). Ms. Riley's report identified Dr. Rosenberg's conclusions but her report did not disclose the bases or materials considered to reach those opinions and she could not articulate such at her deposition. *See, e.g.*, Ex. 5 (Riley Dep. Tr.) at 187:15-189:12 ("Q: What exactly do you recall him telling you about Ephere? A: That the patents-in-suit were more valuable than the [patent licensed in the Ephere License]. . . . Q: Do you recall anything else he told you about the Ephere Agreement? A: No.").

## B.      Dr. Rosenberg Cannot Offer the Undisclosed Opinions at Trial

Allowing Dr. Rosenberg to testify to such opinions merely because he conveyed his

1   conclusions to another expert would run counter to both the rule's letter and its goal to eliminate

2   "sketchy and vague" expert disclosures. Nor is there reason to allow the testimony. The

3   Advisory Committee Notes also explain the sanction for violating the disclosure requirement:

4   "Rule 37(c)(1) provides . . . that a party will not ordinarily be permitted to use on direct

5   examination any expert testimony not so disclosed." Under Rule 37(c)(1), "[t]he information

6   may be introduced if the parties' failure to disclose the required information is substantially

7   justified or harmless." *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th

8   Cir. 2001). But the burden of showing harmlessness falls squarely on the party offering the

9   testimony. *Id.* at 1107 ("[T]he burden is on the party facing sanctions to prove harmlessness.").

10  Utherverse cannot meet that burden here. Epic would be forced to cross examine an expert on

11  opinions he did not provide when deposed and never disclosed before trial, without a written

12  report disclosing the bases of these opinions or his methodology in reaching them.

13         Federal Rules of Civil Procedure 26 and 37 require Dr. Rosenberg be precluded from

14  offering these undisclosed opinions at trial. Fed. R. Civ. P. 26(a)(2)(B); Fed. R. Civ. P. 37(c)(1);

15  *see also Dawson v. NaphCare, Inc.*, No. C19-1987RSM, 2022 WL 203487, at *6 (W.D. Wash.

16  Jan. 24, 2022). This result is further compelled by the fact that Dr. Rosenberg did not recall

17  reviewing the technology licensed by the Ephere License, the subject of the opinions at issue.

18  Ex. 1 (Rosenberg Dep. Tr.) at 209:11-210:1. Epic met and conferred with Utherverse on this

19  issue. Utherverse refused to agree not to elicit such opinions from Dr. Rosenberg at trial.

20  Therefore, this Court should grant this Motion *in limine* to prevent prejudice to Epic at trial.

21         **C.    Ms. Riley Cannot Offer the Undisclosed Opinions at Trial**

22         Ms. Riley should not be permitted to circumvent Rule 26 by testifying to Dr. Rosenberg's

23  opinions herself. As a general rule, "an expert can appropriately rely on the opinions of others if

24  other evidence supports his opinion and the record demonstrates that the expert conducted an

25  independent evaluation of that evidence." *Cholakyan v. Mercedes-Benz, USA, LLC*, 281 F.R.D.

26  534, 544 (C.D. Cal. 2012); *cf. also State Farm Fire & Cas. Co. v. Electrolux N. Am.*, No. 2:10-

27  cv-1147 RSM, 2012 WL 161821, at *4 (W.D. Wash. Jan. 4, 2012) ("[N]othing in the Federal

28

EPIC'S MOTIONS IN LIMINE - 7
(CASE NO. 2:21-CV-00799-RSM)

**Morrison & Foerster LLP**, 425 Market Street,
San Francisco, CA, Tel: 415-268-7000

1    Rules allows a testifying expert to simply adopt the conclusions made by non-testifying experts

2    who have no involvement in the case.").  Because Dr. Rosenberg should not be permitted to offer

3    the underlying opinions at trial, Ms. Riley should also be precluded from reporting those

4    opinions second-hand when the opinions and their support cannot be meaningfully cross-

5    examined.  *See Eagle Harbor Holdings, LLC v. Ford Motor Co.*, No. C11-5503 BHS, 2015 WL

6    12670404, at *3 (W.D. Wash. Mar. 9, 2015) ("If [one expert] Dr. Min does provide the requisite

7    foundational testimony, then [a second expert] Mr. Wagner may rely upon that testimony.

8    Otherwise, Mr. Wagner will not be allowed to discuss the absence of any license for comparable

9    technology.").[2]

10         This conclusion is further supported by Ms. Riley's failure to "conduct[] an independent

11   evaluation of," or even understand the bases for the opinions Dr. Rosenberg relayed to her.  *See*

12   *Cholakyan*, 281 F.R.D. at 544; Ex. 5 (Riley Dep. Tr.] at 187:15-189:12 (Riley admitting Dr.

13   Rosenberg told her nothing more about the Ephere license than what she cited in her report).

14   Courts have routinely prevented experts from repeating statements and opinions from non-

15   testifying experts and witnesses.  *See, e.g.*, *Dura Auto. Sys. of Indiana, Inc. v. CTS Corp.*, 285

16   F.3d 609, 612-14 (7th Cir. 2002) (affirming the striking of expert opinion relying on undisclosed

17   opinions from experts with different areas of expertise than the offering witness); *Leese v.*

18   *Lockheed Martin Corp.*, 6 F. Supp. 3d 546, 553 (D.N.J. 2014) (excluding expert opinion in part

19   when an expert relied on someone else's "unsupported, subjective analysis").  The Fifth Circuit

20   discussed this issue at length in *Factory Mutual Insurance Co. v. Alon USA L.P.*, 705 F.3d 518,

21   523-24 (5th Cir. 2013).  That opinion holds that an expert cannot rely on or adopt another

22   expert's off-the-record opinion when the soundness of that out-of-court opinion is at issue.

23   Allowing Ms. Riley to provide Dr. Rosenberg's opinions at trial, when he himself cannot provide

24   those opinions, would amount to "parroting the opinion" of a different expert with a different

25

26   [2] Unlike in *Eagle Harbor*, Utherverse has never suggested Dr. Rosenberg disclosed these
     opinions in advance of trial.  *Id.* ("The parties dispute whether Dr. Min actually provided any
27   opinion on the issue of comparable technology.").

28   EPIC'S MOTIONS IN LIMINE - 8                        **Morrison & Foerster LLP**, 425 Market Street,
     (CASE NO. 2:21-CV-00799-RSM)                        San Francisco, CA, Tel: 415-268-7000

area of expertise.  *Id.*  Ms. Riley did nothing to test or validate those opinions, so she cannot be their mouthpiece at trial.  *See Loeffel Steel Prods., Inc. v. Delta Brands, Inc.*, 387 F. Supp. 2d 794, 808 (N.D. Ill. 2005), *amended on other grounds by Loeffel Steel Prods., Inc. v. Delta Brands, Inc.*, No. 01 C 9389, 2005 WL 8178971, at *5 (N.D. Ill. Sept. 8, 2005) (Rule 703 "was not intended to abolish the hearsay rule and to allow a witness, under the guise of giving expert testimony, to in effect become the mouthpiece of the witnesses on whose statements or opinions the expert purports to base his opinion.").  The Court should preclude Ms. Riley from repeating or discussing Dr. Rosenberg's undisclosed opinions.

## V.   MOTION IN LIMINE 3: NO REFERENCES TO EPIC VALUATIONS OR AGGREGATED OVERALL *FORTNITE* REVENUES

Utherverse should be precluded from introducing evidence  about Epic's company-wide financial information or aggregate revenues  from *Fortnite* generally (for example total *Fortnite* revenues in a year, quarter, or month).  Utherverse should instead be limited to presenting evidence relevant to the calculation its damages expert disclosed:  the incremental revenue Epic made from the two Accused Events.  Introducing company-wide financial information, or aggregations of *Fortnite* revenues generally that were not part of Utherverse's expert's damages calculation, will prejudicially skew the jury's assessment of damages.

*Fortnite* is one of the world's most popular video games.  Utherverse seeks to recover damages for two discrete events that took place within the *Fortnite* environment.  Utherverse does not contend that it is entitled to revenue from Epic's business generally or from normal *Fortnite* gameplay.  Utherverse contends only that it is entitled to a portion of the revenue associated with the two Accused Events. Ex. 4 (Riley Report] at 69.  Utherverse has nevertheless listed documents on its exhibit list,[3] and designated deposition testimony from Brian Boyle, Epic's Controller,[4] that refer to Epic's company-wide financial information

---

[3] For example, TX-167, TX-168, TX-169, TX-218, TX-219, TX-220, TX-221, TX-222, and TX264-288.

[4] For example, Designation of B. Boyle at 61:11-16, 83:1-12.

(including revenues, profits, and valuation) as well as aggregated *Fortnite* overall revenue (e.g.,

total revenue from *Fortnite* in a given year).

Introducing Epic's company-wide financials would be prejudicial.  Doing so would

"skew the damages horizon for the jury, regardless of the contribution of the patented component

to this revenue."  *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1320 (Fed. Cir. 2011)

(noting that the "cat was never put back into the bag" once the overall revenues were introduced

to the jury, and neither cross-examination nor a curative jury instruction could address the unfair

prejudice).  Admitting evidence of Epic's revenues (for example, more than ████████ in 2020),

or aggregated overall revenues related to *Fortnite* (for example, more than ███████ in 2022),[5]

would "only serve to make a patentee's proffered damages amount appear modest by

comparison, and to artificially inflate the jury's damages calculation."  *See LaserDynamics, Inc.*

*v. Quanta Comput., Inc.*, 694 F.3d 51, 68 (Fed. Cir. 2012).

Epic's top-line revenues are not relevant to damages.  Utherverse's damages calculation

is based on incremental revenues purportedly derived from the two live events accused of

infringement.[6]  *See generally* Ex. 3 (Rosenberg Report) at 188-277; *see also* Ex. 4 (Riley Report)

at 6 n.5 (only two events are relevant for damages relating to the '605 patent).  Utherverse's

damages expert does not rely on Epic's or *Fortnite* top-line revenues as an input to her damages

calculation.  Instead, she relies on the alleged revenue attributable to the Accused Events, which

she calculates based on transactional and attendance data from the days surrounding the Accused

Events.  *See* Ex. 4 (Riley Report) at 69.

Epic does not seek to exclude evidence of revenue associated with the *Fortnite*

transactions Utherverse's damages expert includes as numerical inputs to her damages base

calculation.  Nor is Epic seeking to exclude Epic internal aggregations, calculations, or

---

[5] TX-221 & Designation of B. Boyle at 83:1-12.

[6] Two other events were also accused of infringing the '071 patent, but those events are no longer at issue given the Court's grant of summary judgment relating to that patent.  *See* Dkt. No. 369 *adopted* Dkt. No. 391.

**Morrison & Foerster LLP**, 425 Market Street,
San Francisco, CA, Tel: 415-268-7000

estimations of revenue attributable to the Accused Events.  Epic seeks only to exclude aggregated *Fortnite* revenue generally (for example monthly, quarterly, or yearly revenue from *Fortnite* generally) which Utherverse's damages expert does not use as numerical inputs to her damages base.  Because top-line financials for Epic or aggregated revenues from *Fortnite* in general relate to activity that is not accused of infringement, they are irrelevant to Utherverse's damages calculation.  *See Uniloc*, 632 F.3d at 1311 (excluding the use of the accused products' revenue where it was not used as an input to calculate damages but as a "check" of the damages calculation); *cf. Visteon Global Techs., Inc. v. Garmin Int'l, Inc.*, No. 10-cv-10578, 2016 WL 6647334, at *4 (E.D. Mich. Nov. 10, 2016) (holding that even where overall revenues were appropriately relied on by expert, the parties were required to determine how to present the analysis without improperly disclosing those revenue numbers to the jury).  For similar reasons, Epic's company-wide valuation, which has no relation to Utherverse's damages theory but which presents the same risk of prejudice given its magnitude, should also not be introduced.  *See HTC Corp. v. Tech. Props. Ltd.*, No. 5:08-CV-00882-PSG, 2013 WL 4782598, at *6 (N.D. Cal. Sept. 6, 2013) (excluding evidence regarding defendant's "entire market value, size, wealth, or overall revenues" under Fed. R. Evid. 403); *Biomérieux, S.A. v. Hologic, Inc.*, No. 18-CV-0021-LPS, 2020 WL 583917, at *2 (D. Del. Feb. 6, 2020) (excluding evidence of Defendants' "overall financial state or revenues not tied to the accused products and not tied to Plaintiffs' expert opinion regarding a reasonable royalty calculation" and "Defendants' economic and corporate issues unrelated to any claim or defense").

Epic's financial information and aggregated overall *Fortnite* revenue are irrelevant and have no probative value to any contested issue.  The only effect of introducing it here would be to confuse jurors and to inappropriately skew the damages horizon.  *See Uniloc*, 632 F.3d at 1320.  The Court should therefore exclude this evidence under Rule 403.[7]

---

[7] Based on its current investigation, Epic has identified the exhibit numbers and deposition designations listed in Exhibit 6 as containing this prejudicial information.  Such information should be redacted before these exhibits or deposition designations are presented to the jury.

1

2

## VI.    MOTION IN LIMINE 4: NO REFERENCE TO OTHER EVENTS AS ALLEGEDLY INFRINGING

3

4

Plaintiff should be precluded from offering evidence or argument that any *Fortnite* event other than two Accused Events infringes the '605 patent or any other Utherverse patent. Utherverse may suggest that Epic has infringed Utherverse's patents (including the '605 patent) on occasions other than the Travis Scott and Ariana Grande events, but such unsupported allegations would be highly prejudicial, mislead the jury, and be a waste of time. *See* Fed. R. Evid. 403.

5

6

7

8

Evidence or suggestions of other alleged infringement are irrelevant to Utherverse's allegations that the Accused Events infringe the '605 Patent and should therefore be excluded. *See* Fed. R. Evid. 401-403.  Courts consistently exclude this type of evidence. *See, e.g.*, *Fresenius Med. Care Holdings, Inc. v. Baxter Int'l, Inc.*, No. C 03-1431 SBA, 2006 WL 1627065, at *1-2 (N.D. Cal. June 13, 2006); *AVM Techs. LLC v. Intel Corp.*, No. 1-33-RGA, 2017 WL 2938191, at *2 (D. Del. Apr. 19, 2017) (excluding evidence concerning an unaccused "circuit in the four products at issue" as "irrelevant"); *Biscotti v. Microsoft, Corp.*, No. 2:13-cv-01015-JRG-RSP, 2017 WL 2537021, at *1 (E.D. Tex. May 30, 2017) (excluding evidence or argument that "any non-accused technology infringes."); *see also Black & Decker Inc. v. Robert Bosch Tool Corp.*, No. 04 C 7955, 2006 WL 3446144, at *2 (N.D. Ill. Nov. 29, 2006) (noting court "granted Bosch's motion *in limine* to preclude Black & Decker from raising a new accused product at trial").  Utherverse has never claimed any other *Fortnite* events infringed the '605 patent other than the Accused Events.  Its infringement contentions identified only two allegedly infringing events in connection with the '605 Patent:  the Travis Scott event and the Ariana Grande event.  *See* Dkt. 369 at 3, *adopted* Dkt. 391.  Other alleged instances of infringement are not relevant to any element Plaintiff must show to prevail on the claims or defenses that are actually at issue.  Such evidence should be excluded.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

This evidence would also be highly prejudicial. *See* Fed. R. Evid. 403; *see also Fresenius Med. Care Holdings, Inc.*, 2006 WL 1627065, at *1-2.  For example, Utherverse could suggest to

26

27

28

EPIC'S MOTIONS IN LIMINE - 12
(CASE NO. 2:21-CV-00799-RSM)

**Morrison & Foerster LLP**, 425 Market Street,
San Francisco, CA, Tel: 415-268-7000

the jury that if Epic infringed on other occasions, then it must have done so in this case, or that Epic continues to infringe in order to argue that the '605 patent's purported invention is important to Epic.  Rule 404 prohibits such evidence. *See* Fed. R. Evid. 404(b)(1); *see, e.g.*, *Philip Morris USA Inc. v. Lee*, 549 F. Supp. 2d 839, 852 n.13 (W.D. Tex. 2008) ("Philip Morris uses Lee's allegedly fraudulent conduct only to show that insofar as he may have violated federal law in one context, he more likely than not violated federal law in the present action. On this basis, this evidence is inadmissible.").  Utherverse's presentation of evidence and argument of other alleged instances of infringement would also require Epic to demonstrate that its actions with respect to those events and the other supposed instances of wrongdoing were in fact proper, necessitating additional "mini-trials" for which Epic was not given the opportunity to develop evidence during pre-trial proceedings.  *See Fresenius*, 2006 WL 1627065, at *2 (finding that "it would be necessary for [the patent owner] to prove that the [unaccused product] does, in fact, include *the patented technology* before it can use" the product to make arguments relevant to the case).  This would result in undue delay, prejudice, waste of time, and confusion of the issues the jury should properly consider. *See* Fed. R. Evid. 403.

Finally, evidence and argument about other alleged infringement would be prejudicial to Epic because it could skew the jury's damage award, if any.  An award based on the argument that Epic infringed at other times or is continuing to infringe would improperly require Epic to pay for unaccused conduct.

Evidence and argument that any *Fortnite* event other than two Accused Events infringes the '605 patent or any other Utherverse patent is not relevant to any contested issue.  Allowing presentation of such evidence or argument would improperly suggest to the jury that Epic's other infringement means that Epic must have infringed here and improperly require Epic to prove otherwise.  The Court should therefore exclude any such evidence and argument.

I certify that this memorandum contains 4,641 words, in compliance with the Local Civil Rules.

Dated:  August 30, 2024

By:     _____
                    */s/ Eric C. Wiener*
        Eric C Wiener (*pro hac vice*)
        Daralyn J Durie (*pro hac vice*)
        Timothy C. Saulsbury (*pro hac vice*)
        Bethany Bengfort (*pro hac vice*)
        MORRISON & FOERSTER (SF)
        425 Market Street, 32ND Floor
        San Francisco, CA 94105-2482
        415-268-7000
        Email: Ddurie@mofo.com
        Email: Ewiener@mofo.com
        Email: Tsaulsbury@mofo.com
        Email: Bbengfort@mofo.com

        Katherine E McNutt (*pro hac vice*)
        MORRISON & FOERSTER (LA)
        707 Wilshire Blvd, Ste 6000
        Los Angeles, CA 90017-3543
        213-892-5649
        Email: kmcnutt@mofo.com

        Mark A Lemley (*pro hac vice*)
        LEX LUMINA PLLC
        745 Fifth Avenue, Ste 500
        New York, NY 10151
        646-898-2055
        Email: mlemley@lex-lumina.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

By: _____
                             */s/ Stevan Stark*

Stevan Stark (WSBA No. 39639)
Antoine McNamara (WSBA No. 41701)
Christina McCullough (WSBA No. 47147)
PERKINS COIE (SEA)
1201 3RD Avenue, Ste 4900
Seattle, WA 98101-3099
206-359-8000
Email: AmcNamara@perkinscoie.com
Email: CmcCullough@perkinscoie.com
Email: Sstark@perkinscoie.com

Peter F. Snell (*pro hac vice*)
MINTZ LEVIN COHN FERRIS GLOVSKY & POPEO PC
919 Third Avenue
New York, NY 10022
212-935-3000
Email: pfsnell@mintz.com

*Attorneys for Defendant Epic Games, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 30, 2024 the within document was filed with the Clerk of the Court using CM/ECF which will send notification of such filing to the attorneys of record in this case.

*s/ Eric C. Wiener*
ERIC C. WIENER