THE HONORABLE RICARDO S. MARTINEZ

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WASHINGTON

AT SEATTLE

| | |
|---|---|
| UTHERVERSE GAMING LLC, | Case No. 2:21-cv-00799-RSM |
| Plaintiff, | **JOINT PROPOSED JURY INSTRUCTIONS** |
| v. | |
| EPIC GAMES, INC., | |
| Defendant. | |



1000 SECOND AVENUE, SUITE 3500
SEATTLE, WA 98104 • Tel: 206-393-5400

## TABLE OF CONTENTS

**Preliminary Jury Instructions** .......................................................................1

Preliminary Instruction No. 1 - Duty of Jury Duty of Jury (9th Cir. 1.3) (Joint) ...............1

Preliminary Instruction No. 2 – What is a Patent and How is it Obtained (N.D. Cal. A.1) (Joint) ..................................................................................................................2

Preliminary Instruction No. 3 – Patent at Issue (N.D. Cal. A. 2) (Joint) .............................4

DISPUTED Preliminary Instruction No. 4 – Summary of Contentions) (N.D. Cal. A. 3, mod.) (Utherverse) ..................................................................................................5

DISPUTED Preliminary Instruction No. 4 – Summary of Contentions (N.D. Cal. A. 3, mod.) (Epic) ...........................................................................................................7

DISPUTED Preliminary Instruction No. 5 – Overview of Applicable Law (FCBA A. 4, mod.; *Innovation Sciences LLC v. Amazon.com, Inc*, No. 4:18-cv-474 (E.D. Tex. Sept. 2, 2020) (Dkt. 845)) (Utherverse) ............................................................................9

DISPUTED Preliminary Instruction No. 5 - Overview of Applicable Law (FCBA A. 4, mod.; *Innovation Sciences LLC v. Amazon.com, Inc*, No. 4:18-cv-474 (E.D. Tex. Sept. 2, 2020) (Dkt. 845)) (Epic) ...............................................................................11

Preliminary Instruction No. 6 – Burden of Proof – Preponderance of the Evidence (9th Cir. 1.6) (Joint)....................................................................................................13

Preliminary Instruction No. 7 - Burden of Proof – Clear and Convincing Evidence (9th Cir. 1.7) (Joint).....................................................................................................14

Preliminary Instruction No. 8 - What Is Evidence (9th Cir. 1.9) (Joint) ...........................15

Preliminary Instruction No. 9 - What Is Not Evidence (9th Cir. 1.10, mod.) (Joint) ........16

Preliminary Instruction No. 10 - Evidence for Limited Purpose (9th Cir. 1.11) (Joint)....17

Preliminary Instruction No. 11 - Direct and Circumstantial Evidence (9th Cir. 1.12 & comment) (Joint)...................................................................................................18

Preliminary Instruction No. 12 - Ruling on Objections (9th Cir. 1.13) (Joint).................19

Preliminary Instruction No. 13 – Credibility of Witnesses (9th Cir. 1.14) (Joint) ...........20

Preliminary Instruction No. 14 – Expert Testimony (9th Cir. 2.13, mod.; Jury Instruction 9 *Ironburg Ironburg Inventions LTD v. Valve Corp*., No. C17-1182 TSZ (W.D. Wash. Jan. 9, 2021)) (Joint) ....................................................................................22

Preliminary Instruction No. 15 - Deposition in Lieu of Live Testimony (9th Cir. 2.4, mod.) (Joint)......................................................................................................23

Preliminary Instruction No. 16 - Testimony from Corporate Witnesses (9th Cir. 4.2, mod.) (Joint)......................................................................................................24

Preliminary Instruction No. 17 - Demonstratives, Charts, and Summaries Not Received in Evidence (9th Cir. 2.14, mod.) (Joint) ..............................................................25

Preliminary Instruction No. 18 - Demonstratives, Charts, and Summaries Received in Evidence (9th Cir. 2.15, mod.) (Joint) ..............................................................26

Preliminary Instruction No. 19 – Stipulations of Fact (9th Cir. 2.2, mod.) (Joint)............27

Preliminary Instruction No. 20 - No Transcript Available to Jury (9th Cir. 1.17) (Joint).28

Preliminary Instruction No. 21 - Note Taking by Jurors (9th Cir. 1.18, mod.) (Joint)......29

Preliminary Instruction No. 22 – Conduct of the Jury (9th Cir. 1.15) (Joint) ..................30

Preliminary Instruction No. 23 – Publicity During Trial (9th Cir. 1.16) (Joint)................32

Preliminary Instruction No. 24 – Bench Conferences and Recesses (9th Cir. 1.20) (Joint) ....................................................................................................................33

Preliminary Instruction No. 25 – Outline of Trial (N.D. Cal. A. 5, mod.) (Joint)............34

**Final Jury Instructions**...........................................................................................**36**

Final Instruction No. 1 – Duty of the Jury (9th Cir. 1.4, mod.) (Joint)............................36

Final Instruction No. 2 – Burden of Proof – Preponderance of the Evidence (9th Cir. 1.6, mod.) (Joint)......................................................................................................37

Final Instruction No. 3 – Burden of Proof – Clear and Convincing Evidence (9th Cir. 1.7, mod.) (Joint)......................................................................................................38

Final Instruction No. 4 – What is Evidence (9th Cir. 1.9) (Joint)....................................39

Final Instruction No. 5 – What is Not Evidence (9th Cir. 1.10) (Joint)............................40

Final Instruction No. 6 – Direct and Circumstantial Evidence (9th Cir. 1.12) (Joint).......41

Final Instruction No. 7 – Credibility of Witnesses (9th Cir. 1.14) (Joint)........................42

Final Instruction No. 8 – Evidence in Electronic Format (9th Cir. 2.16, mod.) (Joint).....44

DISPUTED Final Instruction No. 9 – Summary of Contentions) (N.D. Cal. B.1, mod.)
(Utherverse) .................................................................................................................45

Final Instruction No. 9 – Summary of Contentions (N.D. Cal. B.1, mod.) (Epic) ............46

DISPUTED Final Instruction No. 10 – Overview of Applicable Law (FCBA A.4, mod.;
Final Jury Instructions at 22-23, *Innovation Sciences, LLC v. Amazon.com, Inc*, No. 4:18-
cv-474 (E.D. Tex. Sept. 2, 2020) (Dkt. 845)) (Utherverse)................................47

DISPUTED Final Instruction No. 10 – Overview of Applicable Law (FCBA A.4, mod.;
Final Jury Instructions at 22-23, *Innovation Sciences, LLC v. Amazon.com, Inc*, No. 4:18-
cv-474 (E.D. Tex. Sept. 2, 2020) (Dkt. 845)) (Epic) ........................................49

DISPUTED Final Instruction No. 11 – Interpretation of Claims) (N.D. Cal. B.2.1, mod.;
Final Jury Instructions at 18, *NXP USA, Inc. v. Impinj, Inc.*, No. 2:20-cv-01503-JHC
(W.D. Wash. June 21, 2023)) (Utherverse) ....................................................51

DISPUTED Final Instruction No. 11 – Interpretation of Claims (N.D. Cal. B.2.1, mod.;
Final Jury Instructions at 18, *NXP USA, Inc. v. Impinj, Inc.*, No. 2:20-cv-01503-JHC
(W.D. Wash. June 21, 2023); October 20, 2022 Order re: Claims Construction, Dkt. 133)
(Epic).............................................................................................................53

Final Instruction No. 12 – Infringement – Burden of Proof (N.D. Cal. B.3.1) (Joint) .....54

DISPUTED Final Instruction No. 13 - Infringement (N.D. Cal. B.3.2, mod.; B.3.3,
modified) (Utherverse)........................................................................................55

DISPUTED Final Instruction No. 13 - Infringement (N.D. Cal. B.3.2, mod.; B.3.3,
modified) (Epic)..................................................................................................57

Final Instruction No. 14 – Invalidity – Burden of  Proof (N.D. Cal. B.4.1a) (Joint).........59

DISPUTED Final Instruction No. 15 - Perspective of One of Ordinary Skill in the Art
(N.D. Cal. B.4,1b) (Utherverse)........................................................................60

DISPUTED Final Instruction No. 15 - Perspective of One of Ordinary Skill in the Art (N.D. Cal. B.4,1b) (Epic) ................................................................................................61

Final Instruction No. 17 – Anticipation 35 U.S.C. § 102 (N.D. Cal. 4.3a1, mod.) (Joint) 62

DISPUTED Final Instruction No. 18 – Obviousness 35 U.S.C. § 103 (N.D. Cal. 4.3b (Alternative 1), mod.) (Utherverse) ................................................................................64

DISPUTED Final Instruction No. 18 – Obviousness 35 U.S.C. § 103 (N.D. Cal. 4.3b (Alternative 2), mod.) (Epic) .............................................................................................66

DISPUTED Final Instruction No. 19 – Enablement (No instruction) (Utherverse)..........69

DISPUTED Final Instruction No. 19 – Enablement (N.D. Cal. B.4.2b, mod.) (Epic)......70

Final Instruction No. 20 – Patent Eligibility (Final Jury Instructions at 22-23, *Innovation Sciences, LLC v. Amazon.com, Inc*, No. 4:18-cv-474 (E.D. Tex. Sept. 2, 2020) (Dkt. 845), mod.) (Joint)........................................................................................................................71

Final Instruction No. 21 – Damages – Burden of Proof (N.D. Cal. B.5.1) (Joint) ............72

Final Instruction No. 22 – Reasonable Royalty – Entitlement (N.D. Cal. 5.7, mod.) (Joint) ........................................................................................................................................73

DISPUTED Final Instruction No. 23 – Reasonable Royalty  - Definition (N.D. Cal. 5.7, mod.) (Utherverse)..............................................................................................................74

DISPUTED Final Instruction No. 23 – Reasonable Royalty  - Definition  (N.D. Cal. 5.7, mod.) (Epic) .........................................................................................................................77

Final Instruction No. 24 – Damages – Apportionment (2014 AIPLA 10.2.5.4) (Joint)....79

DISPUTED Final Instruction No. 25 – Glossary of Patent Terms (No instruction) (Utherverse) .......................................................................................................................80

DISPUTED Final Instruction No. 25 – Glossary of Patent Terms (N.D. Cal. C.1, mod.) (Epic)..................................................................................................................................81

Final Instruction No. 26 – Duty to Deliberate (9th Cir. 3.1) (Joint) ...................................84

Final Instruction No. 27 – Consideration of Evidence – Conduct of the Jury (9th Cir. 3.2) (Joint) ................................................................................................................................85



1

Final Instruction No. 28 – Communication with Court (9th Cir. 3.3) (Joint)......................87

Final Instruction No. 29 – Return of Verdict (9th Cir. 3.5) (Joint)....................................88

Final Instruction No. 30 – Post Discharge Instruction (9th Cir. 3.9) (Joint) .....................89

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

POLSINELLI
1000 SECOND AVENUE, SUITE 3500
SEATTLE, WA 98104 • Tel: 206-393-5400

# PRELIMINARY JURY INSTRUCTIONS

**Preliminary Instruction No. 1 - Duty of Jury**

Members of the jury:  You are now the jury in this case.  It is my duty to instruct you on the law.

It is your duty to find the facts from all the evidence in the case.  To those facts, you will apply the law as I give it to you.  You must follow the law as I give it to you whether you agree with it or not.  And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy.  That means that you must decide the case solely on the evidence before you.  You will recall that you took an oath to do so.

At the end of the trial, I will give you final instructions.  It is the final instructions that will govern your duties.

Please do not read into these instructions, or anything I may say or do, that I have an opinion regarding the evidence or what your verdict should be.

Source:  Ninth Circuit Model Civil Jury Instruction No. 1.3.

**Preliminary Instruction No. 2 – What is a Patent and How is it Obtained**

This case involves a dispute relating to a United States patent. Before summarizing the positions of the parties and the legal issues involved in the dispute, let me take a moment to explain what a patent is and how one is obtained.

Patents are granted by the United States Patent and Trademark Office (sometimes called the "Patent Office or "PTO"). A valid United States patent gives the patent holder the right to prevent others from making, using, offering to sell, or selling the patented invention within the United States, or from importing it into the United States, during the term of the patent without the patent holder's permission. A violation of the patent holder's rights is called infringement. The patent holder may try to enforce a patent against persons believed to be infringers by means of a lawsuit filed in federal court.

To obtain a patent one must file an application with the PTO. The process of obtaining a patent is called patent prosecution. The PTO is an agency of the federal government and employs trained patent examiners who review applications for patents. The application includes what is called a "specification," which must contain a written description of the claimed invention telling what the invention is, how it works, how to make it and how to use it so others skilled in the field will know how to make or use it. The specification concludes with one or more numbered sentences. These are the patent "claims." When the patent is eventually granted by the PTO, the claims define the boundaries of its protection and give notice to the public of those boundaries.

After the applicant files the application, a PTO patent examiner reviews the patent application to determine whether the claims are patentable and whether the specification adequately describes the invention claimed. In examining a patent application, the patent examiner reviews information about the state of the technology at the time the application was filed. As part of that effort, the patent examiner searches for and reviews information that is publicly available, submitted by the applicant, or both. That information is called "prior art." Prior art is defined by law, and I will give you at a later time specific instructions as to what constitutes prior art. A patent lists the prior art that the examiner considered; this list is called the "cited references."

After the prior art search and examination of the application, the patent examiner then informs the applicant in writing what the examiner has found and whether any claim is patentable, and thus will be "allowed." This writing from the patent examiner is called an "office action." If the examiner rejects the claims, the applicant has an opportunity to respond and sometimes changes the claims or submits new claims. This process, which takes place only between the examiner and the patent applicant, may go back and forth for some time until the examiner is satisfied that the application and claims meet the requirements for a patent. Sometimes, patents are issued after appeals with the PTO or to a court. The papers generated during this time of communicating back and forth between the patent examiner and the applicant make up what is called the "prosecution history." All of this material becomes available to the public no later than the date when the patent issues.

The fact that the PTO grants a patent does not necessarily mean that any invention claimed in the patent, in fact, deserves the protection of a patent. For example, the PTO may not have had available to it all the information that will be presented to you. A person accused of infringement has the right to argue here in federal court that a claimed invention in the patent is invalid because it does not meet the requirements for a patent.

Source: N.D. Cal. Model Patent Jury Instructions A.1

1    **Preliminary Instruction No. 3 – Patent at Issue**

2           This case involves United States Patent Number 9,724,605. The patent is titled "Method

3    System and Apparatus of Recording and Playing Back an Experience in a Virtual Worlds System"

4    For convenience, the parties and I will often refer to this patent by the last three numbers of its

5    patent number: the '605 Patent.

6           The claims at issue in this case are claims 2, 5 and 8 of the '605 Patent (also known as the

7    "asserted claims").

8

9

10   Source: Adopted from N.D. Cal. Model Patent Jury Instructions, Instruction A.2.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**DISPUTED Preliminary Instruction No. 4 – Summary of Contentions (PROPOSED BY UTHERVERSE)**

To help you follow the evidence, I will now give you a summary of the positions of the parties.

The parties in this case are Utherverse Gaming LLC ("Utherverse Gaming") and Epic Games, Inc. ("Epic Games").  The case involves the '605 Patent, obtained by inventors Brian Shuster and Aaron Burch and assigned to applicant Utherverse Digital, Inc.  The '605 Patent was subsequently transferred to Utherverse Gaming.

Utherverse Gaming filed suit in this court seeking money damages from Epic Games for allegedly infringing one or more of claims 2, 5, and 8 of the '605 Patent  by offering two series of virtual events in Epic Games's multiplayer online videogame *Fortnite*:

- The Astronomical tour concert series by Travis Scott, consisting of virtual performances exhibited within the Fortnite game environment between April 23, 2020 and April 25, 2020 (herein, the "Travis Scott Virtual Events"), and
- The Rift tour concert series by Ariana Grande, consisting of virtual performances exhibited within the Fortnite game environment between August 6, 2021 and August 8, 2021 (herein, the "Ariana Grande Virtual Events").

Epic Games denies that it has infringed any of claims 2, 5, or 8 of the '605 Patent.  Epic Games also argues that those claims are invalid.  Invalidity is a defense to infringement.

Your job will be to decide whether any of claims 2, 5, or 8 of the '605 Patent have been infringed and whether those claims are invalid.  If you decide that any claim of the '605 Patent has been infringed and is not invalid, you will then need to decide any money damages to be awarded to Utherverse Gaming to compensate it for the infringement.

Before you decide whether Epic Games has infringed any of the asserted claims of the '605 Patent or whether the asserted claims are invalid, you will need to understand the patent claims.  As I mentioned, the patent claims are numbered sentences at the end of the patent that describe the boundaries of the patent's protection.  It is my job as judge to explain to you the

1   meaning of any language in the claims that needs interpretation.

2       [Hand out juror notebooks.]

3       I have already determined the meaning of certain terms of the claims of the '605 Patent.

4   You have been given a document reflecting those meanings.  For a claim term for which I have

5   not provided a definition, you should apply the plain and ordinary meaning.  You are to apply

6   my definitions of these terms throughout this case.  However, my interpretation of the language

7   of the claims should not be taken as an indication that I have a view regarding issues such as

8   infringement and invalidity.  Those issues are yours to decide.  I will provide you with more

9   detailed instructions on the meaning of the claims before you retire to deliberate your verdict.

10

11

12   Source:  N.D. Cal. Model Patent Jury Instruction No. A.3 (modified).

13

14

15

16

17

18

19

20

21

22

23

24

25

26

1  **DISPUTED Preliminary Instruction No. 4 – Summary of Contentions (PROPOSED BY**
2  **EPIC)**

3      To help you follow the evidence, I will now give you a summary of the positions of the
4  parties.

5      The parties in this case are Utherverse Gaming LLC ("Utherverse Gaming") and Epic
6  Games, Inc.  ("Epic Games").  The case involves the '605 Patent, issued to Brian Shuster and
7  Aaron Burch on August 8, 2017.  The '605 Patent was transferred by them to Utherverse Digital,
8  Inc., which subsequently transferred the patent to Utherverse Gaming LLC.

9      Utherverse Gaming filed suit in this court seeking money damages from Epic Games for
10  allegedly infringing one or more of claims 2, 5, and 8 of the '605 Patent  by hosting two virtual
11  events in Epic Games' multiplayer online videogame *Fortnite*:   the Travis Scott and Ariana
12  Grande concerts (also known as the "accused events").

13      Epic Games denies that it has infringed any of claims 2, 5, and 8 of the '605 Patent.  Epic
14  Games also argues that those claims are invalid.  Invalidity is a defense to infringement.

15      Your job will be to decide whether any of claims 2, 5, and 8 of the '605 Patent have been
16  infringed and whether they are invalid.  If you decide that any claim of the '605 Patent
17  has been infringed and is not invalid, you will then need to decide any money damages to be
18  awarded to Utherverse Gaming to compensate it for the infringement.

19      Before you decide whether Epic Games has infringed any of the asserted claims of the
20  '605 Patent or whether the asserted claims are invalid, you will need to understand the patent
21  claims.  As I mentioned, the patent claims are numbered sentences at the end of the patent that
22  describe the boundaries of the patent's protection.  It is my job as judge to explain to you the
23  meaning of any language in the claims that needs interpretation.

24      [Hand out juror notebooks.]

25      I have already determined the meaning of certain terms of the claims of the '605 Patent.
26  You have been given a document reflecting those meanings.  For a claim term for which I have
   not provided a definition, you should apply the plain and ordinary meaning.  You are to apply

1   my definitions of these terms throughout this case.  However, my interpretation of the language

2   of the claims should not be taken as an indication that I have a view regarding issues such as

3   infringement and invalidity.  Those issues are yours to decide.  I will provide you with more

4   detailed instructions on the meaning of the claims before you retire to deliberate your verdict.

5

6

7   Source:  N.D. Cal. Model Patent Jury Instruction No. A.3 (modified).

**DISPUTED Preliminary Instruction No. 5 – Overview of Applicable Law (PROPOSED BY UTHERVERSE)**

In deciding the issues I just discussed, you will be asked to consider specific legal standards. I will give you an overview of those standards now and will review them in more detail before the case is submitted to you for your verdict.

The first issue you will be asked to decide is whether Epic Games has infringed the claims of the '605 Patent. Infringement is assessed on a claim-by-claim basis. Therefore, there may be infringement as to one claim but not infringement as to another. To prove infringement, Utherverse Gaming must prove by a preponderance of the evidence that in offering the Travis Scott Virtual Events and the Ariana Grande Virtual Events, Epic Games used a method that practices each step of one or more of the asserted claims of the '605 Patent. I will provide you with more detailed instructions on the requirements for infringement at the conclusion of the case.

Another issue you will be asked to decide is whether the '605 Patent is invalid. A patent may be invalid for several reasons, including because it claims subject matter that is not new or is obvious.

For a claim to be invalid because it is not new, Epic Games must show, by clear and convincing evidence, that all of the limitations of a claim are present in a single previous device or method, or sufficiently described in a single previous printed publication or patent. We call these "prior art." If a claim is not new, it is said to be anticipated.

Another way that a claim may be invalid is that it may have been obvious. Even though every element of a claim is not shown or sufficiently described in a single piece of "prior art," the claim may still be invalid if it would have been obvious to a person of ordinary skill in the field of technology of the patent at the relevant time. You will need to consider a number of questions in deciding whether the invention(s) claimed in the '605 Patent are obvious.

You will also be asked to decide whether the limitations of any of the asserted claims, when taken individually and when taken as an ordered combination, involve only technology

which a person of ordinary skill in the art would have considered to be well-understood, routine and conventional as August 12, 2014, the date of invention of the '605 Patent.   I will provide you detailed instructions on invalidity at the conclusion of the case.

If you decide that any claim of the '605 Patent has been infringed and is not invalid, you will then need to decide any money damages to be awarded to Utherverse Gaming to compensate it for the infringement.  A damages award should put Utherverse Gaming in approximately the same financial position that it would have been in had the infringement not occurred, but in no event may the damages award be less than what Utherverse Gaming would have received had it been paid a reasonable royalty.  I will instruct you later on the meaning of a reasonable royalty. The damages you award are meant to compensate Utherverse Gaming and not to punish Epic Games.  You may not include in your award any additional amount as a fine or penalty in order to punish Epic Games.  I will give you more detailed instructions on the calculation of damages at the conclusion of the case.

Source:  FCBA Model Patent Jury Instructions, Instruction No. A.4 (modified); Final Jury Instructions at 22-23, *Innovation Sciences, LLC v. Amazon.com, Inc*, No. 4:18-cv-474 (E.D. Tex. Sept. 2, 2020) (Dkt. 845).

1   **DISPUTED Preliminary Instruction No. 5 - Overview of Applicable Law (PROPOSED BY**

2   **EPIC)**

3       In deciding the issues I just discussed, you will be asked to consider specific legal

4   standards.  I will give you an overview of those standards now and will review them in more

5   detail before the case is submitted to you for your verdict.

6       The first issue you will be asked to decide is whether Epic Games has infringed the

7   claims of the '605 Patent.  Infringement is assessed on a claim-by-claim basis.  Therefore, there

8   may be infringement as to one claim but not infringement as to another.  To prove infringement,

9   Utherverse Gaming must prove by a preponderance of the evidence that in hosting the accused

10  events, Epic Games used a method that practices each step of one or more of the asserted claims

11  of the '605 Patent.  I will provide you with more detailed instructions on the requirements for

12  infringement at the conclusion of the case.

13      Another issue you will be asked to decide is whether the '605 Patent is invalid.  A patent

14  may be invalid for several reasons, including because it claims subject matter that is not new or

15  is obvious.

16      For a claim to be invalid because it is not new, Epic Games must show, by clear and

17  convincing evidence, that all of the limitations of a claim are present in a single previous device

18  or method, or sufficiently described in a single previous printed publication or patent.  We call

19  these "prior art."  If a claim is not new, it is said to be anticipated.

20      Another way that a claim may be invalid is that it may have been obvious.  Even though

21  every element of a claim is not shown or sufficiently described in a single piece of "prior art,"

22  the claim may still be invalid if it would have been obvious to a person of ordinary skill in the

23  field of technology of the patent at the relevant time.  You will need to consider a number of

24  questions in deciding whether the invention(s) claimed in the '605 Patent are obvious.

25      A patent may also be invalid if its description in the specification does not meet certain

26  requirements.  To be valid, the disclosure of a patent must meet the "enablement" requirement.

To meet this requirement, the description in the patent has to be sufficiently full and clear to have

1  allowed persons of ordinary skill in the field of technology of the patent to make and use the
2  invention, without undue experimentation, at the time the patent application was originally filed.

3       You will also be asked to decide whether the limitations of any of the asserted claims,
4  when taken individually and when taken as an ordered combination, involve only technology
5  which a person of ordinary skill in the art would have considered to be well-understood, routine
6  and conventional as August 12, 2014, the date of invention of the '605 Patent.   I will provide
7  you detailed instructions on invalidity at the conclusion of the case.

8       If you decide that any claim of the '605 Patent has been infringed and is not invalid, you
9  will then need to decide any money damages to be awarded to Utherverse Gaming to compensate
10 it for the infringement.  A damages award should put Utherverse Gaming in approximately the
11 same financial position that it would have been in had the infringement not occurred, but in no
12 event may the damages award be less than what Utherverse Gaming would have received had it
13 been paid a reasonable royalty.  I will instruct you later on the meaning of a reasonable royalty.
14 The damages you award are meant to compensate Utherverse Gaming and not to punish Epic
15 Games.  You may not include in your award any additional amount as a fine or penalty in order
16 to punish Epic Games.  I will give you more detailed instructions on the calculation of damages
17 at the conclusion of the case.

18

19

20 Source:  FCBA Model Patent Jury Instructions, Instruction No. A.4 (modified); Final Jury
21 Instructions at 22-23, *Innovation Sciences, LLC v. Amazon.com, Inc*, No. 4:18-cv-474 (E.D. Tex.
22 Sept. 2, 2020) (Dkt. 845).

23

24

25

26

POLSINELLI
1000 SECOND AVENUE, SUITE 3500
SEATTLE, WA 98104 • Tel: 206-393-5400

1    **Preliminary Instruction No. 6 – Burden of Proof – Preponderance of the Evidence**

2    When a party has the burden of proving any claim by a preponderance of the evidence, it

3    means you must be persuaded by the evidence that the claim is more probably true than not true.

4    You should base your decision on all of the evidence, regardless of which party presented

5    it.

6

7

8    Source: Ninth Circuit Model Instruction 1.6

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

1  **Preliminary Instruction No. 7 - Burden of Proof – Clear and Convincing Evidence**

2          When a party has the burden of proving any claim or defense by clear and convincing

3  evidence, it means that the party must present evidence that leaves you with a firm belief or

4  conviction that it is highly probable that the factual contentions of the claim or defense are true.

5  This is a higher standard of proof than proof by a preponderance of the evidence, but it does not

6  require proof beyond a reasonable doubt.

7

8

9  Source:  Ninth Circuit Model Civil Jury Instruction No. 1.7.

POLSINELLI
1000 SECOND AVENUE, SUITE 3500
SEATTLE, WA 98104 • Tel: 206-393-5400

1    **Preliminary Instruction No. 8 - What Is Evidence**

2       The evidence you are to consider in deciding what the facts are consists of:

3         (1) the sworn testimony of any witness;

4         (2) the exhibits that are admitted into evidence;

5         (3) any facts to which the lawyers have agreed; and

6         (4) any facts that I may instruct you to accept as proved.

9    Source:  Ninth Circuit Model Civil Jury Instruction No. 1.9.

**Preliminary Instruction No. 9 - What Is Not Evidence**

In reaching your verdict, you may consider only the testimony and exhibits received into evidence.  Certain things are not evidence, and you may not consider them in deciding what the facts are.  I will list them for you:

(1)     Arguments and statements by lawyers are not evidence.  The lawyers are not witnesses.  What they may say in their opening statements, closing arguments, and at other times is intended to help you interpret the evidence, but it is not evidence.  If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

(2)     Questions and objections by lawyers are not evidence.  Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence.  You should not be influenced by the objection or by the court's ruling on it.

(3)     Testimony that is excluded or stricken, or that you are instructed to disregard, is not evidence and must not be considered.  In addition, some evidence may be received only for a limited purpose; when I instruct you to consider certain evidence only for a limited purpose, you must do so, and you may not consider that evidence for any other purpose.

(4)     Some exhibits have been presented to you as illustrations.  Those illustrations are called demonstrative exhibits and can be used to describe something involved in this trial.  Although demonstrative exhibits are referred to as exhibits, they are not themselves evidence.

(5)     Anything you may see or hear when the court was not in session is not evidence.  You are to decide the case solely on the evidence received at the trial.

Source:  Ninth Circuit Model Civil Jury Instruction No. 1.10 (modified).

**<u>Preliminary Instruction No. 10 - Evidence for Limited Purpose</u>**

Some evidence may be admitted only for a limited purpose.

When I instruct you that an item of evidence has been admitted only for a limited purpose, you must consider it only for that limited purpose and not for any other purpose.

Source:  Ninth Circuit Model Civil Jury Instruction No. 1.11.

1   **Preliminary Instruction No. 11 - Direct and Circumstantial Evidence**

2       Evidence may be direct or circumstantial.  Direct evidence is direct proof of a fact, such

3   as testimony by a witness about what that witness personally saw or heard or did.  Circumstantial

4   evidence is proof of one or more facts from which you could find another fact.  You should

5   consider both kinds of evidence.  The law makes no distinction between the weight to be given to

6   either direct or circumstantial evidence.  It is for you to decide how much weight to give to any

7   evidence.

8       By way of example, if you wake up in the morning and see that the sidewalk is wet, you

9   may find from that fact that it rained during the night.  However, other evidence, such as a

10  turned-on garden hose, may provide a different explanation for the presence of water on the

11  sidewalk.  Therefore, before you decide that a fact has been proved by circumstantial evidence,

12  you must consider all the evidence in the light of reason, experience, and common sense.

13

14

15  Source:  Ninth Circuit Model Civil Jury Instruction No. 1.12 & comment.

16

17

18

19

20

21

22

23

24

25

26

**Preliminary Instruction No. 12 - Ruling on Objections**

There are rules of evidence that control what can be received into evidence.  When a lawyer asks a question or offers an exhibit into evidence, and a lawyer on the other side thinks that it is not permitted by the rules of evidence, that lawyer may object.  If I overrule the objection, the question may be answered, or the exhibit received.  If I sustain the objection, the question cannot be answered, and the exhibit cannot be received.  Whenever I sustain an objection to a question, you must ignore the question and must not guess what the answer might have been.

Sometimes I may order that evidence be stricken from the record and that you disregard or ignore that evidence.  That means when you are deciding the case, you must not consider the stricken evidence for any purpose.

Source:  Ninth Circuit Model Civil Jury Instruction No. 1.13.

**Preliminary Instruction No. 13 – Credibility of Witnesses**

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it.

In considering the testimony of any witness, you may take into account:

(1)     the opportunity and ability of the witness to see or hear or know the things testified to;

(2)     the witness's memory;

(3)     the witness's manner while testifying;

(4)     the witness's interest in the outcome of the case, if any;

(5)     the witness's bias or prejudice, if any;

(6)     whether other evidence contradicted the witness's testimony;

(7)     the reasonableness of the witness's testimony in light of all the evidence; and

(8)     any other factors that bear on believability.

Sometimes a witness may say something that is not consistent with something else he or she said. Sometimes different witnesses will give different versions of what happened. People often forget things or make mistakes in what they remember. Also, two people may see the same event but remember it differently. You may consider these differences, but do not decide that testimony is untrue just because it differs from other testimony.

However, if you decide that a witness has deliberately testified untruthfully about something important, you may choose not to believe anything that witness said. On the other hand, if you think the witness testified untruthfully about some things but told the truth about others, you may accept the part you think is true and ignore the rest.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify. What is important is how believable the witnesses were, and how much weight you think their testimony deserves.

1

2    Source:  Ninth Circuit Model Civil Jury Instruction No. 1.14.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26



**Preliminary Instruction No. 14 – Expert Testimony**

You will hear testimony from persons who, because of their specialized knowledge, skill, experience, training, or education, are permitted to state opinions and the reasons for those opinions.

Such opinion testimony should be judged like any other testimony.  You may accept it or reject it and give it as much weight as you think it deserves, considering the witness's specialized knowledge, skill, experience, training, or education, the reasons given for the opinion, and all the other evidence in the case.

Source:  Ninth Circuit Model Civil Jury Instruction No. 2.13 (modified); Jury Instructions at Instruction No. 9, *Ironburg Inventions LTD v. Valve Corp.*, No. C17-1182 TSZ (W.D. Wash. Jan. 9, 2021).

**Preliminary Instruction No. 15 - Deposition in Lieu of Live Testimony**

A deposition is the sworn testimony of a witness taken before trial. The witness is placed under oath to tell the truth and lawyers for each party may ask questions. The questions and answers are recorded. When a person is unavailable to testify at trial, the deposition of that person may be used at the trial.

The depositions of various witnesses were taken prior to trial. Insofar as possible, you should consider deposition testimony, presented to you in court in lieu of live testimony, in the same way as if the witness had been present to testify.

You may hear deposition testimony from certain corporate witnesses referred to as "Rule 30(b)(6)" witnesses for the parties. A Rule 30(b)(6) corporate witness is a person that a corporation has chosen to designate to speak on behalf of the corporation on a specific topic.

Source:  Ninth Circuit Model Civil Jury Instruction No. 2.4 (modified).

1   **<u>Preliminary Instruction No. 16 - Testimony from Corporate Witnesses</u>**

2          Under the law, a corporation is considered to be a person.  It can only act through its

3   employees, agents, directors, or officers.  Therefore, a corporation is responsible for the acts of

4   its employees, agents, directors, and officers performed within the scope of authority.

5

6

7   Source:  Ninth Circuit Model Civil Jury Instruction No. 4.2 (modified).

POLSINELLI
1000 SECOND AVENUE, SUITE 3500
SEATTLE, WA 98104 • Tel: 206-393-5400

**Preliminary Instruction No. 17 - Demonstratives, Charts, and Summaries Not Received in Evidence**

Certain charts and summaries not admitted into evidence may be shown to you in order to help explain the contents of books, records, documents, or other evidence in the case.  These are sometimes called "demonstrative exhibits."  Demonstratives, charts, and summaries are only as good as the underlying evidence that supports them.  You should, therefore, give them only such weight as you think the underlying evidence deserves.

Source:  Ninth Circuit Model Civil Jury Instruction No. 2.14 (modified).

1  **Preliminary Instruction No. 18 - Demonstratives, Charts, and Summaries Received in**
2  **Evidence**

3          Certain demonstratives, charts, and summaries may be admitted into evidence to illustrate
4  information brought out in the trial.  Demonstratives, charts, and summaries are only as good as
5  the testimony or other admitted evidence that supports them.  You should, therefore, give them
6  only such weight as you think the underlying evidence deserves.

7

8

9  Source:  Ninth Circuit Model Civil Jury Instruction No. 2.15 (modified).

1   **Preliminary Instruction No. 19 – Stipulations of Fact**

2          The parties have agreed to certain facts to be placed into evidence as Exhibit ___ and

3   read to you throughout the course of this trial.  You must therefore treat these facts as having

4   been proved.

5

6

7   Source:  Ninth Circuit Model Civil Jury Instruction No. 2.2 (modified).

POLSINELLI
1000 SECOND AVENUE, SUITE 3500
SEATTLE, WA 98104 • Tel: 206-393-5400

1    **<u>Preliminary Instruction No. 20 - No Transcript Available to Jury</u>**

2            I urge you to pay close attention to the trial testimony as it is given.  During deliberations

3    you will not have a transcript of the trial testimony.

4

5

6    Source:  Ninth Circuit Model Civil Jury Instruction No. 1.17.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

1    **<u>Preliminary Instruction No. 21 - Note Taking by Jurors</u>**

2        You have been given materials that consist of the following:

3            • A copy of the asserted patent

4            • A listing of the Court's claim constructions

5        You have also been given a notepad and a pen.  If you wish, you may take notes to help

6    you remember the evidence.  If you do take notes, please keep them to yourself until you go to

7    the jury room to decide the case.  Do not let notetaking distract you.  When you leave, your notes

8    should be left in the [courtroom] [jury room] [envelope in the jury room].  No one will read your

9    notes.

10       Whether or not you take notes, you should rely on your own memory of the evidence.

11   Notes are only to assist your memory.  You should not be overly influenced by your notes or

12   those of other jurors.

13

14

15   Source:  Ninth Circuit Model Civil Jury Instruction No. 1.18 (modified).

16

17

18

19

20

21

22

23

24

25

26

POLSINELLI
1000 SECOND AVENUE, SUITE 3500
SEATTLE, WA 98104 • Tel: 206-393-5400

**Preliminary Instruction No. 22 – Conduct of the Jury**

I will now say a few words about your conduct as jurors.

First, keep an open mind throughout the trial, and do not decide what the verdict should be until you and your fellow jurors have completed your deliberations at the end of the case.

Second, because you must decide this case based only on the evidence received in the case and on my instructions as to the law that applies, you must not be exposed to any other information about the case or to the issues it involves during the course of your jury duty. Thus, until the end of the case or unless I tell you otherwise:

- Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it. This includes discussing the case in person, in writing, by phone, tablet, or computer, or any other electronic means, via email, text messaging, or any internet chat room, blog, website or application, including but not limited to Facebook, YouTube, Twitter, Instagram, LinkedIn, Snapchat, Tiktok, or any other forms of social media. This applies to communicating with your fellow jurors until I give you the case for deliberation, and it applies to communicating with everyone else including your family members, your employer, the media or press, and the people involved in the trial, although you may notify your family and your employer that you have been seated as a juror in the case, and how long you expect the trial to last. But, if you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and report the contact to the court.

- Because you will receive all the evidence and legal instruction you properly may consider to return a verdict: do not read, watch or listen to any news or media accounts or commentary about the case or anything to do with it; do not do any research, such as consulting dictionaries, searching the Internet, or using other reference materials; and do not make any investigation or in any other way try to

1
2
3
4
5
6
learn about the case on your own.  Do not visit or view any place discussed in this case, and do not use the Internet or any other resource to search for or view any place discussed during the trial.  Also, do not do any research about this case, the law, or the people involved—including the parties, the witnesses or the lawyers—until you have been excused as jurors. If you happen to read or hear anything touching on this case in the media, turn away and report it to me as soon as possible.

7
8
9
10
11
12
13
14
15
These rules protect each party's right to have this case decided only on evidence that has been presented here in court. Witnesses here in court take an oath to tell the truth, and the accuracy of their testimony is tested through the trial process. If you do any research or investigation outside the courtroom, or gain any information through improper communications, then your verdict may be influenced by inaccurate, incomplete or misleading information that has not been tested by the trial process. Each of the parties is entitled to a fair trial by an impartial jury, and if you decide the case based on information not presented in court, you will have denied the parties a fair trial. Remember, you have taken an oath to follow the rules, and it is very important that you follow these rules.

16
17
18
19
A juror who violates these restrictions jeopardizes the fairness of these proceedings[, and a mistrial could result that would require the entire trial process to start over]. If any juror is exposed to any outside information, please notify the court immediately.

20
21
22
Source:  Ninth Circuit Model Civil Jury Instruction No. 1.15

23
24
25
26

POLSINELLI

1   **Preliminary Instruction No. 23 – Publicity During Trial**

2         If there is any news media account or commentary about the case or anything to do with

3   it, you must ignore it.  You must not read, watch or listen to any news media account or

4   commentary about the case or anything to do with it.  The case must be decided by you solely

5   and exclusively on the evidence that will be received in the case and on my instructions as to the

6   law that applies.  If any juror is exposed to any outside information, please notify me

7   immediately.

8

9

10   Source:  Ninth Circuit Model Civil Jury Instruction No. 1.16.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

1    **Preliminary Instruction No. 24 – Bench Conferences and Recesses**

2            From time to time during the trial, it may become necessary for me to talk with the

3    attorneys out of the hearing of the jury, either by having a conference at the bench when the jury

4    is present in the courtroom, or by calling a recess.  Please understand that while you are waiting,

5    we are working.  The purpose of these conferences is not to keep relevant information from you,

6    but to decide how certain evidence is to be treated under the rules of evidence and to avoid

7    confusion and error.

8            Of course, we will do what we can to keep the number and length of these conferences to

9    a minimum.  I may not always grant an attorney's request for a conference.  Do not consider my

10   granting or denying a request for a conference as any indication of my opinion of the case or of

11   what your verdict should be.

12

13

14   Source:  Ninth Circuit Model Civil Jury Instruction No. 1.20.

**Preliminary Instruction No. 25 – Outline of Trial**

The trial will proceed in the following way.  First, each side may make an opening statement.  An opening statement is not evidence.  It is simply an outline to help you understand what that party expects the evidence will show.

The presentation of evidence will then begin.  Witnesses will take the witness stand and the documents will be offered and admitted into evidence.  There are two standards of proof that you will apply to the evidence, depending on the issue you are deciding.  On some issues, you must decide whether something is proven by a preponderance of the evidence, meaning that it more likely true than not.  On other issues you must use a higher standard of clear and convincing evidence and decide whether it is highly probable that something is true.

Utherverse Gaming will present its evidence on its contention that one or more of the asserted claims of the '605 Patent have been infringed by Epic Games and evidence regarding damages.  These witnesses will be questioned by Utherverse Gaming's counsel in what is called direct examination.  After the direct examination of a witness is completed, Epic Games' counsel has an opportunity to cross-examine the witness.  Finally, Utherverse Gaming's counsel has the opportunity to question the witness one more time in what is called redirect examination.  To prove infringement of any claim, Utherverse Gaming must persuade you that it is more likely than not that Epic Games has infringed that claim.

Utherverse Gaming may present testimony from Epic-affiliated witnesses, or adverse witnesses, during its case-in-chief, and is permitted to question those witnesses in the form of cross-examination.  So that these witnesses do not have to take the stand twice, at the conclusion of Utherverse Gaming's questions, Epic Games may conduct a direct examination of the Epic-affiliated witnesses.

After Utherverse Gaming has presented its witnesses, Epic Games will call its witnesses who did not testify during Utherverse Gaming's case-in-chief, who will also be examined and subject to cross-examination and redirect.  Epic Games will present its evidence that the claims of the '605 Patent are invalid.  To prove invalidity of any claim, Epic Games must persuade you

that it is highly probable that the claim is invalid.  In addition to presenting its evidence of invalidity, Epic Games will put on evidence responding to Utherverse Gaming's infringement contentions.

Utherverse Gaming will then return and will put on evidence responding to Epic Games' contention that the claims of the '605 Patent are invalid.  Utherverse Gaming will also have the option to put on what is referred to as "rebuttal" evidence to any evidence offered by Epic Games of non-infringement.

Finally, Epic Games will have the option to put on "rebuttal" evidence to any evidence offered by Utherverse Gaming on the validity of the asserted claims of the '605 Patent.

Because the evidence is introduced piecemeal, you need to keep an open mind as the evidence comes in and wait for all the evidence before you make any decisions.  In other words, you should keep an open mind throughout the entire trial.

The parties may present the testimony of a witness by reading from his or her deposition transcript or playing a videotape of the witness's deposition testimony.  A deposition is the sworn testimony of a witness taken before trial and is entitled to the same consideration as if the witness had testified at trial.

After the evidence has been presented, the attorneys will make closing arguments and I will give you final instructions on the law that applies to the case.  Closing arguments are not evidence.  After the closing arguments and instructions, you will then decide the case.

Source:  N.D. Cal. Model Patent Jury Instruction No. A.5 (modified).

**FINAL JURY INSTRUCTIONS**

**<u>Final Instruction No. 1 – Duty of the Jury</u>**

Members of the Jury: Now that you have heard all of the evidence [and the arguments of the attorneys], it is my duty to instruct you on the law that applies to this case.

A copy of these instructions will be sent to the jury room for you to consult during your deliberations.

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

Please do not read into these instructions or anything that I may say or do or have said or done that I have an opinion regarding the evidence or what your verdict should be. In following my instructions, you must follow all of them and not single out some and ignore others; they are all important.

Source: Ninth Circuit Model Instruction 1.4 (modified).



**Final Instruction No. 2 – Burden of Proof – Preponderance of the Evidence**

  When a party has the burden of proving any claim by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim is more probably true than not true. Utherverse Gaming must prove infringement and damages by a preponderance of the evidence.

  You should base your decision on all of the evidence, regardless of which party presented it.

Source:  Ninth Circuit Model Civil Jury Instruction No. 1.6 (modified)

1   **<u>Final Instruction No. 3 – Burden of Proof – Clear and Convincing Evidence</u>**

2     When a party has the burden of proving any claim or defense by clear and convincing

3   evidence, it means that the party must present evidence that leaves you with a firm belief or

4   conviction that it is highly probable that the factual contentions of the claim or defense are true.

5   This is a higher standard of proof than proof by a preponderance of the evidence, but it does not

6   require proof beyond a reasonable doubt.  Epic Games must prove invalidity by clear and

7   convincing evidence.

8

9

10   Source:  Ninth Circuit Model Civil Jury Instruction No. 1.7 (modified).

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

1   **<u>Final Instruction No. 4 – What is Evidence</u>**

2        The evidence you are to consider in deciding what the facts are consists of:

3           1.     the sworn testimony of any witness;

4           2.     the exhibits that are admitted into evidence;

5           3.     any facts to which the lawyers have agreed; and

6           4.     any facts that I have instructed you to accept as proved.

7

8

9   Source:  Ninth Circuit Model Civil Jury Instruction No. 1.9.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

POLSINELLI
1000 SECOND AVENUE, SUITE 3500
SEATTLE, WA 98104 • Tel: 206-393-5400

**Final Instruction No. 5 – What is Not Evidence**

In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are. I will list them for you:

(1)     Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they may have said in their opening statements, closing arguments, and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

(2)     Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it.

(3)     Testimony that has been excluded or stricken, or that you were instructed to disregard, is not evidence and must not be considered. In addition, some evidence may have been received only for a limited purpose; if I instructed you to consider certain evidence only for a limited purpose, you must do so, and you may not consider that evidence for any other purpose.

(4)     Some information was presented to you as a chart or illustration. Those charts or illustrations are called demonstrative exhibits and can be used to describe something involved in this trial. Although demonstrative exhibits are referred to as exhibits, they are not themselves, evidence.

(5)     Anything you may have seen or heard when the court was not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

Source:  Ninth Circuit Model Civil Jury Instruction No. 1.10.

1    **Final Instruction No. 6 – Direct and Circumstantial Evidence**

2         Evidence may be direct or circumstantial.  Direct evidence is direct proof of a fact, such

3    as testimony by a witness about what that witness personally saw or heard or did.  Circumstantial

4    evidence is proof of one or more facts from which you could find another fact.  You should

5    consider both kinds of evidence.  The law makes no distinction between the weight to be given to

6    either direct or circumstantial evidence.  It is for you to decide how much weight to give to any

7    evidence.

8

9

10   Source:   Ninth Circuit Model Civil Jury Instruction No. 1.12.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

1   **<u>Final Instruction No. 7 – Credibility of Witnesses</u>**

2       In deciding the facts in this case, you may have to decide which testimony to believe and

3   which testimony not to believe.  You may believe everything a witness says, or part of it, or none

4   of it.

5       In considering the testimony of any witness, you may take into account:

6       (1)     the opportunity and ability of the witness to see or hear or know the things

7       testified to;

8       (2)     the witness's memory;

9       (3)     the witness's manner while testifying;

10      (4)     the witness's interest in the outcome of the case, if any;

11      (5)     the witness's bias or prejudice, if any;

12      (6)     whether other evidence contradicted the witness's testimony;

13      (7)     the reasonableness of the witness's testimony in light of all the evidence; and

14      (8)     any other factors that bear on believability.

15      Sometimes a witness may say something that is not consistent with something else he or

16  she said.  Sometimes different witnesses will give different versions of what happened.  People

17  often forget things or make mistakes in what they remember.  Also, two people may see the same

18  event but remember it differently.  You may consider these differences, but do not decide that

19  testimony is untrue just because it differs from other testimony.

20      However, if you decide that a witness has deliberately testified untruthfully about

21  something important, you may choose not to believe anything that witness said.  On the other

22  hand, if you think the witness testified untruthfully about some things but told the truth about

23  others, you may accept the part you think is true and ignore the rest.

24      The weight of the evidence as to a fact does not necessarily depend on the number of

25  witnesses who testify.  What is important is how believable the witnesses were, and how much

26  weight you think their testimony deserves.

1

2   Source:  Ninth Circuit Model Civil Jury Instruction No. 1.14.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26



**<u>Final Instruction No. 8 – Evidence in Electronic Format</u>**

Most exhibits received in evidence will be provided to you in paper form.  Other exhibits received in evidence, such as videos, that are capable of being displayed electronically will be provided to you in that form, and you will be able to view them in the jury room.  A computer will be available to you in the jury room.

A court technician will show you how to operate the computer and other equipment and how to locate and view the exhibits on the computer.  You may request a paper copy of any exhibit received in evidence by sending a note through the clerk.  If you need additional equipment or supplies or if you have questions about how to operate the computer or other equipment, you may send a note to the clerk, signed by your foreperson or by one or more members of the jury.  Do not refer to or discuss any exhibit you were attempting to view.

If a technical problem or question requires hands-on maintenance or instruction, a court technician may enter the jury room with the clerk present for the sole purpose of assuring that the only matter that is discussed is the technical problem.  When the court technician or any nonjuror is in the jury room, the jury shall not deliberate.  No juror may say anything to the court technician or any nonjuror other than to describe the technical problem or to seek information about operation of the equipment.  Do not discuss any exhibit or any aspect of the case.

The sole purpose of providing the computer in the jury room is to enable jurors to view the exhibits received in evidence in this case and provided to the jury in electronic form (for example, videos).  You may not use the computer for any other purpose.  At my direction, technicians have taken steps to ensure that the computer does not permit access to the Internet or to any "outside" website, database, directory, game, or other material.  Do not attempt to alter the computer to obtain access to such materials.  If you discover that the computer provides or allows access to such materials, you must inform the court immediately and refrain from viewing such materials.  Do not remove the computer from the jury room, and do not copy any such data.

Source:  Ninth Circuit Model Civil Jury Instruction No. 2.16 (modified).

**<u>DISPUTED Final Instruction No. 9 – Summary of Contentions (PROPOSED BY UTHERVERSE)</u>**

I will first give you a summary of each side's contentions in this case.  I will then tell you what each side must prove to win on each of its contentions.  As I previously told you, Utherverse Gaming seeks money damages from Epic Games for allegedly infringing the '605 Patent by making products that use methods that Utherverse Gaming argues are covered by one or more of claims 2, 5, and 8 of the '605 Patent.  The products that are alleged to infringe are two series of virtual concert events that Epic offered in its Fortnite multiplayer online video game:

- The Astronomical tour concert series by Travis Scott, consisting of virtual performances exhibited within the Fortnite game environment between April 23, 2020 and April 25, 2020 (herein, the "Travis Scott Virtual Events"), and

- The Rift tour concert series by Ariana Grande, consisting of virtual performances exhibited within the Fortnite game environment between August 6, 2021 and August 8, 2021 (herein, the "Ariana Grande Virtual Events").

Epic Games denies that it has infringed asserted claims 2, 5, and 8 of the '605 Patent, but admits that the Travis Scott Virtual Events and the Ariana Grande Virtual events were three-dimensional as required by asserted claim 8 of the '605 Patent.  Epic Games argues that claims 2, 5, and 8 are invalid.  Utherverse Gaming contends that the '605 Patent is not invalid.

Your job is to decide whether any of the asserted claims of the '605 Patent have been infringed and whether any of the asserted claims of the '605 Patent are invalid.  If you decide that any asserted claim of the '605 Patent has been infringed and is not invalid, you will then need to decide any money damages to be awarded to Utherverse Gaming to compensate it for the infringement.

Source:  N.D. Cal. Model Patent Jury Instruction No. B.1 (modified)

1   **<u>Final Instruction No. 9 – Summary of Contentions (PROPOSED BY EPIC)</u>**

2          I will first give you a summary of each side's contentions in this case.  I will then tell you

3   what each side must prove to win on each of its contentions.  As I previously told you,

4   Utherverse Gaming seeks money damages from Epic Games for allegedly infringing the '605

5   Patent by making products that use methods that Utherverse argues are covered by one or more

6   of claims 2, 5, and 8 of the '605 Patent.  hosting two events in Epic Games's multiplayer online

7   video game *Fortnite*:  the Travis Scott and Ariana Grande concerts (also known as the "accused

8   events").  Claims 2, 5, and 8 are the asserted claims of the '605 patent.

9          Epic Games denies that it has infringed asserted claims 2, 5, and 8 of the '605 Patent.

10   Epic Games also argues that claims 2, 5, and 8 are invalid.  Utherverse Gaming contends that the

11   '605 Patent is not invalid.

12          Your job is to decide whether any of the asserted claims of the '605 Patent have been

13   infringed and whether any of the asserted claims of the '605 Patent are invalid.  If you decide

14   that any asserted claim of the '605 Patent has been infringed and is not invalid, you will then

15   need to decide any money damages to be awarded to Utherverse Gaming to compensate it for the

16   infringement.

17

18

19   Source:  N.D. Cal. Model Patent Jury Instruction No. B.1. (modified).

20

21

22

23

24

25

26

**DISPUTED Final Instruction No. 10 – Overview of Applicable Law (PROPOSED BY UTHERVERSE)**

In deciding the issues I just discussed, you will be asked to consider specific legal standards. I will give you an overview of those standards now and will review them in more detail before the case is submitted to you for your verdict.

The first issue you will be asked to decide is whether Epic Games has infringed the asserted claims of the '605 Patent. Infringement is assessed on a claim-by-claim basis. Therefore, there may be infringement as to one claim but not infringement as to another. To prove infringement, Utherverse Gaming must prove by a preponderance of the evidence that, in offering the Travis Scott Virtual Events and the Ariana Grande Virtual Events, Epic Games practices each step of the asserted claims of the '605 Patent for one or all of those events.

Another issue you will be asked to decide is whether the '605 Patent is invalid. A patent may be invalid for a number of reasons, including because it claims subject matter that is not new or is obvious over the prior art. For a claim to be invalid because it is not new, Epic Games must show, by clear and convincing evidence, that all of the elements of the claim are present in a single previous device or method, or sufficiently described in a single previous printed publication or patent. We call these "prior art." If a claim is not new, it is said to be anticipated.

Another way that a claim may be invalid is that it may have been obvious. Even though every element of a claim is not shown or sufficiently described in a single piece of "prior art," the claim may still be invalid if it would have been obvious to a person of ordinary skill in the field of technology of the patent at the relevant time. You will need to consider a number of questions in deciding whether the invention claimed in the '605 Patent is obvious.

You will also be asked to decide whether the limitations of the asserted claims, when taken individually and when taken as an ordered combination, involve only technology which a person of ordinary skill in the art would have considered to be well-understood, routine, and conventional as of August 12, 2014, the effective filing date of the '605 Patent.

If you decide that any claim of the '605 Patent has been infringed and is not invalid, you

1  will then need to decide any money damages to be awarded to Utherverse Gaming to compensate

2  it for the infringement.  A damages award should put Utherverse Gaming in approximately the

3  same financial position that it would have been in had the infringement not occurred, but in no

4  event may the damages award be less than what Utherverse Gaming would have received had it

5  been paid a reasonable royalty.  The damages you award are meant to compensate Utherverse

6  Gaming and not to punish Epic Games.  You may not include in your award any additional

7  amount as a fine or penalty, above what is necessary to compensate Utherverse Gaming for

8  infringement, in order to punish Epic Games.

9

10

11  Source:  FCBA Model Patent Jury Instruction No. A.4 (modified); Final Jury Instructions at

12  22-23, *Innovation Sciences, LLC v. Amazon.com, Inc*, No. 4:18-cv-474 (E.D. Tex. Sept. 2, 2020)

13  (Dkt. 845).

14

15

16

17

18

19

20

21

22

23

24

25

26

**DISPUTED Final Instruction No. 10 – Overview of Applicable Law (PROPOSED BY EPIC)**

In deciding the issues I just discussed, you will be asked to consider specific legal standards.  I will give you an overview of those standards now and will review them in more detail before the case is submitted to you for your verdict.

The first issue you will be asked to decide is whether Epic Games has infringed the asserted claims of the '605 Patent.  Infringement is assessed on a claim-by-claim basis.  Therefore, there may be infringement as to one claim but not infringement as to another.  To prove infringement, Utherverse Gaming must prove by a preponderance of the evidence that, in hosting the accused events, Epic Games used a method that practices each step of the asserted claims of the '605 Patent for one or all of those events.

Another issue you will be asked to decide is whether the '605 Patent is invalid.  A patent may be invalid for a number of reasons, including because it claims subject matter that is not new or is obvious over the prior art.  For a claim to be invalid because it is not new, Epic Games must show, by clear and convincing evidence, that all of the elements of the claim are present in a single previous device or method, or sufficiently described in a single previous printed publication or patent.  We call these "prior art." If a claim is not new, it is said to be anticipated.

Another way that a claim may be invalid is that it may have been obvious.  Even though every element of a claim is not shown or sufficiently described in a single piece of "prior art," the claim may still be invalid if it would have been obvious to a person of ordinary skill in the field of technology of the patent at the relevant time.  You will need to consider a number of questions in deciding whether the invention claimed in the '605 Patent is obvious.

A patent may also be invalid if its description in the specification does not meet certain requirements.  The disclosure of a patent must meet the "enablement" requirement.  To meet this requirement, the description in the patent has to be sufficiently full and clear to have allowed persons of ordinary skill in the field of technology of the patent to make and use the invention without undue experimentation, at the time the patent application was originally filed.

1    You will also be asked to decide whether the limitations of the asserted claims, when
2  taken individually and when taken as an ordered combination, involve only technology which a
3  person of ordinary skill in the art would have considered to be well-understood, routine, and
4  conventional as of August 12, 2014, the effective filing date of the '605 Patent.

5    If you decide that any claim of the '605 Patent has been infringed and is not invalid, you
6  will then need to decide any money damages to be awarded to Utherverse Gaming to compensate
7  it for the infringement.  A damages award should put Utherverse Gaming in approximately the
8  same financial position that it would have been in had the infringement not occurred, but in no
9  event may the damages award be less than what Utherverse Gaming would have received had it
10  been paid a reasonable royalty.  I will instruct you later on the meaning of a reasonable royalty.
11  The damages you award are meant to compensate Utherverse Gaming and not to punish Epic
12  Games.  You may not include in your award any additional amount as a fine or penalty, in order
13  to punish Epic Games.

18  Source:  FCBA Model Patent Jury Instruction No. A.4 (modified); Final Jury Instructions at
19  22-23, *Innovation Sciences, LLC v. Amazon.com, Inc*, No. 4:18-cv-474 (E.D. Tex. Sept. 2, 2020)
20  (Dkt. 845).

**DISPUTED Final Instruction No. 11 – Interpretation of Claims (PROPOSED BY UTHERVERSE)**

Before you decide whether Epic Games has infringed the asserted claims of the patent or whether those claims are invalid, you will need to understand the patent claims.  As I mentioned at the beginning of the case, the patent claims are numbered sentences at the end of the patent that describe the boundaries of the patent's protection.  It is my job as judge to explain to you the meaning of any language in the asserted claims that needs interpretation.

I have interpreted the meaning of some of the language in the patent claims involved in this case.  You must accept those interpretations as correct.  My interpretation of the language should not be taken as an indication that I have a view regarding the issues of infringement and invalidity.  The decisions regarding infringement and invalidity are yours to make.

For purposes of the '605 Patent, the following terms have the following meanings:

| Claim Term | Meaning |
|---|---|
| "avatar"<br><br>(claims 1, 2) | A computer-generated figure in a virtual environment that represents and is operated by a human player. |
| "initial scene state"<br><br>(claim 1) | The initial scene state includes at least a position and orientation of objects, including avatars, rendered in the scene at a beginning of a time period of a new recording of a scene. The presence of avatars is not required; avatars may simple be included. |
| "recorded experience [file]"<br><br>(claims 1, 2, 5) | [A file containing] a recording of a prior experience that occurred in a virtual environment. |

For a claim term for which I have not provided a definition, you should apply the plain and ordinary meaning.

You must use the same claim meaning for both your decision on infringement and your decision on invalidity.

Source:  N.D. Cal. Model Patent Jury Instruction No. B.2.1 (modified); *see also id.* at Instruction No. A.3; AIPLA Model Patent Jury Instruction No. 2.0; Final Jury Instructions at 18, *NXP USA, Inc. v. Impinj, Inc.*, No. 2:20-cv-01503-JHC (W.D. Wash. June 21, 2023).

1  October 20, 2022 Order re: Claims Construction, Dkt. 133.

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26



**DISPUTED Final Instruction No. 11 – Interpretation of Claims (PROPOSED BY EPIC)**

Before you decide whether Epic Games has infringed the asserted claims of the patent or whether those claims are invalid, you will need to understand the patent claims.  As I mentioned at the beginning of the case, the patent claims are numbered sentences at the end of the patent that describe the boundaries of the patent's protection.  It is my job as judge to explain to you the meaning of any language in the asserted claims that needs interpretation.

I have interpreted the meaning of some of the language in the patent claims involved in this case.  You must accept those interpretations as correct.  My interpretation of the language should not be taken as an indication that I have a view regarding the issues of infringement and invalidity.  The decisions regarding infringement and invalidity are yours to make.

For purposes of the '605 Patent, the following terms have the following meanings:

| Claim Term | Meaning |
|---|---|
| "avatar" (claims 1, 2) | A computer-generated figure in a virtual environment that represents and is operated by a human player. |
| "initial scene state" (claim 1) | Scene state information, including at least a position and orientation of objects, including avatars, rendered in the scene at a beginning of a time period of a new recording of a scene.  . |
| "recorded experience [file]" (claims 1, 2, 5) | [A file containing] a recording of a prior experience that occurred in a virtual environment. |

For a claim term for which I have not provided a definition, you should apply the plain and ordinary meaning.

You must use the same claim meaning for both your decision on infringement and your decision on invalidity.

Source:  N.D. Cal. Model Patent Jury Instruction No. B.2.1 (modified); *see also id.* at Instruction No. A.3; AIPLA Model Patent Jury Instruction No. 2.0; Final Jury Instructions at 18, *NXP USA, Inc. v. Impinj, Inc.*, No. 2:20-cv-01503-JHC (W.D. Wash. June 21, 2023).

October 20, 2022 Order re: Claims Construction, Dkt. 133.

1    **Final Instruction No. 12 – Infringement – Burden of Proof**

2         I will now instruct you on the rules you must follow in deciding whether Utherverse has

3    proven that Epic Games has infringed one or more of the asserted claims of the '605 patent.  To

4    prove infringement of any claim, Utherverse must persuade you that it is more likely than not

5    that Epic Games has infringed that claim.

6

7

8    Source:  N.D. Cal. Model Patent Jury Instruction No. B.3.1.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**DISPUTED Final Instruction No. 13 - Infringement (PROPOSED BY UTHERVERSE)**

A patent's claims define what is covered by the patent.  A method infringes a patent if it is covered by at least one claim of the patent.

Deciding whether a claim has been infringed is a two-step process.  The first step is to decide the meaning of the patent claim.  I have already made this decision, and I have already instructed you as to the meaning of the asserted patent claims.  The second step is to decide whether Epic Games has used a method covered by an asserted claim of the '605 Patent when it offered the Travis Scott Virtual Events and the Ariana Grande Virtual Events.  If it has, it infringes.  You, the jury, make this decision.

Asserted claims 2, 5, and 8 are what are known as dependent claims that depend from independent claim 1.  A dependent claim includes all of the requirements of a particular independent claim, plus additional requirements of its own.  As a result, if you find that an independent claim is not infringed, you must also find that its dependent claims are not infringed.  On the other hand, if you find that an independent claim has been infringed, you must still separately decide whether the additional requirements of its dependent claims have also been infringed.  You have heard evidence about Epic Games'  accused method.  In deciding the issue of infringement, you must compare Epic Games' accused method to the claims of the '605 Patent when making your decision regarding infringement.

Whether or not Epic Games knew its method infringed or even knew of the '605 Patent does not matter in determining infringement.

To decide whether Epic Games infringes an asserted claim of the '605 Patent, you must compare Epic Games' actions in offering the Travis Scott Virtual Events and Ariana Grande Virtual Events with the patent claim and determine whether Epic Games practiced every requirement of the asserted claim.  If so, Epic Games infringes that claim.  If, however, Epic Games did not practice every requirement in the asserted patent claim in offering the Travis Scott Virtual Events and Ariana Grande Virtual Events, Epic Games does not infringe that claim.  You must decide infringement for each of  asserted claims 2, 5, and 8 separately.

1    If the patent claim uses the term "comprising," that patent claim is to be understood as an

2    open claim.  An open claim is infringed as long as Epic practiced every requirement in the claim

3    in offering the Travis Scott Virtual Events and Ariana Grande Virtual Events.

4    The fact that Epic may have taken additional steps or that Epic's method includes other

5    steps in offering the Travis Scott Virtual Events and Ariana Grande Virtual Events will not avoid

6    infringement, so long as it performed every requirement in the asserted patent claim.  If Epic's

7    method does not itself include every requirement in the patent claim and other parties supplied

8    the missing elements, Epic can still be liable for infringement so long as it directed or controlled

9    the acts by those parties.  Epic does not direct or control someone else's action merely because

10   Epic entered into a business relationship with that person or party.  Instead, Epic  must

11   specifically instruct or cause that other person or party to perform each step in an infringing

12   manner, so that every step is attributable to Epic as a controlling party.  If one party controls and

13   makes use of a system that contains all the requirements of a claim, that party may be an

14   infringer even though the parts of the system do not all operate in the same place or at the same

15   time.

16

17   Source:  N.D. Cal. Model Patent Jury Instruction Nos. B.3.2 (modified), B.3.3 (modified).

18

19

20

21

22

23

24

25

26

POLSINELLI
1000 SECOND AVENUE, SUITE 3500
SEATTLE, WA 98104 • Tel: 206-393-5400

**DISPUTED Final Instruction No. 13 - Infringement (PROPOSED BY EPIC)**

A patent's claims define what is covered by the patent. A method infringes a patent if it is covered by at least one claim of the patent.

Deciding whether a claim has been infringed is a two-step process. The first step is to decide the meaning of the patent claim. I have already made this decision, and I have already instructed you as to the meaning of the asserted patent claims. The second step is to decide whether Epic Games has used a method covered by an asserted claim of the '605 Patent when it hosted one or both of the accused events. If it has, it infringes. You, the jury, make this decision.

Asserted claims 2, 5, and 8 are what are known as dependent claims that depend from independent claim 1. A dependent claim includes all of the requirements of a particular independent claim, plus additional requirements of its own. As a result, if you find that claim 1 is not infringed, you must also find that claims 2, 5, and 8 are not infringed. On the other hand, if you find that claim 1 has been infringed, you must still separately decide whether the additional requirements of its dependent claims 2, 5, and 8 have also been infringed.

Whether or not Epic Games knew its method infringed or even knew of the '605 Patent does not matter in determining infringement.

To decide whether Epic Games infringes an asserted claim of the '605 Patent, you must compare Epic Games's actions in hosting  the accused events with the patent claim and determine whether Epic Games practiced every requirement of the asserted claim. If so, Epic Games infringes that claim. If, however, Epic Games did not practice every requirement in the asserted patent claim in hosting the accused events, Epic Games does not infringe that claim. You must decide infringement for each of  asserted claims 2, 5, and 8 separately.

If the patent claim uses the term "comprising," that patent claim is to be understood as an open claim. An open claim is infringed as long as Epic Games practiced every requirement in the claim in hosting the accused events.

The fact that Epic Games may have taken additional steps or that Epic Games's method

1    includes other steps in hosting the accused events will not avoid infringement, so long as it

2    performed every requirement in the asserted patent claim.

3

4    Source:  N.D. Cal. Model Patent Jury Instruction Nos. B.3.2 (modified), B.3.3 (modified).

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

POLSINELLI
1000 SECOND AVENUE, SUITE 3500
SEATTLE, WA 98104 • Tel: 206-393-5400

1    **<u>Final Instruction No. 14 – Invalidity – Burden of Proof</u>**

2         I will now instruct you on the rules you must follow in deciding whether Epic Games has

3 proven that claims 2, 5, and 8 of the '605 patent are invalid.  Before discussing the specific rules,

4 I want to remind you about the standard of proof that applies to this defense.  To prove invalidity

5 of any patent claim, Epic Games must persuade you that it is highly probable that the claim is

6 invalid.

7

8

9 Source:  N.D. Cal. Model Patent Jury Instruction No. B.4.1a.

**DISPUTED Final Instruction No. 15 - Perspective of One of Ordinary Skill in the Art (PROPOSED BY UTHERVERSE)**

The question of invalidity of a patent claim is determined from the perspective of a person of ordinary skill in the art in the field of the asserted invention as of August 12, 2014.  In deciding the level of ordinary skill, you should consider all the evidence introduced at trial, including:

        1.   the levels of education and experience of persons working in the field;

        2.   the types of problems encountered in the field; and

        3.   the sophistication of the technology.

Utherverse Gaming contends that the level of ordinary skill in the field was someone with at least a bachelor's degree in computer science, computer engineering, or the equivalents education and at least two years of experience in computer graphics, virtual environments, or advanced user-interface design and development.

Epic Games contends that the level of ordinary skill in the field was someone with either at least a Bachelor of Science in Computer Science or related field, and/or three to five years of experience as a developer of video games using virtual worlds, such as massively multiplayer online roleplaying games ("MMORPGs").  Epic contends that such a person would be well-versed in programming languages such as C/C++ (the language used by almost all high-performance real-time software in the video game industry) and would be familiar with server programming, real-time network programming, client programming, behavior programming, kinematics simulation, graphics programming, and user interface programming. Epic contends a person of skill would also be familiar with basic performance optimization techniques in each of these areas.

Source:  N.D. Cal. Model Patent Jury Instruction No. B.4.1b.

POLSINELLI
1000 SECOND AVENUE, SUITE 3500
SEATTLE, WA 98104 • Tel: 206-393-5400

1    **DISPUTED Final Instruction No. 15 - Perspective of One of Ordinary Skill in the Art**

2    **(PROPOSED BY EPIC)**

3          The question of invalidity of a patent claim is determined from the perspective of a

4    person of ordinary skill in the art in the field of the asserted invention as of August 12, 2014.  In

5    deciding the level of ordinary skill, you should consider all the evidence introduced at trial,

6    including:

7              1.   the levels of education and experience of persons working in the field;

8              2.   the types of problems encountered in the field; and

9              3.   the sophistication of the technology.

10         Utherverse Gaming contends that the level of ordinary skill in the field was someone with

11   at least a bachelor's degree in computer science, computer engineering, or the equivalents

12   education and at least two years of experience in computer graphics, virtual environments, or

13   advanced user-interface design and development..

14         Epic Games contends that the level of ordinary skill in the field was someone with either

15   at least a Bachelor of Science in Computer Science or related field, and/or three to five years of

16   experience as a developer of video games using virtual worlds, such as massively multiplayer

17   online roleplaying games ("MMORPGs").

18

19   Source:  N.D. Cal. Model Patent Jury Instruction No. B.4.1b.

20

21

22

23

24

25

26

**<u>Final Instruction No. 17 – Anticipation 35 U.S.C. § 102</u>**

A patent claim is invalid if the claimed invention is not new. For the claim to be invalid because it is not new, all of its requirements must have existed in a single product or method that predates the claimed invention or must have been described in a single previous publication or patent that predates the claimed invention. In patent law, these previous products, methods, publications or patents are called "prior art references." If a patent claim is not new we say it is "anticipated" by a prior art reference.

The description in the written reference does not have to be in the same words as the claim, but all of the requirements of the claim must be there, either stated or necessarily implied, so that someone of ordinary skill in the field of recording and playing back an experience in a virtual worlds system looking at that one reference would be able to make and use the claimed invention.

In determining whether a single item of prior art anticipates a patent claim, you may consider not only what is expressly disclosed in that item of prior art but also what is inherently present or disclosed in it or inherently results from its use. Prior art inherently anticipates a patent claim if the missing requirement or feature would necessarily be present in the prior art.

Here is a list of the ways that Epic Games can show that a patent claim was not new:

- if the claimed invention was already publicly known or publicly used by others in the United States before August 12, 2014;

- if the claimed invention was already patented or described in a printed publication anywhere in the world before August 12, 2014. A reference is a "printed publication" if it is accessible to those interested in the field, even if it is difficult to find.

- if the claimed invention was already made by someone else in the United States before August 12, 2014, if that person had not abandoned the invention or kept it secret;

- if the claimed invention was already described in another issued U.S. patent or published U.S. patent application that was based on a patent application filed before August 12, 2014;

1    Source: N.D. Cal. Model Patent Jury Instructions, Instruction 4.3a1 (modified)

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**DISPUTED Final Instruction No. 18 – Obviousness 35 U.S.C. § 103 (PROPOSED BY UTHERVERSE)**

A patent claim is invalid if the claimed invention would have been obvious to a person of ordinary skill in the field as of August 12, 2014. The court, however, is charged with the responsibility of making the determination as to whether a patent claim was obvious based upon your determination of several factual questions. First, you must decide the level of ordinary skill in the field that someone would have had as of August 12, 2024.

First, you must decide the level of ordinary skill in the field that someone would have had as of August 12, 2014. In deciding the level of ordinary skill, you should consider all the evidence introduced at trial, including:

(1) the levels of education and experience of persons working in the field;

(2) the types of problems encountered in the field; and

(3) the sophistication of the technology.

Utherverse Gaming contends that the level of ordinary skill in the field was someone with at least a bachelor's degree in computer science, computer engineering, or the equivalents education and at least two years of experience in computer graphics, virtual environments, or advanced user-interface design and development. Epic contends that the level of ordinary skill in the field was someone with either at least a Bachelor of Science or related field, and/or five years of experience as a developer of video games using virtual worlds, such as massively multiplayer online roleplaying games ("MMORPGs"). Such a person would be well-versed in programming languages such as C/C++ and would be familiar with server programming, real-time network programming, client programming, behavior programming, kinematics simulations, graphics programming, and user interface programming. And, that person would be also familiar with basic performance optimization techniques in each of these areas.

Second, you must decide the scope and content of the prior art. Utherverse Gaming and Epic disagree as to whether any of the prior art references identified by Epic should be included in the prior art you use to decide the validity of claims 2, 5 and 8 of the '605 Patent. In order to be

considered as prior art to the '605 Patent, these references must be reasonably related to the claimed invention of that patent. A reference is reasonably related if it is in the same field as the claimed invention or is from another field to which a person of ordinary skill in the field would look to solve a known problem.

Third, you must decide what difference, if any, existed between the claimed invention and the prior art.

Finally, you must determine which, if any, of the following factors have been established by the evidence:

(1) commercial success of a product due to the merits of the claimed invention;

(2) a long felt need for the solution provided by the claimed invention;

(3) unsuccessful attempts by others to find the solution provided by the claimed invention;

(4) copying of the claimed invention by others;

(5) unexpected and superior results from the claimed invention;

(6) acceptance by others of the claimed invention as shown by praise from others in the field or from the licensing of the claimed invention;

(7) other evidence tending to show nonobviousness;

(8) independent invention of the claimed invention by others before or at about the same time as the named inventor thought of it; and;

(9) other evidence tending to show obviousness.

The presence of any of the above-listed factors may be considered by you as an indication that the claimed invention would not have been obvious as of August 12, 2014. Although you should consider any evidence of these factors, the relevance and importance of any of them to your decision on whether the claimed invention would have been obvious is up to you.

Source: N.D. Cal. Model Patent Jury Instructions, Instruction 4.3b (Alternative 1) (modified)

**DISPUTED Final Instruction No. 18 – Obviousness 35 U.S.C. § 103 (PROPOSED BY EPIC)**

Not all innovations are patentable.  A patent claim is invalid if the claimed invention would have been obvious to a person of ordinary skill in the field as of August 12, 2014.  This means that even if all of the requirements of the claim cannot be found in a single prior art reference that would anticipate the claim or constitute a bar to that claim, a person of ordinary skill in the field of computer-generated virtual environments who knew about all this prior art would have come up with the claimed invention.

The ultimate conclusion of whether a claim is obvious should be based upon your determination of several factual decisions.

First, you must decide the level of ordinary skill in the field that someone would have had as of August 12, 2014.  In deciding the level of ordinary skill, you should consider all the evidence introduced at trial, including:

    1.   the levels of education and experience of persons working in the field;

    2.   the types of problems encountered in the field; and

    3.   the sophistication of the technology.

I have already instructed you regarding the parties' contentions about the level of ordinary skill in the field.

Second, you must decide what difference, if any, existed between the claimed invention and the prior art.

Finally, you should consider any of the following factors that you find have been shown by the evidence:

    (1)    commercial success of a product due to the merits of the claimed invention;

    (2)    a long-felt need for the solution provided by the claimed invention;

    (3)    unsuccessful attempts by others to find the solution provided by the claimed invention;

    (5)    unexpected and superior results from the claimed invention;

1   (6)   acceptance by others of the claimed invention as shown by praise from others in

2   the field of the claimed invention;

3   (7)   other evidence tending to show nonobviousness;

4   (8)   independent invention of the claimed invention by others before or at about the

5   same time as the named inventor thought of it; and;

6   (9)   other evidence tending to show obviousness.

7   The presence of any of factors 1-6 may be considered by you as an indication that the

8   claimed invention would not have been obvious as of August 12, 2014, and the presence of

9   factors 7 and 8 may be considered by you as an indication that the claimed invention would have

10   been obvious at such time.  Although you should consider any evidence of these factors, the

11   relevance and importance of any of them to your decision on whether the claimed invention

12   would have been obvious is up to you.

13   A patent claim composed of several elements is not proved obvious merely by

14   demonstrating that each of its elements was independently known in the prior art.  In evaluating

15   whether such a claim would have been obvious, you may consider whether Epic Games has

16   identified a reason that would have prompted a person of ordinary skill in the field to combine

17   the elements or concepts from the prior art in the same way as in the claimed invention.  There is

18   no single way to define the line between true inventiveness on the one hand (which is patentable)

19   and the application of common sense and ordinary skill to solve a problem on the other hand

20   (which is not patentable).  For example, market forces or other design incentives may be what

21   produced a change, rather than true inventiveness.  You may consider whether an inventor would

22   look to the prior art to help solve the particular problem at hand.  You may consider whether the

23   change was merely the predictable result of using prior art elements according to their known

24   functions, or whether it was the result of true inventiveness.  You may also consider whether

25   there is some teaching or suggestion in the prior art to make the modification or combination of

26   elements claimed in the patent.  Also, you may consider whether the innovation applies a known

technique that had been used to improve a similar device or method in a similar way.  You may

POLSINELLI
1000 SECOND AVENUE, SUITE 3500
SEATTLE, WA 98104 • Tel: 206-393-5400

1   also consider whether the claimed invention would have been obvious to try, meaning that the

2   claimed innovation was one of a relatively small number of possible approaches to the problem

3   with a reasonable expectation of success by those skilled in the art.  However, you must be

4   careful not to determine obviousness using the benefit of hindsight; many true inventions might

5   seem obvious after the fact.  You should put yourself in the position of a person of ordinary skill

6   in the field as of August 12, 2014, and you should not consider what is known today or what is

7   learned from the teaching of the patent.

8

9

10  Source:  N.D. Cal. Model Patent Jury Instruction No. B.4.3b (Alternative 2) (modified).

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

1    **<u>DISPUTED Final Instruction No. 19 – Enablement</u> <span style="color:red">(PROPOSED BY UTHERVERSE)</span>**

2    <span style="color:red">**UTHERVERSE PROPOSES THAT NO INSTRUCTION BE GIVEN ON ENABLEMENT**</span>

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26



**DISPUTED Final Instruction No. 19 – Enablement (PROPOSED BY EPIC)**

A patent claim is invalid if the patent at the time it was originally filed did not contain a description of the claimed invention that is sufficiently full and clear to enable a person of ordinary skill in the field at the time to make and use the full scope of the invention.  This is known as the "enablement" requirement.

The patent may be enabling even though it does not expressly state some information if a person of ordinary skill in the field could make and use the invention without having to do excessive experimentation.  In determining whether excessive experimentation is required, you may consider the following factors:

- the scope of the claimed invention;

- the amount of guidance presented in the patent;

- the amount of experimentation necessary;

- the time and cost of any necessary experimentation;

- how routine any necessary experimentation is in the field of computer-generated virtual environments;

- whether the patent discloses specific working examples of the claimed invention;

- the nature and predictability of the field; and

- the level of ordinary skill in the field of computer-generated virtual environments.

The question of whether a patent is enabling is judged as of the date the original application for the patent was first filed, which in this case is August 12, 2014.


Source:  N.D. Cal. Model Patent Jury Instruction No. B.4.2b (modified).

**Final Instruction No. 20 – Patent Eligibility**

Epic Games contends that the '605 Patent is invalid for failure to claim patent-eligible subject matter. To succeed on its claims for invalidity for failure to claim patent-eligible subject matter, Epic Games must show by clear and convincing evidence that the limitations of the asserted claim(s), when taken individually and when taken as an ordered combination, involve only technology which a person of ordinary skill in the art would have considered to be well-understood, routine, and conventional as of August 12, 2014. In determining whether a patent claim involves well-understood, routine, and conventional technology to a person of ordinary skill in the art, you may consider statements made in the patent's specification, as well as evidence of the prior art.

Whether a particular technology was well-understood, routine, and conventional goes beyond what was known in the prior art.  The mere fact that something is disclosed in a piece of prior art does not mean that it was well-understood, routine, and conventional.

At the same time, the specification of the asserted patent may be such evidence, if you find that the specification shows that the elements of the asserted claims involve only technology which a person of ordinary skill in the art would have considered well-understood, routine, and conventional.

Source:  Final Jury Instructions at 22-23, *Innovation Sciences, LLC v. Amazon.com, Inc*, No. 4:18-cv-474 (E.D. Tex. Sept. 2, 2020) (Dkt. 845) (modified).

**Final Instruction No. 21 – Damages – Burden of Proof**

I will instruct you about the measure of damages.  By instructing you on damages, I am not suggesting which party should win on any issue.  If you find that Epic Games infringed any valid claim of the '605 Patent, you must then determine the amount of money damages to be awarded to Utherverse Gaming to compensate it for the infringement.

The amount of those damages must be adequate to compensate Utherverse Gaming for the infringement.  A damages award should put the patent holder in approximately the financial position it would have been in had the infringement not occurred, but in no event may the damages award be less than a reasonable royalty.  You should keep in mind that the damages you award are meant to compensate the patent holder and not to punish an infringer.

Utherverse Gaming has the burden to persuade you of the amount of its damages.  You should award only those damages that Utherverse Gaming more likely than not suffered.  While Utherverse Gaming is not required to prove its damages with mathematical precision, it must prove them with reasonable certainty.  Utherverse Gaming is not entitled to damages that are remote or speculative.

Source:  N.D. Cal. Model Patent Jury Instruction No. B.5.1.

1

**Final Instruction No. 22 – Reasonable Royalty – Entitlement**

2

     If you find that any of the asserted claims has proven to be both infringed and not invalid,

3

Utherverse should be awarded a reasonable royalty for Epic Games' infringement.

4

5

6

Source:  N.D. Cal. Model Patent Jury Instruction No. B.5.6 (modified); 35 U.S.C. § 284; Jury

7

Instructions at 34, *NXP USA, Inc. v. Impinj, Inc.*, No. 2:20-cv-01503-JHC (W.D. Wash. June 21,

8

2023).

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**DISPUTED Final Instruction No. 23 – Reasonable Royalty  - Definition (PROPOSED BY UTHERVERSE)**

A royalty is a payment made to a patent holder in exchange for the right to make, use or sell the claimed invention. This right is called a "license." A reasonable royalty is the payment for the license that would have resulted from a hypothetical negotiation between the patent holder and the alleged infringer taking place at the time when the infringing activity first began. In considering the nature of this negotiation, you must assume that both parties would have acted reasonably and would have entered into a license agreement. You must also assume that both parties believed the patent was valid and infringed. Your role is to determine what the result of that negotiation would have been. The test for damages is what royalty would have resulted from the hypothetical negotiation and not simply what either party would have preferred.

A royalty can be calculated in several different ways and it is for you to determine which way is the most appropriate based on the evidence you have heard. You should consider all the facts known and available to the parties at the time the infringement began.  Some of the factors you may consider in making your determination include the following:

(1)    The value that the claimed invention contributes to the Travis Scott Virtual Events and the Ariana Grande Virtual Events.

(2)    The value that factors other than the claimed invention contribute to the Travis Scott Virtual Events and the Ariana Grande Virtual Events.

(3)    Comparable license agreements, such as those covering the use of the claimed invention or similar technology.

(4)    The effect of selling the patented specialty in promoting sales of other products of the licensee, the existing value of the invention to Utherverse as a generator of sales of his nonpatented items, and the extent of such derivative or convoyed sales.

(5)    The duration of the patent and the term of the license.

(6)    The established profitability of the product made under the patents, its commercial success, and its current popularity.

1   (7)    The utility and advantages of the patented property over the old modes or devices,

2   if any, that had been used for working out similar results.

3   (8)    The nature of the patented invention, the character of the commercial embodiment

4   of it as owned and produced by Utherverse, and the benefits to those who have used the invention.

5   (9)    The extent to which the Epic has made use of the invention and any evidence

6   probative of the value of that use.

7   (10)    The portion of the profit or of the selling price that may be customary in the

8   particular business or in comparable business to allow for the use of the invention or analogous

9   inventions.

10   (11)    The portion of the realizable profits that should be credited to the invention as

11   distinguished from nonpatented elements, the manufacturing process, business risks, or significant

12   features or improvements added by the infringer.

13   (12)    The opinion and testimony of qualified experts.

14   (13)    The amount that a licensor (such as Utherverse Gaming) and a licensee (such as

15   Epic) would have agreed upon (at the time the infringement began) if both had been reasonably

16   and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who

17   desired, as a business proposition, to obtain a license to manufacture and sell a particular article

18   embodying the patented invention—would have been willing to pay as a royalty and yet be able

19   to make a reasonable profit and which amount would have been acceptable by a prudent patentee

20   who was willing to grant a license.

21   One way to calculate a royalty is to determine what is called an "ongoing royalty." To

22   calculate an ongoing royalty, you must first determine the "base," that is, the product on which the

23   alleged infringer is to pay. You then need to multiply the revenue the defendant obtained from that

24   base by the "rate" or percentage that you find would have resulted from the hypothetical

25   negotiation. For example, if the patent covers a nail, and the nail sells for $1, and the licensee sold

26   200 nails, the base revenue would be $200. If the rate you find would have resulted from the

hypothetical negotiation is 1%, then the royalty would be $2, or the rate of 0.01 times the base

**POLSINELLI**

revenue of $200. By contrast, if you find the rate to be 5%, the royalty would be $10, or the rate of 0.05 times the base revenue of $200. These numbers are only examples, and are not intended to suggest the appropriate royalty rate.

The ultimate combination of royalty base and royalty rate must reflect the value attributable to the infringing features of the product, and no more. When the accused infringing product has both patented and unpatented features, measuring this value requires you to identify and award only the value of the patented features.

Another way to calculate a royalty is to determine a one-time lump sum payment that the alleged infringer would have paid at the time of the hypothetical negotiation for a license covering all sales of the licensed product, both past and future. This differs from payment of an ongoing royalty because, with an ongoing royalty, the licensee pays based on the revenue of actual licensed products it sells. When a one-time lump sum is paid, the alleged infringer pays a single price for a license covering both past and future infringing sales.

It is up to you, based on the evidence, to decide what type of royalty is appropriate in this case for the life of the '605 Patent.

Source: N.D. Cal. Model Patent Jury Instructions, Instruction 5.7 (modified)

Authorities: *Garretson v. Clark*, 111 U.S. 120 (1884); *Ericsson v. D-Link Sys., Inc.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014); *VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1326-34 (Fed. Cir. 2014); *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 67-68 (Fed. Cir. 2012); *Lucent v. Gateway*, 580 F.3d 1301, 1336-39 (Fed. Cir. 2009); *Golight, Inc., v. Wal-Mart Stores*, Inc., 355 F.3d 1327, 1338 (Fed. Cir. 2004); Maxwell v. Baker, Inc., 86 F.3d 1098, 1108-10 (Fed. Cir. 1996); Mahurkar v. C.R. Bard, Inc., 79 F.3d 1572, 1579-81 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1554 (Fed. Cir. 1995) (*en banc*); *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970); *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 869 (Fed. Cir. 2010).

**POLSINELLI**

**DISPUTED Final Instruction No. 23 – Reasonable Royalty  - Definition (PROPOSED BY EPIC)**

A royalty is a payment made to a patent holder in exchange for the right to make, use, or sell the claimed invention.  This right is called a "license."  A reasonable royalty is the payment for the license that would have resulted from a hypothetical negotiation between Utherverse Digital on the one hand and Epic Games on the other, taking place at the time when the infringing activity first began.  In considering the nature of this negotiation, you must assume that both sides would have acted reasonably and would have entered into a license agreement. You must also assume that both parties believed the patent was valid and infringed.  Your role is to determine what the result of that negotiation would have been.  The test for damages is what royalty would have resulted from the hypothetical negotiation and not simply what either party would have preferred.

A royalty can be calculated in several different ways, and it is for you to determine which way is the most appropriate based on the evidence you have heard.  You should consider all the facts known and available to the parties at the time the infringement began.  Some of the factors you may consider in making your determination are:

(1)     The value that the claimed invention contributes to the accused events.

(2)     The value that factors other than the claimed invention contribute to the accused events.

(3)     Comparable license agreements and other transactions involving patents covering the use of the claimed invention or similar technology.

One way to calculate a royalty is based on a percentage of the incremental revenue from infringement.  To calculate such a percentage royalty, you must first determine the "base," that is, the revenue on which the alleged infringer is to pay, and then multiply that revenue by the "rate" or percentage that you find would have resulted from the hypothetical negotiation.  For example, if the patent covers a nail, the nail sells for $1, and the licensee sold 200 nails, the base revenue would be $200.  If the rate you find would have resulted from the hypothetical

1   negotiation is 1%, then the royalty would be $2, or the rate of 0.01 times the base revenue of

2   $200.  By contrast, if you find the rate to be 5%, the royalty would be $10, or the rate of 0.05

3   times the base revenue of $200.  These numbers are only examples and are not intended to

4   suggest the appropriate royalty rate.

5          If the patent covers only part of Epic Games' accused events, then the base would

6   normally be only that feature or component.  For example, if you find that for a $100 car, the

7   patented feature is the tires which sell for $5, the base revenue would be $5.

8          The ultimate combination of royalty base and royalty rate must reflect the value

9   attributable to the infringing features of the product, and no more.  When the accused infringing

10  products have both patented and unpatented features, measuring this value requires you to

11  identify and award only the value of the patented features.

12         Another way to calculate a royalty is to determine a one-time lump sum payment that the

13  alleged infringer would have paid at the time of the hypothetical negotiation for a license

14  covering all sales of the licensed product, both past and future.  This differs from payment of an

15  ongoing percentage royalty because, with a percentage royalty, the licensee pays based on the

16  revenue from actual infringement.  When a one-time lump sum is paid, the alleged infringer pays

17  a single price for a license covering both past and future infringement.

18         It is up to you, based on the evidence, to decide what type of royalty is appropriate in this

19  case for the life of the patent.

20

21

22  Source:  N.D. Cal. Model Patent Jury Instruction No. B.5.7 (modified).

23

24

25

26

**Final Instruction No. 24 – Damages – Apportionment**

      Any amount you find as damages must be based on the value attributable to the patented invention, as distinct from unpatented steps included in the accused process or other factors such as marketing or advertising, or Epic Games' size or market position. A royalty compensating Utherverse for damages must reflect the value attributable to the infringing steps of the infringing process, and no more. The process of separating the value of the allegedly infringing steps from the value of all other steps and aspects of the product is called apportionment.

Source:  2014 AIPLA Model Patent Jury Instructions 10.2.5.4

1   **<u>DISPUTED Final Instruction No. 25 – Glossary of Patent Terms</u> (PROPOSED BY**

2   **UTHERVERSE)**

3   **NO GLOSSARY OF PATENT TERMS SHOULD BE PROVIDED**

**DISPUTED Final Instruction No. 25 – Glossary of Patent Terms (PROPOSED BY EPIC)**

Some of the terms in this glossary will be defined in more detail in the instructions you are given.  The definitions in the instructions must be followed and must control your deliberations.

**Abstract:**  A brief summary of the technical disclosure in a patent to enable the U.S. Patent and Trademark Office and the public to determine quickly the nature and gist of the technical disclosure in the patent.

**Anticipation:**  A situation in which a claimed invention describes an earlier invention and, therefore, is not considered new and is not entitled to be patented.

**Assignment:**  A transfer of patent rights to another called an "assignee" who upon transfer becomes the owner of the rights assigned.

**Claim:**  Each claim of a patent is a concise, formal definition of an invention and appears at the end of the specification in a separately numbered paragraph.  In concept, a patent claim marks the boundaries of the patent in the same way that a legal description in a deed specifies the boundaries of land, i.e., similar to a land owner who can prevent others from trespassing on the bounded property, the inventor can prevent others from using what is claimed.  Claims may be independent or dependent.  An independent claim stands alone.  A dependent claim does not stand alone and refers to one or more other claims.  A dependent claim incorporates whatever the other referenced claim or claims say.  If the referenced claim is not infringed, then the dependent claim is not infringed.

**Drawings:**  The drawings are visual representations of the claimed invention contained in a patent application and issued patent, and usually include several figures illustrating various aspects of the claimed invention.

**Elements:**  The required parts of a device or the required steps of a method.  A device or method infringes a patent if it contains each and every requirement of a patent claim.

**Embodiment:**  A product or method that contains the claimed invention.

**Enablement:**  A description of the invention that is sufficient to enable persons skilled in

the field of the invention to make and use the invention.  The specification of the patent must contain such an enabling description.

**Examination:**  Procedure before the U.S. Patent and Trademark Office whereby a Patent Examiner reviews the filed patent application to determine if the claimed invention is patentable.

**Filing Date:**  Date a patent application, with all the required sections, has been submitted to the U.S. Patent and Trademark Office.

**Infringement:**  Violation of a patent occurring when someone makes, uses, or sells a patented invention, without permission of the patent holder, within the United States during the term of the patent.  Infringement may be direct, by inducement, or contributory.  Direct infringement is making, using, or selling the patented invention without permission.

**Limitation:**  A required part of an invention set forth in a patent claim.  A limitation is a requirement of the invention.  The word "limitation" is often used interchangeably with the word "requirement."

**Nonobviousness:**  One of the requirements for securing a patent.  To be valid, the subject matter of the invention must not have been obvious to a person of ordinary skill in the field of the invention at the time of the earlier of the filing date of the patent application or the date of invention.

**Patent:**  A patent is an exclusive right granted by the U.S. Patent and Trademark Office to an inventor to prevent others from making, using, offering to sell, or selling an invention within the United States, or from importing it into the United States, during the term of the patent.  When the patent expires, the right to make, use, or sell the invention is dedicated to the public.  The patent has three parts, which are a specification, drawings and claims.  The patent is granted after examination by the U.S. Patent and Trademark Office of a patent application filed by the inventor which has these parts, and this examination is called the prosecution history.

**Patent and Trademark Office (PTO):**  An administrative branch of the U.S. Department of Commerce that is charged with overseeing and implementing the federal laws of patents and trademarks.  It is responsible for examining all patent applications and issuing all

1  patents in the United States.

2      **Prior Art:**  Previously known subject matter in the field of a claimed invention for which

3  a patent is being sought.  It includes issued patents, publications, and knowledge deemed to be

4  publicly available such as trade skills, trade practices and the like.

5      **Prosecution History:**  The prosecution history is the complete written record of the

6  proceedings in the PTO from the initial application to the issued patent.  The prosecution history

7  includes the office actions taken by the PTO and the amendments to the patent application filed

8  by the applicant during the examination process.

9      **Reads On:**  A patent claim "reads on" a device or method when each required part

10  (requirement) of the claim is found in the device or method.

11      **Requirement:**  A required part or step of an invention set forth in a patent claim.  The

12  word "requirement" is often used interchangeably with the words "limitation" and/or "element."

13      **Royalty:**  A royalty is a payment made to the owner of a patent by a non-owner in

14  exchange for rights to make, use or sell the claimed invention.

15      **Specification:**  The specification is a required part of a patent application and an issued

16  patent.  It is a written description of the invention and of the manner and process of making and

17  using the claimed invention.

18

19

20  Source:  N.D. Cal. Model Patent Jury Instruction No. C.1 (modified).

21

22

23

24

25

26

**<u>Final Instruction No. 26 – Duty to Deliberate</u>**

Before you begin your deliberations, elect one member of the jury as your presiding juror.  The presiding juror will preside over the deliberations and serve as the spokesperson for the jury in court.

You shall diligently strive to reach agreement with all of the other jurors if you can do so.  Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to their views.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision.  Do not be unwilling to change your opinion if the discussion persuades you that you should.  But do not come to a decision simply because other jurors think it is right or change an honest belief about the weight and effect of the evidence simply to reach a verdict.

Source:  Ninth Circuit Model Civil Jury Instruction No. 3.1.

POLSINELLI

1000 SECOND AVENUE, SUITE 3500
SEATTLE, WA 98104 • Tel: 206-393-5400

1  **Final Instruction No. 27 – Consideration of Evidence – Conduct of the Jury**

2      Because you must base your verdict only on the evidence received in the case and on

3  these instructions, I remind you that you must not be exposed to any other information about the

4  case or to the issues it involves.  Except for discussing the case with your fellow jurors during

5  your deliberations:

6      Do not communicate with anyone in any way and do not let anyone else communicate

7  with you in any way about the merits of the case or anything to do with it.  This includes

8  discussing the case in person, in writing, by phone, tablet, computer, or any other means, via

9  email, via text messaging, or any internet chat room, blog, website or application, including but

10  not limited to Facebook, YouTube, Twitter, Instagram, LinkedIn, Snapchat, TikTok, or any other

11  forms of social media.  This applies to communicating with your family members, your

12  employer, the media or press, and the people involved in the trial.  If you are asked or

13  approached in any way about your jury service or anything about this case, you must respond

14  that you have been ordered not to discuss the matter and to report the contact to the court.

15      Do not read, watch, or listen to any news or media accounts or commentary about the

16  case or anything to do with it; do not do any research, such as consulting dictionaries, searching

17  the Internet, or using other reference materials; and do not make any investigation or in any other

18  way try to learn about the case on your own.  Do not visit or view any place discussed in this

19  case, and do not use Internet programs or other devices to search for or view any place discussed

20  during the trial.  Also, do not do any research about this case, the law, or the people involved—

21  including the parties, the witnesses, or the lawyers—until you have been excused as jurors.  If

22  you happen to read or hear anything touching on this case in the media, turn away and report it to

23  me as soon as possible.

24      These rules protect each party's right to have this case decided only on evidence that has

25  been presented here in court.  Witnesses here in court take an oath to tell the truth, and the

26  accuracy of their testimony is tested through the trial process.  If you do any research or

investigation outside the courtroom, or gain any information through improper communications,

then your verdict may be influenced by inaccurate, incomplete, or misleading information that has not been tested by the trial process.  Each of the parties is entitled to a fair trial by an impartial jury, and if you decide the case based on information not presented in court, you will have denied the parties a fair trial.  Remember, you have taken an oath to follow the rules, and it is very important that you follow these rules.

A juror who violates these restrictions jeopardizes the fairness of these proceedings.  If any juror is exposed to any outside information, please notify the court immediately.

Source:  Ninth Circuit Model Civil Jury Instruction No. 3.2.

**Final Instruction No. 28 – Communication with Court**

If it becomes necessary during your deliberations to communicate with me, you may send a note through the clerk, signed by any one or more of you.  No member of the jury should ever attempt to communicate with me except by a signed writing.  I will not communicate with any member of the jury on anything concerning the case except in writing or here in open court.  If you send out a question, I will consult with the lawyers before answering it, which may take some time.  You may continue your deliberations while waiting for the answer to any question.  Remember that you are not to tell anyone—including the court—how the jury stands, whether in terms of vote count or otherwise, until after you have reached a unanimous verdict or have been discharged.

Source:  Ninth Circuit Model Civil Jury Instruction No. 3.3.

POLSINELLI
1000 SECOND AVENUE, SUITE 3500
SEATTLE, WA 98104 • Tel: 206-393-5400

1   **<u>Final Instruction No. 29 – Return of Verdict</u>**

2       A verdict form has been prepared for you.  After you have reached unanimous agreement

3   on a verdict, your presiding juror should complete the verdict form according to your

4   deliberations, sign and date it, and advise the clerk that you are ready to return to the courtroom.

5

6

7   Source:  Ninth Circuit Model Civil Jury Instruction No. 3.5.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

1  **<u>Final Instruction No. 30 – Post Discharge Instruction</u>**

2          Now that the case has been concluded, some of you may have questions about the

3  confidentiality of the proceedings.  Now that the case is over, you are free to discuss it with any

4  person you choose.  By the same token, however, I would advise you that you are under no

5  obligation whatsoever to discuss this case with any person.

6          If you do decide to discuss the case with anyone, I would suggest you treat it with a

7  degree of solemnity in that whatever you do decide to say, you would be willing to say in the

8  presence of the other jurors or under oath here in open court in the presence of all the parties.

9          Always bear in mind that if you do decide to discuss this case, the other jurors fully and

10  freely stated their opinions with the understanding they were being expressed in confidence.

11  Please respect the privacy of the views of the other jurors.

12          Finally, if you would prefer not to discuss the case with anyone, but are feeling undue

13  pressure to do so, please feel free to contact the courtroom deputy, who will notify me and I will

14  assist.

15

16

17  Source:      Ninth Circuit Model Civil Jury Instruction No. 3.9.

18

19

20

21

22

23

24

25

26

POLSINELLI
1000 SECOND AVENUE, SUITE 3500
SEATTLE, WA 98104 • Tel: 206-393-5400

| | | | |
|---|---|---|---|
| 1 | Filed September 6, 2024 | By: | /s/ *Emily C. McNally* |
| 2 | | | Emily McNally (WSBA No. 60710) |
| | | | Jessica M. Andrade (WSBA No. 39297) |
| 3 | | | **POLSINELLI PC** |
| | | | 1000 Second Avenue, Suite 3500 |
| 4 | | | Seattle, WA 98104 |
| | | | Tel:    206-393-5400 |
| 5 | | | Email:  emcnally@polsinelli.com |
| | | | Email: jessica.andrade@polsinelli.com |
| 6 | | | |
| 7 | | | Mark T. Deming (admitted *pro hac vice*) |
| | | | **POLSINELLI PC** |
| 8 | | | 150 N. Riverside Place, Suite 3000 |
| | | | Chicago, IL 60606 |
| 9 | | | Tel:    312-819-1900 |
| | | | Email: mdeming@polsinelli.com |
| 10 | | | |
| 11 | | | Jonathan Spivey (admitted *pro hac vice*) |
| | | | **POLSINELLI PC** |
| 12 | | | 1000 Louisiana Street, Suite 6400 |
| | | | Houston, TX 77002 |
| 13 | | | Tel:    713-374-1600 |
| | | | Email: jspivey@polsinelli.com |
| 14 | | | |
| 15 | | | Colby B. Springer (admitted *pro hac vice*) |
| | | | Miya Yusa (admitted *pro hac vice*) |
| 16 | | | **POLSINELLI LLP** |
| | | | Three Embarcadero Center, Suite 2400 |
| 17 | | | San Francisco, CA 94111 |
| | | | Tel:    415-248-2100 |
| 18 | | | Email: cspringer@polsinelli.com |
| | | | Email:  myusa@polsinelli.com |
| 19 | | | |
| 20 | | | Melenie Van (admitted *pro hac vice*) |
| | | | **POLSINELLI LLP** |
| 21 | | | 2049 Century Park East, Suite 2900 |
| | | | Los Angeles, CA 90067 |
| 22 | | | Tel:    (310) 229-1355 |
| | | | Email:  mvan@polsinelli.com |
| 23 | | | |
| 24 | | | Attorneys for Plaintiff Utherverse Gaming, LLC |
| 25 | | | |
| 26 | | | |

**POLSINELLI**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

By:    /s/ *Eric C. Weiner*
Eric C. Weiner (*pro hac vice*)
Daralyn J. Durie (*pro hac vice*)
Timothy C. Saulsbury (*pro hac vice*)
Bethany Bengfort (*pro hac vice*)
MORRISON & FOERSTER (SF)
425 Market Street, 32ND Floor
San Francisco, CA 94105-2482
415-268-7000
Email: Ddurie@mofo.com
Email: Ewiener@mofo.com
Email: Tsaulsbury@mofo.com
Email: Bbengfort@mofo.com

Katherine E McNutt (*pro hac vice*)
MORRISON & FOERSTER (LA)
707 Wilshire Blvd, Ste 6000
Los Angeles, CA 90017-3543
213-892-5649
Email: kmcnutt@mofo.com

Mark A Lemley (*pro hac vice*)
LEX LUMINA PLLC
745 Fifth Avenue, Ste 500
New York, NY 10151
646-898-2055
Email: mlemley@lex-lumina.com

Stevan Stark (WSBA No. 39639)
Antoine M. McNamara (WSBA No. 41701)
Christina J. McCullough (WSBA No. 47147)
PERKINS COIE (SEA)
1201 3RD Avenue, Ste 4900
Seattle, WA 98101-3099
206-359-8000
Email: AmcNamara@perkinscoie.com
Email: CmcCullough@perkinscoie.com
Email: Sstark@perkinscoie.com

Attorneys for Defendant Epic Games, Inc

POLSINELLI
1000 SECOND AVENUE, SUITE 3500
SEATTLE, WA 98104 • Tel: 206-393-5400