THE HONORABLE RICARDO S. MARTINEZ

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WASHINGTON

AT SEATTLE

| | |
|---|---|
| UTHERVERSE GAMING LLC,<br><br>                 Plaintiff,<br><br>   v.<br><br>EPIC GAMES, INC.,<br><br>                 Defendant. | Case No. 2:21-cv-00799-RSM<br><br>**DEFENDANT EPIC GAMES, INC.'S OPPOSITION TO PLAINTIFF'S MOTIONS IN LIMINE**<br><br>NOTE ON MOTION CALENDAR:<br>Date:    September 13, 2023 |

## <u>TABLE OF CONTENTS</u>

**Page**

I. INTRODUCTION ................................................................................................1

II. RESPONSE TO MOTION IN LIMINE 5:  EPIC MAY SOLICIT INVENTOR TESTIMONY ON A WIDE VARIETY OF TOPICS, INCLUDING INVALIDITY, INVENTION, AND PRIOR ART ..................................................1

III. RESPONSE TO MOTION IN LIMINE 6:  PRECLUDING INCONSISTENCIES WITH THE COURT'S CLAIM CONSTRUCTION ................................................4

    A.    Background and Procedural History........................................................7

        1.    The Court's Claim Construction Order...........................................7

        2.    The Court's Summary Judgment Order...........................................9

    B.    Utherverse Misrepresents the Court's Order and Epic's Position to Preclude Epic from Advancing Legitimate Non-Infringement Arguments.9

        1.    The Asserted Claims Require Avatars, and the Court Has Not Held Otherwise ....................................................................................10

        2.    Utherverse Misstates the Court's Order on What Is a "Recorded Experience".................................................................................12

IV. RESPONSE TO MOTION IN LIMINE 7:  EPIC MAY ELICIT TESTIMONY REGARDING GREENHALGH-1 AND GREENHALGH-2 .............................13

V. RESPONSE TO MOTION IN LIMINE 8:  EPIC MAY ELICIT TESTIMONY REGARDING CLAIM 1 AND MAY PRESENT INVALIDITY THEORIES EPIC HAS IDENTIFIED IN THIS CASE ....................................................14

1

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abdulal v. United States*,
   No. C04-0370RSM, 2005 WL 8172246 (W.D. Wash. Nov. 22, 2005).....................................1

*Avia Grp. Int'l, Inc. v. L.A. Gear Cal., Inc.*,
   853 F.2d 1557 (Fed. Cir. 1988)...........................................................................................15

*Bicon, Inc. v. Straumann Co.*,
   441 F.3d 945 (Fed. Cir. 2006)..............................................................................................11

*Convolve, Inc. v. Compaq Comput. Corp.*,
   527 Fed. App'x 910 (Fed. Cir. 2013)................................................................................2, 15

*In re Copaxone Consol. Cases*,
   906 F.3d 1013 (Fed. Cir. 2018)..............................................................................................2

*Cordis Corp. v. Boston Sci. Corp.*,
   561 F.3d 1319 (Fed. Cir. 2009)..............................................................................................3

*Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*,
   424 F.3d 1293 (Fed. Cir. 2005)............................................................................................11

*Easton v. Asplundh Tree Experts, Co.*,
   No. C16-1694RSM, 2018 WL 1306455 (W.D. Wash. Mar. 13, 2018).....................................1

*Elliott v. Versa CIC, L.P.*,
   349 F. Supp. 3d 1000 (S.D. Cal. 2018)....................................................................................4

*Exergen Corp. v. Wal-Mart Stores, Inc.*,
   575 F.3d 1312 (Fed. Cir. 2009)..............................................................................................9

*Exxon Chem. Patents, Inc. v. Lubrizol Corp.*,
   64 F.3d 1553 (Fed. Cir. 1995)..............................................................................................11

*Finjan, Inc. v. Sophos, Inc.*,
   No. 14-CV-01197-WHO, 2016 WL 4560071 (N.D. Cal. Aug. 22, 2016) .............................13

*Fresenius Med. Care Holdings, Inc. v. Baxter Int'l, Inc.*,
   No. C 03-1431 SBA, 2006 WL 1330002 (N.D. Cal. May 15, 2006) .......................................2

*Hana Fin., Inc. v. Hana Bank*,
   735 F.3d 1158 (9th Cir. 2013), *aff'd*, 574 U.S. 418 (2015)...........................................4

*Intel Corp. v. Qualcomm Inc.*,
    21 F.4th 784 (Fed. Cir. 2021) ...........................................................................10

*Koito Mfg. Co., Ltd. v. Turn-Key-Tech, LLC*,
    381 F.3d 1142 (Fed. Cir. 2004)...........................................................................3

*Lucent Techs., Inc. v. Gateway, Inc.*,
    525 F.3d 1200 (Fed. Cir. 2008)......................................................................5, 11

*MicroStrategy Inc. v. Bus. Objects*,
    S.A., 429 F.3d 1344 (Fed. Cir. 2005) ..............................................................4, 6

*Nationwide Life Ins. Co. v. Richards*,
    541 F.3d 903 (9th Cir. 2008) ...........................................................................14

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*,
    521 F.3d 1351 (Fed.Cir.2008)............................................................................4

*Power Mosfet Techs., L.L.C. v. Siemens AG*,
    378 F.3d 1396 (Fed. Cir. 2004).........................................................................10

*Solomon v. Kimberly-Clark Corp.*,
    216 F.3d 1372 (Fed. Cir. 2000)..........................................................................3

*Sulzer Textil A.G. v. Picanol N.V.*,
    358 F.3d 1356 (Fed. Cir. 2004)..........................................................................5

*Union Pac. Res. Co. v. Chesapeake Energy Corp.*,
    236 F.3d 684 (Fed. Cir. 2001).........................................................................15

*Voice Techs. Grp., Inc. v. VMC Sys., Inc.*,
    164 F.3d 605 (Fed. Cir. 1999)............................................................................2

**Other Authorities**

Federal Rule of Civil Procedure 32(a)(4)(B) ........................................................14

Rule 403 .............................................................................................................3

Rule 804(b)(1)...................................................................................................14

1

**I.      INTRODUCTION**

2          The parties will shortly be submitting joint stipulation that will resolve Plaintiff

3 Utherverse Gaming LLC's ("Utherverse") motions *in limine* numbers 1 through 4, 9, and 10.

4 Defendant Epic Games, Inc. ("Epic") therefore responds to, and hereby opposes, Utherverse's

5 motions *in limine* numbers 5 through 8.

6

**II.     RESPONSE TO MOTION IN LIMINE 5:  EPIC MAY SOLICIT INVENTOR
          TESTIMONY ON A WIDE VARIETY OF TOPICS, INCLUDING INVALIDITY,**

7 **INVENTION, AND PRIOR ART**

8          Utherverse's request that Epic be barred from asking the named inventors questions that

9 go to "legal issues pertaining to the '605 patent, [] the claims of the '605 Patent, and [] what

10 might constitute prior art" is both ill-defined and contrary to well-established law concerning the

11 relevance of such inventor testimony.  Dkt. 408 at 7.  Whether a question improperly calls for

12 legal or opinion testimony from an inventor must be informed by the context surrounding a

13 question and the foundation leading up to it.  The Court should deny Utherverse's request for a

14 sweeping and indefinite pretrial ruling and reserve such issues until it has the full context and

15 foundation in front of it.

16          Utherverse's motion seeks a blanket prohibition on testimony regarding "legal issues"

17 without explaining what issues and testimony, exactly, should be excluded.  Dkt. 408 at 7.  This

18 is reason enough to deny Utherverse's motion without prejudice to objections raised at trial.  *See*

19 *Abdual v. United States*, No. C04-0370RSM, 2005 WL 8172246, at *1 (W.D. Wash. Nov. 22,

20 2005) (denying a motion *in limine* because it "fails to specify the testimony of a particular

21 witness that plaintiffs seek to exclude" as "[b]road objections are not sufficient," but allowing

22 specific objections at trial); *Easton v. Asplundh Tree Experts, Co.*, No. C16-1694RSM, 2018 WL

23 1306455, at *3 (W.D. Wash. Mar. 13, 2018) (denying a motion *in limine* that sought to exclude

24 testimony from fact and expert witnesses about "pure legal issues," finding the court would

25 "make such a determination at the time of trial with respect to specific testimony").

26          If Utherverse seeks to preclude all testimony from the inventors about the prior art or the

27

28 EPIC'S OPPOSITION TO PLAINTIFF'S
   MOTIONS IN LIMINE - 1
   (CASE NO. 2:21-CV-00799-RSM)

**Morrison & Foerster LLP**, 425 Market Street,
San Francisco, CA, Tel: 415-268-7000

1  alleged invention (including whether the inventors had ever implemented the invention), its

2  motion should be rejected as contrary to the law.  *See Convolve, Inc. v. Compaq Comput. Corp.*,

3  527 Fed. App'x 910, 930-31 (Fed. Cir. 2013) (affirming summary judgment of non-enablement

4  based on "fatal" testimony of purported inventor that he had been unable to implement steps

5  covered by claim); *In re Copaxone Consol. Cases*, 906 F.3d 1013, 1030 (Fed. Cir. 2018)

6  (approving of district court's reliance on testimony from the named inventor regarding the scope

7  and content of the prior art and what it would teach the person of ordinary skill); *Voice Techs.*

8  *Grp., Inc. v. VMC Sys., Inc.*, 164 F.3d 605, 615-16 (Fed. Cir. 1999) ("An inventor is a competent

9  witness to explain the invention and what was intended to be conveyed by the specification and

10 covered by the claims.").  Utherverse implicitly recognized that some inventor testimony is

11 proper when it disclosed both of the named inventors in this case as witnesses on "[t]he '605

12 Patent and the state of the art at the time of the invention." Dkt. No. 418 (Proposed Pretrial

13 Order) at 12-13; *see also id*. at 12 (disclosing Brian Shuster as a trial witness on "the state of the

14 art at the time he was working on the invention claimed in the '605 Patent").

15        As to testimony regarding the '605 patent's claims, Epic agrees that it is generally

16 improper to ask lay witnesses legal questions about the scope of patent claims.  But the issue is

17 not so black-and-white that it can be resolved by a motion *in limine*.  For example, it is proper to

18 ask a purported inventor questions about what she invented that led to the patent, though not how

19 her invention is reflected in the patent claims.  *See Voice Techs. Grp., Inc.*, 164 F.3d at 615-16

20 (Fed. Cir. 1999); *Fresenius Med. Care Holdings, Inc. v. Baxter Int'l, Inc.*, No. C 03–1431 SBA,

21 2006 WL 1330002, at *3-4 (N.D. Cal. May 15, 2006) (allowing an inventor to testify as to a

22 product that led to the inventions claimed in the asserted patent but not how that invention is

23 reflected in the claim language).  Utherverse appears to recognize this distinction, as it has stated

24 that it plans to have inventor Brian Shuster testify about the "inspiration for the invention

25 disclosed and claimed in the '605 Patent."  *See* Dkt. 418 p. 12.  Given the close nexus between a

26 patented invention and the claims written in a corresponding patent, however, the

27

28
EPIC'S OPPOSITION TO PLAINTIFF'S                    **Morrison & Foerster LLP**, 425 Market Street,
MOTIONS IN LIMINE - 2                                San Francisco, CA, Tel: 415-268-7000
(CASE NO. 2:21-CV-00799-RSM)

1    appropriateness of a question almost always depends on the foundation leading up to it and the

2    context.

3        The case law cited in Utherverse's motion actually supports Epic's position that inventor

4    testimony can be relevant to issues on which the motion seeks to foreclose questioning.

5    Utherverse cites *Solomon v. Kimberly-Clark Corp.*, 216 F.3d 1372, 1380 (Fed. Cir. 2000), for the

6    proposition that "inventor testimony, obtained in the context of litigation, should not be used to

7    invalidate issued claims" [sic]. *See* Dkt. 408 at 7. Its motion omits the final clause of the quote,

8    though, which limits its application to inventor testimony regarding ***indefiniteness***:

> For the foregoing reasons, we conclude that inventor testimony,
> obtained in the context of litigation, should not be used to
> invalidate issued claims ***under section 112, paragraph 2***.

11   *Solomon*, 216 F.3d at 1380 (emphasis added). That same opinion also recognizes that an

12   "inventor may provide testimony explaining the claimed invention and its development" as well

13   as the scope of the prior art. *Id.* at 1379. Other cited authorities are also unavailing. *Koito Mfg.*

14   *Co., Ltd. v. Turn-Key-Tech, LLC*, 381 F.3d 1142, 1155-56 (Fed. Cir. 2004), held inventors were

15   not required to discuss "every detail" in a ***specification*** for that specification to be enabling, ***not***

16   that inventor testimony was not relevant or admissible regarding the invention or prior art.

17   Likewise, *Cordis Corp. v. Boston Sci. Corp.*, 561 F.3d 1319, 1338 (Fed. Cir. 2009), affirmed the

18   exclusion of inventor testimony about infringement by the accused product.

19       Utherverse's final argument suggests that it would be prejudiced under Rule 403. *See*

20   Dkt. 408 at 8. But this argument depends on the assertion that Epic will seek to have the

21   purported inventors testify regarding claim scope. *See id.* Epic does not intend to do this.

22   Rather, Epic will ask the purported inventors questions about issues that are proper subjects of

23   inventor testimony, such as whether Mr. Shuster tried, but failed, to implement his claimed

24   invention, and what solutions were already known to Mr. Shuster when he purportedly came up

25   with his invention. Such testimony is relevant and proper. Any potential for prejudice or

26   confusion must arise from particular questions and would be better raised by objection.

27

28   EPIC'S OPPOSITION TO PLAINTIFF'S             **Morrison & Foerster LLP**, 425 Market Street,
     MOTIONS IN LIMINE - 3                        San Francisco, CA, Tel: 415-268-7000
     (CASE NO. 2:21-CV-00799-RSM)

Utherverse's motion disregards the relevant law regarding the permissible scope of inventor testimony, citing instead to inapposite authorities.  It should be denied.

## III.   RESPONSE TO MOTION IN LIMINE 6:  PRECLUDING INCONSISTENCIES WITH THE COURT'S CLAIM CONSTRUCTION

Utherverse's sixth motion *in limine* is a motion for summary judgment styled as a motion *in limine*, aimed at preventing Epic from raising meritorious non-infringement defenses at trial. Utherverse could have moved for summary judgment of infringement.  It chose not to.  The instant motion is an improper procedural vehicle for what is essentially a dispositive motion.  *See Hana Fin., Inc. v. Hana Bank*, 735 F.3d 1158, 1162 n. 4 (9th Cir. 2013), *aff'd*, 574 U.S. 418 (2015) ("A motion *in limine* is not the proper vehicle for seeking a dispositive ruling on a claim, particularly after the deadline for filing such motions has passed."); *Elliott v. Versa CIC, L.P.*, 349 F. Supp. 3d 1000, 1002 (S.D. Cal. 2018) (noting that it is improper to "bring a dispositive motion . . . disguised as a motion *in limine* to effectively bar" a party from raising a claim or defense).  It is also wrong on the merits.  Both of Utherverse's arguments misstate Epic's position and the Court's Claim Construction Order ("Order").

*First*, the motion seeks to preclude Epic from arguing that "the initial scene state must include an avatar" on the theory that the Court "expressly explained that the claim does not 'require the presence of avatars.'"  Dkt. 408 at 9.  This misstates both the Order and Epic's argument.  The Court was asked to construe the term "initial scene state" in independent claim 1, and that is what it did.[1]  Dkt. 133 at 13.  Epic does not intend to argue that the Court's definition of "initial scene state" requires the inclusion of avatars.  But claim 1 also expressly requires "rendering . . . ***objects*** of the initial scene state in the new instance, ***including one or more avatars***."  Ex. A[2] at 10:48-51 (emphasis added).  The Court was not asked to, and did not, construe this language, much less eliminate it from the claim.  *See O2 Micro Int'l Ltd. v. Beyond*

---

[1] Utherverse asserts claims 2, 5, and 8 of the '605 patent, all of which depend from claim 1 and incorporate claim 1's requirements.

[2] All exhibits are to the Declaration of Katherine McNutt, filed herewith.

EPIC'S OPPOSITION TO PLAINTIFF'S
MOTIONS IN LIMINE - 4
(CASE NO. 2:21-CV-00799-RSM)

**Morrison & Foerster LLP**, 425 Market Street,
San Francisco, CA, Tel: 415-268-7000

*Innovation Tech. Co.*, 521 F.3d 1351, 1362 (Fed.Cir.2008) (recognizing that "district courts are not (and should not be) required to construe every limitation present in a patent's asserted claims" and must only do so "[w]hen the parties present a fundamental dispute regarding the scope of a claim term").

The plain text of claim 1 explicitly requires rendering "objects . . . including, one or more avatars" in a new instance of the scene.  The Court's construction of the term "initial scene state" does not displace this explicit requirement.  The Court observed that its construction of the term "initial scene state" does not necessarily require avatars—i.e., it is possible for an "initial scene state," taken alone, to include or to not include avatars. Dkt. 133 at 13.  The claim, however, goes one step further.  It not only recites an "initial scene state" but also explicitly requires that objects, "including one or more avatars," from the initial scene state be rendered in the new instance of the scene and then transported to a different one.  Ex. A at 10:50-51; *see also Lucent Techs., Inc. v. Gateway, Inc.*, 525 F.3d 1200, 1214 (Fed. Cir. 2008) ("This court has consistently interpreted 'including'" to mean "that the listed elements . . . are essential but other elements may be added.").  Utherverse cannot credibly dispute that the claim plainly requires rendering objects, "including one or more avatars," so it contorts the Order to suggest that the Court eliminated this requirement.  It did not.

Utherverse itself acknowledged that the claim recites rendering "one or more avatars" at the claim construction hearing.  In particular, Utherverse argued that it would be "redundant and repetitive" to add an express inclusion of avatars to the definition of "initial scene state" because "the recitation of the avatar [requirement] actually appears in the claim." Ex. B at 86:15-19.  Faced with the realization that the plain language of the claim is fatal to its claim of infringement, Utherverse now attempts to walk back this acknowledgement.  Utherverse should not be permitted to do so.  Utherverse must prove that all claim elements, even those not construed, are met.  This is black-letter law.  *See Sulzer Textil A.G. v. Picanol N.V.,* 358 F.3d 1356, 1367 (Fed. Cir. 2004) ("[B]ecause the district court made specific claim construction

1   rulings, it was required to inform the jury that it . . . must apply the district court's construction

2   of the terms in its deliberations"); *MicroStrategy Inc. v. Bus. Objects*, S.A., 429 F.3d 1344, 1352

3   (Fed. Cir. 2005) ("If, however, even one claim limitation is missing or not met, there is no literal

4   infringement.").

5       *Second*, the motion seeks to preclude Epic from arguing that the "Ariana Grande and

6   Travis Scott events must be from new and real-time interaction" on the theory that this argument

7   is inconsistent with the Court's construction of "recorded experience file." Dkt. 408 at 9. To the

8   extent that Utherverse is suggesting that Epic will argue that "recorded experience files" must be

9   new and real-time interaction, this is a misstatement of Epic's position. Rather, Epic will argue

10  that the Travis Scott and Ariana Grande concerts are not recordings of a "prior experience," as

11  the Court's construction requires, but rather animations that allow for real-time interaction. *See*

12  Dkt. 300 at 13-14. This argument is consistent with the Order, which clarifies that a "recorded

13  experience file" "must be from a prior experience rather than a display allowing for real-time

14  interaction." Dkt. 408 at 9.

15      Utherverse seeks to exclude Epic's non-infringement argument because Utherverse's

16  infringement position is at odds with the Order. At most, Utherverse can show only that the

17  animation files played during the concerts were "created before…the events," which does not

18  meet the claim limitations. *See* Dkt. 334 at 5-6. In a bid to avoid a determination of non-

19  infringement, Utherverse seeks to argue that the claims do not require a "recording of a prior

20  experience" at all. But Utherverse cannot sidestep the claim requirements or the Court's

21  construction of "recorded experience file" with a motion *in limine* aimed at rewriting the court's

22  construction.

23      Epic's non-infringement positions are entirely consistent with both the Court's Order and

24  the claim language. Utherverse's last-ditch arguments are not. Utherverse cannot now

25  circumvent its burden to prove infringement by eliminating claim requirements or attempting to

26  recast the Court's constructions. The Court should deny its motion.

27

28

### A.    Background and Procedural History

#### 1.    The Court's Claim Construction Order

The Court issued constructions of "initial scene state" and "recorded experience [file]" in its Order.  *See* Dkt. 133 at 13-14.  Both of these terms appear in claim 1 of the '605 patent:

> 1. A method of playing back **a recorded experience** in a virtual worlds system, comprising:
>
> instantiating, using one or more processors of a server, a new instance of a scene, the new instance being defined by data stored in memory, at least one client device displaying and participating in the new instance;
>
> retrieving a **recorded experience file** from the memory, the **recorded experience file** having been generated by saving an ***initial scene state*** and saving subsequent changes and respective times during a time period of the recorded experience;
>
> playing back the **recorded experience file** by rendering, for display by the at least one client device, objects of the ***initial scene state*** in the new instance, including one or more avatars, and rendering updates to the ***initial scene state*** based on the subsequent changes over the time period; and
>
> automatically transporting the one or more avatars to a different new instance of the scene, upon occurrence of a threshold event, wherein the threshold event comprises when a maximum capacity of avatars has been reached in the new instance of the scene.

Ex. A at 10:37-58 (emphases added).  The Court was not asked to construe the term "including one or more avatars" from the "playing back" limitation, and it did not do so.  Dkt. 133 at 3.

#### a.    Construction of "Initial Scene State"

The Court adopted Epic's proposed construction of the term "initial scene state":

> Scene state information, including at least a position and orientation of objects, including avatars, rendered in the scene at a beginning of a time period of a new recording of a scene.

Dkt. 133 at 3, 13.  Utherverse argued during claim construction that the "including avatars" language in Epic's construction was improper because the initial scene state "***could*** include an avatar, [but] it is not required."  Dkt. 83 at 9 (emphasis in original).  In support, Utherverse noted that the "recitation of the avatar actually appears in the claim," and so "having [avatars be part of

both] the construction [of initial scene state] and [] the claim would actually make it redundant and repetitive."   Ex. B at 86:15-19.   The Court observed that it did not read Epic's construction of "initial scene state" as "requir[ing] the presence of avatars."   The Order did not address the separate claim requirement of rendering objects "including one or more avatars."   *See* Dkt. 133 at 13.   Additionally, nothing in its Order suggests that this express language should be erased from the claim.   *Id.*

### b.   Construction of "Recorded Experience [File]"

The Court also adopted Epic's proposed construction of the term "recorded experience [file]":

> [A file containing] a recording of a prior experience that occurred in a virtual environment.

Dkt. 133 at 3, 13-14.   This construction flowed from the fact that a "recorded experience" must be a recording of a prior event that someone experienced.   *See id.* at 13 (describing the invention as "allow[ing] users to participate in past events (in other words travel back in time)"); *see also* Ex. B at 75:3-76:4 (Utherverse's counsel agreeing that the '605 patent "allows you to experience . . . an event that took place in the past" as though "you were there for the first time").   The Court noted that the inventors had expressly disclaimed any interpretation of "recorded experience" that would include "new gameplay" as opposed to "past events."   Dkt. 133 at 13-14; *see also* Dkt. 72 at 19-20, Ex. B at 82:19-83:21.   Utherverse's proposed construction of "recorded experience" was inconsistent with the plain language of the claim term and ran afoul of this disclaimer because it "could encompass a representation of any preprogrammed scene, whether or not anyone had ever played or experienced it before."   Dkt. 72 at 19-20; *see also* Ex. B at 81:23-82:22 (explaining that Utherverse's construction "includes virtually every 3D movie or game ever made, including not just a recorded experience, but also brand-new gameplay"); Dkt. 133 at 14 ("Utherverse's proposed construction runs afoul of this disclaimer by encompassing new gameplay.").   The Court therefore adopted Epic's proposed construction requiring "a recording of a prior experience that occurred in a virtual environment."   Dkt. 133 at

13-14.

### 2.     The Court's Summary Judgment Order

Epic moved for summary judgment of non-infringement of the '605 patent on two

separate grounds.  First, Epic moved for summary judgment on the basis that Utherverse could

not show that the "including one or more avatars" requirement in the claim was met.  *Id.*

Second, Epic moved for summary judgment on the grounds that it was "undisputed that there

was no 'past event' that was recorded and then played back for users" as required by the Court's

claim construction for "recorded experience."  Dkt. 300 at 13.

Utherverse did not move for summary judgment of infringement.  It argued in opposition

that there were "disputed material facts" as to whether the events it accused of infringement

practiced the claims as construed by the Court.  *See* Dkt. 334 at 2, 5-7.  The Magistrate Judge

issued a Report and Recommendation ("R&R") recommending denial of Epic's motion because

"there is sufficient question to create an issue of fact for the jury of whether the Travis Scott and

Ariana Grande events used the limitations of the claims."  Dkt. 369 at 20 (R&R).

The Court adopted the R&R over Epic's objections.  Dkt. 391 at 1 (Order adopting

R&R); Dkt. 381 at 1 (Epic's objections to the R&R).  As a result, infringement will be

determined at trial, and Epic intends to provide evidence that (1) no avatars are rendered as

objects of the initial scene state; and (2) there is no prior recorded experience, and instead only

animations that are part of normal gameplay.

### B.     Utherverse Misrepresents the Court's Order and Epic's Position to Preclude Epic from Advancing Legitimate Non-Infringement Arguments

The motion mischaracterizes the Order—and Epic's non-infringement positions—in a bid

to salvage its infringement arguments.  This effort must fail.  Utherverse cannot be permitted to

improperly suppress Epic's non-infringement arguments—the only arguments that are consistent

with the Court's claim constructions and supported by overwhelming evidence.  See *Exergen

Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1321 (Fed. Cir. 2009) ("No party may contradict

the court's construction to a jury.").

1.      **The Asserted Claims Require Avatars, and the Court Has Not Held Otherwise**

Utherverse first argues that the Court should prevent Epic from arguing that the accused events do not practice the "one or more avatars" limitation on the theory that the Court "expressly explained that the ***claim*** does not 'require the presence of avatars.'" Dkt. 408 at 9 (emphasis added). This misstates the Order and invites plain error. The Court merely explained that it did "not read" its construction of the term "***initial scene state***" as "requir[ing] the presence of avatars."[3] The Court made no such determination about the claim as a whole, and it is incorrect to suggest as much. Dkt. 133 at 13.

In fact, Utherverse itself argued at claim construction that, because the ***claim*** requires the presence of avatars, it was not necessary for the Court to introduce an additional requirement for "avatars" within the construction of "initial scene state." Epic and Utherverse are squarely joined on this point: Claim 1 of the '605 patent unambiguously requires "playing back the recorded experience file by rendering . . . objects of the initial scene state in the new instance, ***including one or more avatars***." Ex. A at 10:48-51 (emphasis added). Claim 1 also requires "automatically transporting ***the one or more avatars*** to a different new instance of the scene." Ex. A at 10:54-55 (emphasis added). The inclusion of avatars elsewhere in the claim may be a reason to hold that the term "initial scene state" itself does not require avatars, but it is not a reason to also delete those separately recited requirements. As an analogy, imagine a claim reciting "an automobile with a retractable roof." If the court construed the term "automobile" to mean "a vehicle with four wheels and an engine," this construction of the term "automobile" would not vitiate the express claim requirement that the automobile also have "a retractable roof." A retractable roof may be an optional feature of an automobile generally, but it is not an

---

[3] Because avatars are required elsewhere in the claim, that determination comports with the claim construction principle that "interpretations of the claim language that "render some portion of the claim language superfluous are disfavored." *Power Mosfet Techs., L.L.C. v. Siemens AG*, 378 F.3d 1396, 1410 (Fed. Cir. 2004); *see also Intel Corp. v. Qualcomm Inc*., 21 F.4th 784, 792 (Fed. Cir. 2021) ("Because legal drafters should not include words that have no effect, courts avoid a reading that renders some words altogether redundant.").

1  optional element of the claim as a whole.

2    Similarly, the Court's construction did not, and could not, erase the claim's limitation

3  requiring "one or more avatars."  *See* Dkt. 133 at 13; *see also Exxon Chem. Patents, Inc. v.*

4  *Lubrizol Corp.,* 64 F.3d 1553, 1557 (Fed. Cir. 1995) (explaining that courts "must give meaning

5  to all the words in [the] claims" and cannot "disregard[]" any claim limitation).  Utherverse has

6  to prove that the accused events meet every limitation in the asserted claims to show

7  infringement.  *See, e.g.*, *Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d

8  1293, 1310 (Fed. Cir. 2005) ("Literal infringement requires that each and every limitation set

9  forth in a claim appear in an accused product."); *see also Lucent*, 525 F.3d at 1214 ("This court

10 has consistently interpreted 'including'" to mean "that the listed elements . . . are essential.").

11 Language expressly recited in the claim is not optional, and for good reason:

12       [A]llowing a patentee to argue that . . . characteristics specifically
         described in a claim are merely superfluous would render the scope
13       of the patent ambiguous, leaving examiners and the public to guess
         about which claim language the drafter deems necessary to his
14       claimed invention and which language is merely superfluous,
         nonlimiting elaboration.

15 *Bicon, Inc. v. Straumann Co.*, 441 F.3d 945, 951 (Fed. Cir. 2006).  If the Court "were to accept

16 [the patentee's] arguments, [it] would be requiring the public to look past the plain language of

17 the claims and guess whether a . . . feature in a claim is superfluous to the scope of the claimed

18 invention and unnecessary to establish infringement."  *Id.*

19    The requirement that avatars be present also comports with Utherverse's own description

20 of the purported invention.  As Utherverse's counsel explained, the purpose of the invention of

21 the '605 patent is to allow a user to "not just experience, but to interact with an event that took

22 place in the past."  Ex. B at 75:3-5.  For example, "participants of a [virtual] wedding may wish

23 to re-experience the event on their anniversary."  Ex. A at 10:05-11.  The invention permits users

24 to do this by allowing them to experience a virtual event "in substantially real time," as an

25 avatar, and then "record[]" the event—and their avatars—to "be experienced at a later time."  *Id.*

26 at 5:59-62; *see also id.* at 1:24-27 ("Each player is typically represented by an 'avatar' . . . "), *id.*

**Morrison & Foerster LLP**, 425 Market Street,
San Francisco, CA, Tel: 415-268-7000

at 6:25-26 ("Changes may be saved in response to avatar movements . . .").  The bride and groom participating in the virtual wedding might record it so that they can go back and "re-experience" the wedding on their anniversary.  *See* Ex. A at 10:08-09.  If there were no avatars, there would be no experience in the first place and no "wedding" to re-experience—just an empty wedding venue.

In short, Utherverse mischaracterizes the Order, contradicts its own prior arguments, reads out express claim language, and takes positions that are inconsistent with the purpose of the invention described in the patent itself.  Utherverse should not be permitted, on the eve of trial, to prevent Epic from presenting a non-infringement defense that is both supported by the governing law and consistent with the Court's orders.  The Court should deny the motion to exclude Epic's arguments on the "including one or more avatars" claim requirement.

### 2.    Utherverse Misstates the Court's Order on What Is a "Recorded Experience"

Utherverse also asserts that Epic's non-infringement position for "recorded experience file" contradicts the Court's construction of "recorded experience [file]": "[a file containing] a recording of a prior experience that occurred in a virtual environment."  Dkt. 408 at 9.  This is incorrect.

From the outset, Epic has maintained that the accused events were not "recorded experiences" because they were not recordings of past events, but rather "interactive, pre-programmed sequence[s] animated in real-time"—much like in any other video game.  *See, e.g.* Ex. C at 1.  Epic argued during claim construction that the "recorded experience" recited by claim 1 of the '605 patent must be a recording of a "past event[] that someone previously experienced" as opposed to "a representation of any preprogrammed scene, whether or not anyone had ever played or experienced it before."  Dkt. 72 at 19-20.  The Court agreed with Epic, citing to the portion of the prosecution history describing the invention as "allow[ing] users to participate in past events (in other words, travel back in time)," and finding that "the inventors expressly disclaimed any interpretation of 'recorded experience' that would include 'new

1   gameplay.'" Dkt. 133 at 13-14.

2        The motion now seeks to exclude a non-infringement argument that is a direct application

3   of the Court's construction.  As Epic's expert Benjamin Ellinger describes in his report, the

4   accused events were not "recording[s] of a prior experience that occurred in a virtual

5   environment because "there was no aspect of the Travis Scott and Ariana Grande concerts that

6   occurred in real time in a virtual environment and then was 'recorded' and 'played back.'"

7   Dkt. 302-1 ¶¶ 245, 248.  As Mr. Ellinger explains, "[i]nstead, every player attending every

8   different 'performance' watched the same animated sequence play from a copy of the same file."

9   *Id.*  The events thus did not involve "allow[ing] users to 'travel back in time' to 'participate in

10  past events' by replaying gameplay that previously occurred; to the contrary, each attendee was

11  engaged in new gameplay."  *Id.* at ¶ 256.  In other words, the accused events were the exact type

12  of "new gameplay" that the Court held could not be a "recorded experience."  Dkt. 133 at 13-14.

13       Epic's non-infringement position is consistent with the Court's claim construction of

14  "recorded experience" and precisely applies it.  Utherverse's motion to exclude Epic's argument

15  regarding "recorded experience file" should therefore be denied.  *See Finjan, Inc. v. Sophos, Inc.,*

16  No. 14-CV-01197-WHO, 2016 WL 4560071, at *13 (N.D. Cal. Aug. 22, 2016) (denying motion

17  to exclude where the movant could not "identify a single instance where [the] expert applies an

18  incorrect construction or relies on a component that does not" meet the Court's construction).

19  **IV.    RESPONSE TO MOTION IN LIMINE 7:  EPIC MAY ELICIT TESTIMONY
           REGARDING GREENHALGH-1 AND GREENHALGH-2**

20       Utherverse's seventh motion seeks to preclude Epic from relying on prior art references

21  Greenhalgh-1 and Greenhalgh-2 entirely, arguing there is no "admissible evidentiary testimony

22  correlating to th[eir] disclosure[s]."  Dkt. 408 at 10.  Its assertion is belied by the very same

23  excerpts it cites from the deposition testimony and expert report of Epic's expert Benjamin

24  Ellinger.  Ellinger testified during deposition that he considered Greenhalgh-1 and Greenhalgh-2

25  "as evidence that the Massive-3 system as a whole anticipates all the claims."  Dkt. 408-6

26  (Ellinger Dep.) at 496:22-498:8.  In other words, he considered them evidence of the

27

28  EPIC'S OPPOSITION TO PLAINTIFF'S            **Morrison & Foerster LLP,** 425 Market Street,
    MOTIONS IN LIMINE - 13                      San Francisco, CA, Tel: 415-268-7000
    (CASE NO. 2:21-CV-00799-RSM)

functionality of the MASSIVE-3 system that constitutes invalidating prior art.  Mr. Ellinger's

invalidity report confirms that he considered the Greenhalgh references for this purpose and

analyzes how Greenhalgh-1 and Greenhalgh-2 disclose MASSIVE-3 functionality that

anticipates and/or renders obvious the elements of each asserted claim.  *E.g.*, Dkt. 408-5

(Ellinger Invalidity Report), ¶¶ 456-58, 463-66, 468-69, 474, 478, 481, 488, 490.  He should be

permitted to offer the same testimony at trial.

The motion also argues that Mr. Greenhalgh's deposition testimony is inadmissible at

trial over a hearsay objection.  Not so.  Mr. Greenhalgh is located in the United Kingdom, well

outside the subpoena power to compel his attendance at trial.  His deposition testimony,

including his testimony that Greenhalgh-1 and Greenhalgh-2 describe functionality of the

MASSIVE-3 system publicly available before the '605 patent's priority date, is admissible over

Utherverse's hearsay objection under at least Federal Rule of Civil Procedure 32(a)(4)(B), which

permits a party to use the deposition of a witness at trial if the court finds "that the witness is

more than 100 miles from the place of the hearing or trial or is outside the United States."  *See*

*also Nationwide Life Ins. Co. v. Richards*, 541 F.3d 903, 914 (9th Cir. 2008) (holding deposition

testimony from Oregon resident admissible in Los Angeles trial under Rule 32(a)(4)(b), and that

such testimony "need not also meet the requirements for admissibility set forth in Rule

804(b)(1)").  It would be error to exclude Mr. Greenhalgh's deposition testimony.

Because Utherverse's motion seeks relief unsupported by the underlying facts and law,

the Court should deny it.

**V.  RESPONSE TO MOTION IN LIMINE 8:  EPIC MAY ELICIT TESTIMONY REGARDING CLAIM 1 AND MAY PRESENT INVALIDITY THEORIES EPIC HAS IDENTIFIED IN THIS CASE**

Utherverse's motion number 8 seeks to preclude Epic from presenting any evidence

regarding (1) the invalidity of claim 1; (2) the asserted claims being invalid for lack of

enablement because the '605 patent fails to teach that the invention works for its intended

purpose; and (3) the asserted claims being invalid as indefinite.  Dkt. 408 at 11-12.  Epic should

be allowed to present all three issues to the Court or the jury, as appropriate, and to present evidence and testimony regarding the applicable underlying facts.

*First*, Utherverse's request that the Court preclude Epic from offering evidence of invalidity of any unasserted claim is an apparent attempt to keep Epic from showing that the elements of independent claim 1 were known in the prior art as of the '605 patent's priority date. Dkt. 408 at 11.  Epic must be permitted to offer evidence that each element of claim 1 was known in the prior art, because Utherverse asserted dependent claims 2, 5, and 8, each of which incorporates the entirety of claim 1 by reference. Ex. A ('605 patent) at 10:59-62, 11:3-5, 11:11-12.  To establish invalidity of any asserted claim, Epic must be permitted to offer evidence of invalidity with respect to each element of claim 1:  for example, evidence showing those claim elements were known in the prior art.  Evidence regarding prior-art disclosure of the elements of claim 1 is also relevant to the incremental benefit (if any) that the asserted dependent claims add to claim 1.

*Second*, Utherverse asks the Court to exclude all evidence regarding lack of enablement, contending that Epic "can only rely on its Amended Answer" to justify its assertion of lack of enablement.  *Id.*  Not so.  Epic articulated its enablement theory in its interrogatory responses. Ex. D pp. 10-11, 13-14.  Utherverse did not move for summary judgment on the issue.  It remains live for trial.  Additionally, contrary to Utherverse's assertion, expert testimony is not required to establish lack of enablement.  Dkt. 408 at 11-12.  Rather, "a judge may decide the legal issue of validity unaided by expert opinion."  *Avia Grp. Int'l, Inc. v. L.A. Gear Cal., Inc.*, 853 F.2d 1557, 1562 (Fed. Cir. 1988) (citations omitted).  And lay-witness inventors may offer testimony regarding enablement and its factual underpinnings based on their personal experience even when they have not been qualified as experts.  *Union Pac. Res. Co. v. Chesapeake Energy Corp.*, 236 F.3d 684, 693 (Fed. Cir. 2001) (no abuse of discretion in trial court allowing eight inventors with significant experience in the field to provide opinions on whether the patent specification provided an enabling disclosure); *see also Convolve, Inc.*, 527 F. App'x at 930-31

EPIC'S OPPOSITION TO PLAINTIFF'S
MOTIONS IN LIMINE - 15
(CASE NO. 2:21-CV-00799-RSM)

**Morrison & Foerster LLP**, 425 Market Street,
San Francisco, CA, Tel: 415-268-7000

1    (inventor's inability to fully implement claimed method for nine years after the filing date was

2    evidence of lack of enablement).

3        Finally, Epic agrees that indefiniteness is a question of law.  Epic does not intend to

4    present theories of indefiniteness to the jury but reserves the right to seek a ruling of

5    indefiniteness from the Court.

6    Dated:  September 9, 2024              I certify that this memorandum contains 6,302 words, in
                                           compliance with the Local Civil Rules.
7

8                            By:  _____
                                              s/ Eric C. Wiener
9                                 Eric C. Wiener (*pro have vice*)
                                  EWiener@mofo.com
10                                Daralyn J. Durie (*pro hac vice*)
                                  DDurie@mofo.com
11                                Timothy C. Saulsbury (*pro hac vice*)
                                  TSaulsbury@mofo.com
12                                Bethany D. Bengfort (*pro hac vice*)
                                  BBengfort@mofo.com
13                                MORRISON & FOERSTER LLP
                                  425 Market Street
14                                San Francisco, CA 94105
                                  Telephone:    415-268-7000
15                                Facsimile:    415-268-7522

16                                Katherine E. McNutt (*pro hac vice*)
                                  KMcNutt@mofo.com
17                                MORRISON & FOERSTER LLP
                                  707 Wilshire Boulevard, Suite 6000
18                                Los Angeles, CA 90017-3543
                                  Telephone:    213-892-5200
19                                Facsimile:    213-892-5454

20                                Mark A. Lemley (*pro hac vice*)
                                  mlemley@lex-lumina.com
21                                LEX LUMINA PLLC
                                  745 Fifth Avenue, Suite 500
22                                New York, NY 10151
                                  Telephone: (646) 898-2055

23

24

25

26

27

28   EPIC'S OPPOSITION TO PLAINTIFF'S              **Morrison & Foerster LLP**, 425 Market Street,
     MOTIONS IN LIMINE - 16                        San Francisco, CA, Tel: 415-268-7000
     (CASE NO. 2:21-CV-00799-RSM)

1

Dated:  September 9, 2024       By:   _____
                                          *s/ Stevan R. Stark*

2
Stevan R. Stark (WSBA No. 39639)

3
SStark@perkinscoie.com
Antoine M. McNamara (WSBA No. 41701)

4
AMcNamara@perkinscoie.com
Christina J. McCullough (WSBA No. 47147)

5
CMcCullough@perkinscoie.com
PERKINS COIE LLP

6
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099

7
Telephone:     206-359-8000
Facsimile:      206-359-9000

8
*Attorneys for Defendant Epic Games, Inc.*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EPIC'S OPPOSITION TO PLAINTIFF'S
MOTIONS IN LIMINE - 17
(CASE NO. 2:21-CV-00799-RSM)

**Morrison & Foerster LLP**, 425 Market Street,
San Francisco, CA, Tel: 415-268-7000

1

## **CERTIFICATE OF SERVICE**

2          I hereby certify that on September 9, 2024 the within document was filed with the Clerk

3   of the Court using CM/ECF which will send notification of such filing to the attorneys of record

4   in this case.

5                                                             *s/ Eric C. Wiener*

6                                                      Eric C. Wiener (*pro hac vice*)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28   EPIC'S OPPOSITION TO PLAINTIFF'S                    **Morrison & Foerster LLP**, 425 Market Street,
     MOTIONS IN LIMINE - 18                                      San Francisco, CA, Tel: 415-268-7000
     (CASE NO. 2:21-CV-00799-RSM)