THE HONORABLE RICARDO S. MARTINEZ

THE HONORABLE THERESA L. FRICKE

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WASHINGTON

AT SEATTLE

| | |
|---|---|
| UTHERVERSE GAMING LLC,<br><br>                      Plaintiff,<br><br>  v.<br><br>EPIC GAMES, INC.,<br><br>                      Defendant. | Case No. 2:21-cv-00799-RSM-TLF<br><br>**DEFENDANT EPIC GAMES, INC.'S TRIAL BRIEF**<br><br>Trial Date:    May 12, 2025 |

Pursuant to the Court's September 11, 2024 order (Dkt. 427), Epic Games, Inc. ("Epic") respectfully submits this trial brief outlining the evidence and issues remaining for trial in Plaintiff Utherverse Gaming LLC's ("Utherverse Gaming") suit against Epic alleging infringement of U.S. Patent No. 9,724,605 (the "'605 Patent"). This brief contains: (1) an overview of the case; (2) an overview of the evidence to be presented at trial; (3) a description of issues of law that Epic anticipates may arise at the charge conference; and (4) a preview of Epic's anticipated motion seeking a judgment pursuant to Rule 50.

I.  **OVERVIEW OF THE CASE**

   A.  **Overview of the Parties**

Epic is the creator of one of the world's largest social entertainment ecosystems, *Fortnite*. *Fortnite* includes various animated virtual worlds that were developed using Epic's 3D graphics engine, Unreal Engine. Among other things, *Fortnite* allows players to attend "live" events in its virtual worlds. At issue in this case are two such events: animated events featuring music by Travis Scott and Ariana Grande. A still from the Travis Scott animated event is depicted below:

1    Utherverse Gaming purchased the '605 Patent (among others) from Utherverse Digital, Inc. ("Uthervese Digital"). Notwithstanding the similarity in their names, there is no relationship between Utherverse Gaming (which was created to purchase and own these patents) and Utherverse Digital.

### B.    Overview of the Claims and Defenses

Utherverse Gaming alleges that the Travis Scott and Ariana Grande events (the "Accused Events"), infringe claims 2, 5, and 8 of the '605 Patent (the "Asserted Claims"). Utherverse Gaming seeks damages for Epic's alleged use of the patented technology during the Accused Events.

Epic contends that the Accused Events do not infringe the Asserted Claims. Epic also contends that the Asserted Claims are invalid under 35 U.S.C §§ 101, 102, 103, and 112. In particular, Epic contends that Utherverse Gaming's positions regarding claim scope are inconsistent with respect to infringement and validity such that if the Accused Events infringe, then the Asserted Claims must also be invalid. Epic also denies that Utherverse Gaming is entitled to damages and contends that even if Epic is found liable for infringement, the amount of damages requested by Utherverse Gaming is unsupported by the evidence and governing law.

### C.    Overview of the '605 Patent

The '605 Patent is titled "Method, System, and Apparatus of Recording and Playing Back an Experience in a Virtual Worlds System." TX 1 ('605 Patent) at title. The invention claimed in the '605 Patent purports to enable users "to replay a scene that occurred in a [virtual] environment, such as a concert, a wedding, or a lecture." *Id.* at 1:38-40; *see also id.* at 10:1-11. It envisions that users might participate in events, like weddings, inside a virtual world, and that, for example, participants in virtual weddings "may wish to re-experience the event on their anniversary." *Id.* at 10:8-9.

The Asserted Claims all depend from claim 1 and incorporate claim 1's requirements. Accordingly, if the Accused Events did not practice claim 1, they cannot be found to have infringed the Asserted Claims. Claim 1 is shown below, annotated to highlight the claim elements that the parties may focus on at trial.

> What is claimed is:
> 1. A method of playing back a recorded experience in a virtual worlds system, comprising:
> instantiating, using one or more processors of a server, a new instance of a scene, the new instance being defined by data stored in memory, at least one client device displaying and participating in the new instance;
> retrieving a recorded experience file from the memory, the recorded experience file having been generated by saving an initial scene state and saving subsequent changes and respective times during a time period of the recorded experience;
> playing back the recorded experience file by rendering, for display by the at least one client device, objects of the initial scene state in the new instance, including one or more avatars, and rendering updates to the initial scene state based on the subsequent changes over the time period; and
> automatically transporting the one or more avatars to a different new instance of the scene, upon occurrence of a threshold event, wherein the threshold event comprises when a maximum capacity of avatars has been reached in the new instance of the scene.

The Court has construed several terms that appear in claim 1, including:

| Term | Construction |
|---|---|
| Avatar | A computer-generated figure in a virtual environment that represents and is operated by a human player. Dkt. 133 at 3, 10-11. |
| Initial Scene State | Scene state information, including at least a position and orientation of objects, including avatars, rendered in the scene at a beginning of a time period of a new recording of a scene. Dkt. 133 at 3, 13. |
| Recorded Experience [File] | [A file containing] a recording of a prior experience that occurred in a virtual environment. Dkt. 133 at 3, 13-14. |

## II. OVERVIEW OF THE EVIDENCE

### A. Evidence Regarding Infringement

Utherverse Gaming bears the burden of proving infringement by a preponderance of the evidence. Epic will show that the Accused Events did not practice at least three claim requirements: (1) "retrieving" and "playing back" a "recorded experience file"; (2) "playing back the recorded experience file by rendering . . . objects of the initial scene state in the new instance, including one or more avatars"; and (3) "automatically transporting the one or more avatars to a different new instance of the scene."

#### 1. "Recorded Experience File"

The core facts are undisputed. The figures of Travis Scott and Ariana Grande were animated using a tool called the Unreal Engine Sequencer. Those animations were, of course, created prior to the events, and the animation sequence files (along with the rest of the animated game world) were played several times (reflecting the multiple "show times" for the events). Epic will show that the animations in the Accused Events were not recordings of a prior experience that occurred in a virtual environment and thus are not a "recorded experience file" as construed by the Court. There was no experience in a virtual environment until the animations were played as part of the Accused Events, and Epic did not record those events or the experiences that took place within them.

#### 2. "Objects . . . Including One or More Avatars"

The core facts related to the "one or more avatars" claim requirement are also undisputed. In particular, the claims require "playing back the recorded experience file by rendering objects . . . including one or more avatars." But it is undisputed that the Travis Scott and Ariana Grande animation sequence files did not contain "avatars" under the Court's construction of the term "avatar." Specifically, none of the objects generated from the Travis Scott and Ariana Grande

animation sequence files, including the figures of Travis Scott and Ariana Grande, were "operated by a human player," as required by the Court's construction of the term "avatar."[1]  Epic will show that playing the animation sequence files during the Accused Events did not involve rendering any "avatars."  Thus, the Accused Events did not meet the claim requirement for "playing back the recorded experience file by rendering objects . . . including one or more avatars."

### 3.    "Automatically Transporting the One or More Avatars"

The claims further require "automatically transporting the one or more avatars to a different new instance of the scene."  Epic will show that, even if the *Fortnite* lobby menu Utherverse Gaming accuses could be considered a "scene" from which avatars are "transport[ed]" (it is not), the *Fortnite* lobby menu is not the same "scene" as the *Fortnite* island where the Accused Events occurred.  Epic will further show that no player "avatars" were "transport[ed]" (or could have been transported) from one instance of the *Fortnite* island to a different instance of the *Fortnite* island during the Accused Events.  The evidence will therefore show that no "avatars" were "rendere[d] . . . in [a] new instance" of a scene and then "automatically transported . . . to a different new instance of the scene" as required by the Asserted Claims.

### B.    Evidence Regarding Invalidity

Epic bears the burden of proving invalidity by clear and convincing evidence.  Epic will show that, particularly if the jury accepts Utherverse Gaming's contentions regarding the scope of the claims for infringement, then multiple prior-art references anticipate and/or render obvious the

---

[1] Under the Court's construction, "avatars" would include the characters that players operated in *Fortnite* to watch the Accused Events. Dkt. 133 at 3, 11 (construing the term "avatar" to mean "a computer-generated figure in a virtual environment that represents and is operated by a human player").  These are distinct from "mannequins" like Ariana Grande and Travis Scott, which are animated figures that are not player-controlled.  While player avatars appeared on the *Fortnite* island to watch the Accused Events, they were not generated from the Travis Scott and Ariana Grande animation sequence files.

Asserted Claims under 35 U.S.C §§ 102 and 103. This prior art includes system references (the video games StarCraft II and MASSIVE-3) as well as written prior art (the patents and patent application referred to as "Sony," "Miura," and "Brook").

Epic will also provide evidence that the Asserted Claims are invalid based on deficiencies in the claims and the patent's written description. Epic will provide evidence that the patent does not include instructions or technical details that would inform a person of ordinary skill in the art how to implement the claimed method—including, for example, the requirement that the "avatars" from the "recorded experience file" are "automatically transport[ed]" to a different new instance of the scene in the virtual world. Epic will contend that the lack of technical detail and instruction means that the claims are invalid under 35 U.S.C. §§ 101 and 112.

### C. Evidence Regarding Damages

Utherverse Gaming bears the burden of proving the amount of damages by a preponderance of the evidence. Utherverse Gaming will contend that Epic should pay 15% of the revenue it received from sales related to the Accused Events, relying on a license agreement between different parties for an unrelated patent (the "Ephere License").

Epic will provide evidence that the Ephere license is not comparable to a license between Epic and Utherverse Digital for the '605 Patent. Epic will provide evidence that the Ephere license (which was a license to a hair-and-fur animation company for a patent covering a hair-and-fur animation tool) involved different parties and different technology. Epic will also provide evidence that the form of the Ephere license (a percentage royalty) is inconsistent with the lump-sum payment that both Epic and Utherverse Gaming employed in every single patent license or acquisition either party has ever entered into. Epic will further provide evidence that the licenses and acquisitions actually entered into by the parties—including one in which the '605 Patent itself was offered for sale—are much more relevant data points for damages and involved payments that

were orders of magnitude smaller. Finally, Epic will provide evidence that a payment of 15% of Epic's revenue from the events is unreasonable in light of the substantial effort Epic, and the artists, put into creating and hosting the Accused Events.

### III. ISSUES OF LAW FOR THE CHARGE CONFERENCE

In view of the parties' disputes regarding jury instructions, Epic anticipates that the following issue may arise at the charge conference: whether the jury should be instructed that it can only rely on license agreements that are economically and technologically comparable.

As Epic previewed above, one of the primary issues related to damages is whether the Ephere license is economically and technologically comparable to a hypothetical license between Utherverse Gaming and Epic for the '605 Patent. *See supra* section II(C). Under Federal Circuit law, a prior license used to establish a quantum of damages must be "sufficiently comparable for evidentiary purposes and any differences in circumstances must be soundly accounted for." *Elbit Sys. Land & C4I Ltd. v. Hughes Network Sys., LLC*, 927 F.3d 1292, 1299 (Fed. Cir. 2019); *see also Apple Inc. v. Wi-LAN Inc.*, 25 F.4th 960, 971 (Fed. Cir. 2022) ("When relying on comparable licenses to prove a reasonable royalty, we require a party to account for differences in the technologies and economic circumstances of the contracting parties."). If the license is not comparable, or there is insufficient evidence to account for any differences in circumstances, then the license cannot be used as a basis for awarding damages. *Id.*; *see also Adasa Inc. v. Avery Dennison Corp.*, 55 F.4th 900, 915 (Fed. Cir. 2022); *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 873 (Fed. Cir. 2010); *CEMCO, LLC v. KPSI Innovations, Inc.*, No. C23-0918JLR (W.D. Wash. Dec. 6, 2024).

The Ephere license is Utherverse Gaming's primary evidence regarding damages. Whether it is a proper basis for a damages award is of critical importance to this case. Accordingly, Epic requests that the Court give the jury the special instruction on comparable licenses attached hereto

as Exhibit A.[2]  The special instruction makes clear that although the jury can rely on existing license agreements to determine a reasonable royalty, it can only rely on agreements that: (1) relate to comparable technology; and (2) arose from circumstances that are economically comparable to the hypothetical negotiation.  The special instruction also informs the jury that, to the extent that there is an evidentiary basis for comparability, the jury must make adjustments to account for any technological or economic differences.

## IV.  ISSUES OF LAW FOR A RULE 50 MOTION

Epic anticipates that, at the close of Plaintiff's case, there will be insufficient evidence for the jury to find that Epic infringes the Asserted Claims on each of the following three independent grounds: (1) the Accused Events did not contain " a "recorded experience file"; (2) the Accused Events did not "play[] back" the "recorded experience file" by "rendering . . . objects of the initial scene state in [a] new instance [of a scene], including one or more avatars"; and (3) the Accused Events did not "automatically transport[] the one or more avatars to a different new instance of the scene."  Accordingly, Epic anticipates bringing a Rule 50 motion requesting that the Court enter judgment of non-infringement for each of these three grounds.

Dated:  April 21, 2025

I certify that this memorandum contains 4,159 words, in compliance with the Local Civil Rules.

By:   /s/ Daralyn J. Durie
Daralyn J. Durie (*pro hac vice*)
DDurie@mofo.com
Timothy C. Saulsbury (*pro hac vice*)
TSaulsbury@mofo.com
Eric C. Wiener (*pro have vice*)
EWiener@mofo.com
Sara Doudar (*pro hac vice*)

---

[2] This instruction has also been submitted with the parties' joint proposed jury instructions as Instruction No. 24A.

SDoudar@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105
Telephone:    415-268-7000
Facsimile:    415-268-7522

Katherine E. McNutt (*pro hac vice*)
KMcNutt@mofo.com
MORRISON & FOERSTER LLP
707 Wilshire Boulevard, Suite 6000
Los Angeles, CA 90017-3543
Telephone:    213-892-5200
Facsimile:    213-892-5454

Bethany D. Bengfort
bengfort@turnerboyd.com
Turner Boyd Seraphine LLP
155 Bovet Road, Suite 600
San Mateo, CA  94402
Telephone:    650-529-4752

Mark A. Lemley (*pro hac vice*)
mlemley@lex-lumina.com
LEX LUMINA PLLC
745 Fifth Avenue, Suite 500
New York, NY 10151
Telephone: (646) 898-2055

Dated: April 21, 2025          By:    */s/ Steven R. Stark*
                                      Steven R. Stark (WSBA No. 39639)
                                      astark@perkinscoie.com
                                      Antoine M. McNamara (WSBA No. 41701)
                                      AMcNamara@perkinscoie.com
                                      Christina J. McCullough (WSBA No. 47147)
                                      CMcCullough@perkinscoie.com
                                      PERKINS COIE LLP
                                      1201 Third Avenue, Suite 4900
                                      Seattle, WA 98101-3099
                                      Telephone:    206-359-8000
                                      Facsimile:    206-359-9000

                                      *Attorneys for Defendant Epic Games, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on April 21, 2025 the within document was filed with the Clerk of the Court using CM/ECF which will send notification of such filing to the attorneys of record in this case.

*/s/ Daralyn Durie*
Daralyn Durie