THE HONORABLE RICARDO S. MARTINEZ

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WASHINGTON

AT SEATTLE

| | |
|---|---|
| UTHERVERSE GAMING LLC, | Case No. 2:21-cv-00799-RSM |
| Plaintiff, | |
| v. | **JOINT STATEMENT OF DISPUTED FINAL JURY INSTRUCTIONS** |
| EPIC GAMES, INC., | |
| Defendant. | |

1

## TABLE OF CONTENTS

2   DISPUTED Final Instruction No. 11 – Interpretation of Claims (PROPOSED BY

3        UTHERVERSE) .................................................................................................... 1

4   DISPUTED Final Instruction No. 11 – Interpretation of Claims (PROPOSED BY EPIC) ........... 3

5   DISPUTED Final Instruction No. 13 – Infringement (PROPOSED BY UTHERVERSE) ........... 5

6   DISPUTED Final Instruction No. 13 - Infringement (PROPOSED BY EPIC) ............................ 7

7   DISPUTED Final Instruction No. 13A – Order of Steps in a Method Claim (PROPOSED

8        BY UTHERVERSE).............................................................................................. 9

9   NEW Instruction No. 13B – Interpretation of Claims, Cont. of Instruction No. 11

10        (PROPOSED BY UTHERVERSE)....................................................................... 9

11  DISPUTED Final Jury Instruction No. 13A – Antecedent Basis (PROPOSED BY EPIC) ......... 11

12  DISPUTED Final Instruction No. 23 – Reasonable Royalty – Definition (PROPOSED BY

13        UTHERVERSE) .................................................................................................. 13

14  DISPUTED Final Instruction No. 23 – Reasonable Royalty  - Definition (PROPOSED BY

15        EPIC).................................................................................................................... 18

16  *PLAINTIFF'S NOTE ON* Final Instruction No. 24 – Damages – Apportionment ..................... 21

17  DISPUTED Final Instruction No. 24A – Damages – Comparable Agreements

18        (PROPOSED BY UTHERVERSE)....................................................................... 22

19  DISPUTED Final Instruction No. 24A – Damages – Comparable Agreements

20        (PROPOSED BY EPIC) ....................................................................................... 24

21  DISPUTED Final Instruction No. 25 – Glossary of Patent Terms (PROPOSED BY

22        UTHERVERSE) .................................................................................................. 26

23  DISPUTED Final Instruction No. 25 – Glossary of Patent Terms (PROPOSED BY EPIC)....... 28

24

25

26



**DISPUTED Final Instruction No. 11 – Interpretation of Claims (PROPOSED BY UTHERVERSE)**

Before you decide whether Epic Games has infringed the asserted claims of the patent or whether those claims are invalid, you will need to understand the patent claims. As I mentioned at the beginning of the case, the patent claims are numbered sentences at the end of the patent that describe the boundaries of the patent's protection. It is my job as judge to explain to you the meaning of any language in the asserted claims that needs interpretation.

I have interpreted the meaning of some of the language in the patent claims involved in this case. You must accept those interpretations as correct. My interpretation of the language should not be taken as an indication that I have a view regarding the issues of infringement and invalidity. The decisions regarding infringement and invalidity are yours to make.

For purposes of the '605 Patent, the following terms have the following meanings:

| Claim Term | Meaning |
|---|---|
| "avatar" <br><br> (claims 1, 2) | A computer-generated figure in a virtual environment that represents and is operated by a human player. |
| "initial scene state" <br><br> (claim 1) | The initial scene state includes at least a position and orientation of objects, including avatars, rendered in the scene at a beginning of a time period of a new recording of a scene. The presence of avatars is not required; avatars may simply be included. |
| "recorded experience [file]" <br><br> (claims 1, 2, 5) | [A file containing] a recording of a prior experience that occurred in a virtual environment. |

For a claim term for which I have not provided a definition, you should apply the plain and ordinary meaning.

You must use the same claim meaning for both your decision on infringement and your decision on invalidity.

Source: N.D. Cal. Model Patent Jury Instruction No. B.2.1 (modified); *see also id.* at Instruction No. A.3; AIPLA Model Patent Jury Instruction No. 2.0; Final Jury Instructions at 18, *NXP USA, Inc. v. Impinj, Inc.*, No. 2:20-cv-01503-JHC (W.D. Wash. June 21, 2023). October 20, 2022 Order re: Claims Construction, Dkt. 133.

JOINT STATEMENT OF DISPUTED FINAL JURY
INSTRUCTIONS - 1
CASE NO. 2:21-CV-00799-RSM

POLSINELLI
1000 SECOND AVENUE, SUITE 3500
SEATTLE, WA 98104 • Tel: 206-393-5400

**Plaintiff's Position:**

Plaintiff's proposed instruction directly addresses the construction and the full context of the Court's order. Defendant's own trial brief expressly puts the Court on notice that it intends to misrepresent the full context of the Court's order including an intentional omission reflected by an ellipse. Defendant's trial brief further reflects its planned attempt to take advantage of certain of the Court's motion in limine decision that otherwise prohibit a further discussion of the Court's reasoning while Defendant misrepresents the same. Plaintiff's proposed instruction prevents Defendant from misrepresenting the full context of the claim construction without an end around of the Court's MIL decisions. The instruction is required to prevent that misrepresentation or a modification of the Court's MIL decisions are otherwise required.

JOINT STATEMENT OF DISPUTED FINAL JURY
INSTRUCTIONS - 2
CASE NO. 2:21-CV-00799-RSM

POLSINELLI
1000 SECOND AVENUE, SUITE 3500
SEATTLE, WA 98104 • Tel: 206-393-5400

**DISPUTED Final Instruction No. 11 – Interpretation of Claims (PROPOSED BY EPIC)**

Before you decide whether Epic Games has infringed the asserted claims of the patent or whether those claims are invalid, you will need to understand the patent claims. As I mentioned at the beginning of the case, the patent claims are numbered sentences at the end of the patent that describe the boundaries of the patent's protection. It is my job as judge to explain to you the meaning of any language in the asserted claims that needs interpretation.

I have interpreted the meaning of some of the language in the patent claims involved in this case. You must accept those interpretations as correct. My interpretation of the language should not be taken as an indication that I have a view regarding the issues of infringement and invalidity. The decisions regarding infringement and invalidity are yours to make.

For purposes of the '605 Patent, the following terms have the following meanings:

| Claim Term | Meaning |
|---|---|
| "avatar"<br><br>(claims 1, 2) | A computer-generated figure in a virtual environment that represents and is operated by a human player. |
| "initial scene state"<br><br>(claim 1) | Scene state information, including at least a position and orientation of objects, including avatars, rendered in the scene at a beginning of a time period of a new recording of a scene. |
| "recorded experience [file]"<br><br>(claims 1, 2, 5) | [A file containing] a recording of a prior experience that occurred in a virtual environment. |

For a claim term for which I have not provided a definition, you should apply the plain and ordinary meaning.

You must use the same claim meaning for both your decision on infringement and your decision on invalidity.

Source: N.D. Cal. Model Patent Jury Instruction No. B.2.1 (modified); *see also id.* at Instruction No. A.3; AIPLA Model Patent Jury Instruction No. 2.0; Final Jury Instructions at 18, *NXP USA, Inc. v. Impinj, Inc.*, No. 2:20-cv-01503-JHC (W.D. Wash. June 21, 2023). October 20, 2022 Order re: Claims Construction, Dkt. 133.

JOINT STATEMENT OF DISPUTED FINAL JURY
INSTRUCTIONS - 3
CASE NO. 2:21-CV-00799-RSM

**POLSINELLI**
1000 SECOND AVENUE, SUITE 3500
SEATTLE, WA 98104 • Tel: 206-393-5400

**Defendant's Position:**

Utherverse's position statement seeks to resurrect an argument the Court already rejected. The Court's order on motions *in limine* stated that "it intends to present to the jury **only the constructions adopted by the Court** and will not provide a copy of its Orders or permit witnesses to discuss the reasoning of Orders." ECF No. 431 at 6 (emphasis added). During claim construction, the Court adopted Epic's proposed construction of "initial scene state," as set forth verbatim in Epic's proposed instruction. ECF No. 133 at 3, 13. Utherverse's proposal contravenes this order by attempting to insert a paraphrased excerpt from the Court's reasoning within the construction of "initial scene state." Epic's proposal, by contrast, tracks the Court's construction of "initial scene state" verbatim. *See id*.

Consistent with the Court's construction, Epic does not intend to argue that the claim term "initial scene state" requires the inclusion of an avatar. Rather, and as Utherverse itself acknowledged during claim construction, other language in claim 1 expressly requires "rendering for display by the at least one client device, objects of the initial scene state in the new instance, **including one or more avatars**." '605 patent, claim 1; Dkt. 301-7 at 86:15-19 ("because the recitation of the avatar actually appears in the claim, [] having it be part of [both] the construction [of initial scene state] and [] the claim would actually make it redundant and repetitive").

Utherverse's proposal should also be rejected because it risks confusing the jury. The agreed preliminary instructions inform the jury that jurors will be given a document containing only the Court's claim constructions. *See* Prelimin. Instr. No. 4. Utherverse seeks to include a *new* construction in the final jury instructions that was not adopted by the Court and differs from the constructions in the document to be presented to the jury during preliminary instructions. *Vaporstream, Inc. v. Snap Inc.*, No. 2:17-cv-00220-MLH (KSx), 2020 WL 978731, at *10 (C.D. Cal. Feb. 28, 2020) ("in general, the parties should be precluded from referencing the Court's prior rulings and orders other than the Court's claim constructions due to the substantial risk of confusing and misleading the jury."). The Court should adopt Epic's proposal.

JOINT STATEMENT OF DISPUTED FINAL JURY
INSTRUCTIONS - 4
CASE NO. 2:21-CV-00799-RSM

POLSINELLI
1000 SECOND AVENUE, SUITE 3500
SEATTLE, WA 98104 • Tel: 206-393-5400

**DISPUTED Final Instruction No. 13 – Infringement (PROPOSED BY UTHERVERSE)**

A patent's claims define what is covered by the patent.  A method infringes a patent if it is covered by at least one claim of the patent.

Deciding whether a claim has been infringed is a two-step process.  The first step is to decide the meaning of the patent claim.  I have already made this decision, and I have already instructed you as to the meaning of the asserted patent claims.  The second step is to decide whether Epic Games has used a method covered by an asserted claim of the '605 Patent when it  created and implemented the Travis Scott and Ariana Grande Events.  If it has, it infringes.  You, the jury, make this decision.

Asserted claims 2, 5, and 8 are what are known as dependent claims that depend from independent claim 1.  A dependent claim includes all of the requirements of a particular independent claim, plus additional requirements of its own.  As a result, if you find that an independent claim is not infringed, you must also find that its dependent claims are not infringed.  On the other hand, if you find that an independent claim has been infringed, you must still separately decide whether the additional requirements of its dependent claims have also been infringed.

Whether or not Epic Games knew its method infringed or even knew of the '605 Patent does not matter in determining infringement.

To decide whether Epic Games infringes an asserted claim of the '605 Patent, you must compare Epic Games' actions in creating and implementing the accused events with the patent claim and determine whether Epic Games practiced every requirement of the asserted claim.  If so, Epic Games infringes that claim.  If, however, Epic Games did not practice every requirement in the asserted patent claim in creating and implementing the accused events, Epic Games does not infringe that claim.  You must decide infringement for each of asserted claims 2, 5, and 8 separately.

POLSINELLI
1000 SECOND AVENUE, SUITE 3500
SEATTLE, WA 98104 • Tel: 206-393-5400

If the patent claim uses the term "comprising," that patent claim is to be understood as an open claim.  An open claim is infringed as long as Epic practiced every requirement in the claim in creating and implementing the accused events.

The fact that Epic may have taken additional steps or that Epic's method includes other steps in offering the Travis Scott Virtual Events and Ariana Grande Virtual Events will not avoid infringement, so long as it performed every requirement in the asserted patent claim.

Source:  N.D. Cal. Model Patent Jury Instruction Nos. B.3.2 (modified), B.3.3 (modified).

**Plaintiff's Position:**

The model patent jury instruction that both Plaintiff and Defendant cite for this instruction recites verbatim the language Plaintiff proposes in the third paragraph of the instruction:  "As a result, if you find that an independent claim is not infringed, you must also find that its dependent claims are not infringed.  On the other hand, if you find that an independent claim has been infringed, you must still separately decide whether the additional requirements of its dependent claims have also been infringed."  The model instruction does not bracket the words "independent claim" or "dependent claims," thus, the model intends that the court use the terms "independent claim" and "dependent claim" rather than substitute the claim number of the asserted claims.

Further, both the beginning of the third paragraph and the end of the fifth paragraph of this instruction identifies the dependent claims as 2, 5, and 8.  There is no need to modify the "an independent claim" and the "its dependent claims" language because there is no ambiguity in the instruction.

Plaintiff requests that the Court read the instruction as it is written in the model.

**DISPUTED Final Instruction No. 13 - Infringement (PROPOSED BY EPIC)**

A patent's claims define what is covered by the patent. A method infringes a patent if it is covered by at least one claim of the patent.

Deciding whether a claim has been infringed is a two-step process. The first step is to decide the meaning of the patent claim. I have already made this decision, and I have already instructed you as to the meaning of the asserted patent claims. The second step is to decide whether Epic Games has used a method covered by an asserted claim of the '605 Patent when it created and implemented the Travis Scott and Ariana Grande Events. If it has, it infringes. You, the jury, make this decision.

Asserted claims 2, 5, and 8 are what are known as dependent claims that depend from independent claim 1. A dependent claim includes all of the requirements of a particular independent claim, plus additional requirements of its own. As a result, if you find that claim 1 is not infringed, you must also find that claims 2, 5, and 8 are not infringed. On the other hand, if you find that claim 1 has been infringed, you must still separately decide whether the additional requirements of its dependent claims 2, 5, and 8 have also been infringed.

Whether or not Epic Games knew its method infringed or even knew of the '605 Patent does not matter in determining infringement.

To decide whether Epic Games infringes an asserted claim of the '605 Patent, you must compare Epic Games's actions in creating and implementing the accused events with the patent claim and determine whether Epic Games practiced every requirement of the asserted claim. If so, Epic Games infringes that claim. If, however, Epic Games did not practice every requirement in the asserted patent claim in creating and implementing the accused events, Epic Games does not infringe that claim. You must decide infringement for each of asserted claims 2, 5, and 8 separately.

If the patent claim uses the term "comprising," that patent claim is to be understood as an open claim. An open claim is infringed as long as Epic Games practiced every requirement in the claim in creating and implementing the accused events.

JOINT STATEMENT OF DISPUTED FINAL JURY
INSTRUCTIONS - 7
CASE NO. 2:21-CV-00799-RSM

**POLSINELLI**
1000 SECOND AVENUE, SUITE 3500
SEATTLE, WA 98104 • Tel: 206-393-5400

The fact that Epic Games may have taken additional steps or that Epic Games's method includes other steps in hosting the accused events will not avoid infringement, so long as it performed every requirement in the asserted patent claim.

Source:  N.D. Cal. Model Patent Jury Instruction Nos. B.3.2 (modified), B.3.3 (modified).

**<u>Defendant's Position</u>**:

The primary dispute between the parties is whether the jury instruction should identify, by number, the specific independent and dependent claims at issue in this case when reciting the law relevant to those claims.  Epic's proposal identifies claim 1 as independent and claims 2, 5, and 8 as dependent—an undisputed proposition that clarifies for the jury how the law applies to each of the claims.  Utherverse's proposal refers to the law's application to the "independent claim" and "dependent claims" in the abstract, needlessly complicating the instruction and obfuscating which parts of the instruction apply to which of the specific claims at issue.

In particular, Epic's proposal instructs the jury that if it finds independent claim 1 not infringed, it must find that dependent claims 2, 5, and 8 also are not infringed.  Epic's proposal also instructs the jury that if it finds independent claim 1 has been infringed, it must still separately decide whether the additional requirements of dependent claims 2, 5, and 8 are met.  While Utherverse and Epic agree on these statements of law, Utherverse's proposal does not identify the specific asserted claims to which those statements apply.  Utherverse's instruction might be appropriate in a situation involving potential infringement of multiple sets of dependent and independent claims.  But here, with just one independent claim and one set of dependent claims, there is no reason for the Court not to provide maximum clarity to the jury regarding requirements for finding infringement of the specific asserted claims.

JOINT STATEMENT OF DISPUTED FINAL JURY
INSTRUCTIONS - 8
CASE NO. 2:21-CV-00799-RSM

POLSINELLI
1000 SECOND AVENUE, SUITE 3500
SEATTLE, WA 98104 • Tel: 206-393-5400

**DISPUTED Final Instruction No. 13A – Order of Steps in a Method Claim (PROPOSED BY UTHERVERSE)**

Although a method claim necessarily recites the steps of the method in a particular order, as a general rule the claim is not limited to performance of the steps in the order recited, unless the claim explicitly or implicitly requires a specific order. A claim with many steps can be infringed by an accused method performing the claimed steps in any order. The sequence in which such steps are written is not a requirement.

Source: Baldwin Graphic Sys., Inc. v. Siebert, Inc., 512 F.3d 1338, 1345 (Fed. Cir. 2008); *TALtech Ltd. v. Esquel Apparel, Inc.*, 279 F. App'x 974, 975 (Fed. Cir. 2008); *Altiris v. Symantec Corp.*, 318 F.3d 1363, 1370 (Fed. Cir. 2003).

**NEW Instruction No. 13B – Interpretation of Claims, Cont. of Instruction No. 11 (PROPOSED BY UTHERVERSE)**

Although a single claim term should be construed consistently with its appearance in other places in the same claim or in other claims of the same patent, the patentee's mere use of a term with an antecedent does not require that both terms have the same meaning. "A" or "an" in patent parlance carries the meaning of "one or more" in open-ended claims containing the transitional phrase "comprising." That "a" or "an" can mean "one or more" is best described as a rule, rather than merely as a presumption or even a convention.

Source: Microprocessor Enhancement Corp. v. Tex. Instruments Inc., 520 F.3d 1367, 1375 (Fed. Cir. 2008); Rexnord Corp. v. Laitram Corp., 274 F.3d 1336, 1342 (Fed. Cir. 2001); Baldwin Graphic Sys. v. Siebert, Inc., 512 F.3d 1338, 1342-1343 (Fed. Cir. 2008)

**Plaintiff's Position:**

Utherverse's Proposed 13A should be read to the jury because Epic intends to present arguments regarding an order of steps in a method claim, which arguments are refuted by Federal Circuit law. Epic's trial brief shows that it intends to argue to the jury that in order to infringe, the accused events must perform the steps of the asserted patent claims in a particular order. *See e.g.*

Dkt. 446:5:7-15.  But the Federal Circuit has held that "as a general rule [a method] claim is *not limited to performance of the steps in the order recited*, unless the claim explicitly or implicitly requires a specific order."  *Baldwin Graphic Sys., Inc. v. Siebert, Inc.*, 512 F.3d 1338, 1345 (Fed. Cir. 2008) (emphasis added).  Moreover, Epic's expert Ellinger purports to state the law as to an order of steps in his expert report.  *See* May 12, 2023 Report at ¶ 24.  Leaving aside the fact that an expert should not be testifying as to the law, his stated "understand[ing]" of the law is misleading at best.  The jury should be properly instructed as to the law pursuant to Federal Circuit authority.

Epic's Proposed 13A is improper and incomplete.  Epic's 13A is presented as a bright-line rule regarding the use of a term with an antecedent.  But in *Microprocessor*, the Federal Circuit made clear that there is no such bright line rule.  In order to compromise on this issue, Utherverse accepts that Epic's 13A may be read to the jury so long as the Court also reads Utherverse's Proposed 13B (the first sentence of which is based on the Federal Circuit authority in *Microprocessor*).  Epic's 13A is also incomplete and divorced from context.  Epic appears to have copied this one-sentence instruction from a lengthy W.D. Tex. trial court instruction, without citation to any binding or persuasive authority.  The *full* W.D. Tex. instruction spans three pages and is captioned "Patent Claims"—not antecedent basis.  More importantly, Epic did not include a necessary counterpart to this instruction, which was addressed in the very paragraph of the W.D. Tex. instruction from which Epic copied its proposal and is based on binding Federal Circuit authority.  To compromise, Utherverse accepts that Epic's 13A may be read to the jury as part of Instruction 11 (which is the analog to the "Patent Claims" instruction from the Western District), so long as the Court also reads the necessary counterpart, as proposed in Utherverse's Proposed 13B.  Epic's Proposed 13A, coupled with Utherverse's Proposed 13B, *together* constitute a more complete statement of the relevant law and incorporates binding Federal Circuit authority.

JOINT STATEMENT OF DISPUTED FINAL JURY
INSTRUCTIONS - 10
CASE NO. 2:21-CV-00799-RSM

POLSINELLI

1000 SECOND AVENUE, SUITE 3500
SEATTLE, WA 98104 • Tel: 206-393-5400

**DISPUTED Final Jury Instruction No. 13A – Antecedent Basis (PROPOSED BY EPIC)**

The use of the term "the" has a special meaning in the context of a patent such that when a patent claim term uses "the" to introduce a claim element, the term "the [element]" means "the same particular [element] that the claim previously introduced as "a" or "an" or "one" [element]."

Source: Final Jury Instruction No. 2.15, *Identity Security LLC v. Apple Inc.*, No. 1:22-cv-00058-ADA (W.D. Tex. Oct. 4, 2024) (ECF No. 297).

**Defendant's Position:**

The parties dispute how to instruct the jury regarding the order of steps in a method claim. Epic's proposal accounts for how the principle of antecedent basis and the logic and grammar of the asserted claim language, constrains the order of the steps in claim 1. The general propositions set forth in Utherverse's proposed Instructions 13A-B have no place in this case.

First, the language of claim 1 requires that its method steps be performed in a specific order. The final step of claim 1 recites "automatically transporting *the* one or more avatars" that are first recited (and rendered) in the third step of the claim, which requires "playing back the recorded experience file by rendering . . . one or more avatars." Because the avatars cannot be transported before they have been rendered, the claim language dictates that the "automatically transporting" step occur after the "playing back" step. It would be error to provide the jury an instruction that would allow a contrary conclusion.

Utherverse's cited cases support Epic's proposal: Courts "will find that [a] claim requires an ordering of steps when the claim language, as a matter of logic or grammar, requires that the steps be performed in the order written." *TALtech Ltd. v. Esquel Apparel, Inc.*, 279 F. App'x 974, 978 (Fed. Cir. 2008); *see also Baldwin Graphic Sys., Inc. v. Siebert, Inc.*, 512 F.3d 1338, 1345 (Fed. Cir. 2008) (method claim language may "explicitly or implicitly require[] a specific order"). In *TALtech*, "[t]he logic and grammar of the claim mad[e] the requirement of an order clear" that a step reciting "folding the first garment component over . . . an upper surface of *the* bonding element" had to occur after a step reciting "placing *a* bonding element . . . ." *Id.* at 978 (emphases

added).  Similarly, the claims in *Baldwin* required that a method step for "saturating *said* reduced air content cleaning fabric" must be performed after a step for "reducing air content . . . to form *a* strip of reduced air cleaning fabric."  512 F.3d at 1341, 1345 (emphases added).

Second, whether "a" means "one" or "one or more" (addressed by Utherverse's 13B) is irrelevant here, where no live issue turns on whether any claim term is singular or plural, and providing Plaintiff's proposed instruction would confuse the jury.  The Court should therefore give Epic's proposed antecedent-basis instruction.

Epic proposes this instruction as an alternative to Utherverse's standalone proposal on claim ordering (which appears untethered to any prior jury instruction that has been given).  Epic would not object to the Court including Epic's proposal as part of Instruction No. 11.

POLSINELLI
1000 SECOND AVENUE, SUITE 3500
SEATTLE, WA 98104 • Tel: 206-393-5400

**DISPUTED Final Instruction No. 23 – Reasonable Royalty – Definition (PROPOSED BY UTHERVERSE)**

A royalty is a payment made to a patent holder in exchange for the right to make, use or sell the claimed invention. This right is called a "license." A reasonable royalty is the payment for the license that would have resulted from a hypothetical negotiation between the patent holder, at the time, Utherverse Digital, and the alleged infringer Epic Games taking place at the time when the infringing activity first began. In considering the nature of this negotiation, you must assume that both sides would have acted reasonably and would have entered into a license agreement. You must also assume that both parties believed the patent was valid and infringed. Your role is to determine what the result of that negotiation would have been. The test for damages is what royalty would have resulted from the hypothetical negotiation and not simply what either party would have preferred.

A royalty can be calculated in several different ways and it is for you to determine which way is the most appropriate based on the evidence you have heard. You should consider all the facts known and available to the parties at the time the infringement began. Some of the factors you may consider in making your determination include the following:

*[FACTORS TO BE READ TO THE JURY WILL BE DETERMINED BY TESTIMONY]*

(1)    The value that the claimed invention contributes to the accused events.

(2)    The value that factors other than the claimed invention contribute to the accused events.

(3)    Comparable license agreements, such as those covering the use of the claimed invention or similar technology.

(4)    Any royalties received by the licensor for the licensing of the patent-in-suit, proving or tending to prove an established royalty.

(5)    The rates paid by [the Defendant] to license other patents comparable to the [abbreviated patent number] patent.

JOINT STATEMENT OF DISPUTED FINAL JURY
INSTRUCTIONS - 13
CASE NO. 2:21-CV-00799-RSM

**POLSINELLI**
1000 SECOND AVENUE, SUITE 3500
SEATTLE, WA 98104 • Tel: 206-393-5400

(6)    The nature and scope of the license, as exclusive or non-exclusive, or as restricted or non-restricted in terms of its territory or with respect to whom the manufactured product may be sold.

(7)    The licensor's established policy and marketing program to maintain its right to exclude others from using the patented invention by not licensing others to use the invention, or by granting licenses under special conditions designed to preserve that exclusivity.

(8)    The commercial relationship between the licensor and the licensee, such as whether or not they are competitors in the same territory in the same line of business

(9)    The effect of selling the patented method in promoting other sales of the licensee; the existing value of the invention to the licensor as a generator of sales of its non-patented items; and the extent of such collateral sales.

(10)    The duration of the '605 patent and the term of the license.

(11)    The established profitability of the product made under the '605 patent, its commercial success, and its current popularity.

(12)    The utility and advantages of the patented invention over the old modes or devices, if any, that had been used for achieving similar results..

(13)    The nature of the patented invention; the character of the commercial embodiment of it as owned and produced by or for the licensor; and the benefits to those who have used the invention.

(14)    The extent to which the Epic has made use of the invention and any evidence probative of the value of that use.

(15)    The portion of the profit or of the selling price that may be customary in the particular business or in comparable business to allow for the use of the invention or analogous inventions.

(16)    The portion of the profit that arises from the patented invention itself as opposed to profit arising from unpatented features, such as the manufacturing process, business risks, or significant features or improvements added by the accused infringer.

JOINT STATEMENT OF DISPUTED FINAL JURY
INSTRUCTIONS - 14
CASE NO. 2:21-CV-00799-RSM

POLSINELLI
1000 SECOND AVENUE, SUITE 3500
SEATTLE, WA 98104 • Tel: 206-393-5400

1    (17)    The opinion testimony of qualified experts.

2    (18)    The amount that a licensor (such as Utherverse Gaming) and a licensee (such as
3    Epic) would have agreed upon (at the time the infringement began) if both had been reasonably
4    and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who
5    desired, as a business proposition, to obtain a license to manufacture and sell a particular article
6    embodying the patented invention—would have been willing to pay as a royalty and yet be able
7    to make a reasonable profit and which amount would have been acceptable by a prudent patentee
8    who was willing to grant a license.

9    (19)    Any other economic factor that a normally prudent business person would, under
10   similar circumstances, take into consideration in negotiating the hypothetical license.

11   One way to calculate a royalty is based on a percentage of the incremental revenue from
12   infringement.  To calculate such a percentage royalty, you must first determine the "base," that is,
13   the revenue on which the alleged infringer is to pay, and then multiply that revenue by the "rate"
14   or percentage that you find would have resulted from the hypothetical negotiation.  For example,
15   if the patent covers a nail, the nail sells for $1, and the licensee sold 200 nails, the base revenue
16   would be $200.  If the rate you find would have resulted from the hypothetical negotiation is 1%,
17   then the royalty would be $2, or the rate of 0.01 times the base revenue of $200.  By contrast, if
18   you find the rate to be 5%, the royalty would be $10, or the rate of 0.05 times the base revenue of
19   $200.  These numbers are only examples and are not intended to suggest the appropriate royalty
20   rate.

21   The ultimate combination of royalty base and royalty rate must reflect the value attributable
22   to the infringing features of the product, and no more. When the accused infringing product has
23   both patented and unpatented features, measuring this value requires you to identify and award
24   only the value of the patented features.

25   Another way to calculate a royalty is to determine a one-time lump sum payment that the
26   alleged infringer would have paid at the time of the hypothetical negotiation for a license covering
all sales of the licensed product, both past and future. This differs from payment of an ongoing

JOINT STATEMENT OF DISPUTED FINAL JURY
INSTRUCTIONS - 15
CASE NO. 2:21-CV-00799-RSM

**POLSINELLI**
1000 SECOND AVENUE, SUITE 3500
SEATTLE, WA 98104 • Tel: 206-393-5400

royalty because, with an ongoing royalty, the licensee pays based on the revenue of actual licensed products it sells. When a one-time lump sum is paid, the alleged infringer pays a single price for a license covering both past and future infringing sales.

It is up to you, based on the evidence, to decide what type of royalty is appropriate in this case for the life of the '605 Patent.

Source: N.D. Cal. Model Patent Jury Instructions, Instruction 5.7 (modified); AIPLA Model Instruction 10.2.5.3

Authorities: *Garretson v. Clark*, 111 U.S. 120 (1884); *Ericsson v. D-Link Sys., Inc.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014); *VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1326-34 (Fed. Cir. 2014); *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 67-68 (Fed. Cir. 2012); *Lucent v. Gateway*, 580 F.3d 1301, 1336-39 (Fed. Cir. 2009); *Golight, Inc., v. Wal-Mart Stores*, Inc., 355 F.3d 1327, 1338 (Fed. Cir. 2004); *Maxwell v. Baker, Inc.*, 86 F.3d 1098, 1108-10 (Fed. Cir. 1996); *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1579-81 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1554 (Fed. Cir. 1995) (*en banc*); *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970); *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 869 (Fed. Cir. 2010).

**Plaintiff's Position:**

The parties disagree as to which factors the Court should instruct the jury to consider when determining a reasonable royalty. Defendant proposes only the three factors listed in the Northern District of California's model, but by its own language this instruction is not exhaustive. N.D. Cal. Model Patent Jury Instruction ("NDCA") 5.7 ("***Some*** of the factors you may consider ...."). Other models provide more complete instructions. *See* AIPLA Model Patent Jury Instruction ("AIPLA") 10.2.5.3 (listing sixteen factors). Plaintiff's proposal includes these additional factors that, if supported by admitted evidence, the Court should also include.

The parties disagree as to the language describing "comparable license agreements." Plaintiff proposes verbatim the description from NDCA 5.7 ("comparable license agreements, ***such as those*** covering the use of the claimed invention or similar technology."). Defendant limits this to "other transactions involving patents," which risks the jury failing to consider other relevant agreements such as payments to artists, merchandise agreements, industry reports, or license

JOINT STATEMENT OF DISPUTED FINAL JURY
INSTRUCTIONS - 16
CASE NO. 2:21-CV-00799-RSM

**POLSINELLI**
1000 SECOND AVENUE, SUITE 3500
SEATTLE, WA 98104 • Tel: 206-393-5400

agreements involving a prior owner of the '605 Patent. Defendant previously unsuccessfully tried to exclude reliance on such materials. *See* D.I. 371 at 9:6-10:6 (denying motion to exclude testimony of Ms. Riley). For the same reasons, the Court should not use Defendant's modified version of the "comparable license agreement" factor.

Defendant also reorders the factors to emphasize those it believes favor it. Plaintiff lists the factors in the order they appear in the NDCA, followed by the order they appear in the AIPLA.

Defendant seeks to include a paragraph describing the concept of apportionment. This is redundant of the standalone apportionment instruction (Final Instruction No. 24). Defendant's language appears in the Northern District of California's model, but notably that model does not include a standalone apportionment instruction; and although the AIPLA's model includes a standalone instruction, it does not duplicate it in the general definition of "reasonably royalty." AIPLA 10.2.5.1, 10.2.5.4. Instructing the jury on the concept twice risks potential confusion and places undue emphasis on the issue. A single instruction should suffice.

JOINT STATEMENT OF DISPUTED FINAL JURY
INSTRUCTIONS - 17
CASE NO. 2:21-CV-00799-RSM

POLSINELLI
1000 SECOND AVENUE, SUITE 3500
SEATTLE, WA 98104 • Tel: 206-393-5400

**DISPUTED Final Instruction No. 23 – Reasonable Royalty  - Definition (PROPOSED BY EPIC)**

A royalty is a payment made to a patent holder in exchange for the right to make, use, or sell the claimed invention.  This right is called a "license."  A reasonable royalty is the payment for the license that would have resulted from a hypothetical negotiation between the patent holder, at the time, Utherverse Digital, and the alleged infringer Epic Games taking place at the time when the infringing activity first began.  In considering the nature of this negotiation, you must assume that both sides would have acted reasonably and would have entered into a license agreement.  You must also assume that both parties believed the patent was valid and infringed.  Your role is to determine what the result of that negotiation would have been.  The test for damages is what royalty would have resulted from the hypothetical negotiation and not simply what either party would have preferred.

A royalty can be calculated in several different ways, and it is for you to determine which way is the most appropriate based on the evidence you have heard.  You should consider all the facts known and available to the parties at the time the infringement began.  Some of the factors you may consider in making your determination are:

(1)    Comparable license agreements and other transactions involving patents covering the use of the claimed invention or similar technology.

(2)    The value that the claimed invention contributes to the accused events.

(3)    The value that factors other than the claimed invention contribute to the accused events.

One way to calculate a royalty is based on a percentage of the incremental revenue from infringement.  To calculate such a percentage royalty, you must first determine the "base," that is, the revenue on which the alleged infringer is to pay, and then multiply that revenue by the "rate" or percentage that you find would have resulted from the hypothetical negotiation.  For example, if the patent covers a nail, the nail sells for $1, and the licensee sold 200 nails, the base revenue would be $200.  If the rate you find would have resulted from the hypothetical negotiation is 1%,

JOINT STATEMENT OF DISPUTED FINAL JURY
INSTRUCTIONS - 18
CASE NO. 2:21-CV-00799-RSM

**POLSINELLI**
1000 SECOND AVENUE, SUITE 3500
SEATTLE, WA 98104 • Tel: 206-393-5400

then the royalty would be $2, or the rate of 0.01 times the base revenue of $200. By contrast, if you find the rate to be 5%, the royalty would be $10, or the rate of 0.05 times the base revenue of $200. These numbers are only examples and are not intended to suggest the appropriate royalty rate.

If the patent covers only part of Epic Games' accused events, then the base would normally be only that feature or component. For example, if you find that for a $100 car, the patented feature is the tires which sell for $5, the base revenue would be $5.

The ultimate combination of royalty base and royalty rate must reflect the value attributable to the infringing features of the product, and no more. When the accused infringing products have both patented and unpatented features, measuring this value requires you to identify and award only the value of the patented features.

Another way to calculate a royalty is to determine a one-time lump sum payment that the alleged infringer would have paid at the time of the hypothetical negotiation for a license covering all sales of the licensed product, both past and future. This differs from payment of an ongoing percentage royalty because, with a percentage royalty, the licensee pays based on the revenue from actual infringement. When a one-time lump sum is paid, the alleged infringer pays a single price for a license covering both past and future infringement.

It is up to you, based on the evidence, to decide what type of royalty is appropriate in this case for the life of the patent.

Source: N.D. Cal. Model Patent Jury Instruction No. B.5.7 (modified).


**Defendant's Position:**

Epic's proposed instruction regarding the reasonable royalty closely tracks the model jury instructions, with minor modifications made to reflect the *Georgia-Pacific* factors and other legal principles that are actually at issue in this case. N.D. Cal. Model Patent Jury Instruction No. B.5.7 (modified to reference the "accused events" and other patent transactions). For example, Epic's

POLSINELLI

proposal includes that "other transactions involving patents covering the use of the claimed invention or similar technology" may be considered in addition to patent licenses because there are patent transactions other than patent licenses that the parties have asserted are relevant to damages. *See, e.g.*, *Uniloc USA, Inc. v. Apple Inc.*, 2020 WL 4368207, at *2 (N.D. Cal. July 30, 2020) ("The price paid to acquire all rights to a patent may be considered in assessing a reasonable royalty for a hypothetical license to the patent."). Epic reordered the factors solely to reflect the likely order in which the evidence will be presented at trial. As for Epic's proposal to add an explanation of royalty-base apportionment, that language will also provide important guidance to the jury on apportionment: "the patentee must 'give evidence tending to separate or apportion the [infringer]'s profits and the patentee's damages between the patented feature and the unpatented features.'" *Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299, 1310 (Fed. Cir. 2018) (cleaned up) (requiring apportionment of royalty base); *see also Virnetx, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308 (Fed. Cir. 2014) (finding expert's testimony on royalty base inadmissible when no apportionment was done).

In contrast, Utherverse's proposal adds the remaining, irrelevant Georgia Pacific factors to the instruction as well as concepts that are not at issue in this case. For example, Utherverse proposes instructing the jury on an "ongoing royalty" despite the fact that Utherverse does not allege that Epic's infringement in ongoing, which will give rise to potential confusion. If, as a result of expert testimony, other factors become relevant during the trial, Epic is not opposed to adding only the relevant factors to the instruction.

The Court should adopt Epic's proposal, which tracks the model jury instructions and provides the jury with the proper framework to ensure consistency with the law.

JOINT STATEMENT OF DISPUTED FINAL JURY
INSTRUCTIONS - 20
CASE NO. 2:21-CV-00799-RSM

**POLSINELLI**
1000 SECOND AVENUE, SUITE 3500
SEATTLE, WA 98104 • Tel: 206-393-5400

***PLAINTIFF'S NOTE ON* Final Instruction No. 24 – Damages – Apportionment**

Any amount you find as damages must be based on the value attributable to the patented invention, as distinct from unpatented steps included in the accused process or other factors such as marketing or advertising, or Epic Games' size or market position. A royalty compensating Utherverse for damages must reflect the value attributable to the infringing steps of the infringing process, and no more. The process of separating the value of the allegedly infringing steps from the value of all other steps and aspects of the product is called apportionment.

Source: 2014 AIPLA Model Patent Jury Instructions 10.2.5.4

**Plaintiff's Position:**

***This instruction is currently undisputed.*** *However, if the apportionment language Defendant includes in its proposed Instruction No. 23 is allowed, Instruction No. 24 should not be included. Defendant's language appears in the Northern District of California's model, but notably that model does not include a standalone apportionment instruction; and although the AIPLA's model includes a standalone instruction, it does not duplicate it in the general definition of "reasonably royalty." AIPLA 10.2.5.1, 10.2.5.4. Instructing the jury on the concept twice risks potential confusion and places undue emphasis on the issue. A single instruction should suffice.*

**Defendant's Position**:

*This instruction should be given regardless of whether the Court adopts Epic's proposal for Instruction No. 23 on the reasonable royalty definition. The explanation in Instruction No. 23 of how to apportion the royalty base is insufficient to instruct the jury on the concept of apportionment when Utherverse's damages expert purports to apportion not only through the damages base but also through her proposed royalty rate. The Court should therefore give undisputed Instruction No. 24 regardless of which party's instruction the Court adopts in Instruction No. 23.*

JOINT STATEMENT OF DISPUTED FINAL JURY
INSTRUCTIONS - 21
CASE NO. 2:21-CV-00799-RSM

**POLSINELLI**
1000 SECOND AVENUE, SUITE 3500
SEATTLE, WA 98104 • Tel: 206-393-5400

**DISPUTED Final Instruction No. 24A – Damages – Comparable Agreements (PROPOSED BY UTHERVERSE)**

When determining a reasonable royalty, you may consider evidence concerning the amounts that other parties have paid for rights to the asserted patent, or for comparable rights.  A license agreement need not be perfectly comparable to a hypothetical license that would be negotiated between the patent holder, at the time, Utherverse Digital, and the alleged infringer, Epic Games in order for you to consider it.  However, if you choose to rely upon evidence from any license agreements, you should consider any differences between those licenses and the hypothetically negotiated license between Utherverse Digital and Epic Games, in terms of the technologies and economic circumstances of the contracting parties, when you make your reasonable royalty determination.

Sources: Final Jury Instructions at 34, *CEMCO, LLC v. KPSI Innovations, Inc.*, No. C23-0918JLR (W.D. Wash. Dec. 6, 2024); *Adasa Inc. v. Avery Dennison Corp.*, 55 F.4th 900, 915 (Fed. Cir. 2022); *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 873 (Fed. Cir. 2010).

**Plaintiff's Position:**

Defendant seeks a standalone instruction regarding the consideration of "comparable agreements." Again, the Court should not instruct the jury on the same issue twice. NDCA 5.7 (including the concept in the definition of "reasonable royalty" but not providing a standalone instruction); AIPLA 10.2.5.1, 10.2.5.9 (providing a standalone instruction but not including the concept in the general definition).

To the extent a standalone instruction is included, Defendant's proposal is unduly restrictive. Defendant argues that agreements must pass a 'baseline comparability' test, but this is only a "minimum threshold." *ActiveVideo Networks, Inc. v. Verizon Cmmc'n, Inc.*, 649 F.3d 1312, 1333 (Fed. Cir. 2012). The "degree of comparability" is "appropriately left for the jury." *Bio-Rad Laboratories, Inc. v. 10X Genomics Inc.*, 967 F.3d 1353, 1374 (Fed. Cir. 2020). An agreement need not be a ***patent*** agreement or an agreement for rights ***to*** a technology as Defendant proposes.

JOINT STATEMENT OF DISPUTED FINAL JURY
INSTRUCTIONS - 22
CASE NO. 2:21-CV-00799-RSM

POLSINELLI
1000 SECOND AVENUE, SUITE 3500
SEATTLE, WA 98104 • Tel: 206-393-5400

*SSL Services, LLC v. Citrix Sys., Inc.*, 769 F.3d 1073, 1093 (Fed. Cir. 2014) (approving reliance on service and distribution agreements); *see also Bio-Rad*, 967 F.3d at 1374 (allowing reliance on agreement related to scientific instruments); *ActiveVideo*, 694 F.3d at 1333 (concerning agreement that covered both patents and software services); *Skillz Platform Inc. v. AviaGames Inc.*, 21-CV-02436-BLF, 2023 WL 8438738, at *7 (N.D. Cal. Dec. 5, 2023) (permitting reliance on SDK [software development kit] agreement). And the Court already rejected Defendant's objections to reliance on these types of agreements. D.I. 371 at 9:6-10:6 (denying *Daubert* motion).

Therefore, Plaintiff's modification of the *CEMCO* instruction is appropriate as the instruction should not be limited to "rights to similar technologies." Plaintiff's proposal is otherwise consistent with *CEMCO*, modified only to tailor to the relevant parties in this case. Defendant's proposal, in contrast, usurps the role of the jury in determining the degree of comparability in light of all the testimony and evidence at trial. The Court should not adopt it.



**DISPUTED Final Instruction No. 24A – Damages – Comparable Agreements (PROPOSED BY EPIC)**

When determining a reasonable royalty, you may consider evidence concerning the amounts that the parties or other parties have paid for rights to the asserted patent, or have paid for comparable rights to similar technologies.  A license agreement need not be perfectly comparable to a hypothetical license that would be negotiated between Utherverse Digital and Epic Games in order for you to consider it.  However, if you choose to rely upon evidence from any license agreements, you must account for any differences between those licenses and the hypothetically negotiated license between Utherverse Digital and Epic Games.  Such differences include differences in the technologies underlying the licenses and the economic circumstances of the contracting parties as compared to the technologies and economic circumstances of the hypothetically negotiated license between Utherverse Digital and Epic Games.  To the extent that a license agreement is not economically or technologically comparable to the hypothetical license to the asserted patent, it should not be used to determine a reasonable-royalty award.

Sources: Final Jury Instructions at 34, *CEMCO, LLC v. KPSI Innovations, Inc.*, No. C23-0918JLR (W.D. Wash. Dec. 6, 2024); *Adasa Inc. v. Avery Dennison Corp.*, 55 F.4th 900, 915 (Fed. Cir. 2022); *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 873 (Fed. Cir. 2010*)*.

**Defendant's Position:**

By failing to specify that "comparable rights" must be to "similar technologies" and stating that the jury simply "should consider" any differences between actual licenses in the record and the hypothetically negotiated license, Utherverse's proposed instruction runs contrary to established law.  Utherverse's proposal improperly suggests to the jury that technological and economic comparability are optional features in an agreement the jury relies on to calculate damages.  But as Utherverse acknowledges, the law is clear that technological and economic comparability represent "minimum threshold" requirements to rely on a license to calculate

damages:  "The party proffering a license bears the burden of establishing it is sufficiently comparable to support a proposed damages award."  *Adasa Inc. v. Avery Dennison Corp.*, 55 F.4th 900, 915 (Fed. Cir. 2022) (citing *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 130, 1329 (Fed. Cir. 2009)).  Epic's proposed instruction makes clear that the jury must base its award on an agreement that is economically and technologically comparable to the license that would result from the hypothetical negotiation (and nothing in Epic's proposed instruction restricts agreements the jury may consider to patent agreements).  Indeed, "[w]hen relying on allegedly comparable licenses, the proponent '***must*** account for differences in the technologies and economic circumstances of the contracting parties.'"  *Id.* (quoting *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1211 (Fed. Cir. 2010)) (emphasis added).  Assessing differences between the hypothetical negotiation and allegedly comparable licenses is not an optional step that the jury "should consider" as Utherverse proposes.  It is something the jury must account for as set forth in Epic's proposed instruction.  And if the existing license is not technologically or economically comparable to the license that would result from the hypothetical negotiation, then the jury cannot, by definition, make this legally required comparison.  The Court should adopt Epic's proposed instruction, which provides a correct statement of the law and provides the jury the framework to allow it to assess comparability of the agreements that are presented at trial.

JOINT STATEMENT OF DISPUTED FINAL JURY
INSTRUCTIONS - 25
CASE NO. 2:21-CV-00799-RSM

POLSINELLI
1000 SECOND AVENUE, SUITE 3500
SEATTLE, WA 98104 • Tel: 206-393-5400

1  **DISPUTED Final Instruction No. 25 – Glossary of Patent Terms (PROPOSED BY**

2  **UTHERVERSE)**

3  **NO GLOSSARY OF PATENT TERMS SHOULD BE PROVIDED**

4

5  **Plaintiff's Position:**

6  The model instruction from which Defendant adopts its proposed glossary begins, "Some

7  of the terms in this glossary will be defined in more detail in the instructions you are given. *The*

8  *definitions in the instructions must be followed and must control your deliberations.*"  N.D. Cal.

9  Model Patent Jury Instructions C.1 Appendix (emphasis added).  Thus, the model that Defendant

10  relies upon *explicitly* defers to the descriptions and discussions of terms in other relevant

11  substantive instructions. The terms Defendant proposes for its glossary are already discussed

12  and/or described elsewhere in the jury instructions or in the patent video that the jurors will have

13  watched prior to commencement of trial.

14  In addition to terms already in the model glossary, Epic proposes that the glossary also

15  include "avatar," "initial scene state," and "recorded experience file," the three terms that are the

16  subject of the Court's Claim Construction Order at ECF No. 133 and Final Instruction No. 11 –

17  Interpretation of Claims.  Defendant's inclusion of claim construction terms is inappropriate and

18  risks confusing the jury.  Final Instruction No. 11 explains that these three terms represent

19  "language in the patent claims involved in this case." In the glossary, however, every term is

20  general and uncontroversial.  The model instruction itself instructs that a glossary should contain

21  "agreed-upon definitions."  N.D. Cal. Model Patent Jury Instructions C.1 Appendix.  The parties

22  extensively briefed and argued these and other terms during claim construction proceedings and

23  both parties hold the right to seek appellate review.  Final Instruction No. 11 provides essential

24  context for these terms that a glossary does not.  Plaintiff specifically objects to Defendant's

25  proposed inclusion of "avatar," "initial scene state," and "recorded experience file."

26  Should the Court elect to provide a glossary to the jurors, Plaintiff objects to all

    modifications that Defendant has made to the model definitions, in particular, its modification of

**POLSINELLI**

1000 SECOND AVENUE, SUITE 3500
SEATTLE, WA 98104 • Tel: 206-393-5400

the definition of "claim," where Defendant added the sentence, "If the referenced claim is not infringed, then the dependent claim is not infringed."  This modification is not supported by the model itself, which, again, instructs that included terms should "have agreed-upon definitions." The jurors should _**only**_ be provided the verbatim, neutral definitions as stated in the model.

1  **DISPUTED Final Instruction No. 25 – Glossary of Patent Terms (PROPOSED BY EPIC)**

2      [Epic proposes that the glossary be given to the jury with juror notebooks at the beginning

3  of trial]

4      Some of the terms in this glossary will be defined in more detail in the instructions you are

5  given.  The definitions in the instructions must be followed and must control your deliberations.

6      **Abstract:**  A brief summary of the technical disclosure in a patent to enable the U.S. Patent

7  and Trademark Office and the public to determine quickly the nature and gist of the technical

8  disclosure in the patent.

9      **Anticipation:**  A situation in which a claimed invention describes an earlier invention and,

10  therefore, is not considered new and is not entitled to be patented.

11      **Assignment:**  A transfer of patent rights to another called an "assignee" who upon transfer

12  becomes the owner of the rights assigned.

13      **Avatar:**  A computer-generated figure in a virtual environment that represents and is

14  operated by a human player.

15      **Claim:**  Each claim of a patent is a concise, formal definition of an invention and appears

16  at the end of the specification in a separately numbered paragraph.  In concept, a patent claim

17  marks the boundaries of the patent in the same way that a legal description in a deed specifies the

18  boundaries of land, i.e., similar to a land owner who can prevent others from trespassing on the

19  bounded property, the inventor can prevent others from using what is claimed.  Claims may be

20  independent or dependent.  An independent claim stands alone.  A dependent claim does not stand

21  alone and refers to one or more other claims.  A dependent claim incorporates whatever the other

22  referenced claim or claims say.  If the referenced claim is not infringed, then the dependent claim

23  is not infringed.

24      **Drawings:**  The drawings are visual representations of the claimed invention contained in

25  a patent application and issued patent, and usually include several figures illustrating various

26  aspects of the claimed invention.

JOINT STATEMENT OF DISPUTED FINAL JURY
INSTRUCTIONS - 28
CASE NO. 2:21-CV-00799-RSM

**POLSINELLI**

1000 SECOND AVENUE, SUITE 3500
SEATTLE, WA 98104 • Tel: 206-393-5400

**Elements:**  The required parts of a device or the required steps of a method.  A device or method infringes a patent if it contains each and every requirement of a patent claim.

**Embodiment:**  A product or method that contains the claimed invention.

**Enablement:**  A description of the invention that is sufficient to enable persons skilled in the field of the invention to make and use the invention.  The specification of the patent must contain such an enabling description.

**Examination:**  Procedure before the U.S. Patent and Trademark Office whereby a Patent Examiner reviews the filed patent application to determine if the claimed invention is patentable.

**Filing Date:**  Date a patent application, with all the required sections, has been submitted to the U.S. Patent and Trademark Office.

**Infringement:**  Violation of a patent occurring when someone makes, uses, or sells a patented invention, without permission of the patent holder, within the United States during the term of the patent.  Infringement may be direct, by inducement, or contributory.  Direct infringement is making, using, or selling the patented invention without permission.

**Initial Scene State:**  Scene state information, including at least a position and orientation of objects, including avatars, rendered in the scene at a beginning of a time period of a new recording of a scene.

**Limitation:**  A required part of an invention set forth in a patent claim.  A limitation is a requirement of the invention.  The word "limitation" is often used interchangeably with the word "requirement."

**Nonobviousness:**  One of the requirements for securing a patent.  To be valid, the subject matter of the invention must not have been obvious to a person of ordinary skill in the field of the invention at the time of the earlier of the filing date of the patent application or the date of invention.

**Patent:**  A patent is an exclusive right granted by the U.S. Patent and Trademark Office to an inventor to prevent others from making, using, offering to sell, or selling an invention within the United States, or from importing it into the United States, during the term of the patent.  When

JOINT STATEMENT OF DISPUTED FINAL JURY
INSTRUCTIONS - 29
CASE NO. 2:21-CV-00799-RSM

**POLSINELLI**
1000 SECOND AVENUE, SUITE 3500
SEATTLE, WA 98104 • Tel: 206-393-5400

the patent expires, the right to make, use, or sell the invention is dedicated to the public.  The patent has three parts, which are a specification, drawings and claims.  The patent is granted after examination by the U.S. Patent and Trademark Office of a patent application filed by the inventor which has these parts, and this examination is called the prosecution history.

**Patent and Trademark Office (PTO):**  An administrative branch of the U.S. Department of Commerce that is charged with overseeing and implementing the federal laws of patents and trademarks.  It is responsible for examining all patent applications and issuing all patents in the United States.

**Prior Art:**  Previously known subject matter in the field of a claimed invention for which a patent is being sought.  It includes issued patents, publications, and knowledge deemed to be publicly available such as trade skills, trade practices and the like.

**Prosecution History:**  The prosecution history is the complete written record of the proceedings in the PTO from the initial application to the issued patent.  The prosecution history includes the office actions taken by the PTO and the amendments to the patent application filed by the applicant during the examination process.

**Reads On:**  A patent claim "reads on" a device or method when each required part (requirement) of the claim is found in the device or method.

**Recorded Experience File:**  [A file containing] a recording of a prior experience that occurred in a virtual environment.

**Requirement:**  A required part or step of an invention set forth in a patent claim.  The word "requirement" is often used interchangeably with the words "limitation" and/or "element."

**Royalty:**  A royalty is a payment made to the owner of a patent by a non-owner in exchange for rights to make, use or sell the claimed invention.

**Specification:**  The specification is a required part of a patent application and an issued patent.  It is a written description of the invention and of the manner and process of making and

JOINT STATEMENT OF DISPUTED FINAL JURY
INSTRUCTIONS - 30
CASE NO. 2:21-CV-00799-RSM

POLSINELLI
1000 SECOND AVENUE, SUITE 3500
SEATTLE, WA 98104 • Tel: 206-393-5400

1   using the claimed invention.

2

3   Source:  N.D. Cal. Model Patent Jury Instruction No. C.1 (modified).

4   **<u>Defendant's Position:</u>**

5          The Court should adopt Epic's proposal to provide the jury with a glossary of patent terms

6   in their juror notebooks.  Epic's proposed glossary is taken directly from the N.D. Cal. model

7   instructions, with modifications only to exclude inapplicable terms and include the claim

8   constructions that the Court adopted for terms in the asserted claims.  *See* N.D. Cal. Model Patent

9   Jury Instruction No. C.1 (modified).  Utherverse's proposal to eliminate the patent glossary

10  entirely risks leaving the jury unnecessarily confused and without means to accurately interpret

11  key technical and legal terms that will arise during trial.  An understanding of the terms contained

12  in Epic's proposed glossary is vital to just resolution of this case.  Moreover, the neutrality of the

13  proposed glossary ensures the jury receives accurate and unbiased definitions. This approach

14  promotes clarity and reduces the risk of juror misunderstanding.

15

16

17

18

19

20

21

22

23

24

25

26

JOINT STATEMENT OF DISPUTED FINAL JURY
INSTRUCTIONS - 31
CASE NO. 2:21-CV-00799-RSM

POLSINELLI
1000 SECOND AVENUE, SUITE 3500
SEATTLE, WA 98104 • Tel: 206-393-5400

DATED this 11th day of May, 2025

Respectfully submitted,

*/s/ Emily C. McNally*

Colby B. Springer (admitted *pro hac vice*)    By:    Emily McNally (WSBA No. 60710)
Miya Yusa (admitted *pro hac vice*)                    **POLSINELLI PC**
Iqra Iqbal (admitted *pro hac vice*)                     1000 Second Avenue, Suite 3500
**POLSINELLI LLP**                                              Seattle, WA  98104
Three Embarcadero Center, Suite 2400           Tel:  206-393-5400
San Francisco, CA  94111                               Fax:  206-393-5401
Tel:  415-248-2100                                          Email:  emcnally@polsinelli.com
Fax: 415-248-2101
Email:  cspringer@polsinelli.com
Email:  myusa@polsinelli.com                       Melenie Van (admitted *pro hac vice*)
Email:  iiqbal@polsinelli.com                         **POLSINELLI PC**
                                                                       2049 Century Park East, Suite 2900
                                                                       Los Angeles, CA 90067
Mark T. Deming (admitted *pro hac vice*)          Tel:      (310) 229-1355
**POLSINELLI PC**                                             Fax:      (415) 276-8959
150 N. Riverside Place, Suite 3000                   Email:  mvan@polsinelli.com
Chicago, IL  60606
Tel:  312-819-1900
Fax: 312-819-1901                                          Jonathan Spivey (admitted *pro hac vice*)
Email:  mdeming@polsinelli.com                   **POLSINELLI PC**
                                                                       1000 Louisiana Street, Suite 6400
                                                                       Houston, TX 77002
Kathryn Gusmer Cole (admitted *pro hac*          Tel.:     (713) 374-1600
*vice*)                                                              Fax:     (713) 374-1601
J. Mark Wilson (admitted *pro hac vice*)            Email:  jspivey@polsinelli.com
**MOORE & VAN ALLEN LAW**
100 North Tryon Street, Ste. 4700                    **Attorneys for Plaintiff**
Charlotte, NC  28202                                     **UTHERVERSE GAMING LLC**
Tel:  (704) 331-1045
Fax:  (704) 409-5659
Email:  katecole@mvalaw.com
Email:  markwilson@mvalaw.com

**POLSINELLI**
1000 SECOND AVENUE, SUITE 3500
SEATTLE, WA 98104 • Tel: 206-393-5400

Respectfully submitted,

Antoine M. McNamara
  (WSBA No. 41701)
AMcNamara@perkinscoie.com
Christina J. McCullough
  (WSBA No. 47147)
CMcCullough@perkinscoie.com
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Telephone:   206-359-8000
Facsimile:   206-359-9000

Bethany D. Bengfort
bengfort@turnerboyd.com
Turner Boyd Seraphine LLP
155 Bovet Road, Suite 600
San Mateo, CA 94402
Telephone:   650-529-4752

Mark A. Lemley (*pro hac vice*)
mlemley@lex-lumina.com
LEX LUMINA PLLC
745 Fifth Avenue, Suite 500
New York, NY 10151
 Telephone: (646) 898-2055

*/s/ Eric C. Weiner*
Daralyn J. Durie (*pro hac vice*)
DDurie@mofo.com
Timothy C. Saulsbury (*pro hac vice*)
TSaulsbury@mofo.com
Eric C. Wiener (*pro have vice*)
EWiener@mofo.com
Ramsey W. Fisher (*pro hac vice*)
ramseyfisher@mofo.com
Sara Doudar (*pro hac vice*)
SDoudar@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105
Telephone:   415-268-7000
Facsimile:   415-268-7522

Katherine E. McNutt (*pro hac vice*)
KMcNutt@mofo.com
MORRISON & FOERSTER LLP
707 Wilshire Boulevard, Suite 6000
Los Angeles, CA 90017-3543
Telephone:   213-892-5200
Facsimile:   213-892-5454

**Attorneys for Defendant
EPIC GAMES, INC.**