1
2
3
4
5
6
7
8
9

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10

UTHERVERSE GAMING LLC,                    Case No. 2:21-cv-00799-RSM

11
                        Plaintiff,        **FINAL JURY INSTRUCTIONS**

12
            v.

13

EPIC GAMES, INC.,

14
                        Defendant.

15
16
17
18
19
20
21
22

_____
RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

23
24
25
26

FINAL JURY INSTRUCTIONS
NO. 2:1-CV-00799-RSM

**<u>Final Instruction No. 1 – Duty of the Jury</u>**

Members of the Jury: Now that you have heard all of the evidence and the arguments of the attorneys, it is my duty to instruct you on the law that applies to this case.

A copy of these instructions will be sent to the jury room for you to consult during your deliberations.

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

Please do not read into these instructions or anything that I may say or do or have said or done that I have an opinion regarding the evidence or what your verdict should be. In following my instructions, you must follow all of them and not single out some and ignore others; they are all important.

**Final Instruction No. 2 – Burden of Proof – Preponderance of the Evidence**

When a party has the burden of proving any claim by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim is more probably true than not true. Utherverse Gaming must prove infringement and damages by a preponderance of the evidence.

You should base your decision on all of the evidence, regardless of which party presented it.

**Final Instruction No. 3 – Burden of Proof – Clear and Convincing Evidence**

When a party has the burden of proving any claim or defense by clear and convincing evidence, it means that the party must present evidence that leaves you with a firm belief or conviction that it is highly probable that the factual contentions of the claim or defense are true. This is a higher standard of proof than proof by a preponderance of the evidence, but it does not require proof beyond a reasonable doubt.   Epic Games must prove invalidity by clear and convincing evidence.

**Final Instruction No. 4 – What is Evidence**

The evidence you are to consider in deciding what the facts are consists of:

1.    the sworn testimony of any witness;

2.    the exhibits that are admitted into evidence;

3.    any facts to which the lawyers have agreed; and

4.    any facts that I have instructed you to accept as proved.

**Final Instruction No. 5 – What is Not Evidence**

In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are. I will list them for you:

(1)     Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they may have said in their opening statements, closing arguments, and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

(2)     Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it.

(3)     Testimony that has been excluded or stricken, or that you were instructed to disregard, is not evidence and must not be considered. In addition, some evidence may have been received only for a limited purpose; if I instructed you to consider certain evidence only for a limited purpose, you must do so, and you may not consider that evidence for any other purpose.

(4)     Some information was presented to you as a chart or illustration. Those charts or illustrations are called demonstrative exhibits and can be used to describe something involved in this trial. Although demonstrative exhibits are referred to as exhibits, they are not themselves, evidence.

(5)     Anything you may have seen or heard when the court was not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

**<u>Final Instruction No. 6 – Direct and Circumstantial Evidence</u>**

Evidence may be direct or circumstantial. Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did. Circumstantial evidence is proof of one or more facts from which you could find another fact. You should consider both kinds of evidence. The law makes no distinction between the weight to be given to either direct or circumstantial evidence. It is for you to decide how much weight to give to any evidence.

**Final Instruction No. 7 – Credibility of Witnesses**

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it.

In considering the testimony of any witness, you may take into account:

(1)     the opportunity and ability of the witness to see or hear or know the things testified to;

(2)     the witness's memory;

(3)     the witness's manner while testifying;

(4)     the witness's interest in the outcome of the case, if any;

(5)     the witness's bias or prejudice, if any;

(6)     whether other evidence contradicted the witness's testimony;

(7)     the reasonableness of the witness's testimony in light of all the evidence; and

(8)     any other factors that bear on believability.

Sometimes a witness may say something that is not consistent with something else he or she said. Sometimes different witnesses will give different versions of what happened. People often forget things or make mistakes in what they remember. Also, two people may see the same event but remember it differently. You may consider these differences, but do not decide that testimony is untrue just because it differs from other testimony.

However, if you decide that a witness has deliberately testified untruthfully about something important, you may choose not to believe anything that witness said. On the other hand, if you think the witness testified untruthfully about some things but told the truth about others, you may accept the part you think is true and ignore the rest.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify. What is important is how believable the witnesses were, and how much weight you think their testimony deserves.

1

**Final Instruction No. 8 – Evidence in Electronic Format**

Most exhibits received in evidence will be provided to you in paper form. Two exhibits in this case are videos that can only be shown to you in the court room. You can view that evidence at any time by sending a note through the clerk. Attorneys and technicians from both parties may be present in the courtroom while these videos are shown, but the courtroom will not be open to the public and no one will be allowed to communicate with the jury.

**<u>Final Instruction No. 9 – Summary of Contentions</u>**

I will first give you a summary of each side's contentions in this case. I will then tell you what each side must prove to win on each of its contentions. As I previously told you, Utherverse Gaming seeks money damages from Epic Games for allegedly infringing the '605 Patent by using the methods of one or more of claims 2, 5, and 8 when it created and implemented virtual events in Epic Games' multiplayer online video game Fortnite: the Travis Scott and Ariana Grande Events (also known as the "accused events").

Epic Games denies that it has infringed asserted claims 2, 5, and 8 of the '605 Patent. Epic Games also argues that claims 2, 5, and 8 are invalid. Utherverse Gaming contends that the '605 Patent is not invalid.

Your job is to decide whether any of the asserted claims of the '605 Patent have been infringed and whether any of the asserted claims of the '605 Patent are invalid. If you decide that any asserted claim of the '605 Patent has been infringed and is not invalid, you will then need to decide any money damages to be awarded to Utherverse Gaming to compensate it for the infringement.

**Final Instruction No. 10 – Overview of Applicable Law**

In deciding the issues I just discussed, you will be asked to consider specific legal standards. I will give you an overview of those standards now and will review them in more detail before the case is submitted to you for your verdict.

The first issue you will be asked to decide is whether Epic Games has infringed the asserted claims of the '605 Patent. Infringement is assessed on a claim-by-claim basis. Therefore, there may be infringement as to one claim but not infringement as to another. To prove infringement, Utherverse Gaming must prove by a preponderance of the evidence that, in creating and implementing the accused events Epic Games used a method that practices each step of one or more of the asserted claims of the '605 Patent.

Another issue you will be asked to decide is whether the '605 Patent is invalid. A patent may be invalid for several reasons.

One way that a claim may be invalid is that it may have been obvious. Even though every element of a claim is not shown or sufficiently described in a single piece of "prior art," the claim may still be invalid if it would have been obvious to a person of ordinary skill in the field of technology of the patent at the relevant time. You will need to consider a number of questions in deciding whether the invention claimed in the '605 Patent is obvious.

You will also be asked to decide whether the limitations of the asserted claims, when taken individually and when taken as an ordered combination, involve only technology which a person of ordinary skill in the art would have considered to be well-understood, routine, and conventional as of August 12, 2014, the effective filing date of the '605 Patent.

If you decide that any claim of the '605 Patent has been infringed and is not invalid, you will then need to decide any money damages to be awarded to Utherverse Gaming to compensate it for the infringement. A damages award should put Utherverse Gaming in approximately the same financial position that it would have been in had the infringement not occurred, but in no event may the damages award be less than what Utherverse Gaming would have received had it been paid a reasonable royalty. The damages you award are meant to compensate Utherverse Gaming and not to punish Epic Games. You may not include in your award any additional amount

as a fine or penalty, above what is necessary to compensate Utherverse Gaming for infringement, in order to punish Epic Games.

1  **Final Instruction No. 11 – Interpretation of Claims**

2       Before you decide whether Epic Games has infringed the asserted claims of the patent or

3  whether those claims are invalid, you will need to understand the patent claims.  As I mentioned

4  at the beginning of the case, the patent claims are numbered sentences at the end of the patent

5  that describe the boundaries of the patent's protection.  It is my job as judge to explain to you the

6  meaning of any language in the asserted claims that needs interpretation.

7       I have interpreted the meaning of some of the language in the patent claims involved in

8  this case.  You must accept those interpretations as correct.  My interpretation of the language

9  should not be taken as an indication that I have a view regarding the issues of infringement and

10  invalidity.  The decisions regarding infringement and invalidity are yours to make.

11       For purposes of the '605 Patent, the following terms have the following meanings:

12

| Claim Term | Meaning |
| --- | --- |
| "avatar" (claims 1, 2) | A computer-generated figure in a virtual environment that represents and is operated by a human player. |
| "initial scene state" (claim 1) | Scene state information, including at least a position and orientation of objects, including avatars, rendered in the scene at a beginning of a time period of a new recording of a scene. |
| "recorded experience [file]" (claims 1, 2, 5) | [A file containing] a recording of a prior experience that occurred in a virtual environment. |

18       For a claim term for which I have not provided a definition, you should apply the plain

19  and ordinary meaning.

20       You must use the same claim meaning for both your decision on infringement and your

21  decision on invalidity.

22

23

24

25

26

1  **Final Instruction No. 12 – Infringement – Burden of Proof**

2         I will now instruct you on the rules you must follow in deciding whether Utherverse has

3  proven that Epic Games has infringed one or more of the asserted claims of the '605 patent.  To

4  prove infringement of any claim, Utherverse must persuade you by a preponderance of the

5  evidence that Epic Games has infringed that claim.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**Final Instruction No. 13 - Infringement**

A patent's claims define what is covered by the patent. A method infringes a patent if it is covered by at least one claim of the patent.

Deciding whether a claim has been infringed is a two-step process. The first step is to decide the meaning of the patent claim. I have already made this decision, and I have already instructed you as to the meaning of the asserted patent claims. The second step is to decide whether Epic Games has used a method covered by an asserted claim of the '605 Patent when it created and implemented the Travis Scott and Ariana Grande Events. If it has, it infringes. You, the jury, make this decision.

Asserted claims 2, 5, and 8 are what are known as dependent claims that depend from independent claim 1. A dependent claim includes all of the requirements of a particular independent claim, plus additional requirements of its own. As a result, if you find that an independent claim is not infringed, you must also find that its dependent claims are not infringed. On the other hand, if you find that an independent claim has been infringed, you must still separately decide whether the additional requirements of its dependent claims have also been infringed.

Whether or not Epic Games knew its method infringed or even knew of the '605 Patent does not matter in determining infringement.

To decide whether Epic Games infringes an asserted claim of the '605 Patent, you must compare Epic Games' actions in creating and implementing the accused events with the patent claim and determine whether Epic Games practiced every requirement of the asserted claim. If so, Epic Games infringes that claim. If, however, Epic Games did not practice every requirement in the asserted patent claim in creating and implementing the accused events, Epic Games does not infringe that claim. You must decide infringement for each of asserted claims 2, 5, and 8 separately.

If the patent claim uses the term "comprising," that patent claim is to be understood as an open claim. An open claim is infringed as long as Epic practiced every requirement in the claim in creating and implementing the accused events.

The fact that Epic may have taken additional steps or that Epic's method includes other steps in offering the Travis Scott Virtual Events and Ariana Grande Virtual Events will not avoid infringement, so long as it performed every requirement in the asserted patent claim.

**<u>Final Instruction No. 14 – Invalidity – Burden of Proof</u>**

I will now instruct you on the rules you must follow in deciding whether Epic Games has proven that claims 2, 5, and 8 of the '605 patent are invalid. Before discussing the specific rules, I want to remind you about the standard of proof that applies to this defense. To prove invalidity of any patent claim, Epic Games must persuade you by clear and convincing evidence that the claim is invalid.

**<u>Final Instruction No. 15 – Obviousness 35 U.S.C. § 103</u>**

Not all innovations are patentable. A patent claim of the '605 patent is invalid if the claimed invention would have been obvious to a person of ordinary skill in the field as of August 12, 2014. This means that even if all of the requirements of the claim cannot be found in a single prior art reference that would anticipate the claim or constitute a bar to that claim, a person of ordinary skill in the field of virtual computer-generated environments who knew about all this prior art would have come up with the claimed invention.

The ultimate conclusion of whether a claim is obvious should be based upon your determination of several factual decisions.

First, you must decide the level of ordinary skill in the field that someone would have had as of August 12, 2014. In deciding the level of ordinary skill, you should consider all the evidence introduced at trial, including:

      1.  the levels of education and experience of persons working in the field;

      2.  the types of problems encountered in the field; and

      3.  the sophistication of the technology.

Second, you must decide what difference, if any, existed between the claimed invention and the prior art.

Finally, you may consider any of the following factors that you find have been shown by the evidence:

    (1)    commercial success of a product due to the merits of the claimed invention;

    (2)    a long-felt need for the solution provided by the claimed invention;

    (3)    unsuccessful attempts by others to find the solution provided by the claimed invention;

    (5)    unexpected and superior results from the claimed invention;

    (6)    acceptance by others of the claimed invention as shown by praise from others in the field of the claimed invention;

    (7)    other evidence tending to show nonobviousness;

    (8)    independent invention of the claimed invention by others before or at about the

1    same time as the named inventor thought of it; and;

2    (9)    other evidence tending to show obviousness.

3    The presence of any of factors 1-7 may be considered by you as an indication that the

4    claimed invention would not have been obvious as of August 12, 2014, and the presence of factors

5    8 and 9 may be considered by you as an indication that the claimed invention would have been

6    obvious at such time. Although you should consider any evidence of these factors, the relevance

7    and importance of any of them to your decision on whether the claimed invention would have been

8    obvious is up to you.

9    A patent claim composed of several elements is not proved obvious merely by

10   demonstrating that each of its elements was independently known in the prior art. In evaluating

11   whether such a claim would have been obvious, you may consider whether Epic Games has

12   identified a reason that would have prompted a person of ordinary skill in the field to combine the

13   elements or concepts from the prior art in the same way as in the claimed invention. There is no

14   single way to define the line between true inventiveness on the one hand (which is patentable) and

15   the application of common sense and ordinary skill to solve a problem on the other hand (which is

16   not patentable). For example, market forces or other design incentives may be what produced a

17   change, rather than true inventiveness. You may consider whether an inventor would look to the

18   prior art to help solve the particular problem at hand. You may consider whether the change was

19   merely the predictable result of using prior art elements according to their known functions, or

20   whether it was the result of true inventiveness. You may also consider whether there is some

21   teaching or suggestion in the prior art to make the modification or combination of elements claimed

22   in the patent. Also, you may consider whether the innovation applies a known technique that had

23   been used to improve a similar device or method in a similar way. You may also consider whether

24   the claimed invention would have been obvious to try, meaning that the claimed innovation was

25   one of a relatively small number of possible approaches to the problem with a reasonable

26   expectation of success by those skilled in the art. However, you must be careful not to determine

obviousness using the benefit of hindsight; many true inventions might seem obvious after the fact.

You should put yourself in the position of a person of ordinary skill in the field as of August 12,

1  2014, and you should not consider what is known today or what is learned from the teaching of

2  the patent.

**Final Instruction No. 16 – Patent Eligibility**

Epic Games contends that the '605 Patent is invalid for failure to claim patent-eligible subject matter. To succeed on its claims for invalidity for failure to claim patent-eligible subject matter, Epic Games must show by clear and convincing evidence that the limitations of the asserted claim(s), when taken individually and when taken as an ordered combination, involve only technology which a person of ordinary skill in the art would have considered to be well-understood, routine, and conventional as of August 12, 2014. In determining whether a patent claim involves well-understood, routine, and conventional technology to a person of ordinary skill in the art, you may consider statements made in the patent's specification, as well as evidence of the prior art.

Whether a particular technology was well-understood, routine, and conventional goes beyond what was known in the prior art. The mere fact that something is disclosed in a piece of prior art does not mean that it was well-understood, routine, and conventional.

At the same time, the specification of the asserted patent may be such evidence, if you find that the specification shows that the elements of the asserted claims involve only technology which a person of ordinary skill in the art would have considered well-understood, routine, and conventional.

**<u>Final Instruction No. 17 – Damages – Burden of Proof</u>**

I will instruct you about the measure of damages. By instructing you on damages, I am not suggesting which party should win on any issue. If you find that Epic Games infringed any valid claim of the '605 Patent, you must then determine the amount of money damages to be awarded to Utherverse Gaming to compensate it for the infringement.

The amount of those damages must be adequate to compensate Utherverse Gaming for the infringement. A damages award should put the patent holder in approximately the financial position it would have been in had the infringement not occurred, but in no event may the damages award be less than a reasonable royalty. You should keep in mind that the damages you award are meant to compensate the patent holder and not to punish an infringer.

Utherverse Gaming has the burden to persuade you of the amount of its damages. You should award only those damages that Utherverse Gaming more likely than not suffered. While Utherverse Gaming is not required to prove its damages with mathematical precision, it must prove them with reasonable certainty. Utherverse Gaming is not entitled to damages that are remote or speculative.

1    **<u>Final Instruction No. 18 – Reasonable Royalty – Entitlement</u>**

2           If you find that any of the asserted claims has proven to be both infringed and not invalid,

3    Utherverse should be awarded a reasonable royalty for Epic Games' infringement.

**Final Instruction No. 19 – Reasonable Royalty – Definition**

A royalty is a payment made to a patent holder in exchange for the right to make, use or sell the claimed invention. This right is called a "license." A reasonable royalty is the payment for the license that would have resulted from a hypothetical negotiation between the patent holder at the time, Utherverse Digital, and the alleged infringer Epic Games taking place at the time when the infringing activity first began. In considering the nature of this negotiation, you must assume that both sides would have acted reasonably and would have entered into a license agreement. You must also assume that both parties believed the patent was valid and infringed. Your role is to determine what the result of that negotiation would have been. The test for damages is what royalty would have resulted from the hypothetical negotiation and not simply what either party would have preferred.

A royalty can be calculated in several different ways and it is for you to determine which way is the most appropriate based on the evidence you have heard. You should consider all the facts known and available to the parties at the time the infringement began. Some of the factors you may consider in making your determination include the following:

1) The value that the claimed invention contributes to the accused events.

2) The value that factors other than the claimed invention contribute to the accused events.

3) Comparable license agreements, such as those covering the use of the claimed invention or similar technology. A license agreement need not be perfectly comparable to a hypothetical license that would be negotiated between Utherverse Digital and Epic Games in order for you to consider it. However, if you choose to rely upon evidence from any license agreements, you should consider any differences between those licenses and the hypothetically negotiated license between Utherverse Digital and Epic Games.

4) The rates paid by Epic Games to license other patents comparable to the '605 patent.

5) The nature and scope of the license, as exclusive or non-exclusive.

6) The licensor's established policy and marketing program to maintain its right to exclude others from using the patented invention by not licensing others to use the invention, or by granting licenses under special conditions designed to preserve that exclusivity.

7) The commercial relationship between the licensor and the licensee, such as whether or not they are competitors in the same territory in the same line of business.

8) The effect of selling the patented method in promoting other sales of the licensee and the extent of such collateral sales.

9) The duration of the '605 patent and the term of the license.

10) The established profitability of the product made under the '605 patent, its commercial success, and its current popularity.

11) The utility and advantages of the patented invention over the old modes or devices, if any, that had been used for achieving similar results.

12) The portion of the profit that arises from the patented invention itself as opposed to profit arising from unpatented features, such as the manufacturing process, business risks, or significant features or improvements added by the accused infringer.

13) The opinion testimony of qualified experts.

14) The amount that a licensor (such as Utherverse Digital) and a licensee (such as Epic) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license.

15) Any other economic factor that a normally prudent business person would, under similar circumstances, take into consideration in negotiating the hypothetical license.

One way to calculate a royalty is based on a percentage of the incremental revenue from infringement. To calculate such a percentage royalty, you must first determine the "base," that is, the revenue on which the alleged infringer is to pay, and then multiply that revenue by the "rate" or percentage that you find would have resulted from the hypothetical negotiation. For example, if the patent covers a nail, the nail sells for $1, and the licensee sold 200 nails, the base revenue would be $200. If the rate you find would have resulted from the hypothetical negotiation is 1%, then the royalty would be $2, or the rate of 0.01 times the base revenue of $200. By contrast, if you find the rate to be 5%, the royalty would be $10, or the rate of 0.05 times the base revenue of $200. These numbers are only examples and are not intended to suggest the appropriate royalty rate.

If the patent covers only part of Epic Games' accused events, then the base would normally be only that feature or component. For example, if you find that for a $100 car, the patented feature is the tires which sell for $5, the base revenue would be $5.

The ultimate combination of royalty base and royalty rate must reflect the value attributable to the infringing features of the product, and no more. When the accused infringing product has both patented and unpatented features, measuring this value requires you to identify and award only the value of the patented features.

Another way to calculate a royalty is to determine a one-time lump sum payment that the alleged infringer would have paid at the time of the hypothetical negotiation for a license covering all sales of the licensed product, both past and future. This differs from payment of an ongoing royalty because, with an ongoing royalty, the licensee pays based on the revenue of actual licensed products it sells. When a one-time lump sum is paid, the alleged infringer pays a single price for a license covering both past and future infringing sales.

It is up to you, based on the evidence, to decide what type of royalty is appropriate in this case for the life of the '605 Patent.

1    **Final Instruction No. 20 – Damages – Apportionment**

2        Any amount you find as damages must be based on the value attributable to the patented

3    invention, as distinct from unpatented steps included in the accused process or other factors such

4    as marketing or advertising, or Epic Games' size or market position. A royalty compensating

5    Utherverse for damages must reflect the value attributable to the infringing steps of the infringing

6    process, and no more. The process of separating the value of the allegedly infringing steps from

7    the value of all other steps and aspects of the product is called apportionment.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

1  **Final Instruction No. 21 – Duty to Deliberate**

2     Before you begin your deliberations, elect one member of the jury as your presiding juror.

3  The presiding juror will preside over the deliberations and serve as the spokesperson for the jury

4  in court.

5     You shall diligently strive to reach agreement with all of the other jurors if you can do so.

6  Your verdict must be unanimous.

7     Each of you must decide the case for yourself, but you should do so only after you have

8  considered all of the evidence, discussed it fully with the other jurors, and listened to their views.

9     It is important that you attempt to reach a unanimous verdict but, of course, only if each of

10  you can do so after having made your own conscientious decision.  Do not be unwilling to change

11  your opinion if the discussion persuades you that you should.  But do not come to a decision simply

12  because other jurors think it is right or change an honest belief about the weight and effect of the

13  evidence simply to reach a verdict.

**<u>Final Instruction No. 22 – Consideration of Evidence – Conduct of the Jury</u>**

Because you must base your verdict only on the evidence received in the case and on these instructions, I remind you that you must not be exposed to any other information about the case or to the issues it involves.  Except for discussing the case with your fellow jurors during your deliberations:

Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it.  This includes discussing the case in person, in writing, by phone, tablet, computer, or any other means, via email, via text messaging, or any internet chat room, blog, website or application, including but not limited to Facebook, YouTube, Twitter, Instagram, LinkedIn, Snapchat, TikTok, or any other forms of social media.  This applies to communicating with your family members, your employer, the media or press, and the people involved in the trial.  If you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and to report the contact to the court.

Do not read, watch, or listen to any news or media accounts or commentary about the case or anything to do with it; do not do any research, such as consulting dictionaries, searching the Internet, or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own.  Do not visit or view any place discussed in this case, and do not use Internet programs or other devices to search for or view any place discussed during the trial.  Also, do not do any research about this case, the law, or the people involved—including the parties, the witnesses, or the lawyers—until you have been excused as jurors.  If you happen to read or hear anything touching on this case in the media, turn away and report it to me as soon as possible.

These rules protect each party's right to have this case decided only on evidence that has been presented here in court.  Witnesses here in court take an oath to tell the truth, and the accuracy of their testimony is tested through the trial process.  If you do any research or investigation outside the courtroom, or gain any information through improper communications, then your verdict may be influenced by inaccurate, incomplete, or misleading information that has not been tested by the

trial process. Each of the parties is entitled to a fair trial by an impartial jury, and if you decide the case based on information not presented in court, you will have denied the parties a fair trial. Remember, you have taken an oath to follow the rules, and it is very important that you follow these rules.

A juror who violates these restrictions jeopardizes the fairness of these proceedings. If any juror is exposed to any outside information, please notify the court immediately.

**<u>Final Instruction No. 23 – Communication with Court</u>**

If it becomes necessary during your deliberations to communicate with me, you may send a note through the clerk, signed by any one or more of you. No member of the jury should ever attempt to communicate with me except by a signed writing. I will not communicate with any member of the jury on anything concerning the case except in writing or here in open court. If you send out a question, I will consult with the lawyers before answering it, which may take some time. You may continue your deliberations while waiting for the answer to any question. Remember that you are not to tell anyone—including the court—how the jury stands, whether in terms of vote count or otherwise, until after you have reached a unanimous verdict or have been discharged.

1  **Final Instruction No. 24 – Return of Verdict**

2        A verdict form has been prepared for you.  After you have reached unanimous agreement

3  on a verdict, your presiding juror should complete the verdict form according to your deliberations,

4  sign and date it, and advise the clerk that you are ready to return to the courtroom.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26