THE HONORABLE RICARDO S. MARTINEZ

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WASHINGTON

AT SEATTLE

| | |
|---|---|
| UTHERVERSE GAMING LLC,<br><br>　　　　　　　　Plaintiff,<br><br>　v.<br><br>EPIC GAMES, INC.,<br><br>　　　　　　　　Defendant. | **Case No. 2:21-cv-00799-RSM**<br><br>**UTHERVERSE GAMING LLC'S RENEWED MOTION FOR JUDGMENT PURSUANT TO RULE 50(B)**<br><br>**NOTING DATE: July 29, 2025**<br><br>**(PER DKT. 481)** |

## I.　INTRODUCTION

Utherverse Gaming LLC ("Utherverse") requests judgment as a matter of law that U.S. patent number 9,724,605 ("'605 Patent") claim 2 is patent eligible. *See* FED.R.CIV.PROC. 50(b). Utherverse's request follows a jury verdict in partial favor of Epic Games, Inc. ("Epic") on Jury Question No. 3 ("JQ3"). DKT. 473, 4:1-18. The jury rendered its verdict on legally insufficient evidence.

JQ3 asked whether "Epic [had] proven by clear and convincing evidence that the elements of any of the asserted claims, taken individually or together, involved only technology that a person of ordinary skill in the art would consider to be well-understood, routine, and conventional." DKT. 473, 4:1-4. Epic presented only conclusory allegation to the jury. And this after four years of

UTHERVERSE GAMING LLC'S RENEWED
MOTION FOR JUDGMENT - 1
CASE NO. 2:21-CV-00799-RSM

POLSINELLI
1000 SECOND AVENUE, SUITE 3500
SEATTLE, WA 98104 • Tel: 206-393-5400

discovery, expert reports, and deposition.

Despite the absence of evidence concerning the combination of claim elements let alone clear and convincing evidence, the jury found claim 2 patent ineligible. *Id.*, 4:10. The trial court also denied Utherverse's Rule 50(a) motion. *See* DKT. 469. The Court should remedy the jury's error and enter judgment in favor of Utherverse under Rule 50(b).[1]

## II.   PROCEDURAL HISTORY

Utherverse filed this action alleging infringement of the '605 Patent. DKT. 1. Epic moved to dismiss, asserting patent ineligibility, because the '605 Patent "claims the entire concept of a recording played to multiple instances within a video game." DKT. 34, 1:26-2:2. Epic further alleged the '605 Patent failed to solve "a problem specific to computers or virtual environments" but only "the desire to relive or remember joyful experiences." *Id.*, 1:24-25.

Epic "disregard[ed] claim language to cast the claimed invention as little more than playing a recording." DKT. 38, 22:2-3. Utherverse made clear the '605 Patent concerned "improvements to legacy [virtual reality] systems" that "were not routine, conventional, or well understood." *Id.*, 22:11; *see also id.*, 22:12-14. "The problems (and solutions) addressed by the claims" "do not exist in the physical world." *Id.*, 2:9-10. The '605 Patent addresses "challenges unique to and that exist[ed] only in computer systems hosting online virtual reality universes." *Id.*, 2:10-11.

Magistrate Fricke recommended denying Epic's motion. *See generally* DKT. 49. While Magistrate Fricke (incorrectly) found "[t]he claims asserted by the '605 Patent are directed at an abstract concept"—"using generic computer functions to record, transmit and playback data"—she correctly recognized that "[a]n invention can have inventive concept by establishing non-conventional and non-generic arrangements of known or conventional pieces of computing components." *Id.,* 21:5-7; 23:10-11. Magistrate Fricke concluded "material questions of fact" concerning "inventive concepts" preclude[d] a dispositive ruling on patentability." *Id.,* 23:14-16. The '605 Patent plausibly alleged "an inventive concept because [it] established non-conventional

---

[1] This motion tolls "the time to file an appeal" pending "entry of the order disposing of [the present] motion." FED.R.APP.PROC. 4(a)(4)(A)(i).

UTHERVERSE GAMING LLC'S RENEWED
MOTION FOR JUDGMENT - 2
CASE NO. 2:21-CV-00799-RSM

POLSINELLI
1000 SECOND AVENUE, SUITE 3500
SEATTLE, WA 98104 • Tel: 206-393-5400

1  and non-generic arrangements of known computer components and virtual-reality components."
2  *Id.*, 23:21-23.

3  Utherverse timely objected to the purported abstract concept. *See generally* DKT. 53, 2:3-
4  8; 7:12-10:13. "The '605 Patent does not recite or disclose a scenario where computers are merely
5  used as tools"; there is no "real-world equivalent for the claimed methodology of the '605 Patent"
6  nor "a prior art system that otherwise claims the same." *Id.*, 9:21-24. "[T]he '605 Patent recites
7  improvements . . . 'necessarily rooted in computer technology to overcome a problem specifically
8  arising in the realm of computer networks.'" *Id.,* 10:7-10 (citations omitted). Epic did not object
9  to findings regarding an inventive concept.

10  The parties made their respective evidentiary presentations at trial. *See* DKTS. 460, 463,
11  464, 466, 469. The Court instructed the jury that Epic must "persuade [the jury] by clear and
12  convincing evidence that [any] claim is invalid." DKT. 472, 16:4-6. The Court required Epic prove
13  "that the limitations of the asserted claim(s), when taken individually and when taken as an ordered
14  combination, involve only technology which a person of ordinary skill in the art would have
15  considered to be well-understood, routine, and conventional." *Id.*, 20:4-7.

16  Epic failed to present ***clear and convincing*** evidence that the limitations of asserted claim
17  2, when taken both individually or when taken as an ***ordered combination***, involved ***only***
18  technology which a person of ordinary skill in the art would have considered to be well-understood,
19  routine, ***and*** conventional. *See* DKT. 472, 20:4-7 (requirements for patent ineligibility). Epic
20  offered only conclusory affirmations concerning unasserted claim 1 or technology not recited in
21  the asserted claims. *See e.g.* TRIAL TRANS. (MAY 15), 115:11-16; 116:16-20; 117:2-15. Of critical
22  significance, Epic offered no evidence sufficient to prove the limitations of any asserted claim
23  when taken in an ordered combination are well-understood, routine, and conventional. *Contra id.,*
24  118:25-119:7 (rote conclusion devoid of proof or explanation).

25  Utherverse moved for Rule 50 judgment following Epic's defense; the Court denied the
26  motion. *See* DKT. 469; *see also* TRIAL TRANS. (MAY 16), 6:2-19; 6:25-7:2-8; 9:24-12:13; 16:7-13;
    16:17-18. Utherverse renewed its motion following rebuttal; the Court again denied the motion.

UTHERVERSE GAMING LLC'S RENEWED
MOTION FOR JUDGMENT - 3
CASE NO. 2:21-CV-00799-RSM

POLSINELLI
1000 SECOND AVENUE, SUITE 3500
SEATTLE, WA 98104 • Tel: 206-393-5400

*See* DKT. 469; *see also* TRIAL TRANS. (MAY 16), 64:5:11.  The jury rendered a verdict finding claim 2 patent ineligible.  DKT. 473; *see* also DKT. 471 and TRIAL TRANS. (MAY 19), 3:2-11.

The Court requested briefing on any binding effect of the jury's verdict and claim 2's recitation of movement within a new instance being limited by objects of the recorded experience. *See* DKT. 471; *see also* TRIAL TRANS. (MAY 19), 8:2-16.  Claim 2 is important to virtual worlds because it prevents "the audience [from] just rush[ing] up on to the stage and swarm[ing] the audience"; "[i]f that happened in a virtual world . . . it would impact sight lines."  TRIAL TRANS. (MAY 14), 82:20-23.  "[T]hat's sort of the motivation . . . so everyone can have a good experience."  *Id.*, 82:23-25.

But that experience is necessarily driven by underlying computational resources; a virtual world "can only render so much, so many people"; it requires management of "network bandwidth," "CP[U] resources" and "all of the things that we have to do to deliver that [recorded] experience to a user."  TRIAL TRANS. (MAY 13), 81:20-22, 82:13-15; *see also infra* § IV(A)(3).  "The degree of graphic complexity," "the amount of interactivity," and "the amount of stress that [users] put on . . . the processor or the amount of memory they require" can cause a network to "slow down" and negatively impact "a good experience."  TRIAL TRANS. (MAY 13), 130:5-15; 178:9-179:3; *see also infra* § IV(A)(4).

Utherverse submitted that "[t]he jury's advisory opinion . . . as to claim 2 is not binding on the Court"; "the Court can and should find that Epic Games[] failed to satisfy [both] step 2" ***and*** "step 1 of the '*Alice* test.'"  DKT. 476, 21-23; 24.  Utherverse presented authority that the Court's earlier Rule 12(b)(6) determination was not binding and to find otherwise is "not consistent with the law."  *See id.,* 3:20-22; 25-26.  "Epic did not present[] evidence at trial that satisfied its burden" "that the limitations of claim 2 were well-understood, routine, and conventional" or that "the limitations [were] considered 'as an ordered combination.'"  *Id.*, 476:6:1-3; 6:9-10 (citations omitted).  The Court nevertheless adopted the verdict.  *See* DKT. 478.

UTHERVERSE GAMING LLC'S RENEWED
MOTION FOR JUDGMENT - 4
CASE NO. 2:21-CV-00799-RSM

POLSINELLI
1000 SECOND AVENUE, SUITE 3500
SEATTLE, WA  98104 • Tel:  206-393-5400

## III. LEGAL STANDARDS

### A. RENEWED RULE 50 MOTION AFTER TRIAL

Rule 50(b) judgment is appropriate when "a reasonable jury [is not provided] legally sufficient evidentiary basis to find for [a] party on [an] issue." FED.R.CIV.P. 50(b)(3). A jury verdict can be upheld only if it is supported by substantial evidence. *Johnson v. Paradise Valley Unified Sch. Dist.*, 251 F.3d 1222, 1227 (9th Cir. 2001). A Rule 50(b) motion should be granted when "the evidence permits only one reasonable conclusion, and that conclusion is contrary to the jury's verdict." *EEOC v. Go Daddy Software, Inc.,* 581 F.3d 951, 961 (9th Cir. 2009) (cleaned up). The question is whether sufficient evidence was presented at trial that supports the verdict. *See Reeves v. Sanderson Plumbing Prods. Inc.*, 530 U.S. 133, 150 (2000).

### B. INELIGIBILITY IS A TWO-STEP FACTUAL INQUIRY

#### 1. Clear and Convincing Evidence is Required

Overcoming the statutory presumption of validity requires clear and convincing evidence. *See Berkheimer v. HP Inc.,* 881 F.3d 1360, 1368 (Fed. Cir. 2018). Anything less than "highly probable" evidence fails to overcome the burden. *See Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 101 (2011). "Patent eligibility . . . is a question of law, based on underlying factual findings." *Uniloc USA, Inc. v. LG Electronics USA, Inc.,* 957 F.3d 1303, 1306 (Fed. Cir. 2020); *see also Berkheimer,* 881 F.3d at 1365 (concerning underlying issues of fact). The ultimate determination is a two-step test. *See Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 217 (2014). The Court must first determine "(1) whether the claim, as a whole, is 'directed to' patent-ineligible matter—an abstract idea—and (2) if so, whether the elements of the claim, considered individually or as an ordered combination 'transform the nature of the claim' into a patent-eligible application." *Ancora Techs., Inc. v. HTC Am., Inc.,* 908 F.3d 1343, 1347 (Fed. Cir. 2018).

#### 2. Step One: Patent Ineligible Abstract Ideas

Step one requires consideration of "what the patent asserts to be the focus of the claimed advance over the prior art"—"the language of the asserted claims themselves, considered in light of the specification." *Yu v. Apple Inc.,* 1 F.4th 1040, 1043 (Fed. Cir. 2021) (internal quotation

UTHERVERSE GAMING LLC'S RENEWED
MOTION FOR JUDGMENT - 5
CASE NO. 2:21-CV-00799-RSM

POLSINELLI
1000 SECOND AVENUE, SUITE 3500
SEATTLE, WA 98104 • Tel: 206-393-5400

omitted). "[I]t is not enough to merely identify a patent-ineligible concept underlying the claim; we must determine whether that patent-ineligible concept is what the claim is directed to." *Thales Visionix Inc. v. United States,* 850 F.3d 1343, 1349 (Fed. Cir. 2017) (internal quotation omitted). The Court must consider the claims "in their entirety" and "their character as a whole." *Internet Pats. Corp. v. Active Network, Inc.,* 790 F.3d 1343, 1346 (Fed. Cir. 2015).

Where "the claims are directed to a specific implementation of a solution to a problem in the software arts"—as they are here—"the claims at issue are not directed to an abstract idea." *Enfish, LLC v. Microsoft Corp.,* 822 F.3d 1327, 1339 (Fed. Cir. 2016). "[S]oftware claims [are] patent eligible under *Alice* step one when they are directed to improvements to the functionality of a computer or network platform itself." *Uniloc USA,* 957 F.3d at 1307. "If the claims are not directed to an abstract idea, the inquiry ends." *McRO, Inc. v. Bandai Namco Games Am. Inc.,* 837 F.3d 1299, 1312 (Fed. Cir. 2016).

### 3. Step Two: Well- Understood, Routine, and Conventional

Step two requires consideration of "the elements of each claim both individually and as an ordered combination." *Alice,* 573 U.S. at 217 (internal quotations omitted). "This second step is a search for an inventive concept" "to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Data Engine Techs. LLC v. Google LLC,* 906 F.3d 999, 1007 (Fed. Cir. 2018) (internal quotations omitted). "The inventive concept may arise in one or more of the individual claim limitations or in the ordered combination of the limitations." *Bascom Global Internet Servs., Inc. v. AT&T Mobility LLC,* 827 F.3d 1341, 1349 (Fed. Cir. 2016). Whether claims recite "something more" turns on "underlying questions of fact." *Cellspin Soft, Inc. v. Fitbit, Inc.,* 927 F.3d 1306, 1315 (Fed. Cir. 2019) (internal quotations omitted); *see also Berkheimer,* 881 F.3d at 1368 (concerning factual determinations).

UTHERVERSE GAMING LLC'S RENEWED
MOTION FOR JUDGMENT - 6
CASE NO. 2:21-CV-00799-RSM

POLSINELLI
1000 SECOND AVENUE, SUITE 3500
SEATTLE, WA 98104 • Tel: 206-393-5400

## IV. ARGUMENT

### A. THE '605 PATENT IS NOT AN ABSTRACT IDEA UNDER STEP ONE

#### 1. The '605 Patent Solves Real Problems Plaguing Virtual Worlds

The '605 Patent enables massively populated virtual worlds to share the same experience. *See* '605:10:37-38. Its method includes generating an initial "recorded experience file" having "an initial scene state" and "subsequent changes [at] respective times." '605:10:43-47. Claim 2 further requires movement within a new instance to be limited by objects of the recorded experience. *See* '605:10:59-62.

"Unlike a video recording," the '605 Patent "allows a user to navigate through the recorded experience rather than simply watch a video playback." '605:10:14-18. The experience is not "limited by a point of view from which the recording was captured"; a participant may "navigate through the recorded experience by changing their position and orientation within the recorded experience" whereby the experience is "different for all users." '605:10:21-29. Claim 2's requirement that movement be "limited by objects of the recorded experience" enables the same recorded experience to be used across all instances without alteration to the file. '605:10:59-62.

#### 2. Testimony Concerning Known Problems in Virtual Worlds

"[I]mprovements to the functionality of a computer or network platform itself" are patent eligible. *Uniloc USA,* 957 F.3d at 1307. And claims directed to a specific implementation of a solution are not abstract. *See Enfish,* 822 F.3d at 1339. The step one analysis cannot downplay the invention's benefits. *See id.*, 1137-38 (requiring the analysis be tethered to the claims).

The jury heard testimony from Dr. Rosenberg that claim 2 prevents "the audience [from] rush[ing] up on to the stage and swarm[ing] the audience"; "impact[ing] sight lines," and affecting a "good experience." TRIAL TRANS. (MAY 14), 82:20-25. Epic fact witnesses offered similar testimony highlighting virtual world challenges relative to the technical benefits of the '605 Patent. *See infra* § IV(A)(4). Epic offered no ***contrary*** evidence concerning claim 2 nor anything supporting its burden of invalidity—only unsubstantiated conclusions untethered to the claims. Claim 2 represents solutions to problems unique to virtual world systems recognized as being

UTHERVERSE GAMING LLC'S RENEWED
MOTION FOR JUDGMENT - 7
CASE NO. 2:21-CV-00799-RSM

POLSINELLI
1000 SECOND AVENUE, SUITE 3500
SEATTLE, WA 98104 • Tel: 206-393-5400

patent eligible. The eligibility inquiry should end here with a finding that claim 2 is not abstract. *See McRO,* 837 F.3d at 1312.

### 3. Utherverse Testified to Challenges Solved by the '605 Patent

Brian Shuster testified that "[t]here's multiple problems in trying to playback a recorded experience for so many users." TRIAL TRANS. (MAY 12), 160:25-161:1. Mr. Shuster identified "real problems" concerning virtual world capacity. *Id.*, 161:1. "When you're in a virtual environment . . . if we tried to put ten million people in here we couldn't do it"; "[e]verybody would be like literally crunched together." *Id.*, 161:6-9; 161:5. But Mr. Shuster indicated that capacity was "only one side of [the] coin"; "[t]he other side of the coin is the data for all of those people to be able to transmit [] what is happening among all of those people." *Id.,* 161:10-13. "There is an exponential problem of data, of computer resources, memory, bandwidth. These things cannot accommodate the traditional . . . let's just jam a bunch of people . . . nobody is able to enjoy the event." *Id.,* 161:13-18. This problem is unique to shared, online, virtual events.

Aaron Bruch similarly testified that "for performance reasons you can't put a million avatars or ten thousand avatars in the same scene"; "it would just be chaos." TRIAL TRANS. (MAY 13), 81:16-18. Mr. Burch also testified "[t]he application that runs on the user's computer can only render so much, so many people." *Id.,* 81:20-22. The '605 Patent, however, provides "a method of load balancing" whereby "the server would create instances on demand when they reached capacity." *Id.*, 82:4-6. The invention of the '605 Patent would manage "network bandwidth," "CP[U] resources," and "all of the things that we have to do to deliver that [recorded] experience to a user." *Id.*, 82:13-15.

### 4. Epic Testified to Challenges Solved by the '605 Patent

Epic fact witnesses testified lockstep with Utherverse. Mark Imbriaco spoke of technological challenges in hosting massive online events with "millions of players around the world" and the "large number[s] of servers . . . needed to support a game of that size." TRIAL TRANS. (MAY 13), 109:12-14; 109:23; 111:12-17. Mr. Imbriaco testified to "[t]he degree of graphic complexity," "the amount of interactivity," and "the amount of stress that [users] put on .

UTHERVERSE GAMING LLC'S RENEWED
MOTION FOR JUDGMENT - 8
CASE NO. 2:21-CV-00799-RSM

POLSINELLI
1000 SECOND AVENUE, SUITE 3500
SEATTLE, WA 98104 • Tel: 206-393-5400

. . the processor or the amount of memory they require." *Id.,* 130:5-15. Mr. Imbriaco admitted to "a lot of challenges" "operating at [massive] scale" with "that many players around the world." *Id.*, 156:14-21.

Peter Axt also testified as to online experiences that "require[] certain resources, database resources, service resources." *Id.*, 176:9-12. Mr. Axt testified as to the need to "maintain a steady state" in a network. *Id.*, 176:13-18. Stressing back-end services through "over utilization of CPU or memory" or "the transfer of information over a network" causes the network to "slow down" and negatively impact the ability for users to "hav[e] a good experience." *Id.,* 177:6-16; 178:9-179:3.

### 5. Experts Testified as to Solutions to Virtual World Challenges

Benjamin Ellinger (for Epic) testified in harmony with the fact witnesses: "overcrowding [of virtual environments] was a problem back in 2014 at the time the '605 Patent was filed" and "is certainly a problem you have to deal with [today]." TRIAL TRANS. (MAY 15), 142:8-17; *see also* TRIAL TRANS. (MAY 14), 92:16-93:2 (Dr. Rosenberg testifying "[t]his problem of overcrowding was known before" 2014). And David Crane (for Utherverse) testified from 40 years of industry experience as to the "problems [encountered] if you try to put a million people into one scene of a virtual world." *See* TRIAL TRANS. (MAY 15) at 214:6-7; 214:24-215:9; TRIAL TRANS. (MAY 16), 20:20-21:1. Mr. Crane testified that "the '605 Patent provided an inventive solution to solve that problem dealing with bandwidth constraints," "the server-side processing power," and "the client-side processing power." TRIAL TRANS. (MAY 16), 21:1-4. Without the '605 Patent, "communication between server and client would be overwhelmed by putting too many people into the scene of a virtual world." *Id.,* 21:4-6; *see also* TRIAL TRANS. (MAY 14) at 52:21-25 (Dr. Rosenberg testifying that millions of players would grind a computer to a halt; "[n]othing would work"). "The '605 Patent describes a way to . . . keep people together experiencing the same experience without all being in the same scene and bogging down the computer." TRIAL TRANS. (MAY 16), 21:16-18.

The '605 Patent "was not using generic computing equipment and did, in fact, provide an

UTHERVERSE GAMING LLC'S RENEWED
MOTION FOR JUDGMENT - 9
CASE NO. 2:21-CV-00799-RSM

POLSINELLI
1000 SECOND AVENUE, SUITE 3500
SEATTLE, WA 98104 • Tel: 206-393-5400

inventive solution to a problem that exists" and is therefore "patent eligible." *Id.* at 22:2-13. The '605 Patent improves the operation of computer platforms and networks. And it offers a specific implementation to solve the problems in the software arts. The '605 Patent does not concern an abstract idea.

### B.   THE '605 PATENT IS NOT ROUTINE, CONVENTIONAL, OR WELL UNDERSTOOD

"If the claims are not directed to a patent ineligible concept at step one, [this Court] need not address step two of the inquiry." *Vanda Pharms. Inc. v. West-Ward Pharms. Int'l Ltd.*, 887 F.3d 1117, 1135 (Fed. Cir. 2018); *accord* TRIAL TRANS. (MAY 16), at 11:17-18 (Rule 50 motion arguing that "step two of Alice does not need to be considered, because step one is not met"). The second step nevertheless considers "the elements of each claim both individually and as an ordered combination to determine whether the additional elements transform the nature of the claim into a patent-eligible application." *Alice*, 573 U.S. at 217 (internal quotations omitted). This second step is a search an element or combination of elements that ensures the patent amounts to significantly more than an ineligible concept. *See Data Engine,* 906 F.3d at 1007.

"The 'inventive concept' may arise in one or more of the individual claim limitations or in the ordered combination of the limitations." *Bascom*, 827 F.3d at 1349. "The question of whether a claim element or combination of elements is well-understood, routine and conventional to a skilled artisan in the relevant field is a question of fact." *Berkheimer*, 881 F.3d at 1368. Epic did not present clear and convincing evidence that the ordered combination of limitations of claim 2 were well-understood, routine, and conventional.

Epic offered only unsubstantiated conclusions from Mr. Ellinger in response to counsel's leading, general questions. *See* TRIAL TRANS. (MAY 15), 44:8-20, 115:11-16, 116:16-117:15, 118:10-119:7. Unsubstantiated acquiescence was all Mr. Ellinger could offer because he unreservedly stated he was ***not*** offering any opinions on patent eligibility. *See id.,* 138:22-139:3 (only opinion concerned obviousness); *see also id.,* 139:19-140:13, 142:18-21 (scope of opinions limited to combining two references). Nor did Epic elicit testimony concerning an ordered combination of the elements of claim 2 in accordance with its evidentiary burden. *Accord Alice*,

UTHERVERSE GAMING LLC'S RENEWED
MOTION FOR JUDGMENT - 10
CASE NO. 2:21-CV-00799-RSM

POLSINELLI
1000 SECOND AVENUE, SUITE 3500
SEATTLE, WA 98104 • Tel: 206-393-5400

573 U.S. at 217.  There is insufficient evidence for the Court to find—as a matter of law—that claim 2 is patent ineligible under the two-step test of *Alice*.  Addressing the issue in closing argument is insufficient; "[a]ttorney argument is not evidence." *Icon Health and Fitness, Inc. v. Strava, Inc.*, 849 F.3d 1034, 1043 (Fed. Cir. 2017).

### C.     THE PRESENTED FACTS DEMAND PATENT ELIGIBILITY

The evidence presented allows for but one reasonable conclusion, and that conclusion is contrary to the jury's verdict.  *See EEOC*, 581 F.3d at 961.  There was insufficient evidence presented at trial to support the jury's verdict that claim 2 is patent ineligible.  *See Reeves*, 530 U.S. at 150.  Epic presented no evidence as to step one, relying instead upon Magistrate Fricke's report and recommendation (and without pronouncement to the Court or jury).

#### 1.     Epic Failed to Meet Its Evidentiary Obligations Under *Alice* Step One

The law of the case doctrine does not allow Epic to omit presentation of evidence, especially when both the facts and the law do not support a conclusive finding that claim 2 encompassed an abstract idea.  Law of the case—if applicable—is not an inexorable command; this court has the "power at any time prior to its entry of its final judgment at the close of the accounting to reconsider any portion of its decision and reopen any part of the case." *Mendenhall v. Barber-Green Co.*, 26 F.3d 1573, 1581 (Fed. Cir. 1994).  The Ninth Circuit similarly explains that "[p]retrial rulings, often based on incomplete information, don't bind district judges for the remainder of the case." *Peralta v. Dillard*, 744 F.3d 1076, 1088 (9th Cir. 2014) (en banc).

"[W]hen considering whether to grant judgment as a matter of law, [the court should] look only at the evidence ***actually introduced at trial***." *Id.* (emphasis added).  "In cases involving software innovations, [the step one] inquiry often turns on whether the claims focus on 'the specific asserted improvement in computer capabilities . . . or, instead, on a process that qualifies as an "abstract idea" for which computers are invoked merely as a tool.'" *Finjan, Inc. v. Blue Coat System, Inc.*, 879 F.3d 1299, 1303 (Fed. Cir. 2018) (quoting *Enfish,* 822 F.3d at 1335–36); *see also Huawei Techs., Co. v. Samsung Elecs. Co.*, 340 F. Supp. 3d 934, 979 (N.D. Cal. 2018) (finding it remained defendant's burden to prove "by clear and convincing evidence in order to move onto

UTHERVERSE GAMING LLC'S RENEWED
MOTION FOR JUDGMENT - 11
CASE NO. 2:21-CV-00799-RSM

POLSINELLI
1000 SECOND AVENUE, SUITE 3500
SEATTLE, WA 98104 • Tel: 206-393-5400

the second step" notwithstanding a prior order). These decisions highlight the impropriety of the jury's decision given Epic's failure to make a factual presentation of evidence.

Claim 2 does not concern using generic computer functions to record, transmit and playback data. *Contra* DKT. 49, 21:5-7. Identifying a possible patent-ineligible concept underlying a claim is insufficient. *See Thales*, 850 F.3d at 1349; *see also Enfish,* 822 F.3d at 1137-38. The Court should instead find claim 2 is not directed to an abstract idea thereby obviating any need to consider step two. *C.f.* TRIAL TRANS. (MAY 16), 11:12-22 ("[n]either Mr. Ellinger nor any other Epic Games witness offered any testimony concerning the first step of the Alice test"; "Epic's defense fails on step one alone"); *see also* TRIAL TRANS. (MAY 15), 138:22-139:3 (Mr. Ellinger testifying that he has no other theories to present to the jury other than the '605 Patent being "obvious and invalid").

### 2.  Law of the Case is Mutual if Applicable at All

Should the Court exercise law of the case, it must be mutually applied. *See generally Mendenhall*, 26 F.3d at 1582-83 (finding law of the case a doctrine of "good sense and wise judicial practice"). If any finding with respect to step one is law of the case, so, too, are the findings as to step two. To proceed otherwise would be contrary to good sense and wise practice.

And Epic cannot challenge step two because it failed to object to the magistrate's recommendation. "Failure to object to a magistrate judge's recommendation waives all objections to the judge's findings of fact." *Turner v. Duncan,* 158 F.3d 449, 455 (9th Cir. 1998); *accord Thomas v. Arn,* 474 U.S. 140 (1985). Patent eligibility is based on underlying factual findings. *See Uniloc USA,* 957 F.3d at 1306. Epic must therefore advance law of the case for step one but fail under the step two recommendation favoring Utherverse, or abandon its theory all together leaving it wholly devoid of a showing as to step one. The result is the same: claim 2 is patent eligible.

### V.  CONCLUSION

Epic did not present clear and convincing evidence to support the finding of patent ineligibility under either prong of the *Alice* test. Epic presented no evidence at all. Epic elicited

UTHERVERSE GAMING LLC'S RENEWED
MOTION FOR JUDGMENT - 12
CASE NO. 2:21-CV-00799-RSM

POLSINELLI
1000 SECOND AVENUE, SUITE 3500
SEATTLE, WA 98104 • Tel: 206-393-5400

only conclusory statements that no reasonable jury could find to constitute clear and convincing evidence. Nor is there evidence concerning a combination of ordered steps. The jury's verdict is unreasonable because it contravenes the factual record. Utherverse requests judgment that claim 2 of the '605 Patent is and remains patent eligible.

Dated this June 24, 2025.                               Respectfully submitted,

|  |  |
|---|---|
| Colby B. Springer (*pro hac vice*)<br>Miya Yusa (*pro hac vice*)<br>**POLSINELLI LLP**<br>Three Embarcadero Center, Suite 2400<br>San Francisco, CA  94111<br>Tel:  415-248-2100<br>Fax: 415-248-2101<br>Email:  cspringer@polsinelli.com<br>Email:  myusa@polsineilli.com<br><br>Mark T. Deming (*pro hac vice*)<br>**POLSINELLI PC**<br>150 N. Riverside Place, Suite 3000<br>Chicago, IL  60606<br>Tel:  312-819-1900<br>Fax: 312-819-1901<br>Email:  mdeming@polsinelli.com<br><br>Kathryn Gusmer Cole (*pro hac vice*)<br>J. Mark Wilson (*pro hac vice*)<br>**MOORE & VAN ALLEN LAW**<br>100 North Tryon Street, Ste. 4700<br>Charlotte, NC  28202<br>Tel:  (704) 331-1045<br>Fax:  (704) 409-5659<br>Email:  katecole@mvalaw.com<br>Email:  markwilson@mvalaw.com | By: */s/ Emily McNally*<br>Emily McNally (WSBA No. 60710)<br>**POLSINELLI PC**<br>1000 Second Avenue, Suite 3500<br>Seattle, WA  98104<br>Tel:  206-393-5400<br>Fax: 206-393-5401<br>Email:  emcnally@polsinelli.com<br><br>Melenie Van (*pro hac vice*)<br>**POLSINELLI LLP**<br>2049 Century Park East, Suite 2900<br>Los Angeles, CA 90067<br>Tel:     (310) 229-1355<br>Fax:    (415) 276-8959<br>Email:  mvan@polsinelli.com<br><br>*Attorneys for Plaintiff*<br>*UTHERVERSE GAMING LLC* |

The signatory certifies that this memorandum contains 4,133 words, in compliance with the Local Civil Rules.

