THE HONORABLE RICARDO S. MARTINEZ

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

UTHERVERSE GAMING LLC,

Plaintiff,

v.

EPIC GAMES, INC.,

Defendant.

Case No. 2:21-cv-00799-RSM-TLF

**DEFENDANT EPIC GAMES, INC.'S OPPOSITION TO UTHERVERSE GAMING LLC'S RENEWED MOTION FOR JUDGMENT PURSUANT TO RULE 50(b)**

Noting Date: July 29, 2025

## TABLE OF CONTENTS


Page

I. INTRODUCTION ........ 1

II. LEGAL STANDARD ........ 2

A. Rule 50(b) Motions ........ 2

B. Motions for Reconsideration ........ 2

C. Law of the Case ........ 3

III. UTHERVERSE HAS NOT DEMONSTRATED THAT IT IS ENTITLED TO JUDGMENT AS A MATTER OF LAW ........ 4

A. Utherverse's *Alice* Step One Arguments are Foreclosed ........ 4

1. The Court's Step One Ruling was Final and Properly Not Before the Jury ........ 4

2. Utherverse Cannot Establish that Reconsideration of the Court's Prior Ruling is Warranted ........ 5

B. Utherverse Fails to Establish that the Jury's Fact Finding on *Alice* Step Two was Unsupported by Substantial Evidence ........ 8

IV. CONCLUSION ........ 11

## TABLE OF AUTHORITIES

Page

**Cases**

*AI Visualize, Inc. v. Nuance Commc'ns, Inc.*, 97 F.4th 1371 (Fed. Cir. 2024) .......... 7, 8, 10

*Bergeron v. Deutsche Bank Nat'l Tr. Co. as Tr. for New Century Home Equity Loan Tr. 2006-1*, No. C24-0929JLR, 2024 WL 3845724 (W.D. Wash. Aug. 16, 2024) .......... 5

*Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800 (1988) .......... 3, 5, 6

*Diamond Constr., LLC v. Atl. Cas. Ins. Co.*, No. C17-1408-JCC, 2018 WL 4095092 (W.D. Wash. Aug. 28, 2018) .......... 2, 3, 5, 6

*Ericsson Inc. v. TCL Commc'n. Tech. Ltd.*, 955 F.3d 1317 (Fed. Cir. 2020) .......... 1, 4, 7

*Exergen Corp. v. Kaz USA, Inc.*, 725 F. App'x 959 (Fed. Cir. 2018) .......... 5, 11

*Gaskill v. Travelers Ins. Co.*, No. C11-5847, 2012 WL 13026638 (W.D. Wash. Mar. 28, 2012) .......... 3

*Goodwall Constr. Co. v. Beers Constr. Co.*, 991 F.2d 751 (Fed. Cir. 1993) .......... 4

*Hawk Tech. Sys., LLC v. Castle Retail, LLC*, 60 F.4th 1349 (Fed. Cir. 2023) .......... 7, 8

*Hewlett-Packard Co. v. Mustek Sys., Inc.*, 340 F.3d 1314 (Fed. Cir. 2003) .......... 1, 2

*Intellectual Ventures II LLC v. FedEx Corp.*, No. 2:16-CV-00980-JRG, 2019 WL 2297048 (E.D. Tex. Mar. 29, 2019) .......... 5

*Jurgens v. McKasy*, 927 F.2d 1552 (Fed. Cir. 1991) .......... 8

*Marble Voip Partners LLC v. Zoom Video Commc'ns, Inc.*, No. 23-cv-03619-JSW, 2024 WL86859 *2–3 (N.D. Cal. 2024) .......... 6

*McGuire v. United States*, 707 F.3d 1351 (Fed. Cir. 2013) .......... 3

*Mills v. Target Corp.*, 2021 WL 4893352 (C.D. Cal. July 29, 2021) .......... 3, 6

*MobileMedia Ideas LLC v. Apple Inc.*, 780 F.3d 1159 (Fed. Cir. 2015) .......... 11

*Monolithic Power Sys., Inc. v. O2 Micro Int'l Ltd.*, 558 F.3d 1341 (Fed. Cir. 2009) .......... 10

*Savvy Dog Sys., LLC v. Pennsylvania Coin, LLC*, No. 3:19-CV-01470, 2022 WL 4349829 (M.D. Pa. Sept. 19, 2022) .......... 6

*Uniloc Luxembourg, S.A. v. eCinicalWorks, LLC*, 991 F. Supp. 2d 1097 (C.D. Cal. 2013) .......... 5

*United States v. Alexander*, 106 F.3d 874 (9th Cir. 1997) .......... 3, 6

*United States v. Archdale*, 229 F.3d 861 (9th Cir. 2000) .......... 10

*WBIP, LLC v. Kohler Co.*, 829 F.3d 1317 (Fed. Cir. 2016) .......... 11

**Rules**

Fed. R. Civ. P. 49(a) .......... 2, 4

Fed. R. Civ. P. 50(b) .......... 1, 2

W.D. Wash. Local R. 7(h) .......... 2, 3, 5, 6

## I. INTRODUCTION

The Court's judgment that claim 2 of the '605 Patent is patent-ineligible is supported by both the record and the law. *See* Dkt. 478 at 2. The Court correctly held at the outset of this case that claim 2 is directed to an abstract idea under *Alice* step one. *See id.* at 1; *see also* Dkt. 49 at 21-23, Dkt. 57. As the Court noted in its post-trial order, and as reflected in the verdict form, the only "remaining *Alice* factual question[]" for the jury was whether, under *Alice* step two, claim 2 "involved only technology that was well-understood, routine, and conventional" as of the patent's priority date. Dkt. 478 at 2. The jury "conclusively answer[ed]" that factual question in the negative, necessarily resulting in "a finding that claim 2 is patent-ineligible." *Id.* And, as the Court already held, "there is no basis in law or the record for the Court to come to different factual findings or to overturn any prior legal conclusions." *Id.* The Court therefore correctly determined that claim 2 is patent-ineligible as a matter of law. *Id.*

Utherverse now contends that judgment as a matter of law is warranted because Epic purportedly failed to "present clear and convincing evidence to support the finding of patent ineligibility under either prong of the *Alice* test." Dkt. 483 at 12-13. Utherverse is incorrect.

As a threshold matter, Utherverse cannot use Rule 50(b) to challenge the Court's ruling, on Epic's Rule 12 motion, that claim 2 is directed to an abstract idea under *Alice* step one. The Court's ruling was a final legal determination that "was not dependent on any factual issues that were or could have been raised at trial." *Ericsson Inc. v. TCL Commc'n. Tech. Ltd.*, 955 F.3d 1317, 1321 (Fed. Cir. 2020). The proper way for Utherverse to challenge the Court's ruling would have been a motion for reconsideration. Utherverse did not timely seek reconsideration and cannot sidestep the requirements for reconsideration with a Rule 50(b) motion. Moreover, to the extent that Utherverse now argues that there were step-one factual issues for the jury, it has waived these arguments by failing to raise them prior to the verdict and agreeing to a verdict form that submitted only *Alice* step two to the jury. This alone forecloses Utherverse's belated attempt to challenge the Court's prior step-one ruling. *See Hewlett-Packard Co. v. Mustek Sys., Inc.*, 340 F.3d 1314, 1320 (Fed. Cir. 2003) (explaining that a party may not challenge legal issues "at the JMOL stage" that "have not been properly raised in connection with the jury instructions" or verdict form); Fed.

R. Civ. P. 49(a)(3) ("[a] party waives the right to a jury trial on any issue of fact raised by the pleadings or evidence but not submitted to the jury unless, before the jury retires, the party demands its submission to the jury").

Even if the Court were to consider Utherverse's belated arguments, Utherverse has not proven its entitlement to the extraordinary remedy of reconsideration. It has not established "manifest error" or that there are "new facts or legal authority" that mandate a different result. *Diamond Constr., LLC v. Atl. Cas. Ins. Co.*, No. C17-1408-JCC, 2018 WL 4095092, at *1 (W.D. Wash. Aug. 28, 2018) (quotation omitted).

Finally, the jury's *Alice* step-two determination is supported by substantial evidence. Epic's expert testified extensively regarding the conventionality of all elements of claim 2, alone and in combination. In contrast, Utherverse's witnesses did not identify ***any*** element or combination of elements in claim 2 that purportedly were unconventional. The jury's verdict on this issue was therefore reasonable and must be left undisturbed.

Utherverse's motion fails to establish that it is entitled to judgment as a matter of law that claim 2 is patent eligible and should be denied.

## II. LEGAL STANDARD

### A. Rule 50(b) Motions

A motion under Rule 50(b) is "limited to the question of whether substantial evidence support[s] the verdict." *Hewlett-Packard*, 340 F.3d at 1320. A party may not challenge legal issues "at the JMOL stage" that "have not been properly raised in connection with the jury instructions." *Id.* at 1320-21. Rather, the verdict "must be tested by the charge actually given." *Id.* at 1321. Further, "[a] party waives the right to a jury trial on any issue of fact raised by the pleadings or evidence but not submitted to the jury unless, before the jury retires, the party demands its submission to the jury." Rule 49(a)(3).

### B. Motions for Reconsideration

A reconsideration motion must be filed "within fourteen days after the order to which it relates." W.D. Wash. Local R. 7(h)(2). Such motions are "generally disfavored," and are "only appropriate where there is 'manifest error in the prior ruling or a showing of new facts or legal

authority which could not have been brought to [the Court's] attention earlier with reasonable diligence.'" *Diamond Constr.*, 2018 WL 4095092, at *1 (quoting Local Civ. R. 7(h)(1) (alteration in original). A "'manifest error' is an error that is plain and indisputable, and that amounts to a complete disregard of the controlling law or the credible evidence in the record." *Gaskill v. Travelers Ins. Co.*, No. C11-5847, 2012 WL 13026638, at *1 (W.D. Wash. Mar. 28, 2012) (quotations omitted). Motions for reconsideration "should not be used to ask the court to rethink what the court had already thought through—rightly or wrongly." *Diamond Constr.*, 2018 WL 4095092, at *1 (citation omitted).

### C. Law of the Case

The "law of the case" doctrine "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 815-16 (1988). The doctrine exists to "promote[] the finality and efficiency of the judicial process by protecting against the agitation of settled issues." *Id.* While the Court always "has the power to revisit prior decisions of its own," it "should be loathe to do so in the absence of extraordinary circumstances." *Id.* at 817. Accordingly, "the doctrine should apply except when the case for departure is exceptionally clear, either because the controlling law has changed or the earlier decision is clearly erroneous and would lead to manifest injustice." *McGuire v. United States*, 707 F.3d 1351, 1365 (Fed. Cir. 2013) (internal quotations and citation omitted).

The Court's determination of whether to apply the "law of the case doctrine" largely "mirror[s] the standard in a motion for reconsideration." *Mills v. Target Corp*., 2021 WL 4893352, at *4 (C.D. Cal. July 29, 2021), *aff'd*, 2023 WL 2363959 (9th Cir. Mar. 6, 2023). This includes considering whether (1) the first decision was clearly erroneous; (2) an intervening change in the law has occurred; (3) other changed circumstances exist; or (4) a manifest injustice would otherwise result. *United States v. Alexander,* 106 F.3d 874, 876 (9th Cir. 1997). "Failure to apply the doctrine of the law of the case absent one of the requisite conditions constitutes an abuse of discretion." *Id.*

## III. UTHERVERSE HAS NOT DEMONSTRATED THAT IT IS ENTITLED TO JUDGMENT AS A MATTER OF LAW

### A. Utherverse's *Alice* Step One Arguments are Foreclosed

#### 1. The Court's Step One Ruling was Final and Properly Not Before the Jury

Utherverse's argument that "Epic failed to meet its evidentiary obligations under *Alice* step one" hinges on the premise that there were issues relevant to step one that Epic was required to present to the jury. *See* Dkt. 483, 11. Utherverse's argument fails because the Court issued a final ruling on *Alice* step one, leaving nothing for the jury to decide. The Court determined before trial that, under *Alice* step one, claim 2 of the '605 Patent is directed to an abstract idea as a matter of law. *See* Dkt. 478, 1 ("The Court has previously applied the *Alice* framework and found that [] the asserted claims of the '605 Patent are directed to an abstract idea"). This conclusion as to *Alice* step one was a final legal determination that left no remaining issues for the jury to decide. *See CardioNet*, 955 at 1372, 1374 ("*Alice* step one presents a legal question" that can be resolved entirely by the Court and that "does not require an evaluation of the prior art or facts outside the intrinsic record"). The Court's determination was "based on the court's analysis of the claim language and a comparison to [] existing caselaw, and was not dependent on any factual issues that were or could have been raised at trial." *Ericsson*, 955 F.3d at 1321. Because "there was no set of facts" that either party "could have adduced at trial to change that conclusion," neither party was required to present any. *See id.* at 1321.

Utherverse's motion does not identify any question relevant to *Alice* step one that the jury should have decided. And Utherverse has waived any argument that there were any such factual issues. Pursuant to Rule 49(a), the Court submitted a special verdict form asking the jury to resolve factual issues underlying patent eligibility. *See* Dkt. 473 at 4; *see also* Dkt. 478 at 2. Under Rule 49(a)(3), "a party waives the right to a jury trial on any issue of fact raised by the pleadings or evidence but not submitted to the jury unless, before the jury retires, the party demands its submission to the jury." *Goodwall Constr. Co. v. Beers Constr. Co.*, 991 F.2d 751, 757 (Fed. Cir. 1993). Accordingly, a party "waive[s] its right to a jury trial for the factual issues underlying the

§ 101 determination" if it does not request that the Court include any such questions on the verdict form. *Exergen Corp. v. Kaz USA, Inc.*, 725 F. App'x 959, 968 (Fed. Cir. 2018). Utherverse did not request that the Court include any fact question related to *Alice* step one on the verdict form. Trial Tr. at 983:7-23; *see also* Dkt. 455 at 58 (Joint Proposed Jury Instructions) (instructing the jury only on *Alice* step 2). It has therefore waived this argument.

**2. Utherverse Cannot Establish that Reconsideration of the Court's Prior Ruling is Warranted**

**a. Utherverse's step one arguments are subject to the legal requirements for a motion for reconsideration**

Because the Court's *Alice* step one ruling was a final legal determination, Utherverse's arguments are tantamount to a motion for reconsideration of that prior ruling. *See Intellectual Ventures II LLC v. FedEx Corp.*, No. 2:16-CV-00980-JRG, 2019 WL 2297048, at *12–13 (E.D. Tex. Mar. 29, 2019) ("post-trial motions relating to purely legal issues" such as *Alice* step one are considered "as motions for reconsideration"); *Uniloc Luxembourg, S.A. v. eCinicalWorks, LLC*, 991 F. Supp. 2d 1097 (C.D. Cal. 2013) ("Because Defendants essentially attempt to disrupt the Court's prior order, the proper means of bringing this issue to the Court's attention would have been a motion for reconsideration."). Utherverse's arguments must therefore satisfy the requirements for motions for reconsideration in Local Rule 7(h), including that the motion: (1) be filed "within fourteen days after the order to which it relates"; and (2) must show "manifest error in the prior ruling or a showing of new facts or legal authority which could not have been brought to [the Court's] attention earlier with reasonable diligence.'" *Diamond*, 2018 WL 4095092, at *1 (quotation omitted). "Reconsideration is an extraordinary remedy," and the moving party bears a "heavy burden." *Bergeron v. Deutsche Bank Nat'l Tr. Co. as Tr. for New Century Home Equity Loan Tr. 2006-1*, No. C24-0929JLR, 2024 WL 3845724, at *1 (W.D. Wash. Aug. 16, 2024).

Utherverse can meet neither the standard for reconsideration, nor the similar requirements under the "law of the case" doctrine. That doctrine provides that a court should generally decline to "revisit prior decisions of its own" absent "extraordinary circumstances" that warrant reconsideration. *Christianson*, 486 U.S. at 817. The determination of what constitutes an

"extraordinary circumstance" largely "mirror[s] the standard in a motion for reconsideration," including determining whether the prior decision was "clearly erroneous" or if there were "intervening changes in the law" or "substantially different evidence" that would warrant revisiting the prior ruling. *Mills*, 2021 WL 4893352, at *4 (citing *Alexander,* 106 F.3d at 876). The "law of the case" doctrine applies to the Court's determinations under *Alice* step one. *See Marble Voip Partners LLC v. Zoom Video Commc'ns, Inc.*, No. 23-cv-03619-JSW, 2024 WL 86859, at *2–3 (N.D. Cal. 2024) (declining to revisit prior step one decision due to "law of the case"); *Savvy Dog Sys., LLC v. Pennsylvania Coin, LLC*, No. 3:19-CV-01470, 2022 WL 4349829, at *5 (M.D. Pa. Sept. 19, 2022) (same).

Utherverse argues that, if "the law of the case" binds the Court at step one to favor Epic, it also binds the Court at step two to favor Utherverse. *See* Dkt. 483 at 12. That is nonsensical. The Court's determination at step one was a legal conclusion that the claims were directed to an abstract idea. *See* Dkt. 478 at 1. That is a "rule of law" to which the "law of the case" would apply. *Christianson*, 486 U.S. at 815; *see also Marble*, 2024 WL 86859 at *2. The Court's determination at step two was that "factual questions . . . precluded a judgment of invalidity on the pleadings." Dkt. 478 at 1-2. That is not a "rule of law" that would "govern the same issues in subsequent stages in the same case." *See Christianson*, 486 U.S. at 816. Rather, it is a determination that a legal conclusion *could not be made* at that stage in the case. The "law of the case" thus applies only to the Court's ruling at *Alice* step one.

**b. Utherverse has not met its "heavy burden" of showing manifest error, new facts, or new law**

Utherverse's motion does not address the requirements for a motion for reconsideration or departure from the "law of the case." The Court issued its order regarding *Alice* step one over three years ago on January 3, 2022. *See* Dkt. 57. Utherverse's motion is far past the fourteen-day deadline for a motion for reconsideration. Local Rule 7(h)(2).

Even if the Court were to consider Utherverse's untimely arguments, Utherverse has not met its burden to show "manifest error in the prior ruling" or that there are "new facts or legal authority" that it could not have previously raised that impact the Court's analysis. *Diamond*, 2018

WL 4095092, at *1. There are no such errors, new facts, or new law. The Court properly determined that claim 2 was directed to an abstract idea by "examining the patent claims in view of the plain claim language, [and] statements in the written description." *CardioNet*, 955 F.3d at 1372, 1374; Dkt. 49 at 21-23; *see also Ericsson*, 955 F.3d at 1321 (explaining that once a district court makes its *Alice* step one determination, there is "no set of facts that [] could [be] adduced at trial to change that conclusion."). Neither the intrinsic record nor the law have changed, meaning there are no new facts or legal authority that would warrant reconsideration of the Court's ruling.

Utherverse also failed to establish that reconsideration of the Court's prior ruling on *Alice* step one is warranted because none of the evidence it presents is sufficient to support a conclusion that claim 2 is directed to patent-eligible subject matter. Most of the evidence Utherverse cites describes the "problems" that virtual worlds face without any explanation of *how* the invention claimed in the '605 Patent solves those problems. *See* Dkt. 483 at 7-10; *see also AI Visualize, Inc. v. Nuance Commc'ns, Inc.*, 97 F.4th 1371, 1378-79 (Fed. Cir. 2024) (explaining that claims are directed to an abstract idea under *Alice* step one if "[t]here is no recitation in the claim about *how* to" solve the identified problem). Moreover, Utherverse fails to point to anything in claim 2 (or any other evidence) that shows "a specific means or method that improves the relevant technology." *AI Visualize*, 97 F.4th at 1378; *Hawk Tech. Sys., LLC v. Castle Retail, LLC*, 60 F.4th 1349, 1358 (Fed. Cir. 2023). That is legally insufficient to establish patent eligibility under *Alice* step one.

Utherverse does not identify any specific requirement of claim 2 that purportedly solves the problems associated with virtual worlds. At most, Utherverse suggests that "[c]laim 2's requirement that movement be 'limited by objects of the recorded experience' enables the same recorded experience to be used across all instances without alteration to the file." Dkt. 483 at 7. Utherverse cites no supporting evidence for this argument, which appears to conflate claim 2 ("The method of claim 1, wherein movement within the new instance by the one or more avatars . . . is limited by objects of the recorded experience," TX001, 10:59-62) with claim 5 ("The method of claim 1, wherein the recorded experience file is not modifiable by events occurring during playback," TX001, 11:3-5). In any event, Utherverse's assertion that claim 2 enables playback of

recorded experiences "without alteration to the file" does not explain how claim 2 presents "a technical solution to a technical problem in the prior art." *AI Visualize*, 97 F.4th at 1379.

The only other evidence that Utherverse cites with respect to claim 2 is Dr. Rosenberg's purported testimony that "claim 2 prevents 'the audience [from] rush[ing] up on to the stage and swarm[ing] the audience'; 'impact[ing] sight lines,' and affecting a 'good experience.'" Dkt. 483, 7. Utherverse mischaracterizes this testimony. Dr. Rosenberg did not testify that ***claim 2*** prevents audiences from rushing onto a stage; Dr. Rosenberg testified that ***Epic's technology*** prevented audiences from rushing on to the stage during the accused events. Trial Tr., 539:2-24 (Rosenberg). According to Dr. Rosenberg, the technology that Epic used that accomplished this was "blocking volumes and/or static meshes, something called 'collision detection.'" *Id.* Claim 2 does not recite the use of "blocking volumes and/or static meshes" to limit avatar movement. Dr. Rosenberg's testimony thus does not support a finding that claim 2 recites a "specific [technical] solution" that renders the claim non-abstract. *Hawk Tech. Sys.*, 60 F.4th at 1357.

### B. Utherverse Fails to Establish that the Jury's Fact Finding on *Alice* Step Two was Unsupported by Substantial Evidence

Utherverse argues that the Court should overturn the jury verdict because "Epic did not present clear and convincing evidence that the ordered combination of limitations of claim 2 were well-understood, routine, and conventional." Dkt. 483 at 10. Utherverse is wrong.

The jury found that Epic proved by clear and convincing evidence that "the elements of claim 2, taken alone or in combination, involved only technology that was well-understood, routine, and conventional by the '605 Patent's priority date." Dkt. 473 at 4. That finding is supported by the substantial evidence and must be left "undisturbed." *Jurgens v. McKasy*, 927 F.2d 1552, 1557 (Fed. Cir. 1991).

The technology involved in claim 1, from which claim 2 depends, includes processors, servers, memory, and client devices used to record and replay experiences in a virtual world and transport avatars to different instances of the virtual world when one instance fills up to maximum capacity. *See* TX001, 10:37-59. Claim 2 adds another requirement that the movement of the avatars referred to in claim 1 is "limited by objects of the recorded experience." *Id.,* 10:59-62.

Utherverse asserted that these claim elements were met by (1) Epic's Unreal Engine sequencer tool, which Epic's animators used to make the animations for the events; (2) Epic's dedicated servers, which allowed Epic to create different "instances" of the virtual environments where the animations were played; (3) Epic's matchmaking service, which automatically connected players in a lobby to a different dedicated server if one dedicated server hit maximum capacity; and (4) the "blocking volumes and/or static meshes" Epic's animators used to detect collision during the events. Trial Tr., 495:6-14 (Rosenberg), 500:13-501:6 (Rosenberg), 509:13-510:15 (Rosenberg), 535:4-25 (Rosenberg), 539:2-24 (Rosenberg).

The jury heard evidence that all this technology was well-understood, routine, and conventional by 2014. Trial Tr., 802:17-806:17 (Ellinger), 846:12-847:1 (Ellinger); *see also* 728:22-731:6 (Ellinger), 764:19-765:13 (Ellinger). Epic's engineering director, Peter Axt, testified that Epic's Unreal Engine's sequencer tool, dedicated servers, and matchmaking service all existed well before 2014, and had been used prior to 2014. Trial Tr., 441:17-442:10, 444:7-23, 445:24-446:13, 466:2-467:17 (Axt). Epic's expert, Benjamin Ellinger, testified that "processors, servers, memory, and client devices" were all well-understood, routine, and conventional by August 2014, and were used in claim 2 in conventional ways. *Id.*, 805:22-806:03. Mr. Ellinger also testified that "record and replay" functionality, the use of "instancing" to transport avatars to different copies of the virtual worlds with player limits, and the use of collision to "block" or "limit" avatar movement in the virtual world was routine and conventional. *Id.,* 728:8-731:6, 764:19-765:13, 802:17-804:22, 806:11-12. Mr. Ellinger further testified that the accused technology—including the "sequencer" tool used to create animations, the dedicated servers used for instancing, and the matchmaking service used to connect players to different instances when one server hits maximum capacity—employed technology that was well-understood, routine, and conventional as of August 2014. *Id.,* 804:7-806:21, 823:17-824:8. Mr. Ellinger provided specific examples of virtual worlds that implemented this technology. *See, e.g.*, *id.*, 730:1-731:6, 804:23-805:17, 846:12-17. And, contrary to Utherverse's assertion that Epic did not "elicit testimony concerning an ordered combination of elements of claim 2," *see* Dkt. 483 at 10-11, Mr. Ellinger specifically testified that the "ordered combination" of elements in claim 2 "was routine and

conventional." Trial Tr., 806:13-17.

Utherverse does not address Mr. Ellinger's thorough testimony, arguing instead that it is somehow "unsubstantiated" because Mr. Ellinger "unreservedly stated he was ***not*** offering any opinions on patent eligibility."[1] Dkt. 483 at 10. Not only does this mischaracterize Mr. Ellinger's testimony—he stated unequivocally that he "would say [the '605 patent] would be ineligible," Trial Tr. at 826:19-25—it also is entirely irrelevant. The jury was not asked whether the claims of the '605 Patent were "patent ineligible"—a question of law—they were asked the subsidiary factual question of whether the claim elements involved technology that was "well-understood, routine, and conventional." Dkt. 473 at 4; *see also BSG Tech*, 899 F.3d at 1290 (underlying factual determinations underlying eligibility, such as "whether a claim limitation or combination of limitations is well-understood, routine, and conventional," may "inform legal eligibility determination"). Mr. Ellinger indisputably offered opinions on the only question the jury was tasked with answering. *See, e.g.*, Trial Tr., 803:17-21; 847:12-17.

The reasonableness of the jury's determination is further demonstrated by the fact that Utherverse presented no evidence to rebut Mr. Ellinger's testimony. *See Monolithic Power Sys., Inc. v. O2 Micro Int'l Ltd.*, 558 F.3d 1341, 1350 (Fed. Cir. 2009) (unrebutted expert testimony constitutes "substantial evidence" and that "attorney arguments . . . cannot create an evidentiary gap"). Neither of Utherverse's technical experts presented evidence that any of the technology identified by Mr. Ellinger, or any of the technology recited in claim 2, was unconventional. At most, Utherverse's expert Mr. Crane testified that "the '605 patent provided an inventive solution to solve [the] problem" of "dealing with bandwidth constraints." Trial Tr., 940:5-16. But Mr. Crane's testimony did not identify the purported "inventive solution," nor explain how it was implemented in claim 2. Testimony like Mr. Crane's that is "wholly divorced" from the language of the claims is insufficient to establish an inventive concept at *Alice* step two. *AI Visualize*, 97

[1] Utherverse also suggests that Mr. Ellinger's testimony is "unsubstantiated" because it was offered in response to "counsel's leading, general questions." Dkt. 483 at 10. Utherverse has failed to identify any specific question that was purportedly "leading," and has waived any such argument by "fail[ing] to object contemporaneously to the leading nature of any questions put to" Mr. Ellinger at trial. *United States v. Archdale*, 229 F.3d 861, 866 (9th Cir. 2000).

F.4th at 1380. And even if Mr. Crane had offered testimony on this issue, the jury would have been free to credit Mr. Ellinger's testimony over Mr. Crane's. *MobileMedia Ideas LLC v. Apple Inc.*, 780 F.3d 1159, 1168 (Fed. Cir. 2015).

The evidence presented to the jury thus constitutes clear and convincing evidence supporting the jury's conclusion that the technology involved in claim 2 was well-understood, routine, and conventional as of the '605 Patent's priority date. *See WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1326, 1337 (Fed. Cir. 2016) (explaining that the jury's factfinding must be left "undisturbed if supported by substantial evidence" even under a clear and convincing evidence standard); *see also Exergen*, 725 F. App'x at 965 ("The question of whether a claim element is well-understood, routine, and conventional to a skilled artisan in the relevant field is a question of fact and deference must be given to the determination made by the fact finder."). The Court correctly determined that this finding results in a conclusion that claim 2 contains no "inventive concept" under *Alice* step two.

## IV. CONCLUSION

Utherverse has failed to establish that the Court should reconsider its judgment that claim 2 is patent-ineligible. Utherverse has not shown that there are "extraordinary circumstances" that would warrant revisiting the Court's prior *Alice* step one ruling. And the Court's *Alice* step two determination was predicated on a factual finding by the jury supported by substantial evidence. Utherverse's motion should thus be denied.

Dated: July 18, 2025

By: /s/ Timothy C. Saulsbury

Daralyn J. Durie (*pro hac vice*)
DDurie@mofo.com
Timothy C. Saulsbury (*pro hac vice*)
TSaulsbury@mofo.com
Eric C. Wiener (*pro have vice)*
EWiener@mofo.com
Ramsey Fisher (*Pro hac vice*)
ramseyfisher@mofo.com
Katherine E. McNutt (*pro hac vice*)
KMcNutt@mofo.com
Sara Doudar (*pro hac vice*)
SDoudar@mofo.com

The signatory certifies that this memorandum contains 4,192 words, in compliance with the Local Civil Rules.

MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105
Telephone: 415-268-7000
Facsimile: 415-268-7522

Bethany D. Bengfort (*pro hac vice*)
bengfort@turnerboyd.com
Turner Boyd Seraphine LLP
155 Bovet Road, Suite 600
San Mateo, CA 94402
Telephone: 650-529-4752

Mark A. Lemley (*pro hac vice*)
mlemley@lex-lumina.com
LEX LUMINA PLLC
745 Fifth Avenue, Suite 500
New York, NY 10151
Telephone: (646) 898-2055

Stevan R. Stark (WSBA No. 39639)
sstark@perkinscoie.com
Antoine M. McNamara (WSBA No. 41701)
AMcNamara@perkinscoie.com
Christina J. McCullough (WSBA No. 47147)
CMcCullough@perkinscoie.com
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Telephone: 206-359-8000
Facsimile: 206-359-9000

*Attorneys for Defendant Epic Games, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 18, 2025, the within document was filed with the Clerk of the Court using CM/ECF which will send notification of such filing to the attorneys of record in this case.

*/s/ Timothy C. Saulsbury*
Timothy C. Saulsbury